## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTINE BIROS,

          Plaintiff,

   v.

SHANNI SNYDER, GEORGE
SNYDER, KASH SNYDER, and
J. ALLEN ROTH,

        Defendants.

Civil Action No.: 2:23-cv-297

**JURY TRIAL DEMANDED**

## COMPLAINT

AND NOW comes the Plaintiff, Christine Biros, and, for her complaint against the Defendants, Shanni Snyder ("Shanni"), George Snyder ("George"), Kash Snyder ("Kash"), and J. Allen Roth, states as follows:

1.     Biros brings this action because the Defendants have, individually and in conspiracy, engaged in a series of actions intended to deny her the legal and equitable ownership of her real property to which she is entitled.  In taking these actions, the Defendants have violated the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, slandered Biros's title in her property, committed common-law fraud, aided and abetted common-law fraud, and abused process.

### The Parties

2.     Biros is a resident of Pennsylvania and has a place of business at 3001 Jacks Run Road, White Oak, PA  15131.

3.      Biros owns the real property at 14140 Route 30 in North Huntingdon Township, Westmoreland County, Pennsylvania (the "Subject Property").  The Subject Property is also identified as Westmoreland County Tax Map No. 54-03-10-0-103.

4.      Shanni is a resident of Pennsylvania.  On information and belief, Shanni resides at one or more of 14390 Route 30, North Huntingdon, PA 15642 and 395 Luann Drive, McKees Rocks, PA  15136.

5.      George is a resident of Pennsylvania.  On information and belief, George resides at 150 Leger Road, North Huntingdon, PA 15642.

6.      Kash is a resident of Pennsylvania.  On information and belief, Kash resides at 670 Lime Street, Irwin, PA  15642.

7.      Shanni, George, and Kash are siblings.

8.      Roth is a resident of Pennsylvania.  On information and belief, Roth maintains a place of business at 757 Lloyd Avenue, Suite B, Latrobe, PA  15650.

### Jurisdiction and Venue

9.      This Court has jurisdiction of this action pursuant to the federal-question jurisdiction of 28 U.S.C. § 1331, the jurisdiction to hear claims under the RICO Act established in 18 U.S.C. § 1964(a), and the supplemental jurisdiction of 28 U.S.C. § 1367(a).

10.     Venue is proper in this Court because the Defendants reside in this judicial district.

11.     Venue is also proper in this Court because at least one of the Defendants resides within this judicial district and all of the Defendants are subject to the personal jurisdiction of courts sitting in the Commonwealth of Pennsylvania.

12.     Venue is also proper in this Court because a substantial part of the events or omissions giving rise to Biros's claims occurred within this judicial district.

## Background

### A. Biros's Purchase and the Quiet Title Action

13.     Biros acquired the Subject Property by, on or about July 16, 2015, paying a total of $309,213.30 to the executors and co-executors of four estates (collectively, the "Executors").

14.     At the same time that Biros made these payments or shortly thereafter, four deeds for the Subject Property – one on behalf of each of the estates – were executed in favor of "U Lock Inc."

15.     By that time, no entity in Pennsylvania had ever been incorporated as "U Lock Inc." or adopted that name.

16.     On September 4, 2015, Kash incorporated U Lock Inc. ("U Lock") under the laws of the Commonwealth of Pennsylvania.

17.     George and Kash, possibly with Shanni, have directed the affairs of U Lock since its incorporation.

18.     U Lock has held possession of the Subject Property at all relevant times.

19.     On or about October 17, 2017, Biros commenced an action against U Lock and the Executors in the Court of Common Pleas of Westmoreland County, Pennsylvania (the "Westmoreland Court") at Civil Division Case No. 4886 of 2017 (the "Quiet Title Action").  Biros sought (a) a declaratory judgment that she owned the Subject Property, (b) an equitable order compelling the Executors to convey fee simple title to her by deed, (c) relief quieting title in her, and (d) an accounting for the funds that U Lock had received while in possession of the Subject Property.

20.     U Lock defended against the Quiet Title Action.

21.     Roth has represented U Lock in the Quiet Title Action.

22.     The Westmoreland Court dismissed the Executors from the Quiet Title Action after each of them executed deeds to the Subject Property and deposited those deeds with that court.  All of those deeds were dated for May 2019.

23.     On August 22, 2019, following trial, the Westmoreland Court found that Biros had been the equitable owner of the Subject Property since July 16, 2015 and that U Lock had held legal title to the Subject Property in trust for the benefit of Biros, and that U Lock did not own the Subject Property.

24.     A true and correct copy of the August 22, 2019 "Non-Jury Trial Opinion and Order of Court" of the Westmoreland Court, entered on the record the following day, is attached to this Complaint as Exhibit A.

25.     On December 6, 2019, the Westmoreland Court denied U Lock's post-trial motions and, while making slight modifications to its August 22 Opinion, reiterated that it was awarding judgment to Biros.

26.     A true and correct copy of the Westmoreland Court's December 6, 2019 "Opinion," which the Westmoreland Court entered on the record on December 9, 2019, is attached to this Complaint as Exhibit B.

27.     U Lock, represented by Roth, appealed from the judgment of the Westmoreland Court to the Superior Court of Pennsylvania on December 17, 2019 at 1841 WDA 2019.

28.     The Superior Court affirmed the Westmoreland Court's judgment for Biros by published opinion of May 21, 2021.  In reaching its decision, that court did not require oral argument.

29.     A copy of the Superior Court's docket in the Quiet Title Action, current as of February 14, 2023 and reflecting that decision, is attached to this Complaint as Exhibit C.

30.     In addition, the Superior Court's decision in the Quiet Title Action is reported at 255 A.3d 489.

31.     The Superior Court denied U Lock's application for re-argument on July 28, 2021.  *See* Exhibit C.

32.     U Lock, represented by Roth, petitioned the Supreme Court of Pennsylvania for allowance of appeal on August 27, 2021 at 259 WDA 2021.

33.     The Supreme Court of Pennsylvania denied that petition (the "Allocatur Denial") on January 19, 2022.

34.     A copy of the Supreme Court's docket in the Quiet Title Action, current as of February 14, 2023 and reflecting the Allocatur Denial, is attached to this Complaint as Exhibit D.

35.     The Allocatur Denial also appears in a table at 271 A.3d 875.

36.     On January 20, 2022, following the Allocatur Denial, the Westmoreland Court issued an order directing delivery to Biros of the four deeds conveying legal title to the Subject Property from the Executors to Biros.

37.     On January 25, 2022, Biros recorded the four deeds conveying legal title to the Subject Property from the Estates to her in the Office of the Recorder of Deeds of Westmoreland County.

38.     On March 16, 2022, the Supreme Court of Pennsylvania granted U Lock's application to stay remand of the record of the Quiet Title Action pending U Lock's petition for *certiorari* to the United States Supreme Court.  *See* Exhibit D. The Superior Court noted that Order in its docket of the Quiet Title Action.  *See* Exhibit C.

39.     The Superior Court has retained that record and not remanded it to the Westmoreland Court.  *See* Exhibit C.

40.     U Lock did not, within ninety days of the Allocatur Denial, petition the United States Supreme Court for a writ of *certiorari* or petition that Court for an extension of the time in which to seek certiorari.  It has not petitioned that Court for leave to seek certiorari *nunc pro tunc*.

41.    On information and belief, U Lock never intended to petition the U.S. Supreme Court for *certiorari*.

42.    The Superior Court continues to identify the appeal in the Quiet Title Action as "Decided/Active."  The Westmoreland Court's docket of the Quiet Title Action reflects U Lock's taking its appeal but does not reflect the appellate courts' rejection of that appeal.

