# EXHIBIT P

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In re:  U LOCK INC. a/k/a ）
U-LOCK INC. ）    Bank. 22-20823-GLT
）
Debtor. ）    Chapter 7
）
------------------------------------- ）
CHRISTINE BIROS, ）
）
Movant, ）
）
v. ）
）
SHANNI SNYDER, ）
）
Respondent. ）
）

OPPOSITION TO THE EMERGENCY MOTION FOR ENTRY OF AN
ORDER (I) DISMISSING THE CASE AND FOR SANCTIONS AGAINST
THE PETITIONING CREDITOR, OR IN THE ALTERNATIVE (II)
MAKING A DETERMINATION THAT THE AUTOMATIC STAY IS
INAPPLICABLE TO THE STATE COURT ACTION PURSUANT TO 11
USC 362(b)(10), OR IN THE ALTERNATIVE (III) GRANTING RELIEF
FROM THE AUTOMATIC STAY TO THE MOVANT IN RELATION TO
THE MOVANT'S PROPERTY AND THE STATE COURT CASE, OR IN
THE ALTERNATIVE, ABANDONING THE MOVANT'S PROPERTY

Petitioning Creditor Shanni Snyder ("Snyder") files this, her

Opposition to the Emergency Motion:

**BACKGROUND**

In 2015, Unsecured Creditor Christine Biros ("Biros") provided U

Lock an unsecured loan to purchase a property that consists of

valuable highway frontage and presently houses a self-storage

1

business.

The contract contained neither a security agreement nor security interest.  Neither a lien nor a *bona fide* mortgage was established.  The contract simply states, "This loan agreement between U Lock Inc. (borrower) a Pennsylvania corporation and Christine Biros (lender) and/or Guarantor collateralized from S+T bank for the sum of $325,316.00 the terms + conditions of the payment will be agreed upon on or before 8/16/15.  Lender will set terms if agreement is not settled by that date. /s/ Kash Snyder, Director, U Lock Inc. 7/16/15." *See* Exhibit F.

Nearly two years later, on May 5, 2017, Biros sent an unsigned demand letter to U Lock stating that she added accrued interest at nine percent (9%), required a security interest in the property with all officers of U Lock personally liable, all of the lender's "legal fees" and any other charges the "lender may incur."  *See* Exhibit G.

U Lock apparently neither signed the letter nor agreed to its terms.

In October 2017, Biros filed suit, but instead of seeking to collect her money, she asked the Court to award her deeds to the property because she averred that U Lock's deeds were *void ab initio* because of a filing mistake in U Lock's Articles of Incorporation.

In 2018, the seller of the property rendered new deeds to U Lock. At the same time, in exchange for payment of $10,000 and deeds in

2

the name of Christine Biros that stated the original deeds were *void ab initio* (which were to be placed in the safe of the Westmoreland County court until final disposition), Biros allowed the seller of the property to be removed from the case.

After trial, the Court of Common Pleas issued a decision that non-payment to Biros would constitute an unjust enrichment. Therefore, because the court found U Lock to be insolvent, it created a *constructive trust* for Biros. However, the court never considered or allowed the claims of other creditors. As to the deeds, the court ruled the 2015 deeds were *void*. However, it ruled that the 2018 deeds were valid and did transfer the property to U Lock. Pursuant to the constructive trust, the ownership of the property would ultimately be provided to Biros. U Lock appealed.

The Superior Court of Pennsylvania heard an appeal and rendered an opinion. In that opinion, the Court affirmed the creation of a constructive trust for Biros to prevent an unjust enrichment, but also made it clear that the 2018 deeds transferred ownership of the property to U Lock. *Biros v. U Lock*, 255 A3d 489, 494 (Pa. Super. 2021)("Furthermore, the trial court accepted the legitimacy of the 2018 Deeds: 'Even accounting for the *void ab initio* status of the [2015 Deeds], the corrective [2018 Deeds], show legal title in the [Property] belonging to U Lock, Inc.'").

U Lock petitioned the Supreme Court of Pennsylvania for leave to

appeal. Because of the petition, the Superior Court did not remand the record to the Court of Common Pleas. (This is similar to a federal appellate court withholding the mandate).

In the interim, Petitioning Creditor received a federal judgment against U Lock based on a wage lawsuit. Petitioning Creditor properly lodged the judgment during 2021 with the Court of Common Pleas. Pursuant to 28 USC 3201, a "judgment in a civil action shall create a lien on all real property of a judgment debtor on filing a certified copy of the abstract of the judgment in the manner in which a notice of tax lien would be filed under paragraphs (1) and (2) of section 6323(f) of the Internal Revenue Code of 1986. A lien created under this paragraph is for the amount necessary to satisfy the judgment, including costs and interest." Petitioning Creditor's judgment lien "shall have priority over any other lien or encumbrance which is perfected later in time." 28 USC 3201(b). *See* Exhibit A.

On January 16, 2022, the Supreme Court of Pennsylvania denied U Lock's petition seeking leave to appeal. However, pending reconsideration petitions or other motions, it also did not remand the record to the Court of Common Pleas.

Notwithstanding that Pennsylvania Rule of Appellate Procedure 1701(a) provides that the lower court cannot proceed further, counsel for Biros' staff had an *ex parte* discussion with the judge's law clerk and asked that the property be transferred to Biros. Counsel for

4

Biros, without notifying anyone, obtained an Order from the Court of
Common Pleas allowing the deeds from the seller to Biros to be filed.

On January 25, 2022, Biros filed the deeds with the
Westmoreland County Recorder of Deeds.  The deeds, however,
incorrectly claim that the 2018 deeds to U Lock were declared void.
The deeds that Biros filed were not signed or approved by the Court.
Biros never asked the Court to invoke its constructive trust and have
U Lock, as trustee, transfer its interests to her, as should have been
done.  Therefore, both deeds are on file with no cancellation notations
with the Recorder of Deeds.

As U Lock did not know that Biros filed the backdated deeds
from the seller, it asked the Supreme Court of Pennsylvania to
withhold remanding the record so it could appeal to the Supreme
Court of the United States.  Biros, without mentioning that she
obtained deeds "unilaterally," moreless consented but asked that the
property taxes be paid.  On March 16, 2022, the Supreme Court
granted U Lock's motion to withhold remand of the record.  It is clear
from this Order that the Supreme Court of Pennsylvania assumed the
*status quo* was in place.[1]  *See* Exhibit E.

In the interim, U Lock never received notice of the Orders
because, as the judge explained at its hearing on April 22, 2022, the
state court acted "unilaterally."  *See* Biros' Amended Exhibit I, Entry

---

[1] Biros specifically asked for provisions about the property taxes, which U Lock did not oppose;
however, Biros never advised the Supreme Court of Pennsylvania that it already received the Order

18 (denying *ex parte* or *sua sponte* Order, but calling the Order *unilateral* after a call from Biros' paralegal to the judge's law clerk occurred).

Also apparently on April 22, 2022, the judge in the state case entertained a motion for possession, which does not appear to be a usual procedure. This motion is not on the public docket. No notice to creditors or to the tenants of U Lock occurred. No action in ejectment was filed.

No creditors were invited to the April 22, 2022, hearing. At that hearing, the court recognized that Petitioning Creditor had a judgment lien and counsel for Biros explained that they acted the way they did to avoid it. Notwithstanding that Petitioning Creditor was not present at the hearing, and could not object, the judge complained that she sued him, sued "the law" and could face prosecution by the Attorney General of Pennsylvania. *Id.* The judge directed U Lock representatives to "pass it on" to the Petitioning Creditor and repeat the message. *Id.*

On April 25, 2022, to assure the ability to claw back the property for the benefit of all creditors, not just Unsecured Creditor Biros, and because U Lock is clearly insolvent, Petitioning Creditor filed the instant petition for involuntary bankruptcy by placing it in the Court's mailbox. However, upon filing, the petition was not accepted, but was placed throughout the Clerk's office for *pro se* review and not

ultimately filed until April 27, 2022.

Petitioning Creditor notified the secretary of the state court judge of this case by personally handing her the Notice of Bankruptcy on May 12, 2022.  Petitioning Creditor also notified counsel for Biros.

Apparently, in response to the Notice of Bankruptcy, the judge rendered a summary order that not only provided possession of U Lock's property to Biros, but also allowed her to levy on and sell all of U Lock's property to pay expenses and for cleanup, including unknown environmental costs  *See* Exhibit B.  This preferential Order harmed Petitioning Creditor because she maintains a judgment lien and the judge knew it when he allowed Biros to sell all of U Lock's assets.

On May 20, 2022, despite knowing that a bankruptcy stay existed, counsel for Biros appeared before the state court judge and had a hearing.  At that hearing, counsel suggested ways to avoid the stay.  The judge falsely stated he rendered his possession on April 22, 2022, so he did not violate the stay– but the Order was not signed until May 13, 2022, and not docketed until May 17, 2022.  Counsel for Biros never asked the court to stop the hearing, but instead made arguments and complaints about the Petitioning Creditor.  At that hearing the court also stated that it would attempt to strike Petitioning Creditor's appeal from the preferential order allowing Biros to levy and sell the property because she had no standing.  *See* Exhibit C.

7

On the same day, Biros filed the omnibus motion to this Court asking for myriad types of relief.  Despite the complicated nature of the property, and despite U Lock possessing it since 2015, it became an "emergency" so that the creditors could not receive notice, U Lock would be unable to act, and the Petitioning Creditor who is acting without an attorney would be blindsided.

Petitioning Creditor objects and opposes the motion for the reasons set forth below.

## OBJECTION TO MOTION BEING CLASSIFIED AS AN EMERGENCY

Despite claiming that Alleged Debtor U Lock possessed the property for five years, Biros suggests that this proceeding must be heard as an emergency petition with little notice to Petitioning Creditor and no notice to the other creditors.  Petitioning Creditor objects on due process and procedural grounds.

Petitioning Creditor maintains a properly filed judgment lien on all of the debtor's property, so she has standing.  *See* Exhibit A.  It is unclear whether the debtor owns the real property at 14140 U.S. Route 30 or whether the Unsecured Creditor Biros maintains *quit claim* type ownership effective January 25, 2022– after Petitioning Creditor's judgment.  While it is true that the state judge, who most likely had no jurisdiction because the case record was never remanded

8

to him by the appellate court,[2] in late January 2022 entered what he called a "unilateral" Order allowing Biros to file certain deeds. However, this transfer – even though involuntary as to U Lock – constitutes a preferential transfer to an insider[3] of the debtor and a voidable transfer under Pennsylvania law. Petitioning Creditor suggests that this Court, after clawing back the preferential and voidable transfer, should ultimately sell the property and pay both Unsecured Creditor Christine Biros, Petitioning Creditor, and all other creditors rather than allow for an unjust enrichment in favor of unsecured creditor Biros to occur.

