IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTINE BIROS,                        )
        Plaintiff                    )   2:23 cv 00297
                                         )
          v.                         )
                                         )
SHANNI SNYDER et al,                    )
               Defendants.            )

**BRIEF IN SUPPORT OF THE MOTION TO DISMISS**

AND NOW COMES Defendant J. Allen Roth, Esq., and files this, his Brief in Support of the Motion to Dismiss, Motion for Judgment on the Pleadings, or, in the alternative, Motion to Strike redundant, immaterial, impertinent, or scandalous matter.

I.   **INTRODUCTION**

The entire crux of this lawsuit is that a company, U Lock Inc., represented by the undersigned, and operated in part by George Snyder and Kash Snyder, stated in the past and currently that Shanni Snyder is not an "employee" of U Lock.  In other words, Ms. Snyder received no money from U Lock and no salary. She received no W-2 form and no 1099 form because she did not receive payment. Therefore, when asked if Ms. Snyder was employed by U Lock, the response was "no." This is the simple understanding and a fair, reality based, conclusion.

On the other hand, according to Shanni Snyder, in 2021, an agent from the Department of Labor visited a property she resides at and, through the interaction, she learned that the Fair Labor Standards Act defines employment and employee in a much more broad sense.  After this, Shanni Snyder wanted paid for various work.

Specifically, the FLSA defines "employ" broadly as including "to suffer or permit to work," 29 U.S.C. 203(g), which clearly covers more workers as employees,

*see U.S. v. Rosenwasser*, 323 U.S. 360, 362-63 (1945). The "suffer or permit" standard was specifically designed to ensure as broad of a scope of statutory coverage as possible.  *Rosenwasser*, at 362-63 ("A broader or more comprehensive coverage of employees…would be difficult to frame."); *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) ("employ" is defined with "striking breadth").

Christine Biros and her team of legal counsel cannot understand that there is a distinction between a dictionary definition and a statutory definition so a plethora of litigation now exists.

Before this Court, Biros filed an abusive Complaint under the Racketeer Influenced Corrupt Organizations Act complaining of certain alleged litigation tactics. Using terms such as "based on information and belief," the lawsuit contains various insinuations into the content of attorney-client privileged communications, litigation strategy, and attorney work product to try to turn an ordinary business dispute into a RICO claim.

The commingling of counsel in this lawsuit places him in the precarious position of having to defend the actions of litigation adversaries, the clients, and counsel at the same time.

Adjudicating this RICO case will require that this Court collaterally attack various Orders of the United States Bankruptcy Court, including its specifically granting Shanni Snyder's petition to place U Lock Inc. into bankruptcy and the denial of Biros' Motion to Dismiss, neither of which were appealed despite Biros' active participation in that case.  In addition, this lawsuit collaterally attacks a judgment against U Lock Inc. that Biros has no standing to attack and which only indirectly affects her.

Because RICO's breadth can have unintended consequences in civil suits, courts should "strive to flush out frivolous RICO allegations at an early stage of the litigation" and "lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." *Schmidt v. Fleet Bank,* 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998).  RICO abuses, because of the negative connotations of this type of lawsuit, are often criticised by the courts. *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990) (recognizing that mere assertion of RICO claims may have stigmatizing effect on named defendants); *Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 179 (S.D.N.Y. 2020) (collecting New York district court cases); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) (recognizing that fraud claims pose threat to business' reputation); *Limestone Dev. Corp. v. Vill. of Lemont,* 520 F.3d 797, 803 (7th Cir. 2008) (affirming dismissal of RICO claim and warning against permitting a plaintiff "with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence" (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975)); *Wagh v. Metris Direct Servs., Inc.*, 348 F.3d 1102, 1108 (9th Cir. 2003), overruled on other grounds by Odom v. Microsoft Corp., 486 F.3d 541, 551 (9th Cir. 2007); *JST Distribution, LLC v. CNV.com, Inc.*, No. CV-17-6264-PSG, 2018 WL 6113092, at *8 (C.D. Cal. Mar. 7, 2018); *Sky Medical Supply Inc. v. SCS Support Claims Services, Inc.*, 17 F. Supp. 3d 207, 220 (E.D.N.Y. 2014) (noting that "plaintiffs wielding RICO almost always miss the mark" which has resulted in "skepticism" toward civil RICO claims).

## II.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must make allegations with sufficient factual detail under Rule 8(a) that, if those allegations were assumed to be true, the Court could reasonably infer liability. See *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). Dismissal is appropriate if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly,* 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly,* 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,* 129 S. Ct. at 1949 (*citing Twombly*, 550 U.S. at 557);

A complaint that alleges mere "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action,'" or "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal,* 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. 555, 557).

In deciding a motion to dismiss, the Court properly considers the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993).

The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, see *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dis*t., 132 F.3d 902, 906 (3d Cir 1997) (*quoting In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." Iqbal, 129 S. Ct. at 1950.

As to allegations of fraud, which this RICO action primarily consists of, require allegations with particularity pursuant to Fed. R. Civ. Proc. 9(b).  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *see also Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004) ("Where, as here, plaintiffs rely on mail and wire fraud as a basis for a RICO violation, the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled with specificity."), *abrogation on other grounds recognized by In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 323 n.22 (3d Cir. 2010).

A RICO conspiracy claim cannot survive where the plaintiff fails to provide evidence of "'an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense.'" In re Ins. Brokerage, 618 F.3d at 373 (quoting Salinas, 522 U.S. at 65) (alteration in the original); see also Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993).

III.    **DISCUSSION**

   a. **The Complaint Fails to Show an Association in Fact and the RICO Enterprise is not Distinct from Shanni Snyder**

As to Counts I and II, a RICO "enterprise" must constitute an entity distinct from the RICO "person." The United States Supreme Court has held that "to establish liability under § 1962 one must allege and prove the existence of two

distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161 (2001). In other words, Defendant must be the "person" who conducts the "enterprise's" affairs through a pattern of racketeering activity, and the person/defendant must be separate and distinct from the "enterprise." *Schwartz v. Lawyers Title Ins. Co.*, 680 F.Supp.2d 690,704 (E.D.Pa. 2010). The alleged "person" who is "subject to liability [for a RICO violation] cannot be the same entity as the 'enterprise.' *Gordon v. Pasquarello*, No. CV 22-1565, 2023 WL 2505538 *16 (E.D. Pa. Mar. 14, 2023).

