**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTINE BIROS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 2:23-cv-000297-RJC |
| | ) | |
| SHANNI SNYDER et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RESPONSE OF PLAINTIFF CHRISTINE BIROS**
**TO DEFENDANTS' MOTIONS TO DISMISS**

This Court should deny the motions to dismiss that Defendants J. Allen Roth [Doc. No. 32], Kash Snyder [Doc. No. 34], George Snyder [Doc. No. 35] and Shanni Snyder [Doc. No. 36] have filed in this action.  The complaint that Christine Biros has filed in this action, particularly as amplified by Biros's RICO Case Statement, adequately and fully sets forth all elements of Biros's claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.*, and her claims arising under the common law.  The Defendants' other claimed bases for relief misapprehend the law, basic facts about the parties to this action, or both.

**BACKGROUND**

A.  **Allegations of the Complaint**

 1.  ***The Subject Property***

Christine Biros owns the real property at 14140 Route 30 in North Huntingdon Township, Westmoreland County, Pennsylvania (the "Subject Property").   Complaint at ¶ 3. She acquired the Subject Property by, on or about July 16, 2015, paying a total of $309,213.30 to the executors and co-executors of four estates (collectively, the "Executors").  *Id*. at ¶ 13.

At the same time that Biros made these payments or shortly thereafter, four deeds for the Subject Property – one on behalf of each of the estates – were executed in favor of "U Lock Inc." Complaint at ¶ 14.

By that time, no entity in Pennsylvania had ever been incorporated as "U Lock Inc." or adopted that name. However, on September 4, 2015, Kash Snyder incorporated U Lock Inc. ("U Lock") under the laws of the Commonwealth of Pennsylvania. George and Kash, possibly with Shanni, have directed the affairs of U Lock since its incorporation. Complaint at ¶¶ 15-17.

As of the filing of the Complaint in this action, U Lock had held possession of the Subject Property at all relevant times. Complaint at ¶ 18.

## 2. *The Quiet Title Action*

On or about October 17, 2017, Biros commenced an action against U Lock and the Executors in the Court of Common Pleas of Westmoreland County, Pennsylvania (the "Westmoreland Court") at Civil Division Case No. 4886 of 2017 (the "Quiet Title Action"). Biros sought (a) a declaratory judgment that she owned the Subject Property, (b) an equitable order compelling the Executors to convey legal title to her by deed, (c) relief quieting title in her, and (d) an accounting for the funds that U Lock had received while in possession of the Subject Property. Complaint at ¶ 19.

U Lock, represented by Roth, defended against Biros' claims in the Quiet Title Action. Complaint at ¶ 20.

The Westmoreland Court dismissed the Executors from the Quiet Title Action after each of them executed deeds to the Subject Property and deposited those deeds with that court. All of those deeds were dated in May 2019. Complaint at ¶ 22.

On August 22, 2019, following trial, the Westmoreland Court found that Biros had been the equitable owner of the Subject Property, that U Lock did not own the Subject Property, and

that U Lock had held legal title to the Subject Property in trust for Biros' benefit. Complaint ¶ 23 and Exhibit A.

U Lock, represented by Roth, appealed from the judgment of the Westmoreland Court to the Superior Court of Pennsylvania on December 17, 2019 at 1841 WDA 2019.  However,  by published opinion of May 21, 2021, the Superior Court affirmed the Westmoreland Court's judgment for Biros.  The Superior Court denied U Lock's application for re-argument on July 28, 2021.  *See* Complaint at ¶¶ 27-31. and Exhibit C.

U Lock, represented by Roth, petitioned the Supreme Court of Pennsylvania for allowance of appeal on August 27, 2021, at 259 WDA 2021. Complaint at ¶ 33.

The Supreme Court of Pennsylvania denied that petition (the "Allocatur Denial") on January 19, 2022.  Complaint at ¶¶ 33-34 and Exhibit D.

On January 20, 2022, following the Allocatur Denial, the Westmoreland Court issued an order directing delivery to Biros of the four deeds conveying legal title to the Subject Property from the Executors to Biros. Complaint at ¶ 36.

On January 25, 2022, Biros recorded the four deeds conveying legal title to the Subject Property from the Estates to her in the Office of the Recorder of Deeds of Westmoreland County. Complaint ¶ 37.

On March 16, 2022, the Supreme Court of Pennsylvania granted U Lock's application to stay remand of the record of the Quiet Title Action pending U Lock's petition for certiorari to the United States Supreme Court.  *See* Complaint at Exhibit D.  The Superior Court noted that Order in its docket of the Quiet Title Action.  The Superior Court has retained that record and not remanded it to the Westmoreland Court.  *See id*. at Exhibit C.

On information and belief, U Lock never intended to petition the U.S. Supreme Court for certiorari. Complaint at ¶ 41.  U Lock did not, within ninety days of the Allocatur Denial, petition the United States Supreme Court for a writ of certiorari or petition that Court for an extension of the time in which to seek certiorari. Complaint at ¶ 40  It has not petitioned that Court for leave to seek certiorari nunc pro tunc. Id.

The status of the Quiet Title Action in each of the Supreme Court of Pennsylvania, the Superior Court, and the Westmoreland Court will be apparent to anyone who investigates Biros' or U Lock's interests in the Subject Property.  The Superior Court continues to identify the appeal in the Quiet Title Action as "Decided/Active."  The Westmoreland Court's docket of the Quiet Title Action reflects U Lock's taking its appeal but does not reflect the appellate courts' rejection of that appeal.

### 3. _Defendants' New Plan to Take the Subject Property_

By July 14, 2021, the Superior Court had ruled against U Lock in the Quiet Title Action but had not yet denied U Lock's application for re-argument.

On information and belief, at some time prior to July 14, 2021, the Defendants, acting in concert with one or more other persons, realized that U Lock was unlikely to reverse Biros' success in the Quiet Title Action. Complaint at ¶ 45.

The Defendants and those other persons still wanted, individually or through U Lock, to take legal title to the Subject Property and to maintain possession of the Subject Property. Complaint at ¶ 46.

On information and belief, the Defendants, acting in concert with one or more of those other persons, concluded – correctly or incorrectly – that they could accomplish their aims and deprive Biros of her legal and possessory interest in the Subject Property if one or more of them

held a lien on the Subject Property that predated any deed by which Biros took that legal title. Complaint at ¶ 47.

On information and belief, the Defendants, acting in concert with one or more other persons, realized that a judgment against U Lock would operate as a lien on U Lock's interest in the Subject Property.  On information and belief, the Defendants, acting in concert with one or more of those other persons, decided to try to generate a judgment against U Lock and a lien against the Subject Property. Complaint at ¶¶ 48-49.

This strategy faced a seemingly insurmountable obstacle:  None of the Defendants, nor any of those other persons, held a judgment against U Lock at all, let alone a judgment that might pre-date any deed that Biros was likely to receive.  Moreover, none of the Defendants, nor any of those other persons,  had a claim against U Lock. Complaint at ¶¶ 50-51.

On information and belief, the Defendants, acting in concert with one or more of those other persons, agreed to manufacture one or more claims or judgments that would create a lien on the Subject Property.  They further agreed to attempt to undermine the deeds that Biros would receive at the conclusion of the Quiet Title Action. Complaint at ¶ 52.

### 4. *Shanni's "Wage Case" Against U Lock*

#### a. *Prior Representations*

In 2018, Shanni, acting pro se, filed a voluntary petition seeking protection under Chapter 7 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court") at No. 18-21983-CMB. Complaint at ¶ 53.

In her petition, Shanni acknowledged that "bankruptcy fraud is a serious crime."  She identified a total of $3,925.00 in assets.  She identified no income other than child support and assistance from an unmarried partner not living with her.  When asked to identify "[o]ther

amounts someone owes you" – which offered "[u]npaid wages as its first example – Shanni listed nothing.  Complaint at ¶ 54 and Exhibit E.

In other forms that Shanni – again, proceeding *pro se* – filed with the Bankruptcy Court on June 1, 2018, Shanni stated that she had "no payment advices from an employer because I was not employed during 2016, 2017, or 2018."  Complaint at ¶ 56 and Exhibit F.

During discovery in the Quiet Title Action, U Lock stated in its Answer to Biros' Interrogatory No. 3 that the company had no employees.  George signed the verification for those discovery responses.  Complaint at ¶ 58 and Exhibit G.

During the 2019 trial in the Quiet Title Action, Kash testified under oath that Shanni was not involved with U Lock. Complaint ¶ 60.

### b. *The Wage Case*

On July 14, 2021, with the Quiet Title Action decided by the Superior Court but still active before that court, Shanni sued U Lock in this Court for the at Case No. 2:21-cv-00904-RJC (the "Wage Case").  Complaint at ¶ 61 and Exhibit H.  Service was purportedly made on U Lock personal delivery of the Complaint on George.  Complaint at ¶67.

As in her 2018 bankruptcy proceeding, Shanni claimed to be acting pro se in commencing and prosecuting the Wage Case. Complaint ¶¶ 63-64.  However, on information and belief, Shanni had assistance and advice of one or more attorneys or non-attorneys experienced in the preparation of pleadings and other documents used in litigation (the "Legal Drafters"), who are not parties to this action, throughout the Wage Case. Complaint ¶ 65.

In her complaint, Shanni asserted that she was making a claim against U Lock pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 to 209.  She claimed that she had worked for U Lock "70 hours per week from January 1, 2016, through February 15, 2020."  She claimed to seek $131,351 in unpaid hourly wages and overtime. Complaint ¶ 66.

U Lock never answered Shanni's complaint against it in the Wage Case, and U Lock did not otherwise respond to Shanni's claims against it. Complaint ¶ 68.

The Defendants have offered inconsistent and irreconcilable explanations for U Lock's not even attempting to defend itself in the Wage Case.

- In sworn testimony in January 2023, George stated that he consulted with Roth about Shanni's Wage Case and that Roth told him that defense of the action would cost $10,000.00. George testified that, on the basis of Roth's cost estimate, he decided that U-Lock would not defend itself against Shanni's claims.

- However, Roth asserted orally to the Westmoreland Court on April 22, 2022 that, as of that date, he was completely unaware of the existence of the Wage Case.

Complaint at ¶¶ 70-71.

Shanni requested on August 21, 2021 that this Court enter a default, and this Court did so on August 24. Complaint ¶ 72.

At this Court's October 18, 2021 hearing on her motion for default judgment (the "Wage Case Hearing"), Shanni testified under oath that the averments of her complaint were true. On information and belief, she intended for this Court to believe and rely upon that testimony. Complaint ¶¶ 73-76.

On information and belief, Shanni's sworn testimony was false. Complaint ¶ 77.

That same day, the District Court entered judgment for Shanni and against U Lock for $263,104.00. Complaint at ¶ 78 and Exhibit I.

Shanni filed a writ of execution in the District Court on November 21, 2021. On December 12, 2021, Shanni requested that the District Court issue to her an abstract of judgment

in the Wage Case.  The District Court did so on December 14, 2021.  Complaint at ¶¶ 80-81 and Exhibit J.

Shanni filed that abstract of judgment in the judgment roll of the Westmoreland Court on December 15, 2021 at 21-JU-04758 (the "Fake Lien").  Complaint at ¶ 83 and Exhibit K.  On information and belief, Shanni had assistance and advice of one or more of the Legal Drafters in preparing and submitting the Fake Lien. Complaint ¶ 85.

 Shanni knew that the Fake Lien was fraudulent, as it was based upon the judgment that she had obtained by fraud in the Wage Case.  Moreover, by the time that Shanni filed the Fake Lien, the Westmoreland Court had already determined that U Lock did not own the Subject Property, and the Superior Court had affirmed that judgment and denied U Lock's application for rehearing. Complaint ¶¶ 86-87.

The Fake Lien became a cloud on any claim that U Lock might have had to the Subject Property.  It was and is discoverable by anyone investigating claims against U Lock or U Lock's rights in real property, including the Subject Property. Complaint ¶ 88.

5. ***The Deeds to Biros and Defendants' Theory of Interference***

As noted above, the Supreme Court of Pennsylvania denied U Lock's petition for allowance of appeal in the Quiet Title Action on January 19, 2022.

In an Order dated January 20, 2022 and entered on January 24, 2022, the Westmoreland Court directed that Biros receive the deeds to the Subject Property that the Executors had previously deposited with that court. Complaint ¶ 90.

On March 17, 2022, U Lock, represented by Roth, filed in the Quiet Title Action a "Petition To Strike Order of January 20, 2022, Entered January 24, 2022; Motion To Comply With Rule 236 and To Note the Docket of the Date of Compliance; Motion To Correct the Docket; Motion To Compel Disclosure of Ex Parte Communications; and/or Motion for Leave to

File Notice of Appeal Nunc Pro Tunc" (the "Petition to Strike").  Complaint at ¶ 91 and Exhibit L.

In the Petition to Strike, U Lock asked that the Westmoreland Court strike its January 20, 2022 Order that had directed delivery to Biros of the deeds for the Subject Property.  It further asked that the May 2019 deeds to Biros, which Biros had recorded on January 25, 2022 following the Allocatur Denial, be stricken.  It insisted  that the Subject Property be first conveyed to U Lock and then to a formal trust that U Lock would implement.  Per U Lock's demand, the U Lock trust would then convey legal title to the Subject Property to Biros. Complaint ¶ 93.

On information and belief, the only purpose for U Lock's proposed Rube-Goldberg-like structure was to expose the title to the Subject Property to Shanni's Fake Lien.  Even though Biros would ultimately have prevailed in further litigation to clear that title, that effort would have subjected her to further expense and delay in obtaining clear title to the Subject Property. Complaint ¶ 95.

On March 18, 2022 – i.e., the day after Roth and U Lock had filed the Petition to Strike – Shanni, once again purporting to act pro se, filed a "Praecipe for Writ of Summons in Equity and Assumpsit and for Lis Pendens" with the Westmoreland Court at Civil Action 928 of 2022 (the "Lis Pendens Proceeding").  As defendants, Shanni named U Lock, Biros, the Executors, the trial judge in the Quiet Title Action, and others.  Complaint at ¶ 96 and Exhibit M.  In that praecipe, Shanni asked the Westmoreland County Prothonotary to issue a *lis pendens* on the Subject Property.  On information and belief, Shanni had assistance and advice of one or more of the Legal Drafters in preparing and submitting that praecipe. Complaint ¶¶ 98-99.

The Westmoreland County Prothonotary responded to that praecipe by, in fact, indexing a lis pendens on the Subject Property. Complaint ¶ 100.

Shanni never filed a complaint in the Lis Pendens Proceeding, and she never served all of the defendants she named in the Lis Pendens Proceeding. Complaint ¶¶ 101-102.

On April 22, 2022, the Westmoreland Court heard argument on U Lock's Petition to Strike. Roth appeared for U Lock. He did not argue that his client owned the Subject Property. Instead, and consistent with the position he had taken in that petition, argued that the Superior Court, by agreeing that legal title to the Subject Property was held in trust by U Lock for Biros, had mandated U Lock's seemingly rococo – but actually devious – approach to the conveyance. Complaint ¶ 103.

Although the Westmoreland Court did not rule on the Petition to Strike from the bench at that argument, that court made clear that it did not intend to grant that petition. Complaint ¶ 104.

The Lis Pendens Proceeding remained pending before the Westmoreland Court until, at the direct request of the Bankruptcy Court, Shanni discontinued it and withdrew her lis pendens on January 30, 2023. She expressly did so "without prejudice." Complaint ¶¶ 105-106.

### 6. *Shanni's Bankruptcy Petition Against U Lock*

On April 27, 2022 – eight days after U Lock and Roth allowed the United States Supreme Court deadline for the Quiet Title Action to pass without taking any action and five days after the Westmoreland Court heard argument on the Petition to Strike – Shanni filed an involuntary petition against U Lock in the Bankruptcy Court pursuant to Chapter 7 of the Bankruptcy Code. The Bankruptcy Court docketed that petition at Case 22-20823-GLT (the "U Lock Bankruptcy"). On information and belief, Shanni has had assistance and advice of one or more of the Legal Drafters throughout the U Lock Bankruptcy. Complaint ¶¶ 107-109.

The U Lock Bankruptcy remains pending before the Bankruptcy Court. Complaint ¶ 108.

In her involuntary petition, Shanni identified herself as a creditor of U Lock.  Shanni claimed that U Lock owed her $375,100.  Shanni's amount included the judgment she had received in the Wage Case, $13,100 in interest, and $100,000 for "retaliation under FLSA." Complaint at ¶¶ 113 and Exhibit N.

In that petition and in all other documents that she filed in the U Lock Bankruptcy prior to November 10, 2022, Shanni asserted that she was acting pro se.  On information and belief, Shanni had assistance and advice of one or more of the Legal Drafters in commencing the U Lock Bankruptcy and has had assistance and advice of one or more of the Legal Drafters throughout the U Lock Bankruptcy. Complaint ¶¶ 111-112.

On May 9, 2022, Shanni filed an Amended Petition in which she provided additional information about U Lock:

> Petitioning creditor declares under the penalty for perjury that she does not know the precise share structure, identity of the Board of Directors, or the official officers of the Debtor.  Based on information, there are between three and five officers and/or Board Members.  Two managing control persons appear to be George Snyder and Kash Snyder[.]

Complaint ¶ 116.

On information and belief, Shanni's claim not to know this information was untrue. George and Kash were her brothers, and she had claimed in the Wage Case to have worked for U Lock seventy hours per week for more than four years.  On information and belief, she had been in communication with U Lock's management during the Quiet Title Action and the efforts to obtain a lien that might interfere with Biros' right to own and possess the Subject Property. Complaint ¶ 117.

On May 10, 2022, the Bankruptcy Court entered an Order identifying George and Kash as the managing general partners of U Lock.  That same day, the Bankruptcy Court issued a summons to Shanni and directed her to serve it on U Lock. Complaint ¶¶ 118-119.

As the Bankruptcy Court underscored, the Westmoreland Court is also stayed from proceeding with any matters relating to U Lock. Complaint ¶ 120.

On May 27, 2022, Shanni filed a proof of claim in the U Lock Bankruptcy.  In that claim, Shanni asserted that U Lock owed her $263,100.00.  She based her claim on the judgment that she had obtained through fraud and perjury in the Wage Case.  She attached a copy of that judgment to her proof of claim.  She also asserted that her claim was secured by real estate. Complaint at ¶¶ 121, 123 and Exhibit O.

One week before Shanni filed her claim, on May 20, 2022, Biros moved to dismiss the U Lock Bankruptcy. Complaint ¶ 124.

Represented by Roth, U Lock opposed Biros' motion. Complaint ¶¶ 125-126.

Shanni Snyder also opposed Biros' motion.  Purporting to act pro se, Shanni filed a 32-page responsive brief on May 31, 2022.  Complaint at ¶¶ 127-128 and Exhibit P.

The Bankruptcy Court held a hearing on Biros' motion and scheduled a continuation of that hearing for July 6, 2022. Complaint ¶ 130.

On July 1, 2022, U Lock moved to convert the U Lock Bankruptcy to a proceeding under Chapter 11 of the Bankruptcy Code.  At the Bankruptcy Court's August 9, 2022 hearing on that motion, U Lock claimed that USAAG Systems Co. ("USAAG"), which has an address in Glastonbury, Connecticut, would provide funding for U Lock, in exchange for equity, if the Bankruptcy Court granted its motion and approved the conversion.  Complaint at ¶¶ 132 and Exhibit Q.

On information and belief, USAAG has not registered to do business with either the Secretary of State of Connecticut or the Secretary of State of Pennsylvania.  While a "USA AG Systems Co." appears to be incorporated under Colorado law, a search of the business databases

maintained by the State of Connecticut and the Commonwealth of Pennsylvania has not disclosed any entity licensed to do business in either state with a name beginning "USAAG" or "USA AG." Complaint ¶¶ 134-135.

The Bankruptcy Court denied U Lock's motion by Order of August 10, 2022.

On July 6, 2022, Roth filed U Lock's Schedule E/F, "Creditors Who Have Unsecured Claims," with the Bankruptcy Court. Complaint at ¶¶ 137-40 and Exhibit R. In that schedule, U Lock identified Shanni, Biros, and others as the holders of $912,060.63 in unsecured claims against U Lock. It identified Biros' claims, but not Shanni's claims, as Disputed. U Lock did not identify either George or Kash as an unsecured creditor of U Lock. See id. at Exhibit R.

At that same time, Roth filed U Lock's Schedule D, "Creditors Who Have Claims Secured by Property," with the Bankruptcy Court. That form asserted that U Lock had no secured creditors. Complaint at ¶ 141.

U Lock has never amended either of these schedules. Complaint at ¶ 142.

On August 26, 2022, George, apparently acting pro se and using the email snyder4judge@yahoo.com, filed a Proof of Claim in the U Lock Bankruptcy. In his proof of claim, George asserted a $99,000.00 claim against U Lock. As the basis for this claim, George identified "wage, fair labor standards." Complaint at ¶¶ 143-45 and Exhibit S.

During his examination under oath in the U Lock Bankruptcy, George testified that U Lock had no employees and that Shanni, in particular, had not been an employee of U Lock. Complaint at ¶ 146.

On December 28, 2022, pursuant to an Order of the Bankruptcy Court, Shanni closed on her purchase of a substantial portion of U Lock's assets. On information and belief, USAAG funded Shanni's purchase of those assets. Complaint at ¶¶ 147-48.

7. *Continued Activity in the Quiet Title Action*

Shanni's filing of her petition that commenced the U Lock Bankruptcy proceedings had the effect of, among other things, staying other litigation involving U Lock.  Of particular note here, the docket of the Supreme Court of Pennsylvania in the Quiet Title Action reflects a May 11, 2022 bankruptcy stay, and the Superior Court's docket in that action also reflects a stay.  See Complaint at ¶¶ 149-50 and Exhibits C and D.  However, on creating the U Lock Bankruptcy, Shanni did not immediately give notice to the Westmoreland Court.  Neither did George, Kash, U Lock, or anyone else affiliated with the Defendants.  *Id.* at ¶ 151.

On May 17, 2022, the Westmoreland Court denied the Petition to Strike that Roth had filed on behalf of U Lock in March 2022.

On May 19, 2022, at 10:07 a.m., Shanni filed a pro se Entry of Appearance in the Quiet Title Action with the Westmoreland Court.  Complaint at ¶¶ 153-54 and Exhibit T.  At that same time, to the minute, Shanni filed in that same court a Notice of Appeal to the Superior Court.  In her Notice of Appeal, Shanni stated that the Westmoreland Court's May 17 Order "eviscerate[d] and appear[ed] to supersede portions of her judgment lien."  Id. at ¶¶ 155-56 and Exhibit U.

Two minutes later, at 10:09 a.m. on May 19, 2022, Roth filed "U Lock Inc's Notice of Bankruptcy" in the Westmoreland Court.  Complaint at ¶¶ 159-60 and Exhibit V.

B.  **History of this Action**

Biros filed her Complaint in this action on February 24, 2023.  *See* Doc. No. 1.  As directed by this Court, she timely filed her RICO Case Statement on March 13, 2023.  *See* Doc. No. 15.

Following this Court's granting of extensions, each of the Defendants filed a motion to dismiss that Complaint.  Defendant J. Allen Roth filed a motion to dismiss, for judgment on the pleadings, or to strike and a brief in support of that motion on April 23, 2023.  See Doc. Nos. 32,

33.  Defendant Kash Snyder filed a consolidated motion to dismiss or for a more definite

statement and brief in support on April 27, 2023.  See Doc. No. 34.  Defendant George Snyder

filed a motion to dismiss on that same date.  See Doc. No. 35.  Defendant Shanni Snyder filed a

consolidated motion to dismiss and memorandum in support on May 1, 2023.  See Doc. No. 36.

Each of the Snyders incorporated the arguments made in the earlier-filed motions and briefs.

### STANDARDS OF REVIEW

> "[I]n deciding a motion to dismiss, all well-pleaded allegations of the complaint
> must be taken as true and interpreted in the light most favorable to the plaintiffs,
> and all inferences must be drawn in favor of them." *McTernan v. City of York*,
> 577 F.3d 521, 526 (3d Cir. 2009). To withstand a Rule 12(b)(6) "motion to
> dismiss, a complaint must contain sufficient factual matter, accepted as true, to
> state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,
> 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks
> omitted).

*St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 299-300 (3d Cir.

2020).

### ARGUMENT

### THIS COURT SHOULD DENY DEFENDANTS' MOTIONS.

**A.  Biros Has Pleaded All Necessary Elements of Her RICO Claims Against Shanni.**

Section 1962(c) of the Racketeer Influenced and Corrupt Organizations (RICO) Act

states:

> It shall be unlawful for any person employed by or associated with
> any enterprise engaged in, or the activities of which affect, interstate
> or foreign commerce, to conduct or participate, directly or
> indirectly, in the conduct of such enterprise's affairs through a
> pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). The RICO Act also allows for civil suits, in which:

> Any person injured in his business or property by reason of a
> violation of section 1962 of this chapter may sue therefor in any

> appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c) (omitting exception not relevant here related to the fraudulent sale of securities).

For RICO purposes, there are a wide variety of types of "racketeering activity," which include ""any act which is indictable under any of the following provisions of title 18, United States Code… section 1343 (relating to wire fraud)… section 1503 (relating to obstruction of justice)… [and] any offense involving fraud connected with a case under title 11 [relating to bankruptcy]."18 U.S.C. § 1961(1). A "pattern" of racketeering activity is two or more acts of racketeering activity committed within ten years of each other. 18 U.S.C. § 1961(5). The definition of a "person" includes "any individual," and the definition of "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or *group of individuals associated in fact although not a legal entity*." 18 U.S.C. § 1961(3-4) (emphasis added).

The Complaint in this matter alleges a series of predicate acts of racketeering activity by Shanni in pursuit of the enterprise here, which was "a group of individuals associated in fact although not a legal entity," and which consisted of the Defendants, at least two additional persons not named as Defendants, and other persons or entities that are still, at this point and prior to discovery, unknown, including the individual or individuals identified in the Complaint as the "Legal Drafters." Complaint at ¶ 167-180. This enterprise is referred to in the Complaint as the "Fake Lien Enterprise," and it was concocted in an effort to unlawfully deprive Biros of certain real property after more straightforward attempts to do so through the legal system failed.

Complaint at ¶ 168. The predicate acts constitute wire fraud, obstruction of justice, and bankruptcy fraud, but also frauds upon this Court.

Shanni's first predicate act was an instance of wire fraud, which she committed when, with intent to defraud or with intent to obtain property by means of false or fraudulent pretenses, she used the internet to transmit her complaint in the Wage Case to this Court. *See* 18 U.S.C. § 1343. By the time she did this, Shanni, as well as other members of the enterprise, had already given sworn testimony incompatible with this claim, and in fact the claim, including the time Shanni claimed to have worked and her claims for retaliation, were false. Complaint at ¶ 182.

Shanni then compounded her wrongdoing with a second predicate act in pursuit of a fraudulent judgment, by corruptly attempting to influence an officer of this Court. *See* 18 U.S.C. § 1503. Shanni appeared before this Court at a hearing on a motion for default judgment, having agreed with her brothers that U Lock would not appear to defend itself, and falsely testified that she had worked for U Lock every day for over four years for ten hours a day, seven days a week, without ever being paid a dime. Shanni did this with the expectation that the Court, with no opposing party to challenge her falsehoods, would rely on those statements, and in fact the Court did rely on them and entered a default judgment in Shanni's favor in reliance on those statements. Complaint at ¶ 183.

The next step of the Fake Lien Enterprise's plan involved another predicate act of racketeering activity, this one fraud in a Chapter 11 bankruptcy proceeding. Having fraudulently received a judgment from this Court, Shanni then proceeded to the Bankruptcy Court and filed an involuntary Chapter 11 proceeding in which she falsely claimed to be a creditor of U Lock based on her fraudulently obtained judgment from this Court. Shanni committed a further

predicate act of bankruptcy fraud by submitting a proof of claim in the involuntary Chapter 11 proceeding she had initiated based on her fraudulently obtained judgment. Complaint at ¶ 184.

All of these acts of racketeering activity occurred within the last two years, let alone ten years. The first known predicate act of Shanni's wire fraud occurred on July 14, 2021, although there may have been earlier acts which will come to light during the course of discovery. The most recent act that Biros identifies in the Complaint, the second act of bankruptcy fraud, occurred on May 27, 2022. Complaint at ¶¶ 182-184.

**B. Biros Has Pleaded All Necessary Elements of Her RICO Conspiracy Claims Against the Defendants.**

Under Section 1962(d) of RICO, "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). The reference here to "subsection (c)" refers to the RICO section discussed immediately above, pleaded against Shanni Snyder in Count I of the Complaint. RICO incorporates a common law understanding of conspiracy in Section 1962(d), and "RICO's conspiracy section – section 1962(d) – is to be interpreted in light of the common law of criminal conspiracy, and all that is necessary for such a conspiracy is that the conspirators share a common purpose." *Smith v. Berg*, 247 F.3d 532, 537 (3d Cir. 2001). The United States Supreme Court is clear that, while some member of the subject enterprise must commit predicate racketeering acts, the co-conspirators need not necessarily do so personally, but instead that it is enough that they took other, non-racketeering activities in furtherance of the common scheme. *Beck v. Prupis*, 529 U.S. 494, 502 (2000).

As explained above, Shanni engaged in multiple predicate acts. The depth of involvement of the other Defendants in the predicate acts is unknown, and it may become necessary as discovery proceeds to amend the Complaint to add later-acquired facts regarding further

predicate acts by other Defendants. For the time being, however, it is clear that each Defendant had a role in the Fake Lien Enterprise and that each Defendant acted in furtherance of the corrupt purpose of that enterprise, to deprive Biros of her real property through mail fraud, obstruction of justice, bankruptcy fraud, and frauds on this court.

George and Kash Snyder, for instance, managed the affairs of U Lock in a manner that would allow Shanni's frauds to succeed. For example, they did not defend U Lock against the claims in the Wage Case, although even a cursory defense would have revealed the flaws in Shanni's claims, because they wanted to further the conspiracy. They also needlessly prolonged the state court case, including by falsely stating that they intended to seek certiorari in the United States Supreme Court, in order to give the Fake Lien Enterprise time to work. George also engaged in the enterprise by filing his own false claims in the U Lock Bankruptcy. See Complaint at ¶ 197.

Roth participated in the Fake Lien Enterprise by, on information and belief, engaging with Shanni, George, and Kash in the planning and organization of the enterprise, by advising George, Kash, and U Lock not to respond to Shanni's fraudulent FLSA claim, by participating in the scheme to delay the resolution of the state court action in order to give the fraudulent FLSA claim and subsequent fraudulent bankruptcy time to work, and by delaying giving notice of the U Lock bankruptcy in state court in order to allow Shanni time to file a notice of appeal in that action, further confusing the state court action to prevent the transfer of the deeds to Biros' property to Biros, as ordered by the state court. Indeed, Roth finally filed the notice of bankruptcy just two minutes after Shanni filed her notice of appeal: apparently the co-conspirators saved on gas by heading to the prothonotary's office together. See Complaint at ¶ 198.

In addition to the Defendants, there were additional co-conspirators who acted in furtherance of the Fake Lien Enterprise, including the individual or individuals referred to in the Complaint as the Legal Drafters, whose identities are still unknown, a company that funded various moves by the Defendants in the U Lock Bankruptcy, and individuals who provided services to the enterprise by serving documents in the Wage Case and filing a baseless appeal in state court to delay the delivery of Biros' deeds until the racketeering activities of the Fake Lien Enterprise could take effect. Complaint at ¶¶ 201-206.[1] U Lock, meanwhile, participated in the Fake Lien enterprise through the direction of its management by allowing Shanni to take the fraudulent default judgment against it and by engaging in a series of tactics to slow the state court action, in order to give Shanni time to enact the predicate racketeering acts central to the Fake Lien Enterprise. See Complaint at ¶ 200.

---

[1] While Biros has stated a claim for conspiracy under RICO against all of the Defendants, should this Court for any reason dismiss this claim against any of George, Kash or Roth, it should still exercise jurisdiction over the state-law claims against any dismissed party pursuant to the supplemental jurisdiction of 28 U.S.C. § 1367(a). In noting that a district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," Congress added, "Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." *Id. See also New Rock Asset Partners, L.P. v. Preferred Entity Advancements*, 101 F.3d 1492, 1509 (holding that § 1367 extends pendent party jurisdiction to limit permitted by U.S. Constitution). The Supreme Court has described the scope of the Constitution in this regard:

> The state and federal claims must derive from a common nucleus of operative fact. But if considered without regard to their state or federal character, a plaintiff 's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in the federal courts to hear the whole.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). All of Biros' claims against all of the Defendants arise from the same "nucleus of operative fact": The collective efforts of the Defendants to undo the effect of the Quiet Title Action and interfere with Biros' ownership of the Subject Property. Shanni Snyder may have committed most of the predicate acts, but the participation of the other Defendants increased both the risk that the scheme would succeed and the costs to Biros.

Clearly, there is not only a conspiracy here, but a broad one, and one in which all of the Defendants have been amply pleaded to have participated.

**C.  Biros Has Pleaded All Necessary Elements of Her Direct and Conspiracy Claims for Slander of Title.**

*1.  Shanni Must Answer the Slander of Title Claim Against Her.*

"Disparagement of title, variously labeled slander of title, defamation of title, or in other contexts, slander of goods, trade libel or injurious falsehood, is the false and malicious representation of the title or quality of another's interest in goods or property." *Triester v. 191 Tenants Ass'n*, 415 A.2d 698, 701 (Pa. Super. Ct. 1979) (citing *Young v. Geiske*, 209 Pa. 515, 58 A. 887 (1904); *Paull v. Halferty*, 63 Pa. 46, 3 Am.Rep. 518 (1870)).  (1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity.  *Skiff re Business, Inc. v. Buckingham Ridgeview, LP*, 991 A.2d 956, 964 (Pa. Super. Ct. 2010) (quoting *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 246 (2002)).

Here, Shanni filed both the Fake Lien and a *lis pendens* on the Subject Property that specifically named Biros as a party.  Complaint at ¶¶ 83-88, 96-102, 226-39.  She knew that both of these claims were false – because she knew that she had no claim against U Lock, she knew that the judgment from the Wage Case, which underlay the Fake Lien and the *lis pendens*, was obtained through fraud. *Id*. at ¶¶ 227, 234-35.  Moreover, Shanni knew that Biros, having spent funds in order to secure final judgment in her favor in the Quiet Title Action and secure title to the Subject Property, would now be forced to expend further resources in order to protect that

21

title against Shanni's and the other Defendants' new and false attacks.  And, in fact, Biros has

been forced to expend funds for precisely those purposes.  Thus, this Court should deny Shanni's

motion and direct her to answer this claim.[2]

### 2. *Biros Has Pleaded a Conspiracy Claim Against All of the Defendants*

A plaintiff pleading a claim for Civil Conspiracy under Pennsylvania law must

sufficiently allege that "two or more persons [have]combined or agreed with intent to do an

unlawful act or to do an otherwise lawful act by unlawful means."  *S.V.B. Assocs. v. Lomb*, no.

2:19-cv-1575-RJC, 2020 U.S. Dist. LEXIS 179937, at *25-26 (W.D. Pa. Sep. 30, 2020)

(Colville, J.) (citing *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1978)).

In addition to the allegations that will, when proven, establish Slander of Title, Biros

pleads more than sufficient facts to prove the existence of a combination or agreement that

involves all of the Defendants:

- Shanni filed the Wage Case shortly after the Superior Court affirmed that Biros, rather than U Lock, owned the Subject Property.  Complaint at ¶¶ 28, 44-52, 61.

- George and Kash, who controlled U Lock, had testified and provided discovery answers in the Quiet Title Action that were contrary to and inconsistent with Shanni's assertion that she had worked for U Lock.  *Id.* at ¶¶ 58-60 & Ex. G.

- Despite that actual knowledge and their record statements, George and Kash, possibly advised by Roth, *see id.* at ¶¶ 70-71, declined to cause U Lock to answer Shanni's complaint in the Wage Case, and they let Shanni take a default judgment against U Lock.[3]  *Id.* at ¶¶ 68-70.

---

[2] There does not appear to be any dispute that this claim is timely to the extent it complains about the Lis Pendens Proceeding.  To any extent that this Court is concerned about the timeliness of this claim or the related Civil Conspiracy claim as they relate to the Fake Lien, Biros reserves her right to amend these counts to bring them within the discovery rule,  *See, e.g., Fine v. Checchio*, 870 A.2d 850, 858-59 (Pa. 2005).

[3] Since filing the Complaint in this action, Biros has learned that, during the period in which Shanni claims to have worked for U Lock, Roth entered an appearance for Shanni in a claim that Shanni brought before the Court of Common Pleas of Westmoreland County, Pennsylvania. Biros reserves the right to amend her Complaint to add allegations about that representation.

- On behalf of U Lock, which was, again, controlled by George and Kash, Roth filed a motion and appeared in the Westmoreland Court to challenge that court's direction to deliver to Biros the deeds to the Subject Property. Roth did not argue in any way that U Lock should retain ownership of the Subject Property. *Id.* at ¶¶ 91-95.

- Shanni filed her *lis pendens* against Biros and others the day after U Lock filed that motion. *Id.* at ¶ 96.

- After Shanni commenced the U Lock Bankruptcy, Roth delayed advising the Westmoreland Court of that proceeding until two minutes after Shanni both entered her appearance in the Quiet Title Action and filed an appeal in that action to the Superior Court. *Id.* at ¶¶ 153-160.

Moreover, there is no question, at least as pleaded, that the Defendants took these actions with malice and in order to harm Biros' interests. *See Thompson Coal*, 412 A.2d at 472. All of the Defendants knew that Shanni had no legitimate claim against U Lock when she filed the Wage Claim. As all Defendants knew that the judgment from that action was procured by fraud, none of them could have identified any legitimate business purpose in their actions to interfere with Biros' interests in the Subject Property. Shanni knew she had no basis to file the Fake Lien or her *lis pendens* against Biros and others. George, Kash, and Roth all knew that U Lock had nothing to gain from their attack on the manner in which the Westmoreland Court directed that the deeds to the Subject Property be delivered to Biros.

Finally, Biros has pleaded that she has incurred damages. *See* Complaint at ¶¶ 255. These damages include the expenses of attempting to clear these clouds from her title to the Subject Property. Thus, this Conspiracy claim should continue.

**D. Biros Has Pleaded All Necessary Elements of Her Direct and Aiding and Abetting Claims for Fraud.**

***1. Biros Has Pleaded a Fraud Claim Against Shanni.***

The elements of a claim under Pennsylvania for Fraud are familiar:

Fraudulent (or intentional) misrepresentation requires the plaintiff to prove six elements: (1) a representation; (2) that is material to the transaction at issue;

23

> (3) made falsely, with knowledge of its falsity or reckless disregard as to whether
> it is true or false; (4) with the intent to mislead another person into relying on it;
> (5) justifiable reliance; and (6) an injury proximately caused by the reliance.

*Gregg v. Ameriprise Financial, Inc.*, 245 A.3d 637, 645-46 (Pa. 2021) (citing *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999)).

Biros has pleaded all of these elements.  Consistent with the requirements of  Fed. R. Civ. P. 9(b), Biros sets forth the who, what, when, and where of Shanni's false statements – Shanni's filing of her complaint in the Wage Case and Shanni's testimony to this Court during the Wage Case Hearing that the allegations of her complaint were true.  *See* Complaint at ¶¶ 258-59.  Biros alleges that these statements were material to the transaction at issue, *id*. at ¶260, and it certainly hard to imagine Shanni's having obtained the judgment from this Court in the absence of either her Complaint or her testimony, and the Fake Lien and Shanni's claim in the U Lock Bankruptcy flow directly from that judgment.  Biros alleges that Shanni's statements were knowingly false, *id*. at ¶ 261, and Biros has identified several occasions, both during and since Shanni's claimed employment, in which Shanni and other Defendants have stated under oath that Shanni was not employed at all during that time.  *See, e.g., id.* at ¶¶ 53-60.  Biros has alleged that Shanni intended for this Court to rely on those statements.  *See* id. at ¶ 263; *see also* Fed. R. Civ. P.9(b) (allowing for general allegations of intent and knowledge).  Indeed, Shanni will have a very hard time in even suggesting any other motivation for her statements.  Biros alleges that this Court acted reasonably in believing those statements.  Complaint at ¶ 264.  *See also* 18 U.S.C. §§ 1503, 1621; Fed. R. Civ. P. 11.  And Biros has explained how she was injured by Shann's false statements.  Complaint at ¶¶ 265-68.

## 2. *Biros Has Pleaded Claims for Aiding and Abetting Against George, Kash, and Roth.*

In *Marion v. Bryn Mawr Trust Co*., 288 A.3d 76 (Pa. 2023), the Supreme Court of Pennsylvania recently recognized and delimited the elements of a claim for Aiding and Abetting

24

Fraud.  The Court recognized that a plaintiff must allege that the defendant has "actual knowledge" of the principal actor's fraud  *Id.* at 89.  In doing so, that court looked to Section 876(b) of the Restatement (Second) of Torts.  *Id.* at 90.  *See also Stanco v. Selesky*, Civ. Action No. 3:22-cv-00573, 2023 U.S. Dist. LEXIS 47515, at *21 (M.D. Pa. Mar. 20, 2023) (recognizing Marion court's adoption of § 876(b)).  Section 876 states in relevant part, "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself."

Biros adequately pleads that each of George, Kash, and Roth knew that Shanni's statements to this Court in the Wage Case were false.  George and Kash operated U Lock while Shanni claims to have worked there, and they know that Shanni did not do the work that she claimed in her complaint or to which she testified at the Wage Case Hearing.  Complaint at ¶¶ 16-17.  Moreover, the Defendants' plan to generate the Fake Lien, for which the Wage Case was an early step, grew from the outcome in the Quiet Title Action, in which Roth represented U Lock.[4]  *Id.* at ¶¶ 45-52.

Under all of these circumstances, and particularly in light of subsequent events, it is more than plausible that each of the Defendants encouraged and assisted Shanni.  The record that existed prior to Shanni's filing the Wage Case includes no indication at all that Shanni worked for U Lock.  George and Kash decided that U Lock would not respond to Shanni's complaint.  Roth argued that the Subject Property should be transferred to Biros in a way that, while of no benefit to his client, might have exposed that property to Shanni's Fake Lien.  Roth did not

---

[4] As discussed above in Note 3, Biros now understands that Roth represented Shanni during the period in which she claims to have been working for U Lock.  It is hard to believe that, during the course of that representation, Roth did not learn whether or not Shanni actually had a job.

advise the Westmoreland Court of the U Lock Bankruptcy until – literally – two minutes after Shanni entered an appearance in the Quiet Title Action and filed her appeal to the Superior Court.

Finally, as discussed above, Biros was damaged by Shanni's untrue statements.  To the extent that the other Defendants encouraged and assisted those statements, they are liable for those damages.

**E.  Biros Has Pleaded All Necessary Elements of Her Direct and Conspiracy Claims for Abuse of Process.**

*1.  Biros Has Pleaded a Claim for Abuse of Process Against Shanni.*

The elements of a cause of action for abuse of process are "that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. 2002), quoting *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998) and *Rosen v. American Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. 1993).

Biros pleads the first element here, and it is difficult to see how Shanni could possibly dispute that element on the facts.  The *Lis Pendens* Action and Shanni's 2022 entry of her appearance in the Quiet Title Action and attempted appeal to the Superior Court are express uses of civil process against Biros.  *See* Complaint at ¶¶ 96-100, 153-56 & Exs. M, T, & U. Particularly in light of the Defendants' agreement about how to undo Biros' victory in the Quiet Title and attack her title to the Subject Property, it is also hard to see Shanni's filing the Fake Lien as anything other than a use of legal process against Biros.  *See id.* at ¶¶ 83-88.

Moreover, Shanni did not, in any of these instances, use process for the purpose for which it was designed.  Shanni knew in each of these instances that her claims on Biros and Biros' ownership of the Subject Property were based on Shanni's own fraud in pursuing and

obtaining the default judgment against U Lock in the Wage Case.  None of these legal actions were ever intended to support anyone in making and benefiting from fraudulent claims.

Finally, Biros has been damaged by Shanni's conduct.  She has been forced to defend herself, her victory in the Quiet Title Action, and her interest in the Subject Property against all of Shanni's actions, and she has incurred expenses in connection with these efforts. Accordingly, she should be able to proceed with this claim.

### 2. *Biros Has Pleaded a Claim for Civil Conspiracy Against George, Kash, and Roth.*

As discussed immediately above, Biros has made out a claim of Abuse of Process relating to the filing of the Fake Lien, the filing of the *Lis Pendens* Proceeding.

The analysis for the remaining elements of this claim as to all of the Defendants is virtually identical to the discussion, above, of Biros' claims for Civil Conspiracy for Slander of Title, and Biros incorporates that discussion here.  For those same reasons, this claim should survive the Defendants' motions.

### F. Defendants Are Not Entitled to Any Relief on Any of the Additional Theories in Their Motions.

### 1. *Shanni's Claims of Retaliation Have Nothing To Do With Whether Biros Can Maintain This Action.*

Shanni dedicates much of her motion to the allegation that the Complaint should be dismissed because this action is somehow Biros' retaliation for her having filed a claim against U Lock under the FLSA.  *See* Doc. No. 36 at 1-3 (citing 29 U.S.C. § 215(a)(3).  Under any circumstances, Shanni would face real difficulty in, after asserting to the Bankruptcy Court that George and Kash control U Lock, offering a plausible explanation of how *Biros'* filing this action, which alleges concerted action among Shanni, George and Kash, is retaliation for the

District Court Action against U Lock.[5]  Here, however, it is enough to say that these allegations about motive have nothing to do with the question of whether Biros has adequately stated her claims against Shanni.

To any extent that Shanni may be arguing that the FLSA precludes or preempts Biros's RICO claims against her, Shanni has it backwards.  In the cases to which she cites, courts have held that *an employee* may not bring a RICO claim against her employer based upon a claimed violation of some federal statute that establishes its own, more specific rules or administrative scheme.  *See, e.g., DeSilva v. N. Shore-Long Island Jewish Health Sys.*, 770 F. Supp. 2d 497, 516 (E.D.N.Y. 2011) (dismissing RICO claim based upon FLSA violations because "courts, including the Second Circuit, have found civil RICO claims to be precluded where another federal statute has set forth a broad remedial scheme and where the RICO claims are based on the same facts that would allow recovery under that alternative scheme"); *Danielson v. Burnside-Ott Aviation Training Ctr.*, 746 F. Supp. 170, 176 (D.D.C. 1990) (dismissing RICO claim in light of "comprehensive administrative scheme . . . to remedy violations of federal labor law" under former Service Contract Act, 41 U.S.C. § 351 *et seq.*).  Certainly, Biros is not claiming that she is the victim of Shanni's violation of federal labor laws.  Thus, Shanni's arguments, like those of the other Defendants, provide no basis on which to dismiss that claim.

Further, an employer's counterclaim against an FLSA claimant is probably not an adverse action within the meaning of FLSA, and even if it plausibly could be, it is not retaliation against an employee unless it is wholly baseless. *Berrada v. Cohen*, 792 F. Appx. 158, 164 (3d Cir. 2019). If an employer's non-frivolous counterclaim is not retaliation under FLSA, it beggars

---

[5] Shanni will certainly have an opportunity to attempt to lay out that argument consistent with the requirements of Fed. R. Civ. P. 11 if she asserts a counterclaim in this action.

belief that a suit brought by a third party, who is not the FLSA claimant's employer, for damages caused by fraudulently advanced FLSA claim could be.

   2. ***George Is Liable for His Own Intentional Torts.***

George cannot hide behind U Lock to avoid liability here.  George is liable for his participation in the plan to create the District Court Judgment and the attempt to use that judgment to upset Biros' victory in the Quiet Title Action:

> Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer. Instead, liability attaches where the record establishes the individual's participation in the tortious activity.

*Village at Camelback Property Owners Ass'n v. Carr*, 371 Pa. Super. 452, 538 A.2d 528, 533 (Pa. Super. Ct. 1988) (quoted in *Sereda v. Center City Acquisitions, LLC*, 222 A.3d 1161, 1169 (Pa. Super Ct. 2019)).  George is not liable here for simply standing by and doing nothing. Instead, George is liable because he agreed to and participated in the Defendants' conspiracy and because he aided and abetted Shanni in lying to this Court.  George should answer for those actions.

Because Biros' claims address George's own actions, he has no claim for a stay under 11 U.S.C. § 362.  That section provides, generally and with exceptions, for a stay of claims against a "debtor" and property of the estate.  *See id*.  The Bankruptcy Code defines "debtor" as "person or municipality concerning which a case under this title has been commenced."  Neither George nor anyone else has commenced  an action under the Bankruptcy Code concerning George.  In fact, George sees himself as so sufficiently distinct from U Lock that he, himself, actually filed a claim against U Lock in the U Lock Bankruptcy.  *See* Complaint at ¶¶ 143-45 & Ex. S.  Like the

rest of the Defendants' arguments, George's reference to Section 362 provides no basis at all to dismiss this action.[6]

## **CONCLUSION**

To any extent necessary, Biros respectfully requests that this Court grant her leave to amend her complaint to state her claims against the Defendants more fully.  However, Biros does not believe that this amendment would be necessary.  Thus, Biros respectfully requests that, for the reasons stated above, this Court deny each of the Defendants' motions to dismiss and direct them to answer the claims against them.

Respectfully submitted,
BERNSTEIN-BURKLEY, P.C.

Dated:  June 6, 2023

By: */s/ Stuart C. Gaul, Jr.*
Kirk B. Burkley, Esq.
(PA. I.D. #89511)
Stuart C. Gaul, Jr., Esq.
(PA. I.D. #74529)
Daniel McArdle Booker Esq.
(PA. I.D. #320890)
601 Grant Street, 9th Floor
Pittsburgh, PA  15219
Telephone: (412) 456-8100
Facsimile:  (412) 456-8135
kburkley@bernsteinlaw.com
sgaul@bernsteinlaw.com
mbooker@bernsteinlaw.com

*Attorneys for Plaintiff, Christine Biros*

---

[6] Although none of Kash, George, or Shanni argues in his or her motion that any of Biros' claims should be dismissed pursuant to 28 U.S.C. § 1915, they all appear to have checked the box for "frivolous" in filing their motions.  Of this designation, it need only be noted, first, that § 1915 is directed to actions filed in forma pauperis, *see Deutsch v. United* States, 67 F.3d 1080, 1084 (3d Cir. 1995); second, that Biros has paid the filing fee for this action; and, third, that, as discussed above, Biros's claims here are far from frivolous.

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on this 6th day of June, 2023, I served the foregoing Response of Plaintiff Christine Biros to Defendants' Motions to Dismiss on all Defendants by means of this Court's ECF System.


*/s/ Stuart C. Gaul, Jr.*