IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINE BIROS, | ) |
| | ) No. 2:23-297 |
| Plaintiff, | ) |
| | ) |
| v. | ) Judge Robert J. Colville |
| | ) |
| SHANNI SNYDER, GEORGE SNYDER, KASH SNYDER, and J. ALLEN ROTH, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court are four Motions to Dismiss (ECF Nos. 32, 34, 35, 36) filed by Defendants in this matter. Defendants move to dismiss with prejudice all counts in Plaintiff's Complaint, arguing that Plaintiff has failed to state a claim upon which relief can be granted. The Court has jurisdiction to rule on this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. The Motions have been fully briefed and are ripe for disposition.

**I.   Factual Background & Procedural History**

To provide some degree of clarity at the outset, the Court notes that the history of this matter involves three different court proceedings: (1) is a suit in state court over the title of the plot of land at the center of this dispute (the "Title Case"), (2) is a wage dispute in this District that resulted in a default judgment awarding allegedly unpaid wages (the "Wage Case"), and (3) is a Bankruptcy proceeding related to the company at the center of this controversy (the "Bankruptcy

1

Case"). In the Complaint, Plaintiff sets forth the following factual allegations relevant to the Court's consideration of the Motions at issue:

On July 16, 2015, Plaintiff provided funding for the purchase of a plot of land at 14390 Route 30, North Huntington, PA 15642, from the executors of four estates. ECF No. 1 ¶ 13. After the purchase was complete, the four deeds for the property were executed in favor of "U Lock Inc." *Id.* ¶ 15. On September 4, 2015, the corporation U Lock Inc. ("U Lock") was formed, operating under the auspices of George Snyder ("George") and Kash Snyder ("Kash"). *Id.* ¶ 17.

On October 17, 2017, Plaintiff commenced the Title Case against U Lock and the four executors in the Court of Common Pleas of Westmoreland County, seeking, among other things, a declaratory judgment that she owned the property and relief quieting title to her. *Id.* ¶ 19. The court found that Plaintiff owned the property and that U Lock simply held legal title to the property in trust for Plaintiff's benefit. *Id.* ¶ 23. U Lock's post-trial motions were denied. *Id.* ¶ 25. On December 17, 2019, U Lock appealed, and the Superior Court affirmed the decision of the Court of Common Pleas (the "Superior Court Appeal"). *Id.* ¶ 27–28. U Lock applied for re-argument. *Id.* ¶ 44.

On July 14, 2021, before the court ruled on U Lock's application for re-argument in the Title Case, Defendant Shanni Snyder ("Shanni"), sister to George and Kash, filed the Wage Case *pro se* against U Lock in this District under the Fair Labor Standards Act. *Id.* ¶ 61. Shanni claimed that she had been working for U Lock for seventy hours per week since January 1, 2016, without receiving the promised compensation, and sought $131,351 in unpaid wages. *Id.* ¶ 66. U Lock did not file any response to Shanni's complaint and made no attempt to defend itself. *Id.* ¶ 69. On October 18, 2021, this Court entered a default judgment against U Lock, awarding Shanni $263,104, which the court reiterated with an abstract of the judgment on December 14, 2021. *Id.*

2

¶ 78–81.  On December 15, 2021, Shanni filed the abstract of judgment against U Lock in the judgment roll of the Westmoreland Court, thereby gaining a lien against the real property of U Lock.  *Id.* ¶ 83 and Ex. K.

On July 28, 2021, the Superior Court denied U Lock's application for re-argument in the Title Case.  *Id.* ¶ 31.  On August 27, 2021, U Lock petitioned the Pennsylvania Supreme Court for allowance of appeal.  *Id.* ¶ 32.  On January 19, 2022, the Pennsylvania Supreme Court denied the petition.  *Id.* ¶ 33.  With all appeals exhausted, on January 20, 2022, the Court of Common Pleas issued an order in the Title Case, directing the parties to deliver to Plaintiff all deeds conveying title of the property to her (the "Deed Order").  *Id.* ¶ 36.  On January 24 or 25, 2022, Plaintiff recorded the deeds conveying legal title to herself.  *Id.* ¶¶ 37 & 90.

However, in March 2022, U Lock applied to the Pennsylvania Supreme Court to stay remand to the Court of Common Pleas, pending U Lock's request for a grant of *certiorari* from the United States Supreme Court.  *Id.* ¶ 38.  Although the Court of Common Pleas had already issued the Deed Order, the Pennsylvania Supreme Court granted the application to stay the order and prevent remand to the Court of Common Pleas, providing U Lock with ninety days to complete its petition to the United States Supreme Court.  *Id*.  U Lock never did petition the United States Supreme Court.  *Id.* ¶ 40.

Instead, on March 17, 2022, U Lock, through its attorney J. Allen Roth ("Roth"), filed with the Court of Common Pleas a petition to strike its January 20th Deed Order.  *Id.* ¶ 91.  The petition also asked the court to strike Plaintiff's recorded deed, and instead have the property conveyed to U Lock, which would, if appropriate, convey the title to Plaintiff.  *Id.* ¶ 93.

Then, on April 27, 2022, eight days after the Pennsylvania Supreme Court's ninety-day deadline for U Lock to petition the United States Supreme Court had passed, Shanni filed the

3

Bankruptcy Case under Chapter 7 against U Lock, arguing that she was a creditor of the company and was owed $375,100.  *Id.* ⁋ 107.

On May 17, 2022, the Court of Common Pleas denied U Lock's motion to strike the Deed Order in the Title Case, and on May 19, 2022, Shanni filed a Notice of Appeal to the Superior Court from the Court of Common Pleas's decision in that matter, arguing that her judgment lien would be effectively destroyed if the judgment of the Court of Common Pleas was allowed to go forward.  *Id.* ⁋ 152-155.  Just two minutes later, at the same Westmoreland Courthouse, Roth filed U Lock's notice of bankruptcy.  *Id.* ⁋ 159.

On May 27, 2022, in the Bankruptcy Case, Shanni filed the judgment from this Court in the Wage Case as evidence of her claim against U Lock, which she asserted was secured by property.  *Id.* ⁋ 122.  The Bankruptcy Court stayed the Court of Common Pleas from proceeding on the matters relating to U Lock, pending the resolution of the Bankruptcy Case.[1]

On February 26, 2023, Plaintiff brought claims in this District for civil Racketeer Influenced and Corrupt Organizations Act ("RICO Act") violations under 18 U.S.C. § 1962(c), RICO Act conspiracy under 18 U.S.C. § 1962(d), common law slander of title, and claims under Pennsylvania state law for civil conspiracy, fraud, aiding and abetting fraud, and abuse of process.  ECF No. 1.  Defendants filed their Motions to Dismiss, along with Briefs in Support, on April 24, 2023 (ECF No. 32), April 27, 2023 (ECF Nos. 34–35), and May 1, 2024 (ECF No. 36).  Plaintiff filed a Response to the Motions to Dismiss on June 6, 2023 (ECF No. 39).

**II.    Legal Standard**

---

[1] The Court notes that, after Plaintiff filed the Complaint, an opinion was issued in the Bankruptcy Case.  The Court acknowledges the bankruptcy court's excellent recitation of the facts, and further acknowledges its analysis and disapproval of the seemingly deceptive conduct of some of the Defendants.  While it bears no particular weight on this ruling, the Court reads the facts largely in step with the bankruptcy court.

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits, but simply accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 554). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they

5

> are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)).  Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Although a district court is not obligated to permit leave to amend before dismissing a complaint in a non-civil rights case, *Wolfington v. Reconstructive Orthopaedic Assocs. II P.C.*, 935 F.3d 187, 210 (3d Cir. 2019), courts generally grant leave to amend unless amendment of the complaint would be inequitable or futile. *See, e.g.*, *Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 915 (M.D. Pa. Oct. 1, 2019) (citing *Phillips v. Allegheny Cty.*, 515 F.3d 224, 245 (3d Cir. 2008)).

### III. Discussion

#### A. Counts I & II – RICO and RICO Conspiracy

Under the RICO Act, it is unlawful "for any person employed by or associated with any enterprise engage in, or the activities of which affect, interstate or foreign commerce, to conduct

or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962. *See Dongelewicz v. PNC Bank Nat'l. Ass'n*, 104 Fed. Appx. 811, 816–817 (3d Cir. 2004) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Therefore, to succeed in a cause of action for a RICO Act violation under § 1962(c), plaintiffs must establish that the defendant is (1) a person (2) who is associated with an enterprise engaged in interstate commerce (3) who conducted the affairs of said enterprise (4) through a pattern (5) of racketeering activity. *Id.* Under 18 U.S.C. § 1962(d), "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962.

Plaintiff alleges that each of the various Defendants acted as "persons" to form an association-in-fact that functioned as an "enterprise." ECF No. 1 ¶ 168. They "conducted the affairs of the enterprise" by scheming to obtain a superior interest in the property that rightfully belonged to Plaintiff. *Id.* ¶ 168. Once Defendants realized that they were unlikely to win the Title Case, they used a "pattern" of procedural delay tactics to allow Shanni to open the Wage Case, in which she lied about working for U Lock. George and Kash did not dispute the case, in order to force a fraudulent default judgment that would grant them a lien against the property. *Id.* ¶ 171. They then conspired to open the Bankruptcy Case to supersede the state court decisions in the Title Case. *Id.* These various corruptions of the judicial system and acts of fraud amounted to "racketeering." *Id.* ¶ 213.

This Court interprets certain terms in this cause of action as specifically applied to the Rico Act claims differently than Plaintiff. Most notably, "Enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). While "it is not necessary to

show that the enterprise has some function wholly unrelated to the racketeering activity," a plaintiff must show "that [the enterprise] has an existence beyond that which is necessary merely to commit each of the acts [that] predicate racketeering offenses." *United States v. Console*, 13 F.3d 641 (3d Cir. 1993).  In other words, "a plaintiff must demonstrate the existence of an 'enterprise,' functioning as an independent, free-standing association-in-fact, which 'engages in a pattern of activity which differs from the usual and daily activities of its members.'" *Ferguson v. Moeller*, No. 2:16-CV-41, 2016 WL 1106609 (W.D. Pa. Mar. 22, 2016) (quoting *In re Ins. Brokerage Antitrust Litig.*, 2006 WL 2850607, at *17 (D.N.J. Oct. 3, 2006)).  In short, a collective can only be an "enterprise" for RICO Act purposes if it has "functions other than the perpetration of the predicate racketeering acts." *Id. See also Smith v. Jones, Gregg, Creehan & Gerace, LLP,* No. 2:08-CV-365, 2008 WL 5129916 (W.D. Pa. Dec. 5, 2008); *Wood v. Wood*, No. CV 16-995, 2017 WL 57186 (W.D. Pa. Jan. 5, 2017); *Kingfly Spirits, LLC v. Ragghianti*, No. CV 22-50E, 2023 WL 6214262 (W.D. Pa. Sept. 25, 2023).

This Court is not convinced that there exists an "enterprise," which must have a broader function than to simply defraud Plaintiff.  Here, Plaintiff does not allege the existence of a broader criminal, or other intended, enterprise that she happened to fall victim to.  In fact, she states outright that "[t]he purpose of the . . . [e]nterprise was to attempt to obtain an interest in the Subject Property that was superior to any title that [Plaintiff] might take in that property."  ECF No. 1 ¶ 194.  This assertion essentially defeats the theory that this is a viable RICO Act claim.  "[By] limiting its allegations . . . to the underlying offenses, plaintiff affirmatively negate[s] the existence of . . . an enterprise separate and apart from the pattern of activity in which it engages." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786 (3d Cir. 1984) (internal quotation marks omitted).  The same is true here as in *Seville*.  Accepting all the well-pled facts in the Complaint in a light

most favorable to Plaintiff, as the Court reads it, Plaintiff argues that the function of the enterprise was to simply defraud Plaintiff, not to engage in a broader pattern of criminal or other intended behaviors that go beyond this singular fraud. While the Court does not necessarily find the RICO Act argument to be futile, it finds that the Complaint does not currently state a plausible RICO Act claim under § 1962(c) (and, by extension, RICO Act conspiracy under § 1962(d)).

### B. The Remaining Counts

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.A. § 1367(a). A district court may, however, decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.A. § 1367(c)(3). In making a determination to decline to exercise supplemental jurisdiction, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc. v. Delaware Cty., Pa.*, 983 F.2d 1277, 1284 (3d Cir. 1993) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

Because the RICO Act claims were the sole jurisdictional basis that brought this action to this District, the Court finds it premature to make any findings related to the remaining state claims without the presence of a federal question before the Court. The factors of judicial economy, convenience, fairness, and comity all weigh in favor of this Court declining to exercise supplemental jurisdiction without conviction that there is a claim respecting federal law to which the remaining state claims are ancillary. Accordingly, if an amended complaint does not present a credible federal question, the Court will be inclined to dismiss the remaining state law claims

without prejudice to allow Plaintiff to pursue the same in state court. Pending any such amendment, the court declines to exercise supplemental jurisdiction over the state claims at this time.

### IV. Conclusion

For the reasons discussed above, as to Counts I and II, the Court grants Defendants' Motions to Dismiss. Plaintiff's RICO Act and RICO Act Conspiracy claims are dismissed without prejudice, and the Court grants Plaintiff leave to amend her complaint within 21 days of the date of this memorandum order.

BY THE COURT:

*/s/Robert J. Colville*_____
Robert J. Colville
United States District Judge

DATED: March 29, 2024

cc: All counsel of record