43.    The status of the Quiet Title Action in each of the Supreme Court of Pennsylvania, the Superior Court, and the Westmoreland Court will be apparent to anyone who investigates Biros's or U Lock's interests in the Subject Property.

**B.  Defendants' New Plan to Take the Subject Property**

44.    By July 14, 2021, the Superior Court had ruled against U Lock in the Quiet Title Action but had not yet denied U Lock's application for re-argument.

45.    On information and belief, at some time prior to July 14, 2021, the Defendants, acting in concert with one or more other persons, realized that U Lock was unlikely to reverse Biros's success in the Quiet Title Action.

46.    The Defendants and those other persons still wanted, individually or through U Lock, to take legal title to the Subject Property and to maintain possession of the Subject Property.

47.    On information and belief, the Defendants, acting in concert with one or more of those other persons, concluded – correctly or incorrectly – that they could accomplish their aims and deprive Biros of her legal and possessory interest in the

Subject Property if one or more of them held a lien on the Subject Property that predated any deed by which Biros took that legal title.

48.     On information and belief, the Defendants, acting in concert with one or more other persons, realized that a judgment against U Lock would operate as a lien on U Lock's interest in the Subject Property.

49.     On information and belief, the Defendants, acting in concert with one or more of those other persons, decided to try to generate a judgment against U Lock and a lien against the Subject Property.

50.     This strategy faced a seemingly insurmountable obstacle:  None of the Defendants, nor any of those other persons, held a judgment against U Lock at all, let alone a judgment that might pre-date any deed that Biros was likely to receive.

51.     Moreover, none of the Defendants, nor any of those other persons,  had a claim against U Lock.

52.     On information and belief, the Defendants, acting in concert with one or more of those other persons, agreed to manufacture one or more claims or judgments that would create a lien on the Subject Property.  They further agreed to attempt to undermine the deeds that Biros would receive at the conclusion of the Quiet Title Action.

**C.** <u>Shanni's "Wage Case" Against U Lock</u>

*a.  Prior Representations*

53.      Shanni, acting *pro se*, filed a voluntary petition seeking protection
under Chapter 7 of the Bankruptcy Code in the U.S. Bankruptcy Court for the
Western District of Pennsylvania (the "Bankruptcy Court") at No. 18-21983-CMB.

54.      In her petition, Shanni acknowledged that "bankruptcy fraud is a
serious crime."  She identified a total of $3,925.00 in assets.  She identified no
income other than child support and assistance from an unmarried partner not
living with her.  When asked to identify "[o]ther amounts someone owes you" –
which offered "[u]npaid wages as its first example – Shanni listed nothing.

55.      A true and accurate copy of that petition is attached to this Complaint
as Exhibit E.

56.      In other forms that Shanni – again, proceeding *pro se* – filed with the
Bankruptcy Court on June 1, 2018, Shanni stated that she had "no payment advices
from an employer because I was not employed during 2016, 2017, or 2018."

57.      A true and accurate copy of those forms is attached to this Complaint
as Exhibit F.

58.      During discovery in the Quiet Title Action, U Lock stated in its Answer
to Biros's Interrogatory No. 3 that the company had no employees.  George signed
the verification for those discovery responses.

59.      A true and correct copy of U Lock's discovery responses, including U
Lock's Answer to Biros's Interrogatory No. 3 and George's verification but without
any of the exhibits to those responses, is attached to this Complaint as Exhibit G.

60.    During the 2019 trial in the Quiet Title Action, Kash testified under oath that Shanni had no involvement with U Lock.

### b. *The Wage Case*

61.    On July 14, 2021, with the Quiet Title Action decided by the Superior Court but still active before that court, Shanni sued U Lock in the U.S. District Court for the Western District of Pennsylvania (the "District Court") at Case No. 2:21-cv-00904-RJC (the "Wage Case").

62.    A true and accurate copy of Shanni's complaint in the Wage Case is attached to this Complaint as Exhibit H.

63.    As in her 2018 bankruptcy proceeding, Shanni claimed to be acting *pro se* in commencing the Wage Case.

64.    In all other documents that she filed in the Wage Case, Shanni continued to assert that she was acting *pro se*.

65.    On information and belief, Shanni had assistance and advice of one or more attorneys or non-attorneys experienced in the preparation of pleadings and other documents used in litigation (the "Legal Drafters"), who are not parties to this action, throughout the Wage Case.

66.    In her complaint, Shanni asserted that she was making a claim against U Lock pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 to 209. She claimed that she had worked for U Lock "70 hours per week from January 1, 2016, through February 15, 2020." She claimed to seek $131,351 in unpaid hourly wages and overtime.

10

67. Per the Proof of Service that Shanni filed with the District Court, Katrina Mycka served Shanni's complaint in the Wage Case on U Lock on July 15, 2021. Shanni's filed Proof of Service stated that Katrina Mycka had made this service on George.

68. U Lock never answered Shanni's complaint against it in the Wage Case. U Lock did not otherwise respond to Shanni's claims against it.

69. The Defendants have offered inconsistent and irreconcilable explanations for U Lock's not even attempting to defend itself in the Wage Case.

70. In sworn testimony in January 2023, George stated that he consulted with Roth about Shanni's Wage Case and that Roth told him that defense of the action would cost $10,000.00. George testified that, on the basis of Roth's cost estimate, he decided that U-Lock would not defend itself against Shanni's claims.

71. However, Roth asserted orally to the Westmoreland Court on April 22, 2022 that, as of that date, he was completely unaware of the existence of the Wage Case.

72. Shanni requested on August 21, 2021 that the District Court enter a default, and the District Court did so on August 24.

73. Shanni continued to act *pro se* at the District Court's October 18, 2021 hearing on her motion for default judgment (the "Wage Case Hearing").

74. Shanni testified under oath at the Wage Case Hearing.

75. On information and belief, when Shanni testified at the Wage Case Hearing, she intended for the District Court to believe and rely upon her testimony.

76.     On information and belief, Shanni testified at the Wage Case Hearing that she had been an employee of U Lock, that U Lock had promised to pay her an hourly wage, that she had performed services for U Lock for 70 hours per week – from 5 p.m. to 3 a.m. every single day – during each week for more than four years, and that U Lock had not paid her any wages at all for any of that work.

77.     On information and belief, all of Shanni's sworn testimony was false, except for her testimony that U Lock had not paid her any wages.

78.     That same day, the District Court entered judgment for Shanni and against U Lock for $263,104.00.

79.     A true and accurate copy of the District Court's Order entering judgment in Shanni's favor is attached to this Complaint as Exhibit I.

80.     Shanni filed a writ of execution in the District Court on November 21, 2021.

81.     On December 12, 2021, Shanni requested that the District Court issue to her an abstract of judgment in the Wage Case.  The District Court did so on December 14, 2021.

82.     A true and accurate copy of the District Court's abstract of judgment in the Wage Case is attached to this Complaint as Exhibit J.

83.     Shanni filed that abstract of judgment in the judgment roll of the Westmoreland Court on December 15, 2021 at 21-JU-04758 (the "Fake Lien").

84.     A true and accurate copy of the Fake Lien is attached to this Complaint as Exhibit K.

85.     On information and belief, Shanni had assistance and advice of one or more of the Legal Drafters in preparing and submitting the Fake Lien.

86.      Shanni knew that the Fake Lien was fraudulent, as it was based upon the judgment that she had obtained by fraud in the Wage Case.

87.     By the time that Shanni filed the Fake Lien, the Westmoreland Court had already determined that U Lock did not own the Subject Property, and the Superior Court had affirmed that judgment and denied U Lock's application for rehearing.

88.     The Fake Lien became a cloud on any claim that U Lock might have had to the Subject Property.  It was and is discoverable by anyone investigating claims against U Lock or U Lock's rights in real property, including the Subject Property.

### D. The Deeds to Biros and Defendants' Theory of Interference

89.     As noted above, the Supreme Court of Pennsylvania denied U Lock's petition for allowance of appeal in the Quiet Title Action on January 19, 2022.

90.     In an Order dated January 20, 2022 and entered on January 24, 2022, the Westmoreland Court directed that Biros receive the deeds to the Subject Property that the Executors had previously deposited with that court.

91.     On March 17, 2022, U Lock, represented by Roth, filed in the Quiet Title Action a "Petition To Strike Order of January 20, 2022, Entered January 24, 2022; Motion To Comply With Rule 236 and To Note the Docket of the Date of Compliance; Motion To Correct the Docket; Motion To Compel Disclosure of Ex

Parte Communications; and/or Motion for Leave to File Notice of Appeal Nunc Pro Tunc" (the "Petition to Strike").

92.    A true and accurate copy of the Petition to Strike is attached to this Complaint as Exhibit L.

93.    In the Petition to Strike, U Lock asked that the Westmoreland Court strike its January 20, 2022 Order that had directed delivery to Biros of the deeds for the Subject Property.  It further asked that the May 2019 deeds to Biros, which Biros had recorded on January 25, 2022 following the Allocatur Denial, be stricken. It insisted  that the Subject Property be first conveyed to U Lock and then to a formal trust that U Lock would implement.  Per U Lock's demand, the U Lock trust would then convey legal title to the Subject Property to Biros.

94.    Neither U Lock nor Roth, its counsel, proposed in the Petition to Strike that U Lock should end this series of four transactions with legal title to the Subject Property.

95.    On information and belief, the only purpose for U Lock's proposed Rube-Goldberg-like structure was to expose the title to the Subject Property to Shanni's Fake Lien.  Even though Biros would ultimately have prevailed in further litigation to clear that title, that effort would have subjected her to further expense and delay in obtaining clear title to the Subject Property.

96.    On March 18, 2022 – *i.e.*, the day after Roth and U Lock had filed the Petition to Strike – Shanni, once again purporting to act *pro se*, filed a "Praecipe for Writ of Summons in Equity and Assumpsit and for Lis Pendens" with the

Westmoreland Court at Civil Action 928 of 2022 (the "*Lis Pendens* Proceeding").  As defendants, Shanni named U Lock, Biros, the Executors, the trial judge in the Quiet Title Action, and others.

97.     A true and correct copy of that praecipe is attached to this Complaint as Exhibit M.

98.     On information and belief, Shanni had assistance and advice of one or more of the Legal Drafters in preparing and submitting that praecipe.

99.     In that praecipe, Shanni asked the Westmoreland County Prothonotary to issue a *lis pendens* on the Subject Property.

100.     The Westmoreland County Prothonotary responded to that praecipe by, in fact, indexing a *lis pendens* on the Subject Property.

101.     Shanni never filed a complaint in the *Lis Pendens* Proceeding.

102.     Shanni never served all of the defendants she named in the *Lis Pendens* Proceeding.

103.     On April 22, 2022, the Westmoreland Court heard argument on U Lock's Petition to Strike.  Roth appeared for U Lock.  He did not argue that his client owned the Subject Property.  Instead, and consistent with the position he had taken in that petition, argued that the Superior Court, by agreeing that legal title to the Subject Property was held in trust by U Lock for Biros, had mandated U Lock's seemingly rococo – but actually devious – approach to the conveyance.

104.    Although the Westmoreland Court did not rule on the *Petition to Strike* from the bench at that argument, that court made clear that it did not intend to grant that petition.

105.    The *Lis Pendens* Proceeding remained pending before the Westmoreland Court until, at the direct request of the Bankruptcy Court, Shanni discontinued it and withdrew her *lis pendens* on January 30, 2023.

106.    When Shanni withdrew the *Lis Pendens* Proceeding, she expressly did so "without prejudice."

### E.   Shanni's Bankruptcy Petition Against U Lock

107.    On April 27, 2022 – eight days after U Lock and Roth allowed the United States Supreme Court deadline for the Quiet Title Action to pass without taking any action and five days after the Westmoreland Court heard argument on the Petition to Strike – Shanni filed an involuntary petition against U Lock in the Bankruptcy Court pursuant to Chapter 7 of the Bankruptcy Code.  The Bankruptcy Court docketed that petition at Case 22-20823-GLT (the "U Lock Bankruptcy").

108.    The U Lock Bankruptcy remains pending before the Bankruptcy Court.

109.    On information and belief, Shanni has had assistance and advice of one or more of the Legal Drafters throughout the U Lock Bankruptcy.

110.    In her involuntary petition, Shanni identified herself as a creditor of U Lock.

111.    In her involuntary petition and in all other documents that she filed in the U Lock Bankruptcy prior to November 10, 2022, Shanni asserted that she was acting *pro se*.

112.    On information and belief, Shanni had assistance and advice of one or more of the Legal Drafters in commencing the U Lock Bankruptcy and has had assistance and advice of one or more of the Legal Drafters throughout the U Lock Bankruptcy.

113.    In her involuntary petition in the U Lock Bankruptcy, Shanni claimed that U Lock owed her $375,100.  Shanni's amount included the judgment she had received in the Wage Case, $13,100 in interest, and $100,000 for "retaliation under FLSA."

114.    A true and accurate copy of that petition, as docketed is attached to this Complaint as Exhibit N.

115.    The Bankruptcy Court entered an Order on April 29, 2022 that, *inter alia*, noted that Shanni had not identified the principal operating officer or managing general partner of U Lock and directed her to file an amended petition that provided this information.

116.    On May 9, 2022, Shanni filed an Amended Petition in which she responded to the Bankruptcy Court's instruction:

> Petitioning creditor declares under the penalty for perjury that she does not know the precise share structure, identity of the Board of Directors, or the official officers of the Debtor.  Based on information, there are between three and five officers and/or Board Members.  Two managing control persons appear to be George Snyder and Kash Snyder[.]

117.    On information and belief, Shanni's claim not to know this information was untrue.  George and Kash were her brothers, and she had claimed in the Wage Case to have worked for U Lock seventy hours per week for more than four years. On information and belief, she had been in communication with U Lock's management during the Quiet Title Action and the efforts to obtain a lien that might interfere with Biros's right to own and possess the Subject Property.

118.    On May 10, 2022, the Bankruptcy Court entered an Order identifying George and Kash as the managing general partners of U Lock.

119.    That same day, the Bankruptcy Court issued a summons to Shanni and directed her to serve it on U Lock.

120.    As the Bankruptcy Court has underscored, the Westmoreland Court is also stayed from proceeding with any matters relating to U Lock.

121.    On May 27, 2022, Shanni filed a proof of claim in the U Lock Bankruptcy.

122.    A true and correct copy of Shanni's proof of claim, with exhibits, is attached to this Complaint at Exhibit O.

123.    In her proof of claim, Shanni claimed that U Lock owed her $263,100.00.  She based this claim on the judgment that she had obtained through fraud and perjury in the Wage Case.  She attached a copy of that judgment to her proof of claim.  She also asserted that her claim was secured by real estate.

124.    One week before Shanni filed her claim, on May 20, 2022, Biros moved to dismiss the U Lock Bankruptcy.

18

125.    Roth entered his appearance for U Lock with the Bankruptcy Court on May 30, 2022.

126.    Represented by Roth, U Lock opposed Biros's motion.

127.    Shanni Snyder also opposed Biros's motion.

128.    A true and correct copy of Shanni's purportedly *pro se* 32-page brief in opposition to Biros's motion to dismiss, which Shanni filed on May 31, 2022, is attached to this motion as Exhibit P.

129.    On information and belief, Shanni had assistance and advice of one or more of the Legal Drafters in preparing the brief that she filed in opposition to Biros' motion to dismiss.

130.    The Bankruptcy Court held a hearing on Biros's motion and scheduled a continuation of that hearing for July 6, 2022.

131.    On July 1, 2022, U Lock moved to convert the U Lock Bankruptcy to a proceeding under Chapter 11 of the Bankruptcy Code.

132.    At the Bankruptcy Court's August 9, 2022 hearing on that motion, U Lock claimed that USAAG Systems Co. ("USAAG"), which has an address in Glastonbury, Connecticut, would provide funding for U Lock, in exchange for equity, if the Bankruptcy Court granted its motion and approved the conversion.

133.    A copy of a purported letter from USAAG to Roth, which U Lock and Roth submitted to the Bankruptcy Court as support for the motion to convert, is attached to this Complaint as Exhibit Q.  The redaction in this document appears in the version that U Lock and Roth filed with the Bankruptcy Court.

134.    While a "USA AG Systems Co." appears to be incorporated under Colorado law, a search of the business databases maintained by the State of Connecticut and the Commonwealth of Pennsylvania has not disclosed any entity licensed to do business in either state with a name beginning "USAAG" or "USA AG."

135.    On information and belief, USAAG has not registered to do business with either the Secretary of State of Connecticut or the Secretary of State of Pennsylvania.

136.    The Bankruptcy Court denied U Lock's motion by Order of August 10, 2022.

137.    On July 6, 2022, Roth filed U Lock's Schedule E/F, "Creditors Who Have Unsecured Claims," with the Bankruptcy Court.

138.    A true and correct copy of that schedule is attached to this complaint as Exhibit R.

139.    In its Schedule E/F, U Lock identified Shanni, Biros, and others as the holders of $912,060.63 in unsecured claims against U Lock.  It identified Biros's claims, but not Shanni's claims, as Disputed.  *See* Exhibit R.

140.    That form did not identify George or Kash as an unsecured creditor of U Lock.  *See* Exhibit R.

141.    At that same time, Roth filed U Lock's Schedule D, "Creditors Who Have Claims Secured by Property," with the Bankruptcy Court.  That form asserted that U Lock had no secured creditors.

142.    U Lock has never amended either of these schedules.

143.    On August 26, 2022, George, apparently acting *pro se* and using the email snyder4judge@yahoo.com, filed a Proof of Claim in the U Lock Bankruptcy.

144.    A true and correct copy of George's proof of claim is attached to this Complaint as Exhibit S.

145.    In his proof of claim, George asserted a $99,000.00 claim against U Lock.  As the basis for this claim, George identified "wage, fair labor standards." *See* Exhibit S.

146.    During his examination under oath in the U Lock Bankruptcy, George testified that U Lock had no employees and that Shanni, in particular, had not been an employee of U Lock.

147.    On December 28, 2022, pursuant to an Order of the Bankruptcy Court, Shanni closed on her purchase of a substantial portion of U Lock's assets.

148.    On information and belief, USAAG funded Shanni's purchase of those assets.

### F.  Continued Activity in the Quiet Title Action

149.    Shanni's filing of her petition that commenced the U Lock Bankruptcy proceedings had the effect of, among other things, staying other litigation involving U Lock.

150.    Of particular note here, the docket of the Supreme Court of Pennsylvania in the Quiet Title Action reflects a May 11, 2022 bankruptcy stay, and

the Superior Court's docket in that action also reflects a stay.  *See* Exhibits C and D.

151.    However, on creating the U Lock Bankruptcy, Shanni did not immediately give notice to the Westmoreland Court.  Neither did, George, Kash, U Lock, or anyone else affiliated with the Defendants.

152.    On May 17, 2022, the Westmoreland Court denied the *Petition to Strike* that Roth had filed on behalf of U Lock in March 2022.

153.    On May 19, 2022, at 10:07 a.m., Shanni filed a *pro se* Entry of Appearance in the Quiet Title Action with the Westmoreland Court.

154.    A true and correct copy of that Entry of Appearance is attached to this Complaint at Exhibit T.

155.    At that same time, to the minute, Shanni filed in that same court a Notice of Appeal to the Superior Court.

156.    A true and correct copy of that Notice of Appeal is attached to this Complaint at Exhibit U.

157.    On information and belief, Shanni had assistance and advice of one or more of the Legal Drafters in preparing and submitting that Entry of Appearance and that Notice of Appeal.

158.    In her Notice of Appeal, Shanni stated that the Westmoreland Court's May 17 Order "eviscerate[d] and appear[ed] to supersede portions of her judgment lien."  *See* Exhibit U.

159.    Two minutes later, at 10:09 a.m. on May 19, 2022, Roth filed "U Lock Inc's Notice of Bankruptcy" in the Westmoreland Court.

160.    A true and correct copy of Roth's "U Lock Inc's Notice of Bankruptcy" is attached to this Complaint as Exhibit V.

161.    On June 1, 2022, Mark Myles Mycka, claiming to be a tenant of U Lock on the Subject Property, entered his own *pro se* appearance in the Quiet Title Action with the Westmoreland Court.

162.    A true and correct copy of Mycka's Entry of Appearance is attached to this Complaint at Exhibit W.

163.    Simultaneously, Mycka filed a Notice of Appeal with the Westmoreland Court.  Like Shanni, Mycka appealed to the Superior Court from the Westmoreland Court's May 17 Order.

164.    A true and correct copy of that Notice of Appeal is attached to this Complaint at Exhibit X.

165.    On information and belief, Mark Myles Mycka is the brother of Katrina Mycka, who claimed to have served George with Shanni's Complaint against U Lock in the Wage Case.

## COUNT I

## Violation of § 1962(c) of the RICO Act

## Biros v. Shanni Snyder

166.    Biros incorporates the preceding paragraphs of this Complaint as if set forth fully herein.

### a. *The Fake Lien Enterprise*

167.   At some point prior to July 14, 2021, the Defendants, U Lock, and other persons not parties here formed an association in fact (the "Fake Lien Enterprise") that is an enterprise within the meaning of 18 U.S.C. § 1961.

168.   The purpose of the Fake Lien Enterprise was to attempt to obtain an interest in the Subject Property that was superior to any title that Biros might take in that property.

169.   Each of the Defendants had a role in the Fake Lien Enterprise.

170.   Shanni acted as the person who would receive the lien on the Subject Property.  To that end, she commenced the Wage Case, obtained the judgment in that case that she knew to be fraudulent because it was supported only by her own false statements and perjured testimony, recorded the abstract of that fraudulent judgment with the intention that it would operate as a lien on the Subject Property, filed a *lis pendens* on the Subject Property based solely on the lien supported only by that fraudulently obtained judgment, filed a lis pendens on the property, and commenced and maintained the U Lock Bankruptcy.  In the U Lock Bankruptcy, she filed a claim that she knew to be fraudulent.

171.   George and Kash managed the affairs of U Lock with the goal and purpose of providing Shanni with a lien on the Subject Property.  To that end, they allowed Shanni to obtain a fraudulent judgment in the Wage Case through her claiming that U Lock had not paid her for her work, even though they both knew that she had never been an employee of U Lock.  They directed the legal affairs of U Lock with the goal of prolonging the Quiet Title Action to prevent Biros from

obtaining the deeds to the Subject Property that the Executors had deposited with the Westmoreland Court.  When Biros obtained those deeds despite their efforts, they caused Roth to file the Petition to Strike, participated in or acquiesced in the commencement of the U Lock Bankruptcy, opposed Biros's efforts to dismiss that proceeding, and, in the face of Biros's motion, filed a motion to convert that involuntary proceeding to a proceeding under Chapter 11 of the Bankruptcy Code with funding purportedly from USAAG.  George also advanced the Fake Lien Enterprise by filing his own fraudulent claims in the U Lock Bankruptcy.

172.    Roth participated in the Fake Lien Enterprise by, on information and belief, participating in the planning and organization of the same; by, on information and belief, advising George, Kash, and U Lock not to respond to Shanni's complaint in the Wage Case; by filing U Lock's application to the Supreme Court of Pennsylvania to stay remand of the Quiet Title Action even though he knew that U Lock did not intend to seek review in the U.S. Supreme Court; by filing and arguing the Petition to Strike in the Quiet Title Action and arguing to the Westmoreland Court that it should not have released to Biros the deeds to the Subject Property and that the Westmoreland Court should instead follow a procedure that would have exposed the Subject Property to the Fake Lien but could not under any circumstances have left his client with title to the Subject Property; by delaying the filing of the notice of bankruptcy in the Quiet Title Action for three weeks after Shanni filed her petition that commenced the U Lock Bankruptcy; and by delaying the filing of that notice until two minutes after Shanni had entered her

appearance in the Quiet Title Action and filed her notice of appeal in that action to the Superior Court.

173.    Several other persons and entities participated in the Fake Lien Enterprise.

174.    U Lock participated in the Fake Lien enterprise through the actions of its management by, among other things, (a) allowing Shanni to take the fraudulent judgment against it, (b) applying to the Supreme Court of Pennsylvania for a stay of remand in the Quiet Title Action so that it could seek review by the United States Supreme Court when it had no intention of seeking such review or any possibility of obtaining that review, (c) filing and presenting the motion to strike in the Quiet Title Action, and (d) delaying the filing in the Quiet Title Action of the Notice of Bankruptcy until two minutes after Shanni had entered her appearance in that action and filed her notice of appeal to the Superior Court.

175.    On information and belief, one or more of the Legal Drafters performed legal services for Shanni in legal matters involving Biros or U Lock that were before the District Court, the Westmoreland Court, or the Bankruptcy Court.  They performed this legal work knowing that Shanni would, in using it, claim that she was acting *pro se*.

176.    In that manner, the Legal Drafters participated in the Fake Lien Enterprise because, in performing those services, he, she, or they knew that Shanni would represent to the District Court, the Westmoreland Court, or the Bankruptcy Court that she was acting *pro se* and had not been assisted by counsel.

26

177.   In addition, one or more of the Legal Drafters participated in the design of the Fake Lien Enterprise and the planning of that enterprise's activities.

178.   USAAG participated in the Fake Lien Scheme by purporting to offer funding that would support conversion of the U Lock Bankruptcy to a proceeding under Chapter 11 of the Bankruptcy Code, leaving itself as the dominant shareholder of U Lock.  On information and belief, USAAG further participated in that enterprise by, after the Bankruptcy Court rejected U Lock's conversion motion, funding Shanni's successful bid to purchase assets of U Lock.

179.   Mark Myles Mycka participated in the Fake Lien Enterprise by entering an appearance in the Quiet Title action and filing an appeal to the Superior Court.

180.   Katrina Mycka participated in the Fake Lien Enterprise by completing the proof of service in the Wage Case and by serving Shanni's complaint in the Wage Case on George.

### b. *Predicate acts*

181.   Shanni has conducted or participated in the affairs of the Fake Lien Enterprise through the commission of multiple predicate acts as that term is defined in 18 U.S.C. § 1961.

182.   Shanni committed a predicate act of wire fraud pursuant to 18 U.S.C. § 1343 on July 14, 2021 when, with intent to defraud or with intent to obtain property by means of false or fraudulent pretenses, she used the internet to transmit her complaint in the Wage Case to the District Court.  Pursuant to Rule 11

of the Federal Rules of Civil Procedure, her signing and filing that complaint constituted her certification that the allegations of her complaint had factual support.  In fact and on information and belief, many of Shanni's allegations were false and had no evidentiary support.  These allegations included Shanni's assertion that she had been an employee of U Lock, that she had performed work for U Lock ten hours per day, every day, for more than four years, that U Lock had agreed to pay her for this work, and that she was entitled to payment of wages, straight and overtime, for this non-existent work.

183.    On information and belief, Shanni committed a predicate act in violation of 18 U.S.C. § 1503 on October 18, 2021 when she corruptly endeavored to influence an officer in a court of the United States in the discharge of his duty.  On that day, she appeared in the District Court and testified under oath in the hearing on her motion for default judgment.  On information and belief, Shanni testified at that hearing that she had been an employee of U Lock, that she had performed work for U Lock ten hours per day, every day, for more than four years, that U Lock had agreed to pay her for this work, and that she was entitled to payment of wages, straight and overtime, for this non-existent work.  On information and belief, Shanni made these statements with the intention that the District Court would rely on them and direct the entry of judgment in her favor and against U Lock, and that she would use the resulting judgment to assert a lien against the Subject Property.

184.    Shanni committed a predicate act of fraud connected with a case under Title 11 of the United States Code on April 27, 2022 when she filed the involuntary

petition that commenced the U Lock Bankruptcy.  In filing that petition, Shanni claimed to be a creditor of U Lock.  She made that claim knowing that her only claim to being a creditor was under the judgment in the Wage Case that she had improperly obtained through her own fraud and perjury, combined with George's and Kash's facilitating U Lock's inaction in the face of her claim.

185.   Shanni committed a predicate act of fraud connected with a case under Title 11 of the United States Code on May 27, 2022 when she filed her proof of claim in the U Lock Bankruptcy.  She submitted that proof of claim knowing that both (a) the amount of the claim and (b) her claim to be a secured creditor were premised upon the judgment in the Wage Case that she had improperly obtained through her own fraud and perjury, combined with George's and Kash's facilitating U Lock's inaction in the face of her claim.

186.   This conduct amounts to a pattern of racketeering activity.

187.   All of this conduct occurred within the last ten years.

**c.  *Causation and Damages***

188.   The Defendants' commission of this pattern of predicate acts in the conduct of the Fake Lien Enterprise has damaged Biros.

189.   That conduct delayed Biros in taking equitable ownership of the Subject Property.

190.   That conduct has delayed Biros in taking legal ownership and possession of the Subject Property.

191.   Biros has been damaged by her loss of ownership and control of the Subject Property

WHEREAS Biros respectfully requests that this Court enter judgment in her favor and against the Defendants in an amount three times the actual damages she has suffered and award her the attorney's fees that she has incurred in this action, the costs of this action, and such other relief as this Court deems to be appropriate.

## COUNT II

### Violation of § 1962(d) of the RICO Act – Conspiracy

### Biros v. All Defendants

192.    Biros incorporates the preceding paragraphs of this Complaint as if set forth fully herein.

### a. *The Fake Lien Enterprise*

193.    At some point prior to July 14, 2021, the Defendants, U Lock, and other persons not parties here formed an association in fact (the "Fake Lien Enterprise") that is an enterprise within the meaning of 18 U.S.C. § 1961.

194.    The purpose of the Fake Lien Enterprise was to attempt to obtain an interest in the Subject Property that was superior to any title that Biros might take in that property.

195.    Each of the Defendants had a role in the Fake Lien Enterprise.

196.    Shanni acted as the person who would receive the lien on the Subject Property.  To that end, she commenced the Wage Case, obtained the judgment in that case that she knew to be fraudulent because it was supported only by her own false statements and perjured testimony, recorded the abstract of that fraudulent judgment with the intention that it would operate as a lien on the Subject Property,

filed a *lis pendens* on the Subject Property based solely on the lien supported only by that fraudulently obtained judgment, filed a *lis pendens* on the property, and commenced and maintained the U Lock Bankruptcy.  In the U Lock Bankruptcy, she filed a claim that she knew to be fraudulent.

197.    George and Kash managed the affairs of U Lock with the goal and purpose of providing Shanni with a lien on the Subject Property.  To that end, they allowed Shanni to obtain a fraudulent judgment in the Wage Case through her claiming that U Lock had not paid her for her work, even though they both knew that she had never been an employee of U Lock.  They directed the legal affairs of U Lock with the goal of prolonging the Quiet Title Action to prevent Biros from obtaining the deeds to the Subject Property that the Executors had deposited with the Westmoreland Court.  When Biros obtained those deeds despite their efforts, they caused Roth to file the Petition to Strike, participated in or acquiesced in the commencement of the U Lock Bankruptcy, opposed Biros's efforts to dismiss that proceeding, and, in the face of Biros's motion, filed a motion to convert that involuntary proceeding to a proceeding under Chapter 11 of the Bankruptcy Code with funding purportedly from USAAG.  George also advanced the Fake Lien Enterprise by filing his own fraudulent claims in the U Lock Bankruptcy.

198.    Roth participated in the Fake Lien Enterprise by, on information and belief, participating in the planning and organization of the same; by, on information and belief, advising George, Kash, and U Lock not to respond to Shanni's complaint in the Wage Case; by filing U Lock's application to the Supreme

Court of Pennsylvania to stay remand of the Quiet Title Action even though he knew that U Lock did not intend to seek review in the U.S. Supreme Court; by filing and arguing the Petition to Strike in the Quiet Title Action and arguing to the Westmoreland Court that it should not have released to Biros the deeds to the Subject Property and that the Westmoreland Court should instead follow a procedure that would have exposed the Subject Property to the Fake Lien but could not under any circumstances have left his client with title to the Subject Property; by delaying the filing of the notice of bankruptcy in the Quiet Title Action for three weeks after Shanni filed her petition that commenced the U Lock Bankruptcy; and by delaying the filing of that notice until two minutes after Shanni had entered her appearance in the Quiet Title Action and filed her notice of appeal in that action to the Superior Court.

199.    Several other persons and entities participated in the Fake Lien Enterprise.

200.    U Lock participated in the Fake Lien enterprise through the actions of its management by, among other things, (a) allowing Shanni to take the fraudulent judgment against it, (b) applying to the Supreme Court of Pennsylvania for a stay of remand in the Quiet Title Action so that it could seek review by the United States Supreme Court when it had no intention of seeking such review or any possibility of obtaining that review, (c) filing and presenting the motion to strike in the Quiet Title Action, and (d) delaying the filing in the Quiet Title Action of the Notice of

Bankruptcy until two minutes after Shanni had entered her appearance in that action and filed her notice of appeal to the Superior Court.

201.   On information and belief, one or more of the Legal Drafters performed legal services for Shanni in legal matters involving Biros or U Lock that were before the District Court, the Westmoreland Court, or the Bankruptcy Court.

202.   In that manner, the Legal Drafters participated in the Fake Lien Enterprise because, in performing those services, he, she, or they knew that Shanni would represent to the District Court, the Westmoreland Court, or the Bankruptcy Court that she was acting *pro se* and had not been assisted by counsel.

203.   In addition, one or more of the Legal Drafters participated in the design of the Fake Lien Enterprise and the planning of that enterprise's activities.

204.   USAAG participated in the Fake Lien Enterprise by purporting to offer funding that would support conversion of the U Lock Bankruptcy to a proceeding under Chapter 11 of the Bankruptcy Code, leaving itself as the dominant shareholder of U Lock.  On information and belief, USAAG further participated in that enterprise by, after the Bankruptcy Court rejected U Lock's conversion motion, funding Shanni's successful bid to purchase assets of U Lock.

205.   Mark Myles Mycka participated in the Fake Lien Enterprise by entering an appearance in the Quiet Title action and filing an appeal to the Superior Court.

206.    Katrina Mycka participated in the Fake Lien Enterprise by completing the proof of service in the Wage Case and by serving Shanni's complaint in the Wage Case on George.

### b. Predicate acts

207.    Members of the Fake Lien enterprise have conducted or participated in the affairs of the Fake Lien Enterprise through the commission of predicate acts as that term is defined in 18 U.S.C. § 1961.

208.    Shanni committed a predicate act of wire fraud pursuant to 18 U.S.C. § 1343 on July 14, 2021 when, with intent to defraud or with intent to obtain property by means of false or fraudulent pretenses, she used the internet to transmit her complaint in the Wage Case to the District Court.  Pursuant to Rule 11 of the Federal Rules of Civil Procedure, her signing and filing that complaint constituted her certification that the allegations of her complaint had factual support.  On information and belief, many of Shanni's allegations were false and had no evidentiary support.  These allegations included Shanni's assertion that she had been an employee of U Lock, that she had performed work for U Lock ten hours per day, every day, for more than four years, that U Lock had agreed to pay her for this work, and that she was entitled to payment of wages, straight and overtime, for this non-existent work.

209.    On information and belief, Shanni committed a predicate act in violation of 18 U.S.C. § 1503 on October 18, 2021 when she corruptly endeavored to influence an officer in a court of the United States in the discharge of his duty.  On

34

that day, she appeared in the District Court and testified under oath in the hearing on her motion for default judgment.  On information and belief, Shanni testified at that hearing that she had been an employee of U Lock, that she had performed work for U Lock ten hours per day, every day, for more than four years, that U Lock had agreed to pay her for this work, and that she was entitled to payment of wages, straight and overtime, for this non-existent work.  On information and belief, Shanni made these statements with the intention that the District Court would rely on them and direct the entry of judgment in her favor and against U Lock, and that she would use the resulting judgment to assert a lien against the Subject Property.

210.    Shanni committed a predicate act of fraud connected with a case under Title 11 of the United States Code on April 27, 2022 when she filed the involuntary petition that commenced the U Lock Bankruptcy.  In filing that petition, Shanni claimed to be a creditor of U Lock.  She made that claim knowing that her only claim to being a creditor was under the judgment in the Wage Case that she had improperly obtained through her own fraud and perjury, combined with George's and Kash's facilitating U Lock's inaction in the face of her claim.

211.    Shanni committed a predicate act of fraud connected with a case under Title 11 of the United States Code on May 27, 2022 when she filed her proof of claim in the U Lock Bankruptcy.  She submitted that proof of claim knowing that both (a) the amount of the claim and (b) her claim to be a secured creditor were premised upon the judgment in the Wage Case that she had improperly obtained through her

own fraud and perjury, combined with George's and Kash's facilitating U Lock's inaction in the face of her claim.

212.    George committed a predicate act of fraud connected with a case under Title 11 of the United States Code on August 26, 2022 when he filed his proof of claim in the U Lock Bankruptcy.  He submitted that proof of claim knowing that, just over one month earlier, he had caused U Lock to file a schedule with the Bankruptcy Court that purported to disclose all unsecured creditors of U Lock but did not identify himself.  Further, when George submitted that proof of claim, he knew that U Lock had no employees.  In fact, he later testified under oath to that absence of any employees.

213.    This conduct amounts to a pattern of racketeering activity.

214.    All of this conduct occurred within the last ten years.

### c. Agreement and Conspiracy

215.    The Defendants, together with other members of the Fake Lien Enterprise, have agreed to operate the Fake Lien Enterprise in order to unlawfully deprive Biros of her interest in the Subject Property.

216.    The Defendants, together with other persons, have agreed to the commission of predicate acts in furtherance of their agreement.

217.    This agreement is evidenced by the coordinated activity described above in the paragraphs of this Complaint describing the Fake Lien Enterprise and the acts by members of this conspiracy.

36

218.    As set forth above, the Defendants, together with other persons, have actually engaged in a pattern of racketeering activity by committing those predicate acts in the conduct of the Fake Lien Enterprise.

### d. Causation and Damages

219.    This pattern of predicate acts conducted through the Fake Lien Enterprise in furtherance of this agreement has damaged Biros.

220.    That conduct delayed Biros in taking equitable ownership of the Subject Property.

221.    That conduct has delayed Biros in taking legal ownership and possession of the Subject Property.

222.    Biros has been damaged by her loss of ownership and control of the Subject Property

WHEREAS Biros respectfully requests that this Court enter judgment in her favor and against the Defendants in an amount three times the actual damages she has suffered and award her the attorney's fees that she has incurred in this action, the costs of this action, and such other relief as this Court deems to be appropriate.

## COUNT III

## Slander of Title

## Biros v. Shanni

223.    Biros incorporates the preceding paragraphs of this Complaint as if set forth fully herein.

224.    Biros owns the Subject Property in fee simple.

225.    As the Superior Court and the Westmoreland Court determined in the Quiet Title Action, <u>Biros</u> has held an equitable interest in the Subject Property since prior to her filing that action in 2017.

226.    Shanni slandered Biros's title in the Subject Property when she filed the Fake Lien.

227.    That lien was false because it was based on the judgment that Shanni had received in the Wage Case.  That judgment was false because it was caused by fraudulent allegations in the Wage Case that U Lock had deliberately chosen not to contest.

228.    Shanni knew of this falsity because she, herself, had made those fraudulent allegations in the Wage Case, both in her complaint and in her testimony at the hearing on her motion for default judgment.

229.    Shanni knew or should have recognized that her filing this lien would result in pecuniary loss to Biros.

230.    "The existence of a judgment lien prevents a debtor from encumbering or conveying any property he might own in such a way as to divest the effect of the judgment, while also preventing later lienholders from satisfying their debt without first paying the earlier lien." *Skiff re Business, Inc. v. Buckingham Ridgeview, LP*, 991 A.2d 956, 962 (Pa. Super Ct. 2010) (quoting *In re Upset Sale, Tax Claims Bureau of Berks County*, 479 A.2d 940, 943-44 (Pa. 1984)).

231.    Shanni knew or should have known that anyone conducting a reasonable investigation of Biros's interest in the Subject Property would learn of

the Quiet Title Action, U Lock's role in that litigation, and, in turn, the Fake Lien that would cloud any interest that U Lock could possibly have held in the Subject Property.

232.    Shanni also slandered Biros's title when she filed the *Lis Pendens* Proceeding and asked the Westmoreland Court to index a *lis pendens* against the Subject Property.

233.    That *lis pendens* was false because it was based on the judgment against U Lock that Shanni had received in the Wage Case.  That judgment was false because it was caused by Shanni's fraudulent allegations in the Wage Case that U Lock had deliberately chosen not to contest.

234.    Shanni knew of this falsity because she, herself, had made those fraudulent allegations in the Wage Case, both in her complaint and in her testimony at the hearing on her motion for default judgment.

235.    That *lis pendens* was false because Shanni asked the Westmoreland Court to index it against in the Subject Property even though she knew that U Lock had no interest in that property.

236.    That *lis pendens* was false because it was not based on any claim that Shanni might have against Biros.  In fact, Shanni knew she had no claim that Biros was liable to her on any colorable theory.

237.    Shanni knew or should have recognized that her filing that *lis pendens* would result in pecuniary loss to Biros.

238.    Shanni knew that anyone conducting a reasonable investigation of Biros's interest in the Subject Property would discover Shanni's *lis pendens.* That lis pendens would effectively prevent Biros from selling the Subject Property, pledging the Subject Property, or obtaining any financing to redevelop the Subject Property.

239.    Shanni also entered an appearance and an appeal to Superior Court in the Quiet Title Action. On information and belief, her claim to standing to participate in the Quiet Title Action and her appeal is predicated upon the judgment she obtained by fraud in the Wage Case.

240.    On information and belief, Shanni took these actions in order to prolong the Quiet Title Action and any accompanying clouds on Biros's title to the Subject Property.

241.    Similar to the *lis pendens*, Shanni's appeal to the Superior Court will prolong the Quiet Title Action and may effectively prevent Biros from selling the Subject Property, pledging the Subject Property, or obtaining any financing to redevelop the Subject Property.

242.    Biros has suffered pecuniary loss as the result of Shanni's actions.

243.    Shanni's actions were so outrageous, willful, and malicious as to justify the imposition of punitive damages against her.

WHEREAS Biros respectfully requests that this Court enter judgment in her favor and against the Defendants and award Biros her actual damages, punitive

damages, the costs of this action, and such other relief as this Court deems to be appropriate.

<u>COUNT IV</u>

<u>Slander of Title – Conspiracy</u>

<u>Biros v. All Defendants</u>

244.    Biros incorporates the preceding paragraphs of this Complaint as if set forth fully herein.

245.    Biros owns the Subject Property in fee.

246.    As the Superior Court and the Westmoreland Court determined in the Quiet Title Action, <u>Biros</u> has held an equitable interest in the Subject Property since July 16, 2015.

247.    At some point prior to July 14, 2021, the Defendants and other persons agreed to attempt to obtain an interest in the Subject Property that was superior to any title that Biros might take in that property.

248.    Those persons agreed to advance their plan by means of false statements.

249.    These false statements included Shanni's allegations and testimony in the Wage Case, which the other Defendants agreed to let stand uncontested by deciding that U Lock would not answer Shanni's claims and allow a default to be entered against it.

250.    At that time, the Defendants all knew that Shanni's factual claims in the Wage Case were false.

41

251.    The Defendants also advanced this conspiracy by Shanni's filing the Fake Lien, Shanni's filing the *Lis Pendens* Proceeding and asking the Westmoreland Court to index Shanni's *lis pendens* against the Subject Property, and Shanni's entering her appearance in the Quiet Title Action and filing an appeal from that proceeding to the Superior Court.

252.    All the Defendants knew that *lis pendens* was false because it was based on the judgment against U Lock that Shanni had received in the Wage Case. That judgment was false because it was caused by Shanni's fraudulent allegations in the Wage Case that U Lock had deliberately chosen not to contest.

253.    All the Defendants knew that *lis pendens* was false because Shanni asked the Westmoreland Court to index it against in the Subject Property even though she knew that U Lock had no interest in that property.

254.    All the Defendants knew that *lis pendens* was false because it was not based on any claim that Shanni might have against Biros.  In fact, Shanni knew she had no claim that Biros was liable to her on any colorable theory.

255.    Biros has suffered pecuniary loss as the result of Shanni's actions.

256.    These actions by the Defendants are so outrageous, willful, and malicious as to justify the imposition of punitive damages against them.

WHEREAS Biros respectfully requests that this Court enter judgment in her favor and against the Defendants and award Biros her actual damages, punitive damages, the costs of this action, and such other relief as this Court deems to be appropriate.

## COUNT V

### Fraud

### Biros v. Shanni

257.    Biros incorporates the preceding paragraphs of this Complaint as if set forth fully herein.

258.    In the complaint that she filed in the Wage Case on July 14, 2021 pursuant to Rule 11 of the Federal Rules of Civil Procedure, Shanni falsely stated that she had been an employee of U Lock, that she had performed work for U Lock as an employee of U Lock, and that U Lock had agreed to pay her for that claimed work.

259.    On information and belief, at the October 18, 2021 hearing before the District Court on her motion for default judgment in the Wage Case, Shanni made those same assertions while under oath.

260.    These statements by Shanni were material both to her claims in the Wage Case and her and the other Defendants' efforts to deprive Biros of her interests in the Subject Property.

261.    These statements of Shanni's, both in her complaint and in her testimony, were false.

262.    At the time Shanni made these statements, she knew them to be false.

263.    Shanni made these statements with the intention of misleading the District Court into relying on them.

264.    The District Court was justified when it entered default judgment for Shanni and against U Lock in reliance upon Shanni's statements made under oath and pursuant to an obligation not to make false statements in her pleadings.

265.    Shanni's false statements have proximately caused injury to Biros.

266.    Shanni has subsequently used her default judgment, which she obtained with those false statements, to support the Fake Lien, her initiation of the Lis Pendens Proceedings, her initiation of the U Lock Bankruptcy, and her appeal to the Superior Court in the Quiet Title Action.

267.    These actions have proximately caused Biros to incur attorney's fees to protect and advance her interests in the Subject Property, have interfered with Biros's legal and equitable interests in the Subject Property, and have effectively prevented Biros from selling the Subject Property, pledging the Subject Property, or obtaining any financing to redevelop the Subject Property.

268.    Shanni foresaw or could reasonably have foreseen all of these damages at the time that she made the false statements to the District Court.

269.    These actions by Shanni are so outrageous, willful, and malicious as to justify the imposition of punitive damages against them.

WHEREAS Biros respectfully requests that this Court enter judgment in her favor and against Shanni and award Biros her actual damages, punitive damages, the costs of this action, and such other relief as this Court deems to be appropriate.

## COUNT VI

### Aiding and Abetting Fraud

### Biros v. George, Kash, and Roth

270.    Biros incorporates the preceding paragraphs of this Complaint as if set forth fully herein.

271.    As discussed above, Shanni made fraudulent statements to the District Court in order to obtain default judgment in her favor and against U Lock.

272.    George, Kash, and Roth were aware of these statements at or near the time that Shanni made them.  Per the return of service that Shanni filed with the District Court, Shanni served her complaint in the Wage Case on U Lock by having it hand-delivered to George.  George and Kash participated in U Lock's decision not to defend itself in the Wage Case.  George has testified under oath that he discussed Shanni's complaint in that action with Roth prior to Shanni's obtaining the default judgment.

273.    George, Kash, and, particularly as a licensed attorney, Roth, all knew and appreciated that lying to a court in order to obtain a judgment is wrongful.

274.    On information and belief, George, Kash, and Roth each encouraged Shanni to make these statements in the Wage Case.  They further abetted Shanni's fraud by causing U Lock not to defend against Shanni's claims in the Wage Case, therefore exposing U Lock to Shanni's obtaining a default judgment against it.

275.    George, Kash, and Roth further aided and abetted Shanni's fraud by causing U Lock to move to delay the remand of the Quiet Title Action from the Superior Court to the Quiet Title Court, by causing U Lock to file the *Petition to*

*Strike* in the Quiet Title Action, and by otherwise opposing and frustrating Biros's efforts to taking possession of and re-develop the Subject Property consistent with the judgment that Biros received in the Quiet Title Action.

276.    Shanni's false statements, as aided and abetted by George, Kash, and Roth, have proximately caused injury to Biros.

277.    Shanni has subsequently used her default judgment, which she received with the assistance of George, Kash, and Roth, to support the Fake Lien, her initiation of the *Lis Pendens* Proceeding, her initiation of the U Lock Bankruptcy, and her appeal to the Superior Court in the Quiet Title Action.

278.    These actions have damaged Biros by causing her to incur attorney's fees to protect and advance her interests in the Subject Property, have interfered with Biros's legal and equitable interests in the Subject Property, and have effectively prevented Biros from selling the Subject Property, pledging the Subject Property, or obtaining any financing to redevelop the Subject Property.

279.    These actions by George, Kash, and Roth are so outrageous, willful, and malicious as to justify the imposition of punitive damages against them.

WHEREAS Biros respectfully requests that this Court enter judgment in her favor and against George, Kash, and Roth and award Biros her actual damages, punitive damages, the costs of this action, and such other relief as this Court deems to be appropriate.

## COUNT VII

### Abuse of Process

### Biros v. Shanni

280.    Biros incorporates the preceding paragraphs of this Complaint as if set forth fully herein.

281.    Shanni has initiated legal process in this action on several occasions.

282.    On or about July 14, 2021, Shanni commenced the Wage Case by filing her complaint in the District Court.

283.    On or about December 15, 2021, Shanni filed the Fake Lien in the Westmoreland Court.

284.    On or about March 18, 2022, Shanni commenced the *Lis Pendens* Proceeding by filing her praecipe in the Westmoreland Court.

285.    On or about April 27, 2022, Shanni commenced the U Lock Bankruptcy by filing a petition for involuntary bankruptcy with the Bankruptcy Court.

286.    On or about May 19, 2022, Shanni filed her notice of appeal in the Quiet Title Action with the Westmoreland Court.  This filing initiated a new proceeding in the Superior Court.

287.    Shanni did not commence any of these actions for a proper purpose.

288.    Instead, Shanni sought to use her own false statements to obtain a judgment and then to use that fraudulently obtained judgment in order to interfere with Biros's interests in the Subject Property.

289.    Shanni's initiation of these actions has damaged Biros by causing Biros to incur attorney's fees to protect and advance her interests in the Subject

Property, have interfered with Biros's legal and equitable interests in the Subject Property, and have effectively prevented Biros from selling the Subject Property, pledging the Subject Property, or obtaining any financing to redevelop the Subject Property.

290.    These actions by Shanni are so outrageous, willful, and malicious as to justify the imposition of punitive damages against her.

WHEREAS Biros respectfully requests that this Court enter judgment in her favor and against Shanni and award Biros her actual damages, punitive damages, the costs of this action, and such other relief as this Court deems to be appropriate.

## COUNT VIII

### Civil Conspiracy – Abuse of Process

### Biros v. All Defendants

291.    Biros incorporates the preceding paragraphs of this Complaint as if set forth fully herein.

292.    All of the Defendants agreed to initiate legal process for an improper purpose – *i.e.*, to interfere with Biros's interests in the Subject Property.

293.    One or more of the Defendants took actions in furtherance of that agreement.  Those actions include commencing the Wage Case in the District Court, filing the Fake Lien in the Westmoreland Court, commencing the *Lis Pendens* Proceeding in the Westmoreland Court, commencing the U Lock Bankruptcy in the Bankruptcy Court, and commencing a 2022 appeal to the Superior Court in the Quiet Title Action.

294.    None of the Defendants entered into this agreement or commenced any of these actions for a proper purpose.

295.    The Defendants' agreement and actions have damaged Biros by causing Biros to incur attorney's fees to protect and advance her interests in the Subject Property, have interfered with Biros's legal and equitable interests in the Subject Property, and have effectively prevented Biros from selling the Subject Property, pledging the Subject Property, or obtaining any financing to redevelop the Subject Property.

296.    These actions by the Defendants are so outrageous, willful, and malicious as to justify the imposition of punitive damages against them.

WHEREAS Biros respectfully requests that this Court enter judgment in her favor and against the Defendants and award Biros her actual damages, punitive damages, the costs of this action, and such other relief as this Court deems to be appropriate.

Respectfully submitted,
BERNSTEIN-BURKLEY, P.C.

By: */s/ Kirk B. Burkley*
Kirk B. Burkley, Esq. (PA. I.D. #89511)
Stuart C. Gaul, Jr., Esq. (PA. I.D. #74529)
601 Grant Street, 9th Floor
Pittsburgh, PA 15219
Telephone: (412) 456 – 8100
Facsimile:  (412) 456 – 8135
kburkley@bernsteinlaw.com
sgaul@bernsteinlaw.com

*Attorneys for Plaintiff, Christine Biros*