Regardless of which party owns the property, Petitioning Creditor maintains a judgment against U Lock's assets. Despite knowing of both Petitioning Creditors' judgment lien and the bankruptcy stay, the same judge granted Biros the right to levy and sell all of the Debtor's property to pay for expenses. *See* Exhibit B. The pre-bankruptcy hearing occurred outside of and without notice to Petitioning Creditor.

This complicated situation requires this Court to analyze a complicated factual background. As the United States Court of

---

[2] The judge had no jurisdiction and appears to have been mistaken when he claimed he did. *Compare* Exhibit G, Pennsylvania Rule of Appellate Procedure 1701, and the judge stating he could act "unilaterally" because he knew about the decisions even though the record was not remanded to him.

[3] Petitioning Creditor is filing an action to declare Biros an insider due to her heavy involvement in the purchase of U Lock's assets, her original planning and development of the company, her control over the entity, and the fact that the entity is acting as her trustee. Petitioning Creditor's adversary proceeding will also seek a claw back and declaratory judgment that the judgment is superior to Biros' unsecured claim.

Appeals for the Third Circuit explained in *In re Mansaray-Ruffin*, 530

F.3d 230, 234-37 (3rd Cir. 2008), "Federal Rule of Bankruptcy

Procedure 7001 sets forth matters that may only be resolved through

an 'adversary proceeding,' including the determination of the 'validity,

priority, or extent of a lien *or other interest in property*.' Fed. R.

Bankr.P. 7001(2). An adversary proceeding is essentially a

self-contained trial—still within the original bankruptcy case—in

which a panoply of additional procedures apply. See Fed. R. Bankr.P.

7001–7087.

For this Court to determine ownership, disregard the potential

that the transfer may be voidable as a preference, and adjudicate all

that Movant Biros demands, is not an emergency proceeding– its an

adversary proceeding.  In *In re Smith*, 514 B.R. 331, 338-39 (Bankr.

S.D. Ga. 2014), the court held "that the procedural safeguards

inherent in that rule should not be disregarded based on narrow

definitions of 'validity' adopted by many courts. The Due Process

Clause of the Fifth Amendment forbids the deprivation of a property

right without due process of law, and the adoption of a Rule of

Procedure by the judiciary constitutes the template for assessing due

process. . . . [A]ny challenge to the viability of a lien must be

considered within the confines of an adversary proceeding under the

Rules and as a matter of due process. . . . [P]art of the purpose of Rule

7001 must certainly be to ensure that when the issue is the

enforceability of a state created lien, the defendant is entitled to the most infallible degree of notice of the nature and serious consequences of the proceeding brought against it. The procedural safeguards of adversary proceedings, including the Rules of Pleading of Bankruptcy Rule 7008 which require a specific 'demand for relief sought,' are calculated to achieve this purpose."

There exists no emergency that this Court needs to render a snap decision without a full and fair opportunity to litigate the questions contained in the complicated motion that affects substantial rights of all involved.  Creditors must be notified.  The debtor needs time to prepare.  Biros needs to file an adversary proceeding to determine her ownership.

As to the environmental issues, these are the same issues that Biros complained about in 2018.  Nothing changed that requires this Court to resolve the issue on such an accelerated schedule and without full and fair notice to all creditors, tenants, and interested parties, preferably after U Lock appears.

**ARGUMENT**

### I.   THE BANKRUPTCY SHOULD NOT BE DISMISSED

1. **Petitioning Creditor is eligible to file an involuntary petition**

    i. **No *bona fide* dispute exists and the unsecured creditor failed to demonstrate a dispute**

Biros presents a transcript of a case where counsel for the Movant Biros improperly goaded a judge into making dicta-type comments towards Petitioning Creditor knowing that she was not a party and had no ability to respond. *See* Docket Entry 18, Biros' Amended Exhibit I.

The Judge's dicta and rhetoric, complaining of a lawsuit Petitioning Creditor filed where the judge is a defendant, has no legal weight and no creation of a dispute. Petitioning Creditor's claim against U Lock is based upon a federal judgment duly entered after both Petitioning Creditor and the United States District Court for the Western District of Pennsylvania provided U Lock with notice to attend an in-person hearing.  28 USC 3201.  Petitioning Creditor's judgment has priority.  28 USC 3201(b).

Petitioning Creditor filed and lodged the judgment with the Court of Common Pleas of Westmoreland County.  It has been on file, unpaid, since December 2021.  *Snyder v. U Lock*, 21 JU 04758 (Westmoreland County C.C.P.); *see* Exhibit A.

This Court must provide the federal judgment full faith and credit.  *In re C. W Mining Co*, 2009 WL 4798264, *5 (BAP 10th Cir) ("[A] federal district court judgment is entitled to full faith and credit in a bankruptcy court, absent the most extraordinary of circumstances.").  The general rule is that an unappealed, unstayed

final judgment is not subject to a "bona fide dispute." *In re Raymark
Indus., Inc.,* 99 B.R. 298, 300 (Bankr.E.D.Pa.1989); *In re Caucus
Distributors, Inc.,* 83 B.R. 921, 928–29 (Bankr.E.D.Va.1988); *In re
Drexler,* 56 B.R. 960 (Bankr.S.D.N.Y.1986).

Moreover, 28 USC 3201 explains that," (A) A judgment in a civil
action shall create a lien on all real property of a judgment debtor on
filing a certified copy of the abstract of the judgment in the manner in
which a notice of tax lien would be filed under paragraphs (1) and (2)
of section 6323(f) of the Internal Revenue Code of 1986. A lien created
under this paragraph is for the amount necessary to satisfy the
judgment, including costs and interest.(b)Priority of Lien.—lien created
under subsection (a) shall have priority over any other lien or
encumbrance which is perfected later in time."

Petitioning Creditor filed her Proof of Claim in this case. This
constitutes prima facie evidence of the validity and amount of the
claim. Fed. R. Bankr.P. 3001(f); *In re: Zimmer, 623 B.R. 139* (Bank.
W.D.Pa. 2020), *citing Juniper Dev. Group v. Kahn (In re Hemingway
Transp., Inc.),* 993 F.2d 915, 925 (1st Cir.1993). In order to rebut this
prima facie evidence, the objecting party must produce "substantial
evidence." *United States v. Clifford (In re Clifford),* 255 B.R. 258, 262
(D.Mass.2000).

Finally, Biros attempts to collaterally attack a federal judgment
by complaining of inadvertent omissions in Petitioning Creditor's 2018

bankruptcy.  However, Biros was a creditor in that proceeding and did
not seek to reopen it as she could.    Any omission on the 2018
bankruptcy schedule lacked materiality and would not warrant action
being taken.  *See In re:  Daniel*, 613 B.R. 374, 383 (Bank,. M.D. Fl.
2020)(holding that a creditor objecting to discharge for omissions or
misstatements in schedules must show that they are material).

Petitioning Creditor simply did not know she had a cause of
action against U Lock until 2020.  U Lock told the state judge that
Petitioning Creditor worked for "sisterly love."  At no time did the
Petitioning Creditor receive income from U Lock.  U Lock did promise
Petitioning Creditor in 2020 that she would be paid minimum wage for
all the time she spent as they developed or sold the property, and U
Lock asked that payment be deferred.  Petitioning Creditor provided
work and services for U Lock.  The argument to the United States
District Court, which was accepted, constituted an assertion that,
indeed, Petitioning Creditor received no payment, but that she should
have received minimum wage as a matter of law.  Sisterly love does
not apply to corporations.

Clearly, this does not rise to the level of a dispute. It may be a
basis to collaterally attack the 2018 bankruptcy decree, but not the
debt. Even if the period of 2016 through May 2018 is removed from
the judgment, it would still be over $10,000.[4]

---

[4] Any omission of the potential claim against U Lock would most likely have been abandoned by the
trustee considering the unsecured debt exceeded several million dollars and the minimum wage owed

### ii. **No status based prohibition on filing a bankruptcy exists**

Movant Biros asserts that, simply because Petitioning Creditor is the sister of two of U Lock's officers,[5] she constitutes an "insider" that cannot bring an involuntary petition. Biros then misstates the elements laid down in an often criticized case along with an unpublished case that cites the criticized case. Specifically, Biros cites *In re Runaway II*, 168 B.R. 193, 196 (W.D. Mo. 1994), but that Court stated that employees, insiders and creditors *receiving avoidable preferences* cannot file an involuntary bankruptcy. Specifically, the court explained, "Thus, to file a petition under (b)(2), a creditor must hold a claim that is not contingent, subject to a bona fide dispute, nor be the claim of an employee, insider or transferee *of an avoidable transfer*." *Id.* See also *In re Kenval Mktg. Corp.*, 38 B.R. 241, 244 (Bankr. E.D. Pa.) ("[C]reditors....are precluded from successfully filing *if they hold voidable preferences*."), *reconsideration denied*, 40 B.R. 445 (Bankr. E.D. Pa. 1984).

Biros does not and cannot aver that Petitioning Creditor holds an avoidable preference. On the contrary, it is Biros that received an avoidable preference to the detriment of all of the creditors by using a

---

constituted a small amount in comparison. Biros is welcome to reopen the bankruptcy and challenge the inadvertent omission.

[5] U Lock is a corporation with nearly 1,000 shareholders. Petitioning Creditor owns no stock. Petitioning Creditor did jobs for U Lock. In 2021, Petitioning Creditor learned that U Lock's failure to pay her constituted wage violations even though she was not receiving a salary, just a promise to eventually receive compensation.

constructive trust to prevent a public sheriff's sale of the property where creditors receive notice, parties can bid, fair value for the property can occur at the auction, and all parties have the opportunity to receive their share.

Regardless, contrary to the minority of cases cited by Biros, most courts interpret §303(b) to allow an insider, or an employee or transferee, with which insiders are associated to file an involuntary petition in cases involving 12 or less creditors. In *Sipple v. Atwood (In re Atwood),* 124 B.R. 402, 405 n.2 (S.D. Ga. 1991), the court stated, "Petitioning creditors...qualify [to file an involuntary petition] even if their claim is voidable."). In *In re Little Bldgs. Inc.,* 49 B.R. 889, 890-91 (Bankr. N.D. Ohio 1985), the court denied the debtor's motion to dismiss involuntary petition filed by insiders. In *In re United Kitchen Assocs. Inc.,* 33 B.R. 214, 215 (Bankr. W.D. La. 1983), the court held, "Under the plain meaning of 11 U.S.C. §303(b)(1) and (2), employees of the debtor may be petitioning creditors for involuntary bankruptcy of the debtor."

The *Little Bldgs.*court thoroughly reviewed the language of the statute, and concomitantly, explained the basis for its decision. In denying a motion to dismiss an involuntary petition filed by certain officers, directors, employees or shareholders of the debtor, it found that "the language of the section states, with mathematic-like certainty, that the claims of insiders are excluded only from

16

consideration in determining the number of an alleged debtor's

creditors." *Little Bldgs.*, 49 B.R. at 890-91. "Insiders are still eligible to

initiate involuntary proceedings against the entity they are or were

associated with." *Id.* at 891.  Other courts have similarly held that the

status of the creditor constitutes a consideration for mathematical

purposes, not for eligibility.  *See In the Matter of Skye Marketing Corp.*

11 B.R. 891 (E.D. N.Y. 1981).

Indeed, in *In re Kitchen Assocs. Inc.,* 33 B.R. 214, 215

(Bankr.W.D.La.1983), the court held, "Under the plain meaning of 11

U.S.C. § 303(b)(1) and (2), employees of the debtor may be petitioning

creditors for involuntary bankruptcy of the debtor."  In *In re Hopkins,*

177 B.R. 1 (Bankr.D.Me.1995), the court allowed former spouses and

their children to be petitioning creditors.

Collier's also supports the *Little Bldgs.* rationale that "[a]lthough

insiders are not counted as holders of claims for purposes of

establishing the numerosity requirement in Section 303(b), these

individuals can be petitioning creditors if they satisfy the other

requirements." *Collier on Bankruptcy* ¶ 303.03[2](c)(iv), at page 303–36

(15th ed. rev.). Collier takes the same position with respect to creditors

who have received voidable transfers. *Id.* at ¶ 303.03[2](c)(v), page

303–36–37.

The history of bankruptcy makes it clear that an insider would

be an acceptable petitioner.  11 USC §303(b) contains a specific

subpart authorizing the filing of an involuntary petition against a partnership by its general partners, *i.e.,* insiders. *See* 11 U.S.C. §303(b)(3); 11 U.S.C. §101(31)(C)(i) (defining general partner in debtor as insider where debtor is partnership). If Congress wished to disallow to allow all insiders, including corporate insiders, to file an involuntary petition, Congress could have easily included language to that effect in §303.

As noted in *Little Bldgs.,* the exclusionary language in §303(b)(2) should be interpreted to apply for counting the number of creditors. Historically, courts have held that the language does not disquality any type of creditor.  In  *J.J.S. Co. v. Sacks (In re J.J.S. Co.),* 445 F.2d 138, 139 (7th Cir. 1971), the Seventh Circuit held, "While 11 U.S.C.A. §95(e)...excludes shareholders, officers and directors in the computation of the number of creditors of a bankrupt for the purposes of determining how many creditors must join in the petition, it does not serve to disqualify an officer, director or shareholder as a petitioning creditor."); *see also Winkleman v. Ogami,* 123 F.2d 78, 80 (9th Cir. 1941).

### 2. Petitioning Creditor filed the Involuntary Petition in good faith

Biros argues that Petitioning Creditor filed the petition in bad faith and that the petition should be dismissed on this basis.  She states that this filing was to stop the dispossession by U Lock.  On the

18

contrary, the filing was to create an estate for all creditors, to claw back the voidable transfer, and to have the property sold in order for Biros, Petitioning Creditor, and all creditors to be paid in full from the sale of the assets of U Lock.

Petitioning Credit clearly met the statutory requirements for filing the petition. She maintains an unpaid judgment lien for over $262,000 and, certainly, Biros would even agree that U Lock is not paying its bills.

Furthermore, the Petitioning Creditor conducted research before filing the case and knew the facts. She saw her 28 USC 3201 judgment lien being usurped and bypassed deliberately by Biros in a proceeding she could not take part in. No

Petitioning Creditor saw the property being transferred to an unsecured creditor without a Sheriff's sale through a constructive trust, which clearly dissipated U Lock's assets, and protected no other creditors or tenants.

Finally, Petitioning Creditor saw dangerous threats by Biros to impound all of the property of U Lock's storage customers and provide thirty-days for those paid-up customers to receive their things, making it more likely that U Lock would be subject to more debt and never pay the judgment. *See* Biros Amended Exhibit I (discussing locking the storage facility and notifying tenants by mail to retrieve their items).

Certainly the Petitioning Creditor chose to assert her rights, and

it appears quite obvious why. The Order at Exhibit B, entered in retaliation for the bankruptcy stay, and in deliberate defiance of the stay, actually allows Biros to sell everything U Lock owns to pay for removal of garbage, cars, and environmental damage that existed at the time the property was purchased. The property that Biros is allowed to levy and sell is not itemized. The costs for environmental damage have not been set by any court.

More importantly, it cannot be said that the Petitioning Creditor used this proceeding as a tactical advantage in a pending action. On the contrary, the Petitioning Creditor did not participate in the action, received no notice of the case that Biros speaks of, and was not a party to the proceeding. As the judge stated on May 20, 2022, at his unlawful hearing, Petitioning Creditor has no standing in that case. *See* Exhibit C; *but see* Entry 18, Biros' Amended Exhibit I (mentioning that perhaps Petitioning Creditor could take part or intervene).

Biros cites a 2013 case that resulted in no judicial findings and constituted a compromise settlement to show "bad faith." This compromise settlement has no relevance here. Petitioning Creditor and Robert Biros, the father of Christine Biros, consented to a resolution of a dispute without the necessity of a judicial decision. This Court did not find bad faith or render any adjudication. In that case, issues arose because Biros chose to rent his property with no lease. The reason the same parties are now before this Court is

because the Biros family chooses to continue to conduct business without written documentation.  Specifically, Christine Biros provided an unsecured loan so U Lock could buy a property without any binding documentation and then resorted to a rarely used form of action to obtain the property without notice to other parties.

### a.  **There exists no basis for sanctions**

Ordinarily, in an involuntary bankruptcy, the Alleged Debtor may seek sanctions if a bankruptcy is dismissed.  Here, a competing creditor, Biros, who seeks to protect her improper voidable preference, is seeking sanctions.  As explained above, the debtor clearly lacks solvency.  The Petitioning Creditor maintains a judgment enforceable pursuant to 28 USC 3201.  She Becausfiled her case with a proper purpose.  Sanctions are inappropriate and the demand for $20,000 constitutes just more intimidation against people who oppose their position.  As shown by the hearing transcripts, Biros is seeking sanctions of $20,000 against U Lock for raising a defense about Biros' arrest.  This is Biros' magic number to ask for if one challenges them or litigates a legal position.  Petitioning Creditor will not allow Biros' threats of sanctions to persuade abandonment when the 28 USC 3201(b) judgment lien provides Petitioning Creditor's lien superiority to Biros' post-judgment deed.  The demand for sanctions are nothing but a strategic plan to try to deter the prosecution of claims.

III. **THE AUTOMATIC STAY IS APPLICABLE AND NO RELIEF FROM THE STAY SHOULD BE PERMITTED, ESPECIALLY _NUNC PRO TUNC_ RELIEF**

a. **Biros deliberately violated the bankruptcy stay**

Biros seeks to annul the automatic stay.  "This relief is quite extraordinary because it is retroactive, and, therefore, parties who secure such relief will have their previous actions, which may have violated the automatic stay at the time, validated after the fact. Annulling the stay is thus inconsistent with the notion that all debtors who seek the protection of bankruptcy in good faith are entitled to the 'breathing spell' created by the automatic stay. Such extraordinary relief should therefore not be commonly available. If it were otherwise, the careful balance of benefits and burdens built into the Bankruptcy Code by Congress would be thrown off kilter". _See_ _In re Siciliano,_ 167 B.R. 999, 1007 (Bank. E.D. Pa. 1994).

With few exceptions, most courts acknowledged that annulling the stay is only appropriate in the rarest of circumstances. _See, e.g., In re Shamblin,_ 890 F.2d 123, 126 (9th Cir.1989) ("Any equitable exception to the automatic stay [such as annulling the stay] should be narrow and applied only in extreme circumstances."); _Albany Partners, supra,_ 749 F.2d at 675 ("[T]he important congressional policy behind the automatic stay demands that courts be especially hesitant to

22

validate acts committed during the pendency of the stay."); *Scrima v. John Devries Agency, Inc.,* 103 B.R. 128, 135 (W.D.Mich.1989) ("annulment of an automatic stay is a radical form of relief"); *In re Jewett,* 146 B.R. 250, 252 (Bankr. 9th Cir.1992) ("Any such equitable exception to the automatic stay [*i.e.,* annulling the stay] should be narrow and applied only in limited circumstances."); *In re Barker–Fowler Electric Co.,* 141 B.R. 929, 936 (Bankr.W.D.Mich.1992) ("Annulment of the stay is an equitable remedy and should be applied only in extreme or extraordinary circumstances."); *In re Williams,* 124 B.R. 311, 316 (Bankr.C.D.Cal, 1991) ("The power to annul the stay must ... be exercised sparingly."); and *In re Schewe,* 94 B.R. 938, 951 (Bankr.W.D.Mich.1989) ("Retroactive relief from the automatic stay may be ordered by a bankruptcy court in appropriate limited circumstances.").

In *In re Boston Business Machines,* 87 B.R. 867, 871 (Bankr.E.D.Pa.1988), the court stated that annulling the stay is only appropriate in "a small category of situations."

However, in this case, Biros deliberately violated the stay. Prior to the state court's Order of May 13, 2022, purportedly awarding possession and allowing Biros to sell all of U Lock's property without judicial oversight, Petitioning Creditor notified both Biros and the Court of Common Pleas judge of the automatic stay in this case. The Supreme Court of Pennsylvania, which continued to have jurisdiction

over the underlying case, recognized the stay immediately. *See* Exhibit D (docket sheet recognizing stay). After it received the *void ab initio* Order for possession – obtained without even filing a lawsuit or notifying the tenants – Biros continued prosecuting U Lock in state court. On May 20, 2022, Biros proceeded at a hearing and attempted to convince the state judge that he could proceed as well, even asking the judge to issue an Order that could help in the bankruptcy. *See* Exhibit C.

Biros knew that her actions violated the bankruptcy stay and acted in bad faith, yet now she asks this Court to equitably annul the stay. This is different from a case where an inadvertent or technical violation of the stay occurred. Just like calling her motion an emergency motion to obtain a snap decision, Biros' actions in the state court are similarly on par. As an example, in *In re: Stancil*, 487 B.R. 331, 341 (Bankr. D.C. 2013), the court explained, "even if [the bankruptcy] filing was in bad faith, the court will not sanction a willful violation of the automatic stay by annulling the stay. Any bad faith on [debtor's] part is outweighed by the mortgagee's knowing violation of the automatic stay." Therefore, this Court should not entertain an annulment or relief from the automatic stay until all equity, lien, claw back, and other issues as to the property are settled.

### b. U Lock's interest in the property, its business, and subleases.

As to U Lock's interest in possessing the property, this Court in

*In re: Flabeg Solar US Corp.,* 499 B.R. 47570, Collier Bankr.Cas.2d

795 (Bank.W.D.Pa. 2013), explained, " It is undisputed that the Debtor

had (and continues to have) *at least* possession of the Property at the

time this bankruptcy case commenced. Therefore, under the line of

cases holding that mere possession is sufficient to invoke the

protection of the automatic stay, the stay applies. Furthermore, this

Court holds that a possessory interest, without any accompanying

legal or contractual interest, is sufficient to invoke the application of

the automatic stay." *Flabeg Solar* based its decision on In *Atlantic*

*Business and Community Corporation,* 901 F.2d 325 (3rd Cir. 1997),

the Third Circuit Court of Appeals, citing *In re: 48th Street*

Steakhouse, 835 F.2d 427 (2nd Cir. 1987), stated, "We join with the

Court of Appeals for the Second Circuit in holding that a possessory

interest in real property is within the ambit of the estate in

bankruptcy under Section 541, and thus the protection of the

automatic stay of Section 362." *Id at* 328. In *Atlantic Business,* the

Third Circuit affirmed the decision of the district court in holding that

a tenancy at sufferance created a property interest protected by the

automatic stay. *Id.* Although the facts presented in *Atlantic Business*

are distinguishable, the Third Circuit cited approvingly to *48th Street,*

and likewise held that "[t]he language of Section 362 makes clear that *mere possession* of property at the time of filing is sufficient to invoke the protections of the automatic stay." 901 F.2d at 328 (emphasis added).

Furthermore, it appears that U Lock or the trustee may have a right to claw back the deed from January 2022. Pennsylvania's law relating to voidable preferences allows a four year time to demonstrate that an action preferred a single creditor– even when the transfer constituted an involuntary transfer. Bankruptcy law allows for one year when a creditor– such as Biros – yielded considerable influence, and ninety (90) days regardless of the circumstances. Petitioning Creditor certainly has an interest in the property with her perfected judgment lien on it before the preferential transfer to Biros in January 2022.

Regardless, the deeds filed in January 2022,which were neither signed by a judge nor had their language reviewed, directly conflicts with both the original decision of the Court of Common Pleas and the Superior Court of Pennsylvania which stated that the corrective deeds indeed made U Lock the owner of the property. There are two competing deeds on file with the Westmoreland County Recorder of Deeds. The Recorder did not make notations prioritizing one or the other.

Considering this, the unilateral filing of non-judicial deeds– not

signed by a judge, that claims the original deeds were void directly
conflicts with the decisions. As explained above, both the common
pleas court and the Superior Court of Pennsylvania found that the
2018 deeds transferred ownership to Biros.

Moreover, U Lock made an argument to the state court that no
mandate ever came from the Superior Court because of a stay by the
Supreme Court rendering the actions of the state court to be without
jurisdiction. *See* Pa.R.A.P. 1701. It is understood that U Lock took
appeals from both the January 2022 Order and the *void* May 13,
2022, Order for possession challenging the jurisdiction of the state
court. The petitioning creditor took an appeal as well because of the
portions of the Order that allow Biros to sell U Lock's other property
and use it to offset her costs. These appeals should be stayed because
this Court will need to take the property, determine ownership and
lien priority, sell it, and compensate all the creditors.

Finally, U Lock maintains leases to many third-party property
storage customers. Counsel for Biros stated at the April 2022 hearing
that, "They raised the issue of the tenants, it is a series of lockers and
storage sites. We have no problem whatsoever, Your Honor. We will
blockade the site then if they will give us lists of their clients we will
send out notice letters to them telling them to come and pick up their
stuff. If people do not come we will advertise for it. At the end of that
we will do what we are entitled to do with unclaimed property." *See*

Entry 18, Biros' Amended Exhibit I.   This procedure will subject U

Lock to more liability considering that these customers may have

prepaid for their tenancy– yet they were provided no orderly notice

from the state court or opportunity to participate.

For this reason, the stay cannot be lifted at this time.

### c. Biros' request for possession and to sell all found U Lock property

In the state court action, tenants and creditors were not invited

to participate.  Despite knowing a stay existed, the Common Pleas

Court rendered an Order not only allowing possession, but also

<u>levying all of U Lock's non-real property and allowing it to be sold by</u>

<u>Biros</u> to cover the expenses of removing items.  *See* Exhibit B ("Such

writ will authorize levy and sale of any property of Defendant U Lock

to satisfy (a) the costs of the levy; (b) any unpaid property taxes; and

(c)  the costs of removal of rubbish, trash, used cars and any other

environmental hazard located on the property)."  This goes far beyond

any simple possession of property issue, but allows a single, preferred

creditor, to take everything U Lock owns and sell it to cover

non-itemized and unclear expenses.

However, in Pennsylvania, you must file an action for ejectment,

not a quick motion without notice to the public, the tenants, or the

other creditors.   Ejectment is an action filed by a plaintiff who does

not possess the land but has a right to possess it, against a defendant

28

who has actual possession." *Siskos v. Britz,* 567 Pa. 689, 790 A.2d
1000, 1006 (2002); *see also Soffer v. Beech,* 487 Pa. 255, 409 A.2d
337 (1979). " 'Ejectment is a possessory action only, and can succeed
only if the plaintiff is out of possession, and [the plaintiff] has a
present right to immediate possession.' " *Siskos,* 790 A.2d at 1006
(quoting *Brennan v. Shore Bros.,* 380 Pa. 283, 110 A.2d 401, 402
(1955) .

   It does not appear that Biros sought ejectment in her lawsuit
against U Lock. She never averred that her deed was superior.  She
did not notify the tenants.  Instead, Biros filed a motion and the judge
granted it when he learned of this bankruptcy despite having
cancelled the hearing due to the automatic stay.  Certainly, Biros'
request that she can just sell everything U Lock owns to pay for her
expenses defies logic and is unheard of– especially where the
environmental problems came with the property, not from U Lock.

### d. Possession affects U Lock's leases and exposes it to liability

   U Lock is a storage facility with active tenants– tenants that
prepaid.  Providing Biros with possession, when it never served the
tenants, will necessarily bring additional claims against debtor,
harming the estate.  The tenants, who maintain leases, maintain a
right to be told they are being moved and their property impounded by
Biros.  This Court cannot allow this type of "plan" by Biros to move
forward.  Moreover, the leases it rendered constitute property of the

estate and must be disposed of, abandoned, or otherwise resolved
before Biros can violate them and simply evict tenants.

### e. 11 USC 362(b)(10) does not apply.

Biros recognizes that 11 USC 362(b)(10) does not  specifically
apply, but attempts to convince this Court to expand it to this
situation.  Section 362(b)(1)  addressed a problem where a lease
terminated and enterprises filed bankruptcy simply to prolong the
lease.  In this case, there exists no lease.  Rather, there is a dispute as
to ownership and whether a *voidable* transfer occurred.  U Lock, if
placed in bankruptcy, can claw back the transfer, sell the property,
and pay all of the creditors.  This is the required result where a
multi-million dollar property is being hijacked by a single creditor with
a $350,000 unsecured claim.

If Congress desired to eliminate the automatic stay for properties
in situations like the present one, when it enacted 11 USC 362(b)(10),
it could have included language.  This Court cannot expand the
statute where there exists no Congressional intent.

### IV. THERE CAN BE NO ABANDONMENT PROPERTY AT THIS JUNCTURE

It appears unclear what property Biros demands this Court to
abandon.  She does not itemize the possessions U Lock maintained in
the storage sheds.   Nevertheless, she asks this Court to abandon the
unknown items so she can sell them pursuant to the *void* state court

order.  Biros also appears to desire that this Court abandon the real property without this Court evaluating the value thereof despite the fact that a fair sale of the property could pay all of the creditors, including Biros.  This is why Biros fights so hard–because she desires an unjust enrichment and to obtain a multi-million dollar property for a few hundred thousand dollars without regard to the other creditors.

Biros cites no case law to suggest that a creditor can seek to abandon property of an estate before a trustee is even appointed.  In *In re: Wideman*, 84 B.R. 9718 Collier Bankr.Cas.2d 650 (Bank. W.D. Tx. 1988), the Court explained that, while a creditor can move to *compel* a trustee to abandon property, it must be done after full notice and a hearing with all creditors receiving notice.  In *Wideman*, the Court specifically found that the creditors received inadequate notice, as here.

Regardless, there can be no basis for this Court to abandon all of U Lock's property – including possessions not itemized and a high value property worth more than Biros' unsecured claim.

As to the environmental problems, they have existed prior to the purchase of the property.  The property in question can be sold for well more than the debts of the estate.  Therefore, there is no basis to abandon the property.

### V. **Conclusion**

Based on the above, the motion filed by unsecured creditor

Christine Biros should be denied.

### <u>DECLARATION OF SHANNI SNYDER</u>

The above facts as stated are true and correct to the best of my knowledge, information, and belief. I filed the bankruptcy against U Lock in good faith because I believed that U Lock is not paying its bills as they become due, its assets are being conveyed to a single creditor without notice of participation to the other creditors, and that I hold an undisputed debt in excess of $10,000 with less than 12 other unsecured, non-insider creditors. I did not include my potential claim against U Lock on my 2018 bankruptcy petition because I did not fully understand that they owed me money for doing work. I was not receiving any compensation from U Lock and I did not receive a salary. I made it clear to the federal judge that they did not pay me anything. I did not begin to research my labor rights until 2020 when U Lock informed me that I would never receive a position with the Company, that its property was being given to Christine Biros, etc. My research of the Fair Labor Standards Act occurred after my bankruptcy and I learned that I could take action for the work I did even if U Lock said I did it for "sisterly love" or contingent upon their profitability. This is why it was not included in my schedules. Even if the time prior to May 2018 was removed from my judgment, it would still exceed $10,000. I declare under the penalty for perjury that the foregoing is true and correct to the best of my knowledge, information, and belief. 28 USC 1746.

Respectfully submitted,

Shanni Snyder
14390 Route 30
North Huntingdon PA 15642
shannis@pm.me
(412) 218-1750

PETITIONING CREDITOR

## CERTIFICATE OF FILING AND SERVICE

I, Shanni Snyder, certify that all participants to this case have joined the Court's Electronic Case Filing Service and will receive a copy of this document and the attached exhibits through that system and notification when the document is filed.

In addition, I certify that I filed this document on May 31, 2022, by depositing with the Clerk of Court's filing box.

Shanni Snyder

## ABSTRACT OF JUDGMENT

### Notice

4758 of 2021

Pursuant to Title 28, United States Code, Section 3201, this judgment, upon the filing of this abstract in the manner in which a notice of tax lien would be filed under paragraphs (1) and (2) of 26 U.S.C. § 6323(f), creates a lien on all real property of the defendant(s) and has priority over all other liens or encumbrances which are perfected later in time. The lien created by this section is effective, unless satisfied, for a period of 20 years and may be renewed by filing a notice of renewal. If such notice of renewal is filed before the expiration of the 20 year period to prevent the expiration of the lien and the court approves the renewal, the lien shall relate back to the date the judgment is filed.

| Names and Addresses of Parties against whom judgments have been obtained | Names of Parties in whose favor judgments have been ordered |
|---|---|
| U LOCK INC. also known as U-LOCK INC. 14140 Route 30 North Huntingdon PA 15642 | SHANNI SNYDER 14390 Route 30 North Huntingdon, PA 15642 |
| DOB(if available): -- Drivers Licence (if available): --- | Docket No. 2:21-cv-00904 |

| Amount of Judgment | Date Judgment Entered on Docket |
|---|---|
| $262,702.00 plus post-judgment interest $402 costs | October 18, 2021 |
| | **Credits:** none |

*Stamp: FILED PROTHONOTARY'S OFFICE WESTMORELAND COUNTY 2021 DEC 15 AM 10:10 CHRISTINA O'BRIEN PROTHONOTARY*

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

I CERTIFY, That the foregoing is a correct Abstract of the Judgment entered or registered by this Court.

Dated: 12/14/2021

Joshua C. Lewis, Clerk

By   Karen Sawdy                           , Deputy Clerk



**EXHIBIT A**

# IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PA
## CIVIL ACTION – LAW

**SHANNI SNYDER**

**Plaintiff**

Vs.                                                    Case No. 21JU04758

**U LOCK INC a/k/a
U-LOCK INC**

**Defendant**

**NOTICE OF THE ENTRY OF JUDGMENT** on the 15TH day of DECEMEBR, 2021 in the amount of $262,702.00 in the above captioned action.

Prothonotary

## THIS IS A NOTICE ONLY!

**IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA CIVIL DIVISION**

CHRISTINE BIROS, an individual,        **CIVIL DIVISION**

      **Plaintiff,**        No. 17CJ04886

vs.

                   **ORDER OF COURT**

U LOCK, INC., a Pennsylvania
corporation,

      **Defendant.**

**ORDER OF COURT**

AND NOW, this _13th_ day of _May_, 20_22_, it is hereby

**ORDERED** and **DECREED** that:

1.    The Prothonotary of Westmoreland County is directed to issue a Writ of

Possession to the Sheriff of Westmoreland County for property situate at 14140 Route 30, North

Huntingdon, PA 15642, with a Tax Map No. 54-03-10-0-10 (the "Property") against Defendant

U Lock, Inc. and in favor of Plaintiff Christine Biros.

2.    Such Writ will authorize levy and sale of any property of Defendant U Lock to

satisfy (a) the costs of the levy; (b) any unpaid property taxes; and (c) the costs of removal of

rubbish, trash, used cars and any other environmental hazard located on the Property.

3.    Defendant U Lock within five (5) days will comply with the Order of the

Pennsylvania Supreme Court to pay all due and unpaid real estate taxes on the Property.

4.    ~~Defendant U Lock within ten (10) days post financial security in an amount of~~

~~to pay for any environmental remediation which is necessary.~~

_Denied Without Prejudice as to #4 only._

**ATTEST:
GINA O'BARTO
PROTHONOTARY**

_Gina O'Barto_

**BY THE COURT:**

**EXHIBIT B**

**IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PA.**
**CIVIL ACTION – LAW**

| | |
|---|---|
| **CHRISTINE BIROS, an individual,**<br>**Plaintiff(s)** | **Case No.  X 4886 OF 2017**<br><br>**WRIT OF POSSESSION** |
| Vs. | |
| **U LOCK, INC., a Pennsylvania corporation,**<br>**Defendant(s)** | |

**COMMONWEALTH OF PENNSYLVANIA**
**COUNTY OF WESTMORELAND**

**TO THE SHERIFF OF WESTMORELAND COUNTY:**

**To satisfy the judgment for possession in the above matter you are directed to deliver possession of the following described property to CHRISTINE BIROS, an individual,**

**14140 Route 30, North Huntingdon, PA 15642, with a Tax Map No. 54-03-10-0-10**

**(2) To satisfy the costs against U LOCK, INC., a Pennsylvania corporation you are directed to levy upon any property of U LOCK, INC., a Pennsylvania corporation and sell (his, her, their, its) interest therein.**

**Date:  May 13, 2022**

_____
Prothonotary

_____
Deputy

**LAW FIRM OF WILLIAM E. OTTO**
**WILLIAM OTTO, ESQUIRE**

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PA.

CIVIL DIVISION

* * *

| | | |
|---|---|---|
| CHRISTINE BIROS, | ) | No. 4886 of 2017 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| U LOCK, INC., | ) | |
| | ) | |
| Defendant. | ) | |

* * *

HEARD:  Friday, May 20, 2022

    BEFORE:  The Honorable Harry F. Smail, Jr., Judge

* * *

TRANSCRIPT OF MOTION TO AMEND THE RECORD
AND MOTION FOR SANCTIONS

* * *

A P P E A R A N C E S :

On behalf of the Plaintiff:

    WILLIAM E. OTTO, ESQ.

On behalf of the Defendant:

    ALAN ROTH, ESQ.

**EXHIBIT C**

1       FRIDAY, MAY 20, 2022 - 9:49 A.M.

2              P R O C E E D I N G S

3                    * * *

4       THE COURT:  Call the case of Christine Biros,

5  plaintiff, versus U Lock, Inc. as defendant.  Case

6  number 4886 of 2017.

7       Will counsel please enter their appearance

8  for the record.

9       MR. OTTO:  Your Honor, I'm William Otto

10 representing Christine Biros.

11      MR. ROTH:  Alan Roth on behalf of U Lock.

12      THE COURT:  Let's first talk.  The Court is

13 indicating at this particular number, and the Court

14 notes that all appellate rights at this particular

15 number, 4886 of 2017, have been exhausted, that the

16 Court received from a nonparty who has no involvement in

17 the underlying Common Pleas case, nor the Superior Court

18 case, nor the allowance for appeal to the PA Supreme

19 Court case, nor the deferential treatment by the Supreme

20 Court of Pennsylvania for consideration of the Supreme

21 Court of the United States any interest at all filing a

22 notice of appeal at this number.

23      The Court did receive what is noticed as a

24 notice of appeal, but there's no standing.

25      Mr. Otto, if you'd like to address that.

**2**

1           MR. OTTO:  Your Honor, my only comment is,

2    first of all, that under Rule 2329(3), you have the

3    discretion to deny any request for intervention.  The

4    entry of appearance was filed using a form from family

5    court.  Wasn't even the normal petition for leave to

6    intervene.

7           So, I see no reason why this shouldn't be

8    stricken from the docket.

9           THE COURT:  Okay.  Do you want to make any

10   comment on this Shanni Snyder notice of appeal?

11          MR. ROTH:  No comments.

12          THE COURT:  Do you stand opposed to the oral

13   motion to strike it from the docket?

14          MR. ROTH:  I have no position on that.

15          THE COURT:  That's fine.  That's all I'm

16   asking.  You don't have to take a position.  You can

17   simply say no --

18          MR. ROTH:  No position.

19          THE COURT:  You're not involved in that.

20   Let's get back to Mr. Roth.  I gave you a pretty

21   thorough set of instructions relative to the caption.

22   Did you do anything to correct it?

23          MR. ROTH:  Yes, Your Honor.  I brought it to

24   your office three days ago.  I think it's waiting for

25   your signature to do what you asked to have done.

1          THE COURT:  Let me see here.  I got a notice

2     for bankruptcy.  Then I got your response to the

3     objections, filed.  I have a letter of May 18th from

4     Mr. Otto.  So this is the U Lock motion to correct

5     and/or strike the erroneous caption, correct?

6          MR. ROTH:  Yes.

7          THE COURT:  Did you see that, Mr. Otto?

8          MR. OTTO:  I did.  Given, Your Honor, it

9     looks like it was filed yesterday in the Prothonotary's

10    office, it should have been done several weeks ago.

11         THE COURT:  Right.

12         MR. ROTH:  It was delivered to your office,

13    Your Honor, about three days ago.  However, if I could

14    suggest to the Court --

15         THE COURT:  My understanding is we were here,

16    I think, end of April.

17         MR. OTTO:  22nd of April, Your Honor.

18         THE COURT:  22nd of April.  What took a

19    month?

20         MR. ROTH:  Well, what it was, I was diagnosed

21    with cancer, and that cancer was very far along.  That

22    interrupted everything I was doing.  I was doing all

23    kinds of testing and things.  That's why it took that

24    long to get it done.

25         THE COURT:  Mr. Otto, did you get an

**4**

1    opportunity to review the Order of Court attached to his

2    motion and do you have any objection to it?

3             MR. OTTO:  Your Honor, I just --

4             THE COURT:  As far as the wording is all

5    I'm --

6             MR. OTTO:  I saw that you have already

7    changed it on your order on the 13th.  Based on that,

8    Your Honor, I didn't look at it any further.

9             With all due respect to Mr. Roth's action, I

10   think your order on the 13th of May takes care of the

11   issue.

12            THE COURT:  I'll grant in part and deny in

13   part basically and refer to the order back to the May

14   13th sui sponte order that I issued.

15            MR. ROTH:  Yes.

16            THE COURT:  That issue is completed then.  We

17   are here today.  Mr. Otto, for the record's sake, would

18   you like to address your May 18th, 2022, correspondence

19   just so that we establish it on the record?

20            MR. OTTO:  Yes.  First of all, as Your Honor

21   is aware, there's been an involuntary Chapter 7

22   bankruptcy filing against U Lock.  And under the federal

23   bankruptcy code, an automatic stay goes into effect.

24            So, the purpose of this presentation this

25   morning, Your Honor, I want to make very clear has

1    nothing to do with U Lock specifically.  I'm not asking

2    for you to rule on anything related to U Lock

3    specifically.

4             But the motion that I submitted to you

5    previously for sanctions included request for sanctions

6    against both Mr. Roth as well as George and Cash Snyder.

7    I would like you to consider those.

8             Just to point out a couple of things related

9    to our previous hearing, Your Honor.  At that hearing,

10   Mr. George Snyder agreed to provide information related

11   to old cars that were on the site.  He agreed that he

12   would provide the name of the police officer that he

13   spoke to, as well as copies of various releases he

14   claims he had from car owners.  That was to be delivered

15   on the Tuesday following the April 22nd hearing.

16            I have not received anything from either

17   Mr. Roth -- and I wouldn't expect to receive it directly

18   from Mr. Snyder, but I didn't receive anything from

19   Mr. Roth.

20            Second, Mr. Snyder said the taxes would be

21   paid on the property.  They have not been paid.  I don't

22   expect them to get paid now because that is an

23   obligation of U Lock, and it's certainly stayed by the

24   bankruptcy petition.

25            But I believe that goes to the fact that

1    there have been no commitments made by the principals of

2    U Lock which have been kept, and, of course, the last

3    item is the estate release.  It had to be executed, and

4    that required your action.  Otherwise, it wouldn't have

5    been done until the last couple of days.

6           With that in mind, if you look at the motion

7    that I filed or the information that I filed to

8    supplement your request, there is a summary that shows a

9    number of invoices for -- that came after or -- on or

10   after November 2019.

11          Mr. Roth made the point that he believes any

12   actions of his prior to the date of his bankruptcy

13   petition would have been discharged.  Regardless of

14   whether that's right or not, a substantial amount of

15   what we have complained about took place after that

16   date.

17          You may not recall, Your Honor, but in

18   November we began hearings on his post-trial motions.

19   And subsequent to that he filed appeals in the Superior

20   Court and a Petition for Leave to Appeal to the Supreme

21   Court.  And at every step, he again raised the issue of

22   my client's source of funds.

23          So I believe the motion is still relevant.

24   Even if you exclude the invoices for matters prior to

25   November, it still runs around 8 to $9,000, which

1    whether that amount would be collectible is up in the

2    air, Your Honor.  But at least --

3           THE COURT:  Well, your motion suggests or

4    your supplemental -- I want to call it right.  Your

5    evidence in support that was filed supports $14,280, but

6    your request for sanctions is $20,000.

7           MR. OTTO:  Yes.

8           THE COURT:  So we have $5,720 that are not

9    established.  Your request for that is for damages you

10   felt your client sustained because of the malfeasance or

11   behaviors on the other side of the case.  I have to

12   consider what actual damages are.

13          And if you follow the precedent law, unless

14   there's some evidentiary presentation of actual damages

15   sustained as a result of even misuse of freedom of

16   speech to the defamatory effect of somebody's

17   reputation, you would have to represent or present

18   evidence in support of it, even if it's not the full

19   request, but enough to establish that I can take actions

20   on established damages.

21          Do you have that to present today?

22          MR. OTTO:  May I speak with my client?

23          THE COURT:  Sure.

24   (Indulgence)

25          MR. OTTO:  Your Honor, I'm not sure we can

1    quantify anything.  With that in mind . . .

2              THE COURT:  That was a concern of mine,

3    obviously for the balance of the demand or request.

4    Because if there's not quantification, I'm precluded by

5    precedent law as to what remedies I can make available

6    within an Order of Court because I don't want to create

7    an automatic additional appellate issue.

8              MR. OTTO:  I understand, Your Honor.

9              THE COURT:  Mr. Roth, obviously at this point

10   in time there's a Chapter 7 bankruptcy that you served

11   me a notice on relative to U Lock, Inc.  Now there's a

12   question of whether or not the sanctions can be imposed

13   upon George and Cash Snyder, joint and severally, that

14   are not necessarily protected by the bankruptcy

15   pleading.

16             So, do you want to respond to that?

17             MR. ROTH:  Well, Your Honor, we believe that

18   the bankruptcy pleading stays all activity in this case,

19   because the case does involve U Lock, and we believe the

20   stay -- and I actually have a copy of the section that

21   grants the stay right here if you want to see that.

22             THE COURT:  If you want to bring that up,

23   I'd be happy to.  I want to touch base on one thing.

24   You gave me a Rule of Civil Procedure rule.

25             MR. OTTO:  2329(3.

9

1            THE COURT:  That'll save my law clerk time to

2    look it up.

3            MR. ROTH:  I believe that the automatic stay

4    stays all proceedings in this case because U Lock is an

5    active participant in the case.  Therefore, we don't

6    believe that anything should be happening today with

7    regard to these issues.

8             Once the bankruptcy is resolved, then we can

9    come back and revisit these issues then if we need to do

10   that.  And I believe that's how it should happen.

11           THE COURT:  How does your bankruptcy

12   petition, though, in any way void my prior orders for

13   the receipt of deeds and possession of the property

14   since they were prior to the filing of the bankruptcy?

15           MR. ROTH:  Well, first of all, we did not

16   file the bankruptcy.  Shanni Snyder filed the

17   bankruptcy.

18           THE COURT:  No.  She filed a suggestion for

19   bankruptcy, and then apparently somebody received --

20   acknowledged it.

21           MR. ROTH:  Well, what happened is --

22           THE COURT:  My question is, how does she have

23   standing other than the liquidated damages to the labor

24   and wage case that she had in the federal court against

25   U Lock where she doubled her damages because of the

1    liquidation claim, which I'm aware of to suggest

2    bankruptcy based on those claims, but how does that

3    relate back to Shanni Snyder's claims as to the

4    property, the possession thereof and ownership that

5    we've already established after the exhaustion of appeal

6    back to Christine Biros?

7             MR. ROTH:  Well, the bankruptcy -- the

8    bankruptcy is an involuntarily bankruptcy.

9             THE COURT:  I understand that.  But it's

10   filed by a nonparty.

11            MR. ROTH:  Yes.

12            THE COURT:  As to the relationship of this

13   case number Christine Biros versus U Lock, Inc., Shanni

14   Snyder's claims are based from a federal lawsuit under

15   labor and wage which was defaulted, which kicks in then

16   the automatic doubling of the damages and liquidated

17   damages which Judge Colville entered.

18            So, she has the suggestion of bankruptcy for

19   U Lock relative to that claim and what they have.  But

20   if properties have already been deeded, transferred and

21   then are simply up for possession prior to that

22   bankruptcy being filed, which is the case here, what's

23   your position on that?

24            To be quite honest, you're asking us to stay

25   this automatically for related claims that have nothing

1      to do with Christine Biros, but they do relate to

2      U Lock, Incorporated.

3              MR. ROTH:  Well, because of the automatic

4      stay, which you have in front of you, that stays all

5      proceedings against U Lock.  It stays all proceedings.

6              THE COURT:  Okay.  And I'll grant you that.

7      Let's say it stays it from the date it was filed before

8      the U.S. Bankruptcy Court, which is April 28th, 2022.  I

9      issued orders before that granting the deeds to

10     Christine Biros and the properties to her prior to the

11     bankruptcy.  So the automatic stay doesn't protect that.

12             MR. ROTH:  I'm not saying that it does.  I

13     understand what you're saying.

14             THE COURT:  So she can continue to move for

15     possession of her properties that she owns by deed,

16     because that's prior to the bankruptcy.  That's not a

17     protected field under the automatic stay, because the

18     claim was made after the events that transpired and

19     after the exhaustion of the appeals through the state

20     system and your allowance for consideration to enter

21     into the federal system.  And you didn't do it.

22             MR. ROTH:  I believe that the stay covers any

23     of these proceedings today.  I believe that that's what

24     the stay does.

25             THE COURT:  But you don't have an Order of

1   Court that tells me it does.  You just have the U.S.

2   Code Title 11 Subsection 362.  But that doesn't stay

3   prior events before the date of the bankruptcy

4   proceeding.  Or the filing thereof.

5          MR. ROTH:  It stays all actions against

6   U Lock.

7          THE COURT:  Those actions are done.  That's

8   what I'm trying to say.  They are not proceedings that

9   are going on.  She already has the ownership of the

10  property.  So therefore -- and by right, it's her

11  property.  Now she can remove off anybody that she sees

12  as a squatter on her property by eviction, because

13  that's -- it's prior to the bankruptcy, unless you have

14  some case that indicates to me this real property is at

15  issue.

16         But the real property isn't even at issue in

17  the bankruptcy because it's not even an asset on April

18  the 28th, 2022 at 4:53 p.m. when Shanni Snyder filed

19  this.

20         MR. ROTH:  We still believe the stay applies.

21  If you disagree with that --

22         THE COURT:  Well, if I disagree with that and

23  I enter an order to that effect, obviously you can have

24  it reviewed by the bankruptcy court judge, who then

25  could, under the supremacy clause, indicate to the state

1   court that an order issue suspending that possession.

2           But I think you're going to have to establish

3   with the Western District Bankruptcy Court a precedent

4   that indicates that or something statutorily that

5   applies under U.S. Code 11 Subsection 362 that is a

6   mandate that applies to a state enforcement of prior

7   conduct which is completed before the bankruptcy begins.

8           That's the dilemma.  It's the timing of when

9   the bankruptcy began.  I think you would be correct here

10  if this thing started prior to my April -- I believe

11  22nd Order of Court.  If it was prior to the April 22nd

12  Order of Court of 2022, then you would have standing to

13  say I'm automatically stayed.  This came in six days

14  after that order went into effect.

15          MR. ROTH:  I understand.

16          THE COURT:  And you don't have an appellate

17  order by mandamus or king's bench that says I must stay

18  the allowance of the state action below because all the

19  appeals are exhausted.

20          MR. ROTH:  I understand what you're saying.

21          THE COURT:  Correct?

22          MR. ROTH:  We still submit we should have the

23  protection.

24          THE COURT:  I understand.  Mr. Otto.

25          MR. OTTO:  Your Honor, if you would issue

1    such an order, that would help us in the bankruptcy

2    court.

3            THE COURT:  I think that's your third request

4    essentially is that the bankruptcy doesn't affect the

5    April 22nd, 2022, Order of Court for the deeds and

6    possession.

7            MR. OTTO:  Right.

8            THE COURT:  Okay.  I think it does confound

9    you on the taxes.  It does confound you on the vehicles.

10           MR. OTTO:  That's the order related to Shanni

11   Snyder.  Or the rule.

12           THE COURT:  Anything further that you would

13   like on the record for today?

14           I'm going to take all this under advisement.

15   I am going to look into the bankruptcy U.S. Code Title

16   11 Subsection 362 to see if there's any binding by the

17   supremacy clause as to events that transpired before the

18   bankruptcy.  Because that's the real issue.  And if it

19   does bind me and I don't have the authority and/or

20   jurisdiction, then I'll agree with your automatic stay

21   and I'm done.

22           But if there's not, then I think that the

23   Court will find that the April 22nd, 2022, Order of

24   Court can still proceed because the bankruptcy came

25   afterwards.

1          MR. OTTO:  Your Honor, there is a recent

2    change to the bankruptcy code.  I'm not a bankruptcy

3    attorney, so I don't have the citation.  But it relates

4    to stays or the impact of stays on expired leases.

5          The reason for the change was that when a

6    tenant's lease expired, a tenant would often file a

7    bankruptcy petition to delay their eviction process.

8    So, the change in the bankruptcy code provided that if

9    the lease has expired, then the automatic stay does not

10   apply to efforts to regain possession.

11         I don't know the extent to which that applies

12   in this situation, but it is certainly an analogous case

13   where the debtor or U Lock has no right to the property.

14         THE COURT:  You would assume that the

15   eviction here would more or less mirror a landlord

16   tenant like lease?

17         MR. OTTO:  Yes.  That's my point, Your Honor.

18         MR. ROTH:  I can tell the Court that I've

19   done hundreds of bankruptcies, and I don't believe that

20   what he's arguing is going to apply to this particular

21   case.

22         THE COURT:  See, I would tend to agree with

23   you if it was within the time frame subsequent to the

24   filing of the bankruptcy.

25         MR. ROTH:  I understand.

1          THE COURT:  Then I think I'm bound

2    automatically.  There's this question of six days before

3    I enter an order, because the appellate process or the

4    Commonwealth of Pennsylvania and then one allowance into

5    the federal statement wasn't utilized.

6          So the question is, does that escape the

7    automatic stay of the bankruptcy and is permissibly

8    permitted to proceed in the form of an eviction for

9    possession?

10          He's saying even after a bankruptcy is filed

11    under a landlord/tenant type lease expired, the

12    automatic stay doesn't apply.  I'm concerned that it

13    applies even less to an event that transpired before the

14    bankruptcy than subsequent to.  And that's our dilemma.

15          Would you prefer to have leave to brief this

16    particular issue from both sides and submit that?

17          MR. OTTO:  Your Honor --

18          THE COURT:  It wouldn't have to be anything

19    significant.

20          MR. OTTO:  On one hand, I would love the

21    opportunity to do that.  I'm also reluctant to cause my

22    client to have to spend more money to respond to

23    arguments which I believe are nonsense.

24          I have no problem, if Your Honor would like,

25    I can get the citation and any cases and provide them to

1   both you and Mr. Roth.

2            THE COURT:  Instead of a brief, legal

3   memorandum that would be in the form of a letter that

4   can be exchanged between counsel.

5            MR. ROTH:  I can do it that way.

6            THE COURT:  Here's my issue:  What I would

7   like to do is I would like to have it in short order.  I

8   don't want this languishing.  Could you have it by close

9   of business next Friday at 5 p.m.?

10           MR. OTTO:  Yes, Your Honor.

11           THE COURT:  That would give you all of next

12  week, five business days to get it together, but seven

13  days from today.

14            And it doesn't have to be in the form of a

15  brief or anything, just a legal memorandum by

16  correspondence of any citations you want me to look at

17  or review so that Caitlin, my law clerk, and I can look

18  at those items and consider your argument that the

19  automatic stay is imposed upon me.

20            I would consider Mr. Otto's position that it

21  is not imposed upon me and does not subject my

22  authority.  Is that agreeable?

23           MR. ROTH:  That's fine.

24           THE COURT:  We'll allow you to do that.  I'm

25  going to look at everything in the intervening time, and

1    then I'll defer ruling until after I receive the legal

2    memorandums.  The earlier you get them to me, the

3    earlier I can issue orders.

4            But in reference to the Shanni Snyder case, I

5    am going to issue an order relative to that that is

6    permissible by Pennsylvania Rules of Civil Procedure if

7    I feel that it's my duty to do so.

8            MR. OTTO:  Thank you, Your Honor.

9            MR. ROTH:  Could I just add a little bit

10   about his request for sanctions and the amount?

11           THE COURT:  Okay.  Yes.

12           MR. ROTH:  All right.  I point out when

13   preliminary objections were filed by Mr. Otto, he filed

14   five or six issues in those preliminary objections.  The

15   Court ruled on one of those.

16           Now they're making a claim and they're trying

17   to tack costs for all of this research on all of these

18   issues.

19           THE COURT:  My question to you, Mr. Roth, is

20   why didn't you file a response to his motion that would

21   calculate down off of his billable time of $14,280,

22   which I don't think should even be considered?

23           MR. ROTH:  Well --

24           THE COURT:  If that's your argument now,

25   obviously I don't have the time this morning because of

1    subsequent hearings that are coming up to go line by

2    line down to challenge his billable rate or his time.

3              MR. OTTO:  Your Honor, with all due respect,

4    as I said earlier, and Mr. Roth isn't looking at it

5    obviously, but my summary, if you exclude the time prior

6    to November 19th, it takes out the preliminary

7    objections.  From November 19 on was post-trial action.

8    There's a summary --

9              THE COURT:  If you look --

10             MR. OTTO:  Next page.  A little forward.  A

11   little more.

12             THE COURT:  A.

13             MR. OTTO:  And the dates are on the left-hand

14   column, Your Honor.  So if you exclude, I think, the

15   first three lines, then you get to November, my November

16   invoices.

17             THE COURT:  There's a $1050 there.

18             MR. OTTO:  The first couple were prior to the

19   November time frame.

20             THE COURT:  I see.

21             MR. OTTO:  So even if you take Mr. Roth's

22   argument about preliminary objections, that's excluded

23   from what I've said this morning.

24             THE COURT:  I see.  So there would be about,

25   looks like $3,025.  If you take those --

1              MR. OTTO:  I believe it's around 8,000, Your
2      Honor.  It's --
3              THE COURT:  I'm just looking at the summary.
4      Oh, I see what you're seeing.  The value of hours.
5              MR. OTTO:  Right.
6              THE COURT:  If you look at that, that's about
7      $18,000.
8              MR. OTTO:  Well, no.  If you look at the
9      fourth date down, that's 11-2-2019.  And then go across
10     all the way to the far right-hand corner and total those
11     three numbers.  It's around $10,000.
12             THE COURT:  I see.  Okay.
13             MR. OTTO:  And that excludes, as Mr. Roth was
14     concerned about, my time for preliminary objections.  In
15     fact, that excludes everything through trial.
16             THE COURT:  Okay.  I'm trying to follow you,
17     but your numbers aren't reconciling with my numbers.
18     Even if I take those four summation numbers to the far
19     right --
20             MR. OTTO:  If you look on the far left
21     column, you see there's one billing for 11-7-2019.  The
22     remaining three items are for billings after trial.  If
23     you go to the far right hand, there's a number 205 plus
24     7,000 plus 1050.  Those are the numbers I'm now asking
25     for sanctions for.

1          THE COURT:  I see.  Okay.  So there's a

2 modification then from the 14,280, because those are not

3 the preliminary objections or, if you will, prediscovery

4 hours billed.

5          MR. OTTO:  Yes.  And that is -- while I don't

6 agree with Mr. Roth's summary as to the effectiveness of

7 his bankruptcy filing, those three numbers there are

8 post his petition filing and are not discharged.

9 Whatever his theory is.

10          THE COURT:  I will -- and that will be from

11 11-7 of '19 to the conclusion of that summation.

12          MR. OTTO:  Yes, Your Honor.

13          THE COURT:  With that modification and

14 adjustment, Mr. Roth, it goes from the 14,280, then it

15 appears to be between 8 or 9,000 dollars for the claim

16 now.

17          Are you still saying there's something else

18 that should be shaved off of it?

19          MR. ROTH:  I would like to say this:  For the

20 amount of time he's claiming, he's claiming six or seven

21 times the amount of time that I spent on the appeal and

22 the post-trial motions.  That just doesn't seem

23 realistic.

24          Appeal and post-trial motions take time.  But

25 he's taking six or seven times what my time was, and I

1    don't think that's a fair analysis of the amount of time

2    that he really would have spent on those things.

3          THE COURT:  I think that goes to the weight

4    that I would put into it by experience being on the

5    bench, by being a practicing solo attorney being in

6    private practice, as to whether that has reasonableness

7    or not.

8          So whatever weight and consideration I would

9    give it to a modification based upon your assertion that

10    it's unreasonable as far as his statement.  Different

11    practices address different issues with different

12    insight and time.

13          I don't know how many times he had to meet

14    with his client to gain information.  That would have

15    added to his response time.  There's a lot of factors

16    that would have come into it.  Is there a whole load of

17    research that you had to look into issues?

18          MR. OTTO:  I had to not only read the cases

19    that he cited, I had to prepare my own brief.

20          Quite frankly, Your Honor, his brief was so

21    disjointed, I had to reorder the whole thing in order to

22    make sense of it for appellate purposes and for your

23    purposes.

24          THE COURT:  Okay.  I'll give it the weight

25    and credibility that I believe is reasonable and uses

1    common sense relative to that.  Thank you very much.

2              Anything further from counsel?

3              MR. ROTH:  Nothing, Your Honor.

4              THE COURT:  All right.  We're concluded and

5    adjourned.  I'll be looking for legal memorandums by

6    5 o'clock next Friday.

7              MR. OTTO:  Thank you very much, Your Honor.

8

9              PROCEEDINGS ADJOURNED AT 10:25 A.M.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Supreme Court of Pennsylvania**



**Allocatur Docket Sheet**

**Docket Number:  259 WAL 2021**

**Page 1 of 3**

**May 29, 2022**

CAPTION

Christine Biros, an individual, Respondent

v.

U Lock Inc., a Pennsylvania Corporation, Petitioner

CASE INFORMATION

| | | | |
|---|---|---|---|
| Initiating Document: | Petition for Allowance of Appeal | | |
| Case Status: | Active | | |
| Journal Number: | | | |
| Case Category: | Civil | Case Type(s): | Declaratory Judgment |
| | | | Equity |
| | | | Quiet Title |
| | | | Real Property |

CONSOLIDATED CASES                    RELATED CASES

COUNSEL INFORMATION

| | |
|---|---|
| Attorney: | Roth, John Allen |
| Address: | 805 S Alexandria |
| | Latrobe, PA 15650 |
| Phone No: | (724) 537-0939 |
| Receive Mail: | Yes |
| Receive EMail: | Yes |
| Representing: | U Lock Inc., Petitioner |
| Pro Se: | No |
| IFP Status: | |

Email:

| | |
|---|---|
| Attorney: | Otto, William E. |
| | Law Firm of William E. Otto, Esq. |
| Address: | Po Box 701 |
| | Murrysville, PA 15668 |
| Phone No: | (724) 519-8778 |
| Receive Mail: | Yes |
| Receive EMail: | Yes |
| Representing: | Biros, Christine, Respondent |
| Pro Se: | No |
| IFP Status: | |

Email:

Neither the Appellate Courts nor the Administrative Office of Pennsylvania Courts assumes any liability
for inaccurate or delayed data, errors or omissions on the docket sheets.

**EXHIBIT D**

**Supreme Court of Pennsylvania**



**Allocatur Docket Sheet**

**Docket Number:  259 WAL 2021**

**Page 2 of 3**

**May 29, 2022**

## SUPREME COURT INFORMATION

Appeal From:
Appeal Filed Below:

| | | |
|---|---|---|
| Probable Jurisdiction Noted: | Docketed Date: | August 27, 2021 |
| Allocatur/Miscellaneous Granted: | Allocatur/Miscellaneous Docket No.: | |
| Allocatur/Miscellaneous Grant Order: | | |

## FEE INFORMATION

| Fee Dt | Fee Name | Fee Amt | Receipt Dt | Receipt No | Receipt Amt |
|---|---|---|---|---|---|
| 08/27/2021 | Petition for Allowance of Appeal Filed | 90.25 | 08/27/2021 | 2021-SUP-W-002013 | 90.25 |

## INTERMEDIATE APPELLATE COURT INFORMATION

| | | | |
|---|---|---|---|
| Court Name: | Superior | Docket Number: | 1841 WDA 2019 |
| Date of Order: | May 21, 2021 | Rearg/Recon Disp Date: | July 28, 2021 |
| | | Rearg/Recon Disposition: | Denied. |
| Judge(s): | Shogan, Jacqueline O. | | |
| | Stabile, Victor P. | | |
| | King, Megan | | |
| Intermediate Appellate Court Action: | | Affirmed. | |
| Referring Court: | | | |

## AGENCY/TRIAL COURT INFORMATION

| | | | |
|---|---|---|---|
| Court Below: | Westmoreland County Court of Common Pleas | | |
| County: | Westmoreland | Division: | Westmoreland County Civil Division |
| Date of Agency/Trial Court Order: | January 6, 2020 | | |
| Docket Number: | 17 CJ 04886 | | |
| Judge(s): | Smail, Harry F. | OTN: | |
| Order Type: | Judgment | | |

## ORIGINAL RECORD CONTENT

| Original Record Item | Filed Date | Content/Description |
|---|---|---|

**Record Remittal:**

## DISPOSITION INFORMATION

| | | | |
|---|---|---|---|
| Related Journal No: | | Judgment Date: | |
| Category: | Decided | Disposition Author: | Per Curiam |
| Disposition: | Order Denying Petition for Allowance of Appeal | Disposition Date: | January 19, 2022 |
| Dispositional Filing: | | Author: | |
| Filed Date: | | | |

**Supreme Court of Pennsylvania**



**Allocatur Docket Sheet**

**Docket Number: 259 WAL 2021**

**Page 3 of 3**

**May 29, 2022**

| DISPOSITION INFORMATION |
| --- |

| DOCKET ENTRY |
| --- |

| Filed Date | Docket Entry / Representing | Participant Type | Filed By |
| --- | --- | --- | --- |
| **August 27, 2021** | **Petition for Allowance of Appeal** | | |
| | | Petitioner | U Lock Inc. |
| **August 27, 2021** | **Reproduced Record** | | |
| | | Petitioner | U Lock Inc. |
| **September 8, 2021** | **Answer to Petition for Allowance of Appeal** | | |
| | | Respondent | Biros, Christine |
| **January 19, 2022** | **Order Denying Petition for Allowance of Appeal** | | |
| | | | Per Curiam |

Comments:
AND NOW, this 19th day of January, 2022, the Petition for Allowance of Appeal is DENIED.

| | | | |
| --- | --- | --- | --- |
| **January 19, 2022** | **Order Exited** | | |
| | | | Office of the Prothonotary |
| **February 2, 2022** | **Application Pursuant to Pa.R.A.P. 2572(c) to Stay Remand of Record Pending US Supreme Court Review** | | |
| | | Petitioner | U Lock Inc. |
| **February 15, 2022** | **Answer to Application to Stay Remand and Application for Appropriate Security** | | |
| | | Respondent | Biros, Christine |
| **March 16, 2022** | **Order Granting Stay of Remand of Record Pending US Supreme Court Review** | | |
| | | | Per Curiam |

Comments:
AND NOW, this 16th day of March, 2022, the Application to Stay Remand of Record Pending United States Supreme Court Review is GRANTED.   Additionally, in accordance with Pa.R.A.P. 2572(d), Petitioner is hereby instructed to pay all accrued and unpaid real estate taxes and to keep such taxes current during the pendency of its occupancy of the Property.

| | | | |
| --- | --- | --- | --- |
| **March 16, 2022** | **Order Exited** | | |
| | | | Office of the Prothonotary |
| **May 11, 2022** | **Bankruptcy Notice - Action Stayed** | | |
| | | | Supreme Court of Pennsylvania |

| CROSS COURT ACTIONS |
| --- |

Docket Number:                          1841 WDA 2019

**IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT**

| | |
|---|---|
| CHRISTINE BIROS, AN INDIVIDUAL, | :   No. 259 WAL 2021 |
| Respondent | : |
| v. | : |
| U LOCK INC., A PENNSYLVANIA CORPORATION, | : |
| Petitioner | : |

**ORDER**

**PER CURIAM**

    **AND NOW**, this 16th day of March, 2022, the Application to Stay Remand of Record Pending United States Supreme Court Review is **GRANTED**.  Additionally, in accordance with Pa.R.A.P. 2572(d), Petitioner is hereby instructed to pay all accrued and unpaid real estate taxes and to keep such taxes current during the pendency of its occupancy of the Property.

**EXHIBIT E**



THIS LOAN AGREEMENT BETWEEN U-LONE INC. (BORROWER) A PENNSYLVANIA CORPORATION AND CHRISTINE BIKOS (LENDER) AND/OR CALCULATOR (Collateral/???) FROM SLT BANK FOR THE SUM OF $325,316 ON THE TERMS & CONDITIONS OF THE PAYMENT WILL BE AGREED UPON ON OR BEFORE 8/16/15 (DATE) I WILL GET $25K IF AGREEMENT IS NOT SCHEDULED BY THAT DATE

Paul ___ PRESIDENT
ULONE INC.
7/16/15

PLAINTIFF'S
EXHIBIT
EXHIBIT F
4886C17

**Ms. Christine Biros**
**P.O. Box 550**
**1985 Lincoln Way**
**White Oak, PA 15131**

May 5, 2017

Mr. George Snyder
U-Lock Inc.
14140 State Route 30
North Huntingdon, PA 15642

    **RE:**   **Loan from Christine Biros to U Lock Inc.**

Dear Mr. Snyder:

    The purpose of this letter is to document a loan (the "Loan") to U-Lock Inc. (the "Borrower") from me (the "Lender") for the purchase of real estate located at 14140 State Route 30, North Huntingdon, PA 15642 (the "Property"). On July 16, 2015 (the "Loan Date"), the sum of Three Hundred Twenty-Five Thousand and no/100 Dollars ($325,000.00) (the "Proceeds") was advanced to the Borrower to purchase the Property.

    On the Loan Date, the Proceeds were paid to the sellers of the Property. At that time, the Borrower delivered a signed document to me committing to terms of payment to be agreed upon on or before August 16, 2015. The document also provided that in the event no agreement was reached, the Lender would set the terms of payment. That date has passed with no agreement having been reached.

    In addition, despite the passage of almost two years, the deeds which were delivered to the Borrower (the "Deeds") evidencing the transfer of title to the Property to the Borrower have not been recorded and no repayments of the Proceeds have been made.

    Since U-Lock has had access to the Property and the use of the Proceeds for almost two years, I have added the accrued interest to the Proceeds in order to establish the amount of the Loan. Based on the date on which the Proceeds were advanced, July 16, 2015, using an interest rate of nine percent (9.0 %) and assuming that this transaction closes on or before June 15, 2017, the amount of interest to be added to the Proceeds is Sixty Thousand Nine Hundred Thirty-Nine and 85/100 Dollars ($60,939.85).

    As a condition to proceeding with this Loan transaction, there will be guarantee agreements signed and delivered by you, Kash Snyder and Erik Martin. All three have been involved in this transaction in one manner or another and since no payments have been made since July 16, 2015, it is appropriate that all three execute guarantees assuring the Lender of repayment. You, Kash Snyder and Erik Martin are collectively referred to in this letter as the "Guarantors".

    Accordingly, the Borrower and Guarantors agree as follows.

1.    The following transaction will be closed on or prior to June 15, 2017 (the "Closing Date").

2.    On the Closing Date, the Borrower and the Guarantors will execute and deliver appropriate loan documents to evidence and secure the Loan. The loan documents will



**EXHIBIT G**

Mr. George Snyder
U Lock Inc.
May 5, 2017
Page 2

include, but not be limited to, the following: a Note, a Mortgage and an Assignment of
Leases and Rents, all executed by the Borrower, and Guarantees executed by the
Guarantors. In addition, the Borrower will provide appropriate corporate documents
evidencing the Borrower's authorization of the Loan. All documents and documentation
will be in form acceptable to Lender and Lender's counsel.

3.  The Note will be in the face amount of the sum of Three Hundred Eighty-Five Thousand
    Nine Hundred Thirty-Nine and 85/100 Dollars ($385,939,85) plus the additional charges
    advanced by the Lender pursuant to Section 5 below.  The Note will bear interest at an
    annual rate of nine percent (9.0 %) per annum, with monthly payments of principle and
    interest, based on an amortization of ten (10) years, with a balloon payment of the
    outstanding balance of the Loan due on or before June 1, 2022.

4.  On the Closing Date, the Deeds will be delivered to Lender's counsel for recording.

5.  The Lender will advance the following charges, all of which will be added to the
    principal balance of the Loan. These amounts will be finalized at the closing and will be
    evidenced on the face of the Note.
    (a) recording fees and transfer taxes due and owing on the Deeds;
    (b) the Lender's legal fees; and
    (c) any other charges which Lender may incur for this transaction.

The undersigned represent that they are authorized to execute this letter agreement on behalf of
the Borrower.  The undersigned also acknowledges that this letter agreement is binding upon each of the
Guarantors and the Borrower and is fully enforceable.

Very truly yours,

Christine Biros

**INTENDING TO BE LEGALLY BOUND, AGREED TO AND ACKNOWLEDGED THIS _____
DAY OF MAY, 2017:**

**BORROWER:**                                      **GUARANTORS:**
**U LOCK INC.**                                    **GEORGE SNYDER**

By: _____                      _____
Name: George Snyder                                    George Snyder
Title: _____

                                                   _____
                                                       Kash Snyder

                                                   _____
                                                       Erik Martin



PGH00130