Courts may "'reasonably assume that individuals and corporations have an organizational structure, are continuous, and have an existence separate and apart from any alleged pattern of racketeering activity.'" *Freedom Medical v. Gillespie,* 634 F. Supp. 2d 490, 504 (E.D. Pa. 2007) (quoting *Price v. Amerus Annuity Group Co.,* MDL No. 1712, 2006 U.S. Dist. LEXIS 35980, at *9 (E.D. Pa. June 2, 2006)). If, however, the alleged RICO enterprise has no legal existence and is instead an association-in-fact, it "cannot reasonably be assumed to satisfy the elements of an enterprise and the allegations of the complaint must therefore receive greater scrutiny." *Id*. at 505.

A review of the Complaint makes it clear that every predicate act – except one relating to a claim filed by George Snyder that has nothing to do with Biros – involve legal filings made by Shanni Snyder. If successful, as Biros states, only Shanni Snyder would receive the benefit of the lien instrument. Therefore, it is clear that no enterprise exists, only Shanni Snyder exists.

The allegations in the Complaint and RICO Case Statement appear to allege parallel conduct, not a horizontal agreement or "concerted action" among all of these

outer partners. *In re Ins. Brokerage*, 618 F.3d 300, 374 (3d Cir. 2010). In the words of the Third Circuit, the arrangement resembles a "hub-and-spoke" system without any connective, outer rim. *Id.*

"[T]he existence of an enterprise is an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other.' " *Boyle v. United States,* 129 S.Ct. 2237, 2245  (2009).  If, for example, "several individuals, *independently and without coordination,* engaged in a pattern of crimes listed as RICO predicates [,] ... [p]roof of these patterns would not be enough to show that the individuals were members of an enterprise." *Id.* (emphasis added). Nor would proof of a conspiracy to commit a RICO predicate offense "necessarily establish that the defendant[s] participated in the affairs of an ... enterprise through a pattern of ... crimes." *Id.* at 2246. Individuals' separate and uncoordinated commission of RICO predicate acts does not automatically create an enterprise.  *Id*, n. 4.

While "a conspiracy is an inchoate crime that may be completed in the brief period needed for the formation of the agreement and the commission of a single overt act in furtherance of the conspiracy," § 1962(c) "demands much more: the creation of an 'enterprise'—a group with a common purpose and course of conduct—and the actual commission of a pattern of predicate offenses." *Id.*

Certainly, even if the events entailed more than just Shanni Snyder, Biros' allegations do not demonstrate an association in fact.

Therefore, the Complaint at Counts I and II fail because Biros failed to show an association in fact or that the enterprise was distinct from Shanni Snyder.

**b. The Complaint Contains Only Inferences as to Knowledge and Agreement**

To allege a RICO conspiracy, the complaint must allege facts to support both the defendant's agreement and his or her knowledge. *Glessner v. Kenny*, 952 F.2d 702, 714 (3d Cir. 1991), *overruled on other grounds by Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.,* 46 F.3d 258, 260-261 (3d Cir. 1995*)*. Thus, in *Glessner* the Court upheld the dismissal of the plaintiffs' § 1962(d) claims where the plaintiffs did not allege agreement and knowledge, but instead argued that agreement and knowledge could be inferred. *Id.*  In other words, the plaintiff must show that a defendant in a RICO conspiracy action "was aware of the essential nature and scope of the enterprise and intended to participate in it." *United States v. Muskovsky*, 863 F.2d 1319, 1324 (7th Cir. 1988).

In this case, it is alleged that Shanni Snyder committed various RICO predicate acts by filing legal papers.  However, the alleged conspiracy contains no factual support, only inferences. Bald and unsupported allegations do not satisfy the pleading requirements for a RICO conspiracy. See *Glessne*r, 952 F.2d at 714.

Most of the paragraphs are on "information and belief" without citing any source of the information.  "Belief" certainly is not acceptable in this type of RICO case.  *See* Paragraphs 41, 45, 48, 49, 52, 65, 75, 76, 77, 85, 95, 98, 109, 112, 117, 157, 172, 175, 183, 198, and 201 (information and belief).

As to the undersigned, the only allegations about participation in the purported enterprise is:

> 198.  Roth participated in the Fake Lien Enterprise by, on information and belief, participating in the planning and organization of the same; by, on information and belief, advising George, Kash, and U Lock not to respond to Shanni's complaint in the Wage Case; by filing U Lock's application to the Supreme Court of Pennsylvania to stay remand of the Quiet Title Action even though he knew that U Lock did not intend to seek review in the U.S. Supreme Court; by filing and arguing the Petition to Strike in the Quiet Title Action and arguing to the Westmoreland Court that it should not have released to Biros the deeds to the Subject Property and that the Westmoreland Court should instead follow a procedure that would have exposed the Subject Property to the Fake Lien but could not under any circumstances have left

his client with title to the Subject Property; by delaying the filing of the notice of
bankruptcy in the Quiet Title Action for three weeks after Shanni filed her petition that
commenced the U Lock Bankruptcy; and by delaying the filing of that notice until two
minutes after Shanni had entered her appearance in the Quiet Title Action and filed
her notice of appeal in that action to the Superior Court.

All of the "on information and belief" conjecture of privileged conversations
and work product constitutes nothing but an inference and is certainly not sufficient
to drag legal counsel into a RICO action.

The absurdity of this vast conspiracy theory is that U Lock could have filed a
voluntary bankruptcy at any time under Chapter 7.  It did not need Shanni Snyder to
do it. Nobody needed to enter into the dreamed up conspiracy.

Similarly, the bankruptcy could have been filed earlier by U Lock and it would
have achieved the goals Biros alleges could have happened.  In other words, if U
Lock filed bankruptcy in December 2021, or even on January 16, 2023, it would have
reorganized and it would have the property.  The alleged conspiracy only served to
help Biros.

There exists no factual allegations in the Complaint to support the inference
and conjecture that the undersigned told U Lock's officers not to respond to the labor
Complaint.  Rather, as the officers stated after being goaded into providing
attorney-client communications that it not admissible, is that the non-specific
question as to pricing of a federal suit would be at least $10,000 to defend. This
allegation, if true, does not support the inference that the undersigned told the client
not to respond or that a vast RICO conspiracy existed.

"Lawyers look at allegations every time they are engaged to respond to a
lawsuit. They are not obliged to treat those allegations as true; to the contrary, they
recognize that a plaintiff is asserting only that it proposes to prove them, and they
evaluate the complaint to see what kind of a defense can be raised."  *Domanus v.*

*Locke Lord LLP*, 847 F.3d 469, 480  (7th Cir. 2017) .  The *Domanus* Court stated, "Faced with a similar situation, the D.C. Circuit reached this commonsense conclusion in a case in which the plaintiff alleged that a defendant law firm knew about its client's wrongdoing. *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043 (D.C. Cir. 2012). There the plaintiff had alleged that the law firm knew about its client's bribery conspiracy from news reports about the bribery and embezzlement scheme, the client's reputation for wrongdoing, and a prior criminal conviction. *Id.* at 1048–50. The court concluded that '[t]hese allegations are insufficient to establish a plausible inference that [the defendant law firm] was aware of anything corrupt relevant to its provision of legal services…' *Id.* at 1050."

"The fact that someone should have known about a scheme or fraudulent activity is not enough to show that the person actually knew. *Frost Nat'l Bank v. Midwest Autohaus, Inc.*, 241 F.3d 862, 870–71 (7th Cir. 2001).

An inference of knowledge through willful blindness requires that the defendant "believe that there is a high probability that a fact exists" and "take deliberate actions to avoid learning of that fact." *Global–Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769, (2011). Only a subjective belief that there is a high probability that the fact is true, coupled with deliberate steps to avoid learning the fact, is equivalent to knowledge. See *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 240 (5th Cir. 2010) ("Neither awareness of *some* probability of illegal conduct nor a showing that the defendant *should* have known is enough" to constitute the legal equivalent of knowledge.).

Even if there existed some knowledge, there would need to be an agreement. The Complaint is also deficient on the question of agreement—a critical element of a

RICO conspiracy case. See *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 967 (7th Cir. 2000).

In order to raise an allegation of a conspiracy prohibited by section 1962(d), the plaintiff must allege (1) that the defendant agreed to conduct or participate in the affairs of an "enterprise," and (2) that he agreed to the commission of two predicate acts. *Frost Nat. Bank v. Midwest Autohaus, Inc.*, 241 F.3d 862, 869(7th Cir. 2001). *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998), *holding modified by Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir. 2000).  The absence of either of these is fatal to the claim.

Claims that lawyers have conspired with their clients are insufficient in the absence of allegations that the arrangement involves more than standard legal representation. See *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP,* 682 F.3d 1043, 1051-1052 (D.C. Cir. 2012).

The allegations in the Complaint, subject to Rule 9's requirement of specificity, fail to allege knowledge and agreement needed to move forward on a RICO or RICO conspiracy claim.

### c.  The RICO Complaint Must Fail Because Biros Alleges the sole Purpose of the Enterprise was to defraud her

According to the RICO Case Statement, Entry 15, page 11, question 7, states, "The Fake Lien Enterprise exists for the sole purpose of advancing the racketeering activity."  In response to question 8, pages 11-12, where Biros was to discuss "how the racketeering activity differs from the usual and daily activities of the enterprise, if at all."  Biros states, "The sole purpose for the existence of the Fake Lien Enterprise is to interfere with Biros's title to and possession of the Subject Property."

A RICO enterprise requires that the common activities of the enterprise extend beyond the minimal association necessary to sustain the pattern of racketeering. *Diamonds Plus, Inc. v. Kolber,* 960 F.2d 765, 770 (8th Cir.1992) ("The focus of the inquiry is whether the enterprise encompasses more than what is necessary to commit the predicate RICO offense.").

"[A]n enterprise cannot simply be the undertaking of the acts of racketeering, neither can it be the minimal association which surrounds these acts." *Stephens, Inc. v. Geldermann,* Inc., 962 F.2d 808, 815 (8th Cir.1992) (citation omitted) (holding that plaintiff insufficiently pled a RICO enterprise because although "each member of th[e] group carried on other legitimate activities, these activities were not in furtherance of the common or shared purpose of the enterprise, and thus, were not acts of the enterprise"). That each member of a group carries on activities distinct from the pattern of racketeering is insufficient; *the group as a whole must have a common link other than the racketeering activity. McDonough v. National Home Ins. Co.,* 108 F.3d 174,177 (8th Cir.1997) (citations omitted) (emphasis added).

"Proof the enterprise conducts lawful activity unrelated to the pattern of racketeering will often serve to prove the enterprise is separate from the pattern of racketeering." *Diamonds Plus, Inc.,* 960 F.2d at 770, 770 n. 5 (citations omitted).

"In deciding whether an alleged RICO enterprise has an ascertainable structure distinct from the pattern of racketeering activity," the court must "determine if the enterprise would still exist were the predicate acts removed from the equation." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 354-355 (8th Cir. 2011) (quoting *Handeen v. Lemaire,* 112 F.3d 1339, 1352 (8th Cir.1997)).

As the Eighth Circuit noted in *Crest Constr. II,* where "the only common factor that linked" the individually named defendants "and defined them as a distinct group

was their direct or indirect participation" in a scheme to defraud the plaintiff, plaintiff

had not adequately pled a RICO enterprise,  660 F.3d at 355 (citing *Stephens,* 962

F.2d at 815–16).

For this reason, Biros' RICO claim that alleged the enterprise consisted of

nothing but an alleged plan to defraud her fails to allege a RICO enterprise.

### d. **Biros' RICO Complaint Must Fail Because of the Lack of Continuity and a Pattern of Racketeering as to the Alleged Enterprise**

In the RICO Complaint, Biros alleges sporadic events consisting of legal

filings that she claims constitutes an enterprise.  However, she fails to allege any

continuity in the enterprise or a long term business.  In its opinion in *H.J. Inc. v.*

*Northwestern Bell Tel. Co.,* 492 U.S. 229 (1989), the Supreme Court set out its

second analysis of the requirements of civil RICO. The Court examined the statute

and its legislative history in an attempt to determine the elements of the pattern

requirement. From this review, the Court concluded that "to prove a pattern of

racketeering activity a plaintiff must show that the racketeering predicates are

related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* at

239.

Under the first, or "relatedness," requirement of the RICO statute, as

interpreted in *H.J. Inc.,* predicate acts are related if they "have the same or similar

purposes, results, participants, victims, or methods of commission, or otherwise are

interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240,

109 S.Ct. at 2901.

As for the second, or "continuity," prong of the analysis, the Court in *H.J. Inc.*

attempted to promulgate a somewhat flexible approach, based upon a

"commonsense, everyday understanding of RICO's language and Congress' gloss

on it." *Id.* at 241, 109 S.Ct. at 2902. With this analytical approach in mind, the Court decided that "[w]hat a plaintiff or prosecutor must prove is continuity of racketeering activity, or its threat, *simpliciter.*" *Id.*

In explicating how a plaintiff could make this continuity showing, the Court described continuity as "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* "It is, in either case, centrally a temporal concept," *id.* at 241–42, 109 S.Ct. at 2902, so that a party may establish continuity as a closed-ended concept by "proving a series of related predicates extending over a *substantial* period of time." *Id.* at 242, 109 S.Ct. at 2902 (emphasis added).

Thus, *H.J. Inc.* makes clear that the continuity requirement can be met by establishing long-term criminal conduct but does not define what length of time qualifies as "substantial" for this purpose. The Court in *H.J. Inc.* also gave examples of how the threat of continued racketeering activity might be demonstrated. One example is that of a hoodlum who sells "insurance" to storekeepers to prevent the breaking of their shop windows. *Id.*

Since *H.J. Inc.,* the Third Circuit faced the question of continued racketeering activity in several cases, each time finding that conduct lasting no more than twelve months did not meet the standard for closed-ended continuity. *See Hughes v. Consol–Pennsylvania Coal Co.,* 945 F.2d 594, 610–11 (3d Cir.1991) (fraudulent conduct lasting twelve months does not establish closed-ended continuity); *Hindes v. Castle,* 937 F.2d 868, 875 (3d Cir.1991) (eight month period of predicate acts without a threat of future criminal conduct does not satisfy continuity requirement); *Kehr Packages v. Fidelcor, Inc.,* 926 F.2d 1406, 1413 (3d Cir.1991) (same); *Banks v. Wolk,* 918 F.2d 418, 422–23 (3d Cir.1990) (same); *Marshall–Silver Constr. Co. v. Mendel,*

894 F.2d 593 (3d Cir.1990) (seven month single-victim, single-injury scheme does not satisfy continuity requirement).

The Third Circuit concluded that a scheme lasting over three years extends over a "substantial" period of time and therefore constitutes the type of "long-term criminal conduct" that RICO was enacted to address. *See United States v. Pelullo,* 964 F.2d 193, 209 (3d Cir.1992) (holding that a jury could find a nineteen month period of racketeering activity sufficient to satisfy continuity requirement).

The Supreme Court cautions, however, in *H.J. Inc.,* that the existence of continuity may not always be apparent. 492 U.S. at 243, 109 S.Ct. at 2902–03. For example, the statutory definition of pattern is "at least two acts of racketeering activity" within a ten year period. 18 U.S.C. § 1961(5). It is clear that ten years is a period of long duration.  Indeed, Justice White noted in a footnote that, while § 1961(5) defines a pattern of racketeering activity as requiring at least two acts of racketeering activity, two acts may not be sufficient. *Id.* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14.

In *H.J. Inc.* the Court states that open-ended continuity is established when the commission of the predicate acts is "a regular way of conducting defendant's ongoing legitimate business." 492 U.S. at 243, 109 S.Ct. at 2902.

In the present case, the alleged actions of Shanni Snyder in filing Court documents does not appear to be the pattern of racketeering, but single isolated occurrences and not a business at all.

As the Supreme Court noted in *Boyle v. United Statees,* 556 US 938 (2019), an enterprise necessarily must have "'affairs' of sufficient duration to permit an associate to 'participate' in those affairs through 'a pattern of racketeering activity.'" 556 U.S. at 946 (quoting 18 U.S.C. § 1962(c)).  *Boyle* confirmed that, although a

pattern of illegal activity may be sufficient to satisfy both the enterprise and racketeering elements of a RICO claim, "the existence of an enterprise is an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other.'" 556 U.S. at 947.

Certainly, it appears evidence that Biros failed to demonstrate continuity and a pattern of racketeering.

### e. Biros' Lacks Standing Because the Claims of Damage are Speculative

Biros' lawsuit asserts indirect damage in that she avers she has been "delayed" in "taking both legal and equitable ownership of the Subject Property.  It delayed Biros's ability to record her title to the Subject Property.  It has delayed Biros in taking possession of the Subject Property." *See* RICO Case Statement, Entry 15, Page 15, Questions 15-16.

The documents attached by Biros indicate she received an obviously objectionable *ex parte* Order to receive the deeds on January 20, 2022.  She filed the deeds on January 25, 2022.  It appears unclear how any of the predicate acts "delayed" her ability to record her title considering she did.  The post-January 25, 2022, merely attacked the legality of her actions.   With respect to Biros taking possession, the United States Bankruptcy Court specifically granted Shanni Snyder's bankruptcy petition and Biros received partial possession through that proceeding. Biros never appealed the bankruptcy court's refusal to provide full possession to the land.  Neither counsel nor the other parties can be faulted through RICO with the decision of the Bankruptcy Court when Biros could have appealed to this Court but chose not to.

Biros' claims are merely speculative and infer only a lost opportunity.  See *In re Taxable Mun. Bond Securities Litigation*, 51 F.3d 518, 521-522  (5th Cir. 1995)(farmer's "lost opportunity" to obtain loan insufficient to constitute injury for RICO standing); GFirst Nationwide Bank v. Gelt Funding Corp, 27 F.3d 763, 768-70 (2d Cir. 1994) ("risk of loss" is not injury ripe for RICO claim); Grantham & Mann, Inc. v. Am. Safety Prods., Inc., 831 F.2d 596, 604-06 (6th Cir. 1987) (plaintiff failed to show actual lost profits).

Indeed, to have standing under § 1964(c), a plaintiff must allege: (1) "that his alleged harm qualifies as injury to his business or property;" and (2) "that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

In connection with the first requirement, the necessary injury to business or property requires tangible and concrete financial loss, rather than speculative or uncertain harm. *Guerrero v. Gates*, 442 F.3d 697, 707 (9th Cir. 2006); *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 71 (9th Cir. 1994). With respect to causation, "[t]he civil RICO statute requires plaintiffs 'to show that a RICO predicate offense not only was a 'but for' cause of [their] injury, but was the proximate cause as well.' " *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 349 F. Supp. 3d 881, 905 (N.D. Cal. 2018) (quoting *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010), *aff'd*, 842 F. App'x 112 (9th Cir. 2021). Reliance "on an 'attenuated chain of conjecture' " is insufficient to support proximate causation under § 1964(c). *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1228 (9th Cir. 2008) (citation omitted). The "central question" a court must ask when evaluating proximate

causation with respect to RICO claims is "whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

Clearly, Biros' sour grapes relating to Court proceedings does not meet the test.   Therefore, Biros lacks standing to bring this claim on such a speculative "lost opportunity" basis.

### f.  The RICO Conspiracy Count Must Fail Because the Enterprise is Not Engaged in, or the Activities of Which, Affect, Interstate or Foreign Commerce.

Count II is a conspiracy claim against the undersigned and others. 18 USC 1962(d) prohibits a conspiracy to violate the RICO provisions of 18 USC 1962(c) apparently what was set out in Count I.  However, 18 USC 1962(c) explains that, "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

The only thing nexus to interstate commerce that Biros alleges is found in section 10 of the RICO Case Statement, which states, "The Subject Property contains a self-storage space which, on information and belief, rents space to individuals residing in multiple states.  Further, the Subject Property is ripe for further development that would affect commerce, including interstate commerce, if it were in the hands of Biros, its proper legal owner.  This commerce has been prevented by the predicate acts and pattern of racketeering engaged in by the Defendants." However, these allegations do not involve the so-called lien enterprise, they involve the U Lock and Biros enterprises which are not alleged enterprise that forms the basis of the conspiracy.

On the contrary, the statute requires the enterprise to specifically engage in or have activities of which affect interstate commerce. By Biros' own admissions, the sole activity of the enterprise was to file documents with various courts all located in Pennsylvania.

Indeed, Biros need to allege specific facts which "must show that the conspiracy, if completed, would involve an enterprise that affected interstate or foreign commerce." *United States v. Ernst*, 502 F. Supp. 3d 637, 658 (D. Mass. 2020). To state that Biros might, if they possessed the property, engage in interstate commerce appears merely speculative.


g. **Biros Failed to Allege the Elements of the Underlying Predicate Acts**

In a RICO Conspiracy, Biros is required to present a viable claim under another subsection of 18 USC 1962. *Howard v. American Online Inc.*, 208 F.3d 741, 751 (9th Cir.), cert. denied, 531 U.S. 828 (2000). To state a claim for RICO conspiracy, one must successfully allege all the elements of a RICO violation, as well as an illicit agreement to violate the substantive RICO provision. *Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 806 (6th Cir. 2016). Parties cannot be found guilty of conspiring to commit an act that is not itself against the law. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1220 (11th Cir. 2020).

g(1). **Biros' Three Bankruptcy Fraud Predicate Acts Fail**

Biros alleged three alleged bankruptcy fraud acts, two by Shanni Snyder, and one allegedly by George Snyder. Biros does not allege the statute that forms the offense. Rather, she just states, "fraud under Title 11." However, there exists no common law fraud in the bankruptcy code.

Biros must plead fraud with particularity, not simply claim some unknown "offense" of fraud. F.R.Cv.P. 9(b).

More concerning is that Congress exempted any predicate act derived from 18 USC 157.  Specifically, the statute states, "any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title)."  The first bankruptcy predicate act is allegedly committing fraud by filing the involuntary petition.  This is specifically exempted as it is found at 18 USC 157(1).  Next, Biros claims that Shanni committed the fourth predicate act when she "filed" her proof of claim.  Similarly, Biros claimed that George committed the fifth predicate act when he "filed" his proof of claim. If true, these actions appear to fall under 18 USC 157(2) and 157(3), both exempted from the RICO definitions.

Perhaps this is why Biros cited no specific bankruptcy offense.  Regardless of the reason, the failure to cite a specific offense means that the predicate acts must fail.


### g(2).  Biros Fails to Plead Wire Fraud in Violation of 18 USC 1343

Paragraph 182 states:

> Shanni committed a predicate act of wire fraud pursuant to 18 U.S.C. 1343 on July 14, 2021, when, with the intent to defraud or with intent to obtain property by means of false or fraudulent pretenses, she used the internet to transmit her complaint in the Wage Case to the District Court.  Pursuant to Rule 11 of the Federal Rules of Civil Procedure, her signing and filing that complaint constituted her certification that the allegations of her complaint had factual support. In fact and on information and belief, many of Shanni's allegations were false and had no evidentiary support. These allegations included Shanni's assertion that she had been an employee of U Lock, that she had performed work for U Lock ten hours per day, every day, for more than four years, that U Lock had agreed to pay her for this work, and that she was entitled to payment of wages, straight and overtime, for this non-existent work."

However,  The federal mail and wire fraud statutes prohibit the use of the mail or interstate wires for purposes of carrying out any scheme or artifice to defraud. *See* 18 U.S.C. §§ 1341, 1343.  *Lum v. Bank of Am.*, 361 F.3d 217 223  (3d Cir. 2004) .  Biros fails to allege any use of interstate commerce in Shanni uploading a document from her residence in Pennsylvania to a court in Pennsylvania.  *See* e.g., *Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988) (affirming dismissal of RICO claim where

there were no interstate telephone calls alleged in support of wire fraud predicate act); *McCoy v. Goldberg*, 748 F. Supp. 146, 154 (S.D.N.Y. 1990) (dismissing RICO claim where there were no interstate telephone calls alleged in support of wire fraud predicate act); *Hall v. Tressic*, 381 F. Supp. 2d 101, 109 (N.D.N.Y. 2005) (same); *Meier v. Musburger*, 588 F. Supp. 2d 883, 907 (N.D. Ill. 2008) (same).

### g(3).  Biros Failed to Plead Facts to Support a Violation of 18 USC 1503

Biros lodges a claim that one predicate act is that Shanni Snyder testified falsely in violation of 18 USC 1503.  However, Congress specifically excluded perjury from the RICO offenses.  *See* 18 USC 1961(1).  Yet, Biros does not explain the element of "corruptly" in her RICO lawsuit when, in reality, she is merely stating that Ms. Snyder somehow committed perjury.  Proof of perjury alone is insufficient to sustain a section 1503 violation. *United States v. Perkins, 748 F.2d 1519, 1528* (11th Cir. 1984).  Therefore, the predicate act of 18 USC 1503 must fail.

### h.  Biros Lacks Standing to Raise the George Snyder Bankruptcy Fraud Predicate Act

According to Biros, one predicate act is that George Snyder filed a claim in the bankruptcy seeking payment for work he did at U Lock while placing on the schedules that the company has no salaried employees.  Biros simply does not understand that the common definition of employee (W-2 employee receiving a salary) and the Fair Labor Standards Act diverge as explained in the introduction.

Regardless, the lodging of this claim has nothing to do with the so-called Lien Enterprise.  Furthermore, Biros knew at all times material what her position was as to the claim and, therefore, could not have been damaged by the information in it. Simply put, there can be no misrepresentation if the plaintiff knows the

representation to be false. See *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 747 (3d Cir. 1996) (holding that there could be no mail fraud predicate based on the defendant's "scheme" to charge the plaintiff more than the contract price because the plaintiff admitted that it knew that the defendant was not complying with the contract).  For that reason, Biros cannot raise a claim that her business was somehow harmed or damaged by the claim and, therefore, she lacks standing to raise this issue.  18 USC 1964(c).

 To have standing to assert a civil claim under RICO, a plaintiff must make "two related but analytically distinct threshold showings . . . : (1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000). If a plaintiff does not have standing to assert a RICO claim, the claim must be dismissed. *Allegheny Gen. Hosp. v. Phillip Morris, Inc.,* 228 F.3d 429, 435 (3d Cir. 2000).

Because the so-called predicate act as to George Snyder's asking the bankruptcy court to award him a portion of the bankruptcy estate does not involve the so-called lien scheme and does not affect Biros, it cannot be a predicate act.

### i. The George Snyder Predicate Act is not Distinct from George Snyder and has Nothing to Do with the Purported Lien Enterprise

Considering that the claim in the bankruptcy did not have anything to do with Biros' property and did not create and so-called "lien" on it, it has nothing to do with the Shanni Snyder enterprise.

Therefore, Biros cannot meet the "relatively undemanding standard of *Boyle*" insomuch as the allegations "fail[ed] the basic requirement that the components function as a unit, that they be 'put together to form a whole.' " *In re Ins. Brokerage*

*Antitrust Litig.,* 618 F.3d 300, 374 (3d Cir. 2010) (quoting *Boyle,* 556 U.S. at 945, 129 S.Ct. 2237).

The George Snyder predicate act relates to his filing a claim in the bankruptcy simply asking to share in proceeds based on the failure of U Lock to pay him any compensation over the years.  Obviously, the filing of this claim has no relation to Shanni Snyder's lawsuit or her placing U Lock into bankruptcy.

In its opinion in *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229 (1989), the Supreme Court set out its second analysis of the requirements of civil RICO. The Court concluded that "to prove a pattern of racketeering activity a plaintiff must show that the racketeering predicates are related, " *Id.* at 239.

Under the first, or "relatedness," requirement of the RICO statute, as interpreted in *H.J. Inc.,* predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240.

Certainly, it cannot be said that the filing of the claim has the "same or similar purposes" which, according to Biros, is to deprive it of a piece of real property.  On the contrary, it was simply a claim to share in a pool of assets.  Additionally, the participants certainly differ.  George Snyder filed the claim on his own for himself.  If George Snyder's claim is ultimately granted, only he will receive proceeds. Undersigned counsel did not represent him on the claim.

For this reason, the George Snyder predicate act lacks the required relationship to the other predicate acts and cannot be considered when determining if there was an enterprise.

**k. This Court Must Strike, Pursuant to F.R.Cv.P. 12(f), the Immaterial, Impertinent, and Scandalous Allegations Pertaining to the "Legal Drafters" found at Paragraphs 65, 85, 98, 109, 112, 129, 157, 175, 176, 177, 201, 202, and 203 of the Complaint.**

Throughout Biros' Complaint, she repeatedly alleges that "Legal Drafters" may have assisted Shanni in drafting various legal documents. This is nothing but Biros seeking an opportunity to interfere with the work product of all of the parties by opening the door to having someone testify about every step they took in drafting legal papers. Indeed, in the related bankruptcy documents, Biros' counsel subjected her to various questions about the software she uses, the databases she accesses, etc. Worse, George Snyder and Kash Snyder have pointedly been asked about their conversations with the undersigned, why certain legal decisions were made, and other protected matters. This must stop.

These allegations consume a large amount of the Complaint and apparently are meant to insinuate wrongdoing.

Allowing these allegations to stand will drastically increase the cost of litigating this action if it survives the Motion to Dismiss, including discovery disputes and interlocutory appeals to protect the work product.

Indeed, the allegations of "Legal Drafters" consumes 13 paragraphs in just the Complaint– all repeating that Ms. Snyder potentially received help. *See* Complaint, ¶¶65, 85, 98, 109, 112, 129, 157, 175, 176, 177, 201, 202, and 203.

While the undersigned does not have knowledge as to whether Ms. Snyder, who has litigated *pro se* in state and federal courts for the last fifteen (15) years, is receiving advice, it simply is not Biros' business and is not a matter that can be properly litigated through this action. It is simply "immaterial, impertinent" material.

In Pennsylvania, *pro se* litigants may receive help with legal research and drafting legal pleadings from attorneys without any disclosure to the parties or the

Court.  *See Pennsylvania Bar Association Committee on Legal Ethics and Professional Responsibility and Philadelphia Bar Association Professional Guidance Committee Joint Formal Opinion* 2011-100.  In that opinion, the Committee held that, "A Lawyer Is Not Required Under the Rules of Professional Conduct to Disclose a Limited Scope Engagement to an Opposing Party or to the Court in a Litigation Matter."

This practice of anonymously drafting documents for pro se litigants is called "legal ghostwriting," and the American Bar Association (ABA) Standing Committee on Ethics and Professional Responsibility has recognized it as a form of "unbundling" of legal services, or limited scope representation. *ABA Standing Comm. on Ethics & Prof'l Responsibility, Formal Op.* 07-447 (2007).   The committee stated that "[l]itigants ordinarily have the right to proceed without representation and <u>may do so without revealing that they have received legal assistance in the absence of a law or rule requiring disclosure.</u>" Id. at 2.

Paragraphs 175-176 and 202-203 go so far as to directly infer wrongdoing by Shanni Snyder through not disclosing any help or advice– which is her work product – notwithstanding the ethical opinions from Pennsylvania since 2011 that specifically hold that disclosure to the other parties is not necessary.

For these reasons, a RICO lawsuit certainly is not the place to test the validity of advice provided by ethics committees within Pennsylvania that both attorneys and litigants are entitled to reasonably rely upon.

This Court needs to strike these paragraphs to take how a person writes their legal pleadings out of the inquiry.

### I. Biros Fails to State a Claim for Slander of Title or Conspiracy

At Counts III and IV, Biros raises a slander of title claim and a conspiracy to slander title claim.  In it, she complains of the filing of a judgment against U Lock, Inc., not Biros.  In addition, Biros cites a *writ of summons* and *lis pendens*. Obviously, Shanni Snyder believes she was a creditor of U Lock and had a plausible claim as the Pennsylvania Uniform Voidable Transactions Act, 12 Pa.C.S. 5101, et. seq.  Indeed, Shanni Snyder purchased the claims from the bankruptcy trustee and an action to void the transaction remains pending.  *Snyder as assignee of Slone, Trustee, v. Biros*, 23-ap-2020 (Bk.W.Pa.).

Regardless, Biros fails to make a claim for for slander to title.  Slander, or disparagement, of title is the —the false and malicious representation of the title or quality of another's interest in goods or property   *Pro Gold Mfg. v. Tribune Review Newspaper Co*., 809 A.2d 243, 247 (Pa. 2002). To plead a valid slander of title claim, a plaintiff must allege: (1) a false statement; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity. *Pro Golf Mfg*., 809 A.2d at 246 (*citing Restatement (Second) of Torts* § 623(A) (1977)); *accord Lincoln v. Magnum Land Servs., LLC,* 2013 WL 2443926, at *5 (M.D. Pa. June 5, 2013).

Biros alleges no facts from which this Court can infer that the judgment itself or a writ of summons coupled with a lis pendens was disparaging, false, or done with malice. *See In re Bennett*, 531 B.R. 68, 79 (Bankr. E.D. Pa. 2015) (holding that a debtor did not state a plausible claim against mortgagee for slander of title when he did not state facts to support malice element).

Moreover, Biros does not allege, with any specificity, that she suffered special damages as a result of the actions.. Allegations of pecuniary loss cannot be speculative. See *Zerpol Corp v. DMP Corp.*, 561 F. Supp. 404, 409 (E.D. Pa. 1983) (plaintiff alleging disparagement or slander of title must —plead and prove pecuniary loss); *Surgical Laser Tech., Inc. v. Heraeus Lasersonics, Inc.*, 1994 WL 637353, at *1 (E.D. Pa. Nov. 10, 1994) (noting that, under Pennsylvania law, a slander of title claim requires proof of special damages and must be pled with specificity).

Indeed, Biros at all times maintained a remedy as to the *lis pendens*.  All she needed to do was file a petition to strike it.  As to the *writ of summons*, Biros merely had to file a rule upon Shanni Snyder to file a complaint.

Because the allegations do not give rise to a *slander of title* action, Counts III and IV must fail.

### m.  Count IV Fails to Allege an Overt Act

Even if Count III can proceed, Pennsylvania requires more than just a meeting of the minds to advance a conspiracy claim.  Biros must plead:  (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. Proof of malice or an intent to injure is essential to the proof of a conspiracy. *Strickland v. University of Scranton*, 700 A.2d 979, 987-88 (Pa.Super.Ct.1997); *see also Skipworth v. Lead Indus. Ass'n, Inc.*, 547 Pa. 224, 690 A.2d 169, 174 (Pa.1997).

While Biros makes boilerplate allegations, considering Pennsylvania's requirement that special damages be pled with specificity, none of it is sufficient.

### n.  Counts III and IV are Barred by the One Year Statute of Limitations

The undersigned seeks judgment on the pleadings as to this issue.  Biros

attaches the documents to her Complaint.  This Court can take judicial notice

pursuant to F.R.E. 201(d) that these events occurred over one year ago. Therefore,

the action is barred pursuant to 42 Pa.C.S.A. § 5523; *Pro Golf Manufacturing v.

Tribune Review Newspaper Company*, 570 Pa. 242, 809 A.2d 243 (2002).

### o.  Counts V and VI Fail to State a Claim for Fraud

First, Biros fails to allege with particularity any economic damage resulting

from the alleged fraud.  "[I]ntentional misrepresentation claims are generally

preempted by the economic loss rule," except where "a defendant committed fraud

to induce another to enter a contract." *Reilly Foam Corp. v. Rubbermaid Corp.*, 206

F. Supp. 2d 643, 658 (E.D. Pa. 2002).  In this case, Biros fails to explain her

economic loss except to aver some attorney fees as a result of litigating.

Second, Biros cites Rule 11, F.R.Cv.P.  as a basis for her fraud claim.

However, Rule 11 does not create a private cause of action.  *Hofmann v. Fermilab

NAL/URA*, 205 F. Supp. 2d 900, 904 (N.D. Ill. May 30, 2002) ("Rule 11 affords no

private right of action."); *New York News, Inc. v. Newspaper and Mail Deliverers'

Union*, 139 F.R.D. 291, 293 n.1 (S.D.N.Y. 1991), aff'd, 972 F.2d 482 (2d Cir. 1992).

See also *In re 72nd St. Realty Assocs.*, 185 B.R. 460, 473 (Bankr. S.D.N.Y. 1995)

(same analysis applies under Bankruptcy Rule 9011).

Third, Biros failed to plead the elements of fraud which are:  (1) a

representation was made; (2) that is material to the transaction; (3) made falsely,

with knowledge of falsity or with recklessness regarding its truth or falsity; (4) with

the intent leading another to rely on it; (6) which is justifiably relied upon; and, (7) the

resulting injury was proximately caused by the reliance. *Bortz v. Noon*, 729 A.2d 555,

559 (Pa. 1999).  Specifically, Biros did not allege that she justifiably relied on any representations.

Therefore, the claim must be dismissed.

### p.  Biros' Allegations Fail to Plead Aiding and Abetting Fraud

At Count VI, Biros sues for aiding and abetting fraud.  This is a recently recognized tort by Pennsylvania's Supreme Court.  *Marion v. Bryn Mawr Trust Co.*, No. 72 MAP 2021, 2023 WL 308110 (Pa. Jan. 19, 2023).

To sue for aiding and abetting fraud, Biros must "allege a scienter of actual knowledge" which strikes the right balance between permitting redress for fraud victims on the one hand and protecting defendants from excessive costs and liability on the other.  *Id.*

The Pennsylvania Supreme Court noted that *The Restatement (Second) of Torts* recognizes aiding and abetting fraud as a cause of action, holding a person liable where he `knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself….," something that Biros does not fully aver in her Complaint.

The only thing Biros accuses the defendants of is not responding to a lawsuit, something that is their prerogative to do.  In other words, mere silence is not fraud if there is no duty to speak. *Wilson v. Donegal Mutual Insurance Co.*, 410 Pa. Super. 31, 598 A.2d 1310 (1991); *Smith v. Renau*t, 387 Pa. Super. 299, 564 A.2d 188 (1989). Biros fails to plead what duty the defendants had to respond to the lawsuit.

The other allegations, relating to filing documents, were all done with Biros having an opportunity to be heard and cannot plausibly aid a specific fraud since she had a full and fair opportunity to litigate the matter.

Therefore, Count VI must be dismissed.

**q.  Biros' Claim for Abuse of Process and Conspiracy Fails**

At Counts VII and VIII, Biros sues for abuse of process and conspiracy to abuse process.  To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff. Abuse of process is, in essence, the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process. Thus, the gravamen of this tort is the perversion of legal process to benefit someone in achieving a purpose which is not an authorized goal of the procedure in question. *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. 2002) (citations omitted). See *Weiss v. Equibank,* 460 A.2d 271, 276 (Pa. Super. 1983 ("If the plaintiff sues the defendant on a valid cause of action but brings the suit, for example, not to collect his just debt but for a collateral purpose such as blackmail the action is a malicious abuse of process").

Unlike this RICO action, the documents filed were clearly done so for the purpose on their face.  It is true that perhaps Shanni Snyder sought an advantage by racing to the courthouse– something that she probably should have been done even faster– but that is the law of judgments.  *United States v. Estate of Romani*, 523 U.S. 517 (1998)(Pennsylvania judgment creditor's lien valid and with priority if filed prior to other liens, even tax liens).

As to conspiracy, again Biros fails to allege the elements of civil conspiracy, particularly what overt acts are attributable to which defendants.  *Strickland v. University of Scranton*, 700 A.2d 979, 987-88 (Pa.Super.Ct.1997); *see also Skipworth v. Lead Indus. Ass'n, Inc*., 547 Pa. 224, 690 A.2d 169, 174 (Pa.1997).

### r. Counts IV, VI, and VIII Must Fail as the Allegations Show a Benefit to the Defendants' Business Interests

As explained by Biros, the purpose of Shanni Snyder's filings were to advance her position that she was owed money and entitled to a lien.  U Lock obviously had a business interest in reorganization under the bankruptcy code and challenging what it construed as improper conduct.  This is obvious from the legal pleadings.

To proceed under civil conspiracy, the Plaintiff must show actual malice.  If the facts show that the defendant acted to advance his or her own professional or business interests, "[t]his necessary proposition is negated." *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 419 (E.D. Pa. Sept. 3, 2009); see also *Spitzer v. Abdelhak*, 1999 U.S. Dist. LEXIS 19110, at *9 (E.D. Pa. 1999)(granting motion to dismiss civil conspiracy claim where the plaintiff alleged that the purpose of the conspiracy was for the defendant to benefit itself personally and professionally). Thus, where a plaintiff's case relies on the theory that the defendants "acted for their business advantage and benefit" a civil conspiracy claim is "not [] tenable because [p]laintiffs' evidence belies the notion that [d]efendants acted without a business motive, but purely out of malice." Id. (dismissing civil conspiracy claim); see also *Guaranty Towers, LLC v. Cellco Partnership,* Civ. No. 1:CV-07-0554, 2007 U.S. Dist. LEXIS 65819, at *6 (M.D. Pa. Sept. 6, 2007) (granting motion to dismiss civil conspiracy claim where the plaintiffs' theory of the claim stated that the defendants acted to obtain more revenue).

Because the documents show the parties were advancing their business purposes, the civil conspiracy claims must fail.

## IV.  <u>CONCLUSION</u>

Based on the above, to allow this action to proceed would be inappropriate considering the malicious nature of the lawsuit, the defects therein, and the effect it would have on related proceedings and the attorney-client privilege, work product, and the ability to mount a defense against legal errors.  Therefore, the Complaint must be dismissed or judgment granted on the pleadings.  In the alternative, the impertinent material must be stricken.

Respectfully submitted,

_/s/  J. Allen Roth, Esq._
J. Allen Roth, Esq. (PA 30347)
805 S. Alexandria Street
Latrobe PA  15650
lawmatters@yahoo.com
(724) 537-0939

COUNSEL FOR DEFENDANT
J. ALLEN ROTH