IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

CHRISTINE BIROS,

                          Civil Action No. 2:23-cv-000297-RJC

        Plaintiff,

   v.

SHANNI SNYDER, GEORGE
SNYDER, KASH SNYDER, and
J. ALLEN ROTH,                     **JURY TRIAL DEMANDED**

        Defendants.

## AMENDED COMPLAINT

AND NOW comes the Plaintiff, Christine Biros, and, with the leave granted by this Court in its Orders of March 29, 2024 and April 12, 2024, ECF Nos. 44 & 46, states as follows for her amended complaint against the Defendants, Shanni Snyder ("Shanni"), George Snyder ("George"), Kash Snyder ("Kash"), and J. Allen Roth:

1.     Biros brings these claims because the Defendants have, individually and in conspiracy, engaged in a series of actions intended to deny her the legal, equitable, and possessory ownership of her real property to which she is entitled.  In taking these actions, the Defendants have violated the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), slandered Biros's title in her property, committed common-law fraud, aided and abetted common-law fraud, and abused legal process.

2.     The Defendants' actions are a continuation of a decades-long collective enterprise carried on by members of the Snyder family and other persons associated with them to misuse the legal system for their own benefit, usually to prevent

persons legally entitled to the possession of property from taking either possession, title, or both.

## The Parties

3.      Biros is a resident of Pennsylvania and has a place of business at 3001 Jacks Run Road, White Oak, PA  15131.

4.      Biros owns the real property at 14140 Route 30 in North Huntingdon Township, Westmoreland County, Pennsylvania (the "Subject Property").  The Subject Property is also identified as Westmoreland County Tax Map No. 54-03-10-0-103.

5.      Shanni is a resident of Pennsylvania.  On information and belief, Shanni resides at 14390 Route 30, North Huntingdon, PA 15642.

6.      George is a resident of Pennsylvania.  On information and belief, George resides at 150 Leger Road, North Huntingdon, PA 15642.

7.      Kash is a resident of Pennsylvania.  On information and belief, Kash resides at 670 Lime Street, Irwin, PA  15642.

8.      Shanni, George, and Kash are siblings.

9.      Roth is a resident of Pennsylvania.  On information and belief, Roth maintains a place of business at 805 S. Alexandria Street, Latrobe, PA  15650.

## Jurisdiction and Venue

10.      This Court has jurisdiction of this action pursuant to the federal-question jurisdiction of 28 U.S.C. § 1331, the jurisdiction to hear claims under RICO in 18 U.S.C. § 1964(a), and the supplemental jurisdiction of 28 U.S.C. § 1367(a).

11.     Venue is proper in this Court because the Defendants reside in this judicial district.

12.     Venue is also proper in this Court because at least one of the Defendants resides within this judicial district and all of the Defendants are subject to the personal jurisdiction of courts sitting in Pennsylvania.

13.     Venue is also proper in this Court because a substantial part of the events or omissions giving rise to Biros's claims occurred within this judicial district.

## Background

### A. Biros's Purchase and the Ownership Action

14.     Biros acquired the Subject Property by, on or about July 16, 2015, paying a total of $309,213.30 to the executors and co-executors of four estates (collectively, the "Executors").

15.     At the same time that Biros made these payments or shortly thereafter, four deeds for the Subject Property – one on behalf of each of the estates – were executed in favor of "U Lock Inc."

16.     As of that time, no entity in Pennsylvania had ever been incorporated as "U Lock Inc." or adopted that name.

17.     On September 4, 2015, Kash incorporated U Lock Inc. ("U Lock") under the laws of the Commonwealth of Pennsylvania.

18.     George and Kash, possibly with Shanni, have directed the affairs of U Lock since its incorporation.

19.     U Lock held possession of the Subject Property at all relevant times prior to the commencement of this action.

20.     On or about October 17, 2017, Biros commenced an action against U Lock and the Executors in the Court of Common Pleas of Westmoreland County, Pennsylvania (the "Westmoreland County Court") at Civil Division Case No. 4886 of 2017 (the "Ownership Action").  Biros sought (a) a declaratory judgment that she held equitable title to the Subject Property, (b) an equitable order compelling the Executors to convey fee simple title to her by deed, (c) relief quieting title in her, and (d) an accounting for the funds that U Lock had received while in possession of the Subject Property.

21.     U Lock defended against Biros's claims in the Ownership Action.

22.     Roth has represented U Lock in the Ownership Action.

23.     The Westmoreland County Court dismissed the Executors from the Ownership Action after each of them executed deeds to the Subject Property and deposited those deeds with that court.  All of those deeds were dated for May 2019.

24.     On information and belief, Shanni attended the Westmoreland County Court's bench trial in the Ownership Action.  George and Kash testified as witnesses at that trial, and Roth represented U Lock in it.

25.     On August 22, 2019, following trial, the Westmoreland County Court found that Biros had been the equitable owner of the Subject Property since July 16, 2015, that U Lock did not own the Subject Property, and that U Lock had held legal title to the Subject Property in a constructive trust for Biros's benefit.

4

26.    A true and correct copy of the August 22, 2019 "Non-Jury Trial Opinion and Order of Court" of the Westmoreland County Court, entered on the record the following day, is attached to this Amended Complaint as Exhibit 1.

27.    On December 6, 2019, the Westmoreland County Court denied U Lock's post-trial motions and, while making slight modifications to its August 22 Opinion, reiterated that it was awarding judgment to Biros.

28.    A true and correct copy of the Westmoreland County Court's December 6, 2019 "Opinion," which the Westmoreland County Court entered on the record on December 9, 2019, is attached to this Amended Complaint as Exhibit 2.

29.    U Lock, represented by Roth, appealed the judgment of the Westmoreland County Court to the Superior Court of Pennsylvania on December 17, 2019 at 1841 WDA 2019.

30.    The Superior Court affirmed the Westmoreland County Court's judgment for Biros by published opinion of May 21, 2021.  That opinion is reported at 255 A.3d 489.

31.    In reaching its decision, the Superior Court did not require oral argument.

32.    A copy of the Superior Court's docket in the Ownership Action, current as of April 30, 2024 and reflecting that decision, is attached to this Amended Complaint as Exhibit 3.

33.    The Superior Court denied U Lock's application for re-argument on July 28, 2021.  *See* Exhibit 3.

34.     U Lock, represented by Roth, petitioned the Supreme Court of Pennsylvania for allowance of appeal on August 27, 2021 at 259 WAL 2021.

35.     The Supreme Court of Pennsylvania denied that petition (the "Allocatur Denial") on January 19, 2022.

36.     A copy of the Supreme Court's docket in the Ownership Action, current as of April 30, 2024 and reflecting the Allocatur Denial, is attached to this Amended Complaint as Exhibit 4.

37.     On January 20, 2022, following the Allocatur Denial, the Westmoreland County Court issued an order directing delivery to Biros of the four deeds conveying legal title to the Subject Property from the Executors to Biros.

38.     On January 25, 2022, Biros recorded the four deeds conveying legal title to the Subject Property from the Executors to her in the Office of the Recorder of Deeds of Westmoreland County.

39.     On March 16, 2022, the Supreme Court of Pennsylvania granted U Lock's application to stay remand of the record of the Ownership Action pending U Lock's petition for *certiorari* to the United States Supreme Court.  *See* Exhibit 4.

40.     The Superior Court noted that Order in its docket of the Ownership Action and retained the record for almost two years.  *See* Exhibit 3.

41.     U Lock did not, within ninety days of the Allocatur Denial, petition the United States Supreme Court for a writ of certiorari or petition that Court for an extension of the time in which to seek certiorari.  It has not petitioned that Court for leave to seek certiorari *nunc pro tunc*.

42.     On information and belief, U Lock never intended to petition the U.S. Supreme Court for certiorari.

43.     The Superior Court continued to identify the appeal in the Ownership Action as "Decided/Active."  The Westmoreland County Court's docket of the Ownership Action reflects U Lock's taking its appeal but does not reflect the appellate courts' rejection of that appeal.

44.     The status of the Ownership Action in each of the Supreme Court of Pennsylvania, the Superior Court, and the Westmoreland County Court would have been apparent to anyone who investigated Biros's or U Lock's interests in the Subject Property.

**B.  Defendants' New Plan to Take the Subject Property**

45.     By July 14, 2021, the Superior Court had ruled against U Lock in the Ownership Action but had not yet denied U Lock's application for re-argument.

46.     On information and belief, at some time prior to July 14, 2021, the Defendants, acting in concert with one or more other persons, realized that U Lock was unlikely to reverse Biros's success in the Ownership Action.

47.     The Defendants and those other persons still wanted, individually or through U Lock, to take legal title to the Subject Property and to maintain possession of the Subject Property.

48.     On information and belief, the Defendants, acting in concert with one or more of those other persons, concluded – correctly or incorrectly – that they could accomplish their aims and deprive Biros of her legal and possessory interest in the

Subject Property if one or more of them held a lien on the Subject Property that predated any deed by which Biros took that legal title.

49.     On information and belief, the Defendants, acting in concert with one or more other persons, realized that a judgment against U Lock would operate as a lien on U Lock's interest in the Subject Property.

50.     On information and belief, the Defendants, acting in concert with one or more of those other persons, decided to try to generate a judgment against U Lock and a lien against the Subject Property.

51.     This strategy faced a seemingly insurmountable obstacle:  None of the Defendants, nor any of those other persons, held a judgment against U Lock at all, let alone a judgment that might pre-date any deed that Biros was likely to receive.

52.     Moreover, none of the Defendants, nor any of those other persons,  had a claim against U Lock.

53.     On information and belief, the Defendants, acting in concert with one or more of those other persons, agreed to manufacture one or more claims or judgments that would create a lien on the Subject Property.  They further agreed to attempt to undermine the deeds that Biros would receive at the conclusion of the Ownership Action.

C. <u>Shanni's "Wage Case" Against U Lock</u>

1. *Prior Representations*

a) <u>*The IFP Petition*</u>

54.     On or about March 23, 2018, Shanni filed a "Petition and Verification for In Forma Pauperis" with the Westmoreland County Court in connection with a Custody/Divorce petition.  A copy of that document, redacted to remove identifying information about Shanni's minor children but otherwise true and correct, is attached to this Amended Complaint as Exhibit 5.

55.     In her Petition and Verification, Shanni stated under penalty of law for unsworn falsification that she was unemployed and that her employer was "n/a." *See* Exhibit 5.

56.     The Westmoreland County Court granted Shanni's petition on that same date and allowed her to proceed before it in forma pauperis.  On information and belief, that court relied on Shanni's verified statements in entering that Order.

b) <u>*The Shanni 2018 Bankruptcy*</u>

57.     On May 15, 2018, Shanni, purporting to act *pro se*, filed a voluntary petition seeking protection under Chapter 7 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court") at Case 18-21983-CMB (the "Shanni 2018 Bankruptcy").

58.     A true and correct copy of that petition is attached to this Amended Complaint as Exhibit 6.

59.     In her petition, Shanni acknowledged that "bankruptcy fraud is a serious crime."  She identified a total of $3,925.00 in assets.  She identified no

income other than child support and assistance from an unmarried partner not living with her.  When asked to identify "[o]ther amounts someone owes you" – which offered "[u]npaid wages" as its first example – Shanni listed nothing.

60.     In a "Statement of No Payment Advices" that Shanni – again, proceeding *pro se* – filed with the Bankruptcy Court on June 1, 2018, Shanni stated "under the penalty for perjury" that she had "no payment advices from an employer because I was not employed during 2016, 2017, or 2018."

61.     A true and correct copy of those forms is attached to this Amended Complaint as Exhibit 7.

### c)  *U Lock's Discovery Responses*

62.     During discovery in the Ownership Action, U Lock stated in its Answer to Biros's Interrogatory No. 3 that the company had no employees.

63.     George signed the verification for those discovery responses, subject to the penalties under Pennsylvania law for unsworn falsification to authorities.

64.     A true and correct copy of U Lock's discovery responses, including U Lock's Answer to Biros's Interrogatory No. 3 and George's verification but without any of the exhibits to those responses, is attached to this Amended Complaint as Exhibit 8.

65.     During the 2019 trial in the Ownership Action, Kash testified under oath that Shanni had no involvement with U Lock.

### 2. *The Wage Case*

66.     On July 14, 2021, with the Ownership Action decided by the Superior Court but still active before that court, Shanni sued U Lock in this Court at Case 2:21-cv-00904-RJC (the "Wage Case").

67.     As the Bankruptcy Court has found after an evidentiary hearing, Shanni lied to this Court in bringing, maintaining, and testifying in  the Wage Case.

68.     A true and correct copy of the February 29, 2024 Opinion in which the Bankruptcy Court made that finding (the "Shanni Claim Opinion") is attached to this Amended Complaint as Exhibit 9.

69.     A true and correct copy of Shanni's complaint in the Wage Case is attached to this Amended Complaint as Exhibit 10.

70.     As in her 2018 bankruptcy proceeding, Shanni claimed to be acting *pro se* in commencing the Wage Case.

71.     In every document that she filed in the Wage Case, Shanni continued to claim that she was acting *pro se*.

72.     On information and belief, Shanni had assistance and advice of one or more attorneys or non-attorneys experienced in the preparation of pleadings and other documents used in litigation (the "Legal Drafters") throughout the Wage Case.

73.     In her complaint, Shanni asserted that she was making a claim against U Lock pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 to 209. She claimed that she had worked for U Lock "70 hours per week from January 1,

11

2016, through February 15, 2020." She claimed to seek $131,351 in unpaid hourly wages and overtime.

74.    As the Bankruptcy Court has found, Shanni lied in making these representations to this Court.

75.    Also in the Wage Case on July 14, 2021, this Court issued a summons to Shanni that was directed to U Lock.

76.    Per the Proof of Service that Shanni filed with this Court, Katrina Mycka served Shanni's complaint in the Wage Case on U Lock on July 15, 2021 by serving copies of the summons and Shanni's complaint on George.

77.    U Lock never answered Shanni's complaint in the Wage Case. U Lock did not otherwise respond to Shanni's claims against it.

78.    The Defendants have offered inconsistent and irreconcilable explanations for U Lock's not even attempting to defend itself in the Wage Case.

79.    In sworn testimony in January 2023, George stated that he consulted with Roth about the Wage Case in 2021 and that Roth told him that defense of the action would cost $10,000.00. George testified that, on the basis of Roth's cost estimate, he decided that U-Lock would not defend itself against Shanni's claims.

80.    However, Roth asserted orally to the Westmoreland County Court on April 22, 2022 that, as of that date, he was completely unaware of the existence of the Wage Case.

81.    Shanni requested on August 21, 2021 that this Court enter a default, and this Court did so on August 24, 2021.

82.     Shanni appeared by herself at this Court's October 18, 2021 hearing on her motion for default judgment (the "Wage Case Hearing").

83.     A true and correct copy of the transcript of the Wage Case Hearing is attached hereto at Exhibit 11.

84.     Shanni testified under oath at the Wage Case Hearing.

85.     On information and belief, when Shanni testified at the Wage Case Hearing, she intended for this Court to believe and rely upon her testimony.

86.     Shanni testified at the Wage Case Hearing that "each of the allegations set forth in [her] complaint [were] to [her] knowledge true and factual." Exhibit 11 at p.5.

87.     Shanni's allegations included that Shanni had been an employee of U Lock, that U Lock had promised to pay her an hourly wage, that she had performed services for U Lock for 70 hours per week – from 5 p.m. to 3 a.m. every single day – during each week for more than four years, and that U Lock had not paid her any wages at all for any of that work.

88.     All of Shanni's sworn testimony was false, except for her testimony that U Lock had not paid her anything.  In fact, the Bankruptcy Court found after an evidentiary hearing that "*[s]he lied*" in her testimony to this Court (emphasis in original).   Exhibit 9 at p.1.

89.     On the same day that Shanni testified falsely in the Wage Case Hearing, this Court entered judgment for Shanni and against U Lock for $263,104.00.

90.     A true and correct copy of this Court's Order entering judgment in Shanni's favor is attached to this Amended Complaint as Exhibit 12.

### 3. Shanni's Use of the Judgment in the Wage Case

91.     Shanni filed a writ of execution in this Court on November 21, 2021.

92.     On December 12, 2021, Shanni requested that this Court issue to her an abstract of its judgment in the Wage Case.  This Court did so on December 14, 2021.

93.     A true and correct copy of this Court's abstract of judgment in the Wage Case is attached to this Amended Complaint as Exhibit 13.

94.     Shanni filed that abstract of judgment in the judgment roll of the Westmoreland County Court on December 15, 2021 at 21-JU-04758 (the "Fake Lien").

95.     A true and correct copy of the Fake Lien is attached to this Amended Complaint as Exhibit 14.

96.     On information and belief, Shanni had the assistance and advice of one or more of the Legal Drafters in preparing and submitting the Fake Lien.

97.      Shanni knew that the Fake Lien was fraudulent, as it was based upon the judgment that she had obtained by fraud in the Wage Case.

98.     By the time that Shanni filed the Fake Lien, the Westmoreland County Court had already determined that U Lock did not own the Subject Property, and the Superior Court had affirmed that judgment and denied U Lock's application for rehearing.

99.     The Fake Lien became a cloud on any claim that U Lock might have had to the Subject Property.  It was and is discoverable by anyone investigating claims against U Lock or U Lock's rights in real property, including the Subject Property.

**D.  The Deeds to Biros and Defendants' Theory of Interference**

100.     As noted above, the Supreme Court of Pennsylvania denied U Lock's petition for allowance of appeal in the Ownership Action on January 19, 2022.

101.     In an Order dated January 20, 2022 and entered on January 24, 2022, the Westmoreland County Court directed that Biros receive the deeds to the Subject Property that the Executors had previously deposited with that court.

102.     On March 17, 2022, U Lock, represented by Roth, filed a "Petition To Strike Order of January 20, 2022, Entered January 24, 2022; Motion To Comply With Rule 236 and To Note the Docket of the Date of Compliance; Motion To Correct the Docket; Motion To Compel Disclosure of Ex Parte Communications; and/or Motion for Leave to File Notice of Appeal Nunc Pro Tunc" (the "Petition to Strike") in the Ownership Action.

103.     A true and correct copy of the Petition to Strike is attached to this Amended Complaint as Exhibit 15.

104.     In the Petition to Strike, U Lock asked that the Westmoreland County Court strike its January 20, 2022 Order that had directed delivery to Biros of the deeds for the Subject Property.  It further asked that the May 2019 deeds to Biros, which Biros had recorded on January 25, 2022 following the Allocatur Denial, be

stricken.  It insisted  that the Subject Property be first conveyed to U Lock and then to a formal trust that U Lock would create.  Per U Lock's demand, the U Lock trust would then convey legal title to the Subject Property to Biros.

105.    Neither U Lock nor Roth, its counsel, proposed in the Petition to Strike that U Lock should end this series of four transactions with U Lock's holding legal title to the Subject Property.

106.    On information and belief, the only purpose for U Lock's proposed Rube-Goldberg-like structure was to expose the title to the Subject Property to Shanni's Fake Lien.  Even though Biros would ultimately have prevailed in further litigation to clear that title, that effort would have subjected her to further expense and delay in obtaining clear title to the Subject Property.

107.    On March 18, 2022 – *i.e.*, the day after Roth and U Lock had filed the Petition to Strike – Shanni, once again purporting to act *pro se*, filed a "Praecipe for Writ of Summons in Equity and Assumpsit and for Lis Pendens" with the Westmoreland County Court at Civil Action 928 of 2022 (the "*Lis Pendens* Proceeding").  As defendants, Shanni named U Lock, Biros, the Executors, the trial judge in the Ownership Action, and others.

108.    A true and correct copy of that praecipe is attached to this Amended Complaint as Exhibit 16.

109.    In a footnote to her praecipe, Shanni, still claiming to act *pro se*, purported to limit her new action:

> Note that defendant Harry J. Smail Jr. is sued strictly under 42 USC 1983 for declaratory judgment. Defendants FRANK

16

> SCHIEFER, in his official capacity as WESTMORELAND COUNTY
> RECORDER OF DEEDS for injunctive and declaratory relief, and
> JOSH SHAPIRO, ATTORNEY GENERAL FOR THE
> COMMONWEALTH OF PENNSYLVANIA is sued strictly for
> declaratory relief.

Exhibit 16 at p.1 n. 1.

110.    On information and belief, Shanni had assistance and advice of one or

more of the Legal Drafters in preparing and submitting that praecipe.

111.    In that praecipe, Shanni asked the Westmoreland County

Prothonotary to issue a *lis pendens* on the Subject Property.

112.    The Westmoreland County Prothonotary responded to that praecipe

by, in fact, indexing a *lis pendens* on the Subject Property.

113.    Shanni never filed a complaint in the *Lis Pendens* Proceeding.

114.    Shanni never served all of the defendants she had named in the *Lis

Pendens* Proceeding.

115.    On April 22, 2022, the Westmoreland County Court heard argument

on U Lock's Petition to Strike.  Roth appeared for U Lock.  He did not argue that his

client owned the Subject Property.  Instead, and consistent with the position he had

taken in that petition, Roth argued that the Superior Court, by agreeing that legal

title to the Subject Property was held in trust by U Lock for Biros, had mandated

U Lock's devious approach to the conveyance.

116.    Although the Westmoreland County Court did not rule on the Petition

to Strike from the bench at that argument, that court made clear that it did not

intend to grant that petition.

117.    The *Lis Pendens* Proceeding remained pending before the
Westmoreland County Court until, at the direct request of the Bankruptcy Court,
Shanni discontinued it and withdrew her *lis pendens* on January 30, 2023.

118.    When Shanni withdrew the *Lis Pendens* Proceeding, she expressly did
so "without prejudice."

### E.  Shanni's Bankruptcy Petition Against U Lock

119.    On April 27, 2022 – eight days after U Lock and Roth allowed the
United States Supreme Court deadline to file a petition for certiorari in the
Ownership Action to pass without taking any action and five days after the
Westmoreland County Court heard argument on the Petition to Strike – Shanni
filed an involuntary petition (the "Involuntary Petition") against U Lock in the
Bankruptcy Court pursuant to Chapter 7 of the Bankruptcy Code.  The Bankruptcy
Court docketed the Involuntary Petition at Case 22-20823-GLT (the "U Lock
Bankruptcy Proceeding").

120.    A true and correct copy of the Involuntary Petition, as docketed, is
attached to this Amended Complaint as Exhibit 17.

121.    The Bankruptcy Court found after an evidentiary hearing that Shanni
"lied" in filing the Involuntary Petition and that she had filed it "to frustrate
creditor Christine Biros' efforts to gain control of U Lock's business premises . . . ,
which was awarded to Ms. Biros by final state court orders."  Exhibit 9 at pp. 1-2.

122.    The U Lock Bankruptcy Proceeding remains pending before the
Bankruptcy Court.

123.    On information and belief, Shanni has had assistance and advice of one or more of the Legal Drafters throughout the U Lock Bankruptcy Proceeding.

124.    In the Involuntary Petition, Shanni identified herself as a creditor of U Lock.

125.    In her involuntary petition and in all other documents that she filed in the U Lock Bankruptcy Proceeding prior to November 10, 2022, Shanni asserted that she was acting *pro se*.

126.    On information and belief, Shanni had assistance and advice of one or more of the Legal Drafters in preparing the Involuntary Petition and commencing the U Lock Bankruptcy Proceeding *and* has had assistance and advice of one or more of the Legal Drafters throughout the U Lock Bankruptcy Proceeding.

127.    In the Involuntary Petition, Shanni claimed that U Lock owed her $375,100.  Shanni's amount included $262,000 for the judgment she had obtained by fraud in the Wage Case, $13,100 in interest, and $100,000 for "retaliation under FLSA."

128.    The Bankruptcy Court entered an Order on April 29, 2022 that, *inter alia*, noted that Shanni had not identified the principal operating officer or managing general partner of U Lock and directed her to file an amended petition that provided this information.

129.    On May 9, 2022, Shanni filed an Amended Petition in which she responded to the Bankruptcy Court's instruction:

> Petitioning creditor declares under the penalty for perjury that she does not know the precise share structure, identity of the Board of

Directors, or the official officers of the Debtor.  Based on information, there are between three and five officers and/or Board Members.  Two managing control persons appear to be George Snyder and Kash Snyder[.]

130.    On information and belief, Shanni's claim not to know this information was untrue.  George and Kash were her brothers, and she had claimed in the Wage Case to have worked for U Lock seventy hours per week for more than four years. On information and belief, she had been in communication with U Lock's management throughout the Ownership Action and the efforts to obtain a lien that might interfere with Biros's right to own and possess the Subject Property.

131.    On May 10, 2022, the Bankruptcy Court entered an Order identifying George and Kash as the managing general partners of U Lock.

132.    That same day, the Bankruptcy Court issued a summons to Shanni and directed her to serve it on U Lock.

133.    As the Bankruptcy Court later underscored, the Westmoreland County Court was stayed from proceeding with any matters relating to U Lock.

134.    On May 27, 2022, Shanni filed a proof of claim ("Shanni's Claim") in the U Lock Bankruptcy Proceeding.

135.    A true and correct copy of Shanni's Claim, with exhibits, is attached to this Amended Complaint at Exhibit 18.

136.    In Shanni's Claim, Shanni asserted that U Lock owed her $263,100.00. She based this claim on the judgment that she had obtained through fraud and perjury in the Wage Case.  She attached a copy of that judgment to her proof of claim.  She also asserted that her claim was secured by real estate.

20

137.    One week before Shanni filed Shanni's Claim, on May 20, 2022, Biros moved to dismiss the U Lock Bankruptcy Proceeding.

138.    Roth entered his appearance for U Lock with the Bankruptcy Court on May 30, 2022.

139.    Represented by Roth, U Lock opposed Biros's motion.

140.    Shanni Snyder also opposed Biros's motion.

141.    A true and correct copy of Shanni's purportedly *pro se* 32-page brief in opposition to Biros's motion to dismiss, which Shanni filed on May 31, 2022, is attached to this Amended Complaint as Exhibit 19.

142.    On information and belief, Shanni had the assistance and advice of one or more of the Legal Drafters in preparing the brief that she filed in opposition to Biros' motion to dismiss.

143.    The Bankruptcy Court held a hearing on Biros's motion to dismiss and scheduled a continuation of that hearing for July 6, 2022.

144.    On July 1, 2022, U Lock moved to convert the U Lock Bankruptcy Proceeding to a proceeding under Chapter 11 of the Bankruptcy Code.

145.    At the Bankruptcy Court's August 9, 2022 hearing on U Lock's motion to convert, U Lock claimed that USAAG Systems Co. ("USAAG"), which had an address in Glastonbury, Connecticut, would provide funding for U Lock in exchange for equity if the Bankruptcy Court granted its motion and approved the conversion.

146.    A true and correct copy of a purported letter from USAAG to Roth, in the form in which U Lock and Roth submitted to the Bankruptcy Court as support

for the motion to convert, is attached to this Amended Complaint as Exhibit 20. The redaction in this document appears in the version that U Lock and Roth filed with the Bankruptcy Court.

147.    While a "USA AG Systems Co." appears to be incorporated under Colorado law, searches of the business databases maintained by the State of Connecticut and the Commonwealth of Pennsylvania, both immediately prior to the commencement of this action and immediately prior to the filing of this Amended Complaint, have not disclosed any entity licensed to do business in either state with a name beginning "USAAG" or "USA AG."

148.    On information and belief, USAAG has not registered to do business with either the Secretary of State of Connecticut or the Secretary of State of Pennsylvania.

149.    The Bankruptcy Court denied U Lock's motion by Order of August 10, 2022.

150.    On July 6, 2022, Roth filed U Lock's Schedule E/F, "Creditors Who Have Unsecured Claims," with the Bankruptcy Court.

151.    A true and correct copy of that schedule is attached to this Amended Complaint as Exhibit 21.

152.    In its Schedule E/F, U Lock identified Shanni, Biros, and others as the holders of $912,060.63 in unsecured claims against U Lock.  U Lock identified Biros's claims, but not Shanni's claims, as "Disputed."  *See* Exhibit 21.

153.    That form did not identify George or Kash as an unsecured creditor of U Lock.  *See* Exhibit 21.

154.    At that same time, Roth filed U Lock's Schedule D, "Creditors Who Have Claims Secured by Property," with the Bankruptcy Court.  That form asserted that U Lock had no secured creditors.

155.    U Lock has never amended either of these schedules.

156.    On August 26, 2022, George, purporting to act *pro se* and using the email snyder4judge@yahoo.com, filed a Proof of Claim ("George's Claim") in the U Lock Bankruptcy Proceeding.

157.    A true and correct copy of George's Claim is attached to this Amended Complaint as Exhibit 22.

158.    In George's Claim, George asserted that U Lock owed him $99,000.00 for "wage, fair labor standards."  *See* Exhibit 22.

159.    During his examination under oath in the U Lock Bankruptcy Proceeding, George testified that U Lock had no employees and that Shanni, in particular, had not been an employee of U Lock.

160.    On December 28, 2022, pursuant to an Order of the Bankruptcy Court, Shanni closed on her purchase of a substantial portion (but not all) of U Lock's assets.  As part of this transaction, Shanni purchased U Lock's unresolved pre-petition claims.

161.    USAAG or persons affiliated with USAAG funded Shanni's purchase of those assets.

**F. Continued Activity in the Ownership Action**

162.   Shanni's filing of the Involuntary Petition and commencing the U Lock Bankruptcy Proceeding had the effect of, among other things, staying other litigation involving U Lock.

163.   Of particular note here, the docket of the Supreme Court of Pennsylvania in the Ownership Action reflects a May 11, 2022 bankruptcy stay, and the Superior Court's docket in that action also reflects a stay.  *See* Exhibits 3 and 4.

164.   However, on creating the U Lock Bankruptcy Proceeding, Shanni did not immediately give notice to the Westmoreland County Court.  Neither did George, Kash, U Lock, or anyone else affiliated with the Defendants.

165.   On May 17, 2022, the Westmoreland County Court denied the *Petition to Strike* that Roth had filed on behalf of U Lock in March 2022.

166.   On May 19, 2022, at 10:07 a.m., Shanni filed a *pro se* Entry of Appearance in the Ownership Action with the Westmoreland County Court.

167.   A true and correct copy of that Entry of Appearance is attached to this Amended Complaint at Exhibit 23.

168.   At that same date and time to the minute, Shanni filed in that same court a Notice of Appeal to the Superior Court.

169.   A true and correct copy of Shanni's Notice of Appeal is attached to this Amended Complaint at Exhibit 24.

170.   In her Notice of Appeal, Shanni stated that the Westmoreland County Court's May 17 Order "eviscerate[d] and appear[ed] to supersede portions of her judgment lien."  *See* Exhibit 24.

171.     On information and belief, Shanni had assistance and advice of one or more of the Legal Drafters in preparing and submitting that Entry of Appearance and that Notice of Appeal.

172.     Two minutes later, at 10:09 a.m. on May 19, 2022, U Lock filed its "U Lock Inc's Notice of Bankruptcy," signed by Roth, in the Westmoreland County Court.

173.     A true and correct copy of Roth's "U Lock Inc's Notice of Bankruptcy" is attached to this Amended Complaint as Exhibit 25.

174.     On June 1, 2022, Mark Myles Mycka, claiming to be a tenant of U Lock's on the Subject Property, entered his own *pro se* appearance in the Ownership Action with the Westmoreland County Court.

175.     A true and correct copy of Mycka's Entry of Appearance is attached to this Amended Complaint at Exhibit 26.

176.     Simultaneously, Mycka filed a Notice of Appeal with the Westmoreland County Court.  Like Shanni, Mycka appealed to the Superior Court from the Westmoreland County Court's May 17 Order.

177.     A true and correct copy of that Notice of Appeal is attached to this Amended Complaint at Exhibit 27.

178.     On information and belief, Mark Myles Mycka is the brother of Katrina Mycka, who claimed to have served George with Shanni's Complaint against U Lock in the Wage Case.

25

G. <u>The Bankruptcy Court's Hearing and Opinion on Shanni's Claim</u>

179.    Biros filed an objection to Shanni's Claim with the Bankruptcy Court on February 24, 2023.

180.    On July 14, 2023, the Bankruptcy Court held a hearing (the "Shanni Claim Hearing") on Biros's objections.

181.    Shanni, George, and Kash all testified at the Shanni Claim Hearing.

182.    On February 29, 2024, the Bankruptcy Court issued its Opinion (the "Shanni Claim Opinion") and Order, both of which sustained Biros's objections and disallowed Shanni's claim. Exhibit 9.

183.    The Bankruptcy Court opened the Shanni Claim Opinion by stating, "In ten years, the Court has never held a stronger conviction that a fraud was perpetrated on the court as it is following an evidentiary hearing on Shanni Snyder's claim." Exhibit 9 at p. 1.

184.    The Shanni Claim Opinion continues:

> Ms. Snyder obtained a default judgment under the Fair Labor Standards Act ("FLSA") by swearing that debtor U Lock employed her to monitor security cameras for ten hours a day, every day, for four years without paying wages. *She lied.* First to the federal district court who awarded the judgment, and then to this Court by commencing an involuntary petition against U Lock based on a fraudulent claim. Ms. Snyder did so to frustrate creditor Christine Biros' efforts to gain control of U Lock's business premises ("Property"),which was awarded to Ms. Biros by final state court orders. As explained below, the Court will disallow Ms. Snyder's claim in its entirety and initiate sanction proceedings against her to address this profound abuse.

Exhibit 9 at pp 1-2 (emphasis in original, footnotes omitted).

185.    Of Shanni's George's and Kash's testimony, the Bankruptcy Court found, "[N]one of them testified credibly in support of Ms. Snyder's claim. Frankly, all that was offered was an implausible, self-serving narrative littered with discrepancies and contradicted by prior sworn statements." Exhibit 9 at p. 9.

186.    As to Shanni, the Bankruptcy Court recounted several instances of her incredible testimony, including that, "in a bizarre and telling admission, Ms. Snyder testified that it is unimportant to her whether U Lock has assets to pay her claim as long as she has one. She did not explain why, leaving the Court to wonder if she inadvertently said the quiet part out loud." Exhibit 9 at p. 13.

187.    The Bankruptcy Court continued throughout its opinion to note its disbelief of Shanni's claim and testimony:

> This statement is curious, because U-Lock never had the capacity to pay – that was why her alleged compensation was deferred.  Given Ms. Snyder was always aware of that, the Court perceives her contrasting approach to her claim as utilitarian. Outside of bankruptcy, it was necessary to have a large judgment to sufficiently cloud title to the property, but any claim will afford standing to participate in a bankruptcy case. Sometimes people say what they really think.
>
> In a similar vein, Ms. Snyder's conduct reveals that she was never serious about collecting a wage claim. She knew U Lock lacked the financial resources to satisfy a judgment, but did not pursue George, Kash, or the Biroses as U Lock's responsible parties. Instead, Ms. Snyder opted to sue U Lock alone and then assert a lien against property U Lock did not own based on a Trial Court order affirmed on appeal.

Exhibit 9 at p. 36 (footnote omitted).

27

188.    The Bankruptcy Court found George's and Kash's testimony to be
similarly incredible. Exhibit 9 at p. 14-16.

189.    The Bankruptcy Court noted its concern about the testimony of the
other Defendants here:

> Finally, the Court observes (without necessarily finding)
> that there is also ample reason to believe that others
> helped facilitate Ms. Snyder's fraud. George's conduct is
> particularly suspect. He did not oppose Ms. Snyder's wage
> claim in the District Court despite not believing she was an
> employee and, as previously suggested, his own potential
> personal liability. George is also surprisingly agnostic
> about whether Ms. Snyder was truthful with the District
> Court. And the Court recognizes that he began walking
> back his state court testimony that U Lock had no
> employees soon after this case was filed.

Exhibit 9 at pp. 36-37.

190.    The Bankruptcy Court's skepticism extended to other Defendants'
actions:

> In fairness, George's economic justification to permit the
> default is far from far from irrational. Yet his averment
> that he did not inform U Lock's counsel that Ms. Snyder
> commenced the FLSA action does not look innocent. If
> credible, hiding such a detail from counsel suggests
> George's complicity in her fraud. If not, his testimony is a
> naked attempt to insulate counsel from their scheme. The
> Court also notes that the timing of certain state court
> pleadings hints at coordination between U Lock's counsel
> and Ms. Snyder.

Exhibit 9 at p.37.

191.    "U Lock's counsel" to whom the Bankruptcy Court referred was, of
course, Roth.  *See* Exhibit 9 at p. 37.

192.    With the Shanni Claim Opinion and its Order, the Bankruptcy Court issued an Order to Show Cause directing Shanni to file a written response demonstrating why that court should not impose sanctions on her for "asserting a fraudulent proof of claim in this bankruptcy case and lying under oath." A true and correct copy of the Rule to Show Cause is attached hereto as Exhibit 28.

193.    Shanni appealed from the Shanni Claim Opinion and the Bankruptcy Court's Order disallowing Shanni's Claim.  Her appeal is currently pending before this Court at Case 2:24-cv-00478-NBF.

194.    In addition, Shanni has filed an appeal from her unsuccessful Motion to Withdraw the Reference in this Court to the Third Circuit at No. 24-1842.

195.    Although Shanni was represented by counsel on that motion in this Court at Case 2:23-cv-00979-RJC, she submitted multiple *pro se* filing in that action – even after this Court directed her to stop that practice – and purports to be proceeding *pro se* before the Third Circuit.

## H.  Other Attacks on Biros's Interest in the Subject Property in the U Lock Bankruptcy Proceeding

196.    In the U Lock Bankruptcy Proceeding, U Lock and members of the Snyder Family have filed an extraordinary number of meritless claims and appeals adverse to Biros.  On information and belief, the purposes of those claims and appeals have been to harass Biros, cause her expense, and interfere with her interest in the Subject Property.

197.    None of the three adversary proceedings that the Defendants and U Lock have filed against Biros has survived long enough to require Biros to file an answer.

198.    The Defendants and, under their direction, U Lock have taken at least ten appeals to this Court, and this Court has affirmed the decision below in every one of those appeals in which this Court has had occasion to address the merits.

### 1.    *U Lock's, Roth's, and Shanni's Failed Automatic Stay Claims*

199.    On August 1, 2022, U Lock, represented by Roth, commenced an adversary proceeding against Biros in the Bankruptcy Court at Case 2:22-ap-02048. U Lock and Roth alleged that Biros had violated the automatic stay of 11 U.S.C. § 362(k).

200.    Three days later, on August 4, 2022, Shanni, purporting to act *pro se*, moved to intervene in that adversary proceeding.

201.    Without the need to wait for a response, the Bankruptcy Court dismissed U Lock's and Roth's action by Orders of August 10, 2022 and dismissed Shanni's motion for leave to intervene as moot.

202.    Shanni, again *pro se*, and U Lock, again represented by Roth, appealed the Bankruptcy Court's Orders to this Court at, respectively, Nos. 2:22-cv-01222 and 2:22-cv-01284.

203.    On June 23, 2023, this Court denied both appeals in a 2½-page Order of Court.

204.   U Lock, represented by Roth, appealed from that decision to the U.S. Court of Appeals for the Third Circuit (the "Third Circuit").  U Lock's appeal remains pending before the Third Circuit at No. 23-2293.

### 2.   *Rejection of George's Claim*

205.   As noted above, George filed a claim in the U Lock Bankruptcy Proceeding, seeking $99,000.00 in allegedly unpaid wages, on August 26, 2022.

206.   Biros objected to George's Claim on February 24, 2023.

207.   The Bankruptcy Court disallowed and expunged George's Claim by Order of April 14, 2023.

208.   George, again purporting to act *pro se*, appealed that Order to this Court on April 24, 2023.

209.   By Memorandum & Order of December 19, 2023 at Case 2:23-cv-00691-CB, this Court affirmed the decision of the Bankruptcy Court.

210.   George, once again purporting to act *pro se*, has appealed this Court's decision to the Third Circuit.  That court has dismissed and then reinstated George's appeal, and that appeal remains pending before that Court at No. 24-1163.

### 3.   *Shanni's Dismissed Preference Action*

211.   As noted above, Shanni purchased certain assets of U Lock, including U Lock's pre-petition claims, from U Lock's bankruptcy trustee in December 2022.

212.   On February 28, 2023, Shanni commenced an adversary proceeding in the Bankruptcy Court at Case 2:23-ap-02020 ("Shanni's Preference Action").  Looking to Biros's success in the Ownership Action, Shanni purported to assert

claims for improper preferences pursuant to 11 U.S.C. §§ 547 and 550 and for fraudulent conveyance or transfer under 11 U.S.C. 544, 548, and 550 and Pennsylvania law.

213.    When Biros moved to dismiss Shanni's Preference Action on March 30, 2023, Shanni responded on April 19, 2023 with an amended complaint.

214.    Biros moved on May 20, 2023 to dismiss Shanni's amended complaint.

215.    The Bankruptcy Court granted Biros's motion and dismissed Shanni's Preference Action by Memorandum Opinion and Order of July 21, 2023. *See Snyder v. Biros*, 652 B.R. 456 (Bankr. W.D. Pa. 2023).

216.    Shanni appealed that Order to this Court on August 2, 2023.

217.    By Memorandum & Order of January 5, 2024, this Court affirmed the decision of the Bankruptcy Court. *See Snyder v. U Lock, Inc.*, Case 2:23-cv-01410-AJS, 2024 U.S. Dist. LEXIS 2872 (W.D. Pa. Jan. 5, 2022).

218.    Shanni has appealed this Court's decision to the Third Circuit. Her appeal remains pending before that Court at No. 24-1202.

### 4. *George's Objections to Biros's Settlement with the U Lock Trustee*

219.    Biros and the U Lock Trustee agreed to a resolution of several of her claims in the U Lock Bankruptcy Proceeding in November 2023. This resolution differed from an earlier proposed settlement that the Bankruptcy Court had delayed in considering during the pendency of Shanni's Preference Action.

220.    On November 29, 2023, Biros asked the Bankruptcy Court to set a hearing to approve the revised agreement.

221.   George, purporting to act *pro se*, responded by objecting to several of Biros's pending claims and to the settlement.

222.   By Order of January 8, 2024, the Bankruptcy Court approved the revised agreement.

223.   A true and correct copy of that Order is attached to this Amended Complaint as Exhibit 29.

224.   The Bankruptcy Court observed, "Whether the Snyders like it or not, Ms. Biros is the owner of the Property."  Exhibit 29 at p.2.

225.   The Bankruptcy Court then held that the proposed settlement was fair as required by *Myers v. Martin*, 91 F.3d 389 (3d Cir. 1996) and its progeny.  Exhibit 29 at pp. 2-3.

226.   George has appealed the Bankruptcy Court's decision to this Court, in which that appeal is pending at Case 2:24-cv-00135-CB.

I.  <u>The Snyder Family's Previous Pattern of Litigation About Real Estate</u>

227.   The Snyder family –not only Shanni, George, and Kash, but also a variety of other members of the family – have a long history of improperly attempting to prevent innocent parties from taking possession of or title to their property.

228.   Thirteen years ago, Shanni advised this Court that she had already "'filed over 90 state and federal lawsuits.'"  *Snyder v. Daugherty*, 899 F. Supp 2d 391, 414 (W.D. Pa. 2011).

229.    Several of the Snyder family's efforts have included actions before courts that have identified the Snyders' tactics as fraudulent.

230.    The Snyder family, along with certain others in the Snyder family orbit, including Roth, the Mycka siblings, and others, have been jointly engaged in an enterprise that has misused the legal system and made false statements to defraud others and own and operate real estate in Allegheny and Westmoreland Counties (the "Snyder Family Enterprise").

### 1.    The Quinlan Properties

231.    Shanni, Kash, and their brothers Mark Snyder ("Mark") and Scott Snyder ("Scott") made a series of promissory notes in favor of Edward J. Quinlan between 1996 and 1998.  They secured these notes by giving Quinlan mortgages on five properties, which were in Clairton, North Versailles, and Pittsburgh, Pennsylvania.

232.    The Snyder siblings defaulted on those notes, and Quinlan proceeded to pursue foreclosures on some or all of the properties in July 2003.

233.    The Snyders responded by filing a series of bankruptcy petitions in the Bankruptcy Court to invoke the automatic stay in bankruptcy and thereby prevent the foreclosure from moving forward.

234.    Mark, purporting to act *pro se*, filed a Chapter 13 bankruptcy petition in the Bankruptcy Court at Case 03-31013 on September 4, 2003.

235.    Mark never filed any of the required schedules, and the Bankruptcy Court dismissed his petition on September 24, 2003.

236.   Shanni, represented by counsel whom she later sued, filed a Chapter 13 bankruptcy petition in the Bankruptcy Court at Case 03-34365 on November 17, 2003.

237.   Also on November 17, 2003, Mark, again purporting to act *pro se*, filed a *second* Chapter 13 bankruptcy petition in the Bankruptcy Court at Case 03-34366.

238.   Mark once again never filed any of the required schedules, and the Bankruptcy Court dismissed his second petition on January 2, 2004.

239.   The Bankruptcy Court dismissed Shanni's petition on July 27, 2004 after Shanni failed to file an amended plan.

240.   On September 1, 2004, Kash, represented by counsel whom he later sued, filed a Chapter 13 bankruptcy petition in the Bankruptcy Court at Case 04-31467.

241.   Also on September 1, 2004, Mark, still purporting to act *pro se*, filed a *third* Chapter 13 Bankruptcy Petition in the Bankruptcy Court at Case 04-31470.

242.   Mark yet again never filed any of the required schedules, and the Bankruptcy Court dismissed his petition on January 21, 2005.

243.   On January 11, 2005, the Bankruptcy Court granted relief from the automatic stay in Kash's proceeding to allow Quinlan to proceed with foreclosure. The Bankruptcy Court also ordered that Quinlan's foreclosure would not be effected by any further bankruptcy filings.

244.    Two days later, on January 13, 2005, Scott, represented by counsel whom he later sued, filed a Chapter 13 bankruptcy petition in the Bankruptcy Court at Case 05-20449.

245.    Scott never filed any of the required schedules, and the Bankruptcy Court dismissed his petition on April 13, 2005.

246.    Kash filed *his second* Chapter 13 bankruptcy petition in the Bankruptcy Court at Case 05-27124 on June 2, 2005.

247.    The Bankruptcy Court dismissed Kash's new petition on December 8, 2005.

248.    Quinlan's foreclosure proceedings eventually went forward, and Quinlan purchased the mortgaged properties at sheriff's sale.

249.    The Snyders did not, however, give up.

250.    Mark filed a complaint in the Allegheny County Court in October 2005. He asked that court to quiet title to the properties, cancel the mortgages, and award him damages against Quinlan and others.

251.    Quinlan and the other defendants removed Mark's action to the Bankruptcy Court, which dismissed Mark's complaint.  This Court and, in turn, the Third Circuit affirmed that decision.  The process from Mark's filing in the Allegheny County Court to the Third Circuit's affirmance took three and a half years. *See Snyder v. Quinlan*, 328 Fed. Appx. 836 (3d Cir. 2009).

252.    Mark's complaint was not the only additional action the Snyders brought in an effort to cloud Quinlan's title to the properties.

253.    In December 2005, after the foreclosure and sale, Shanni attempted to reopen her own bankruptcy at Case 03-34365.  She demanded that the Bankruptcy Court apply the automatic stay retroactively to undo the foreclosures and sales.

254.    The Bankruptcy Court rejected Shanni's attempt, and she appealed to this Court.

255.    In an August 3, 2006 Opinion and Order of Court, this Court affirmed the Bankruptcy Court's decision.

256.    A true and correct copy of that Opinion and Order of Court is attached to this Amended Complaint as Exhibit 30.

257.    In affirming, this Court pointed in part to Shanni's behavior in that case, as well as "the history of bad faith bankruptcy filings by those who were parties to the original Notes securing the properties." *See* Exhibit 30 at p.5.

258.    This Court also noted, "[R]eopening a bankruptcy case for purposes of a litigation strategy is not appropriate. As evidenced from the transcript, Shanni Snyder's only purpose in reopening the bankruptcy case was to prosecute her Complaint; she had no intention or ability to reorganize or otherwise fulfill pertinent bankruptcy obligations." Exhibit 30 at p.5 (citation omitted).

259.    Shanni appealed further, and the Third Circuit affirmed the decisions of this Court and Bankruptcy Court.  *See In re: Snyder*, 293 Fed. Appx. 140 (3d Cir. 2008).

260.    Meanwhile, Mark sought to use the automatic stay from one of his bankruptcies to undo the sale in foreclosure.  The Bankruptcy Court rejected Mark's

37

effort, noting "at the hearing that the serial bankruptcy filings by Snyder family members in their efforts to stop the sales of the properties was evidence of bad faith conduct." *In re: Snyder*, 292 Fed. Appx. 191, 193 (3d Cir. 2008).

261.   This Court and Third Circuit affirmed that decision.

262.   In affirming, the Third Circuit noted, "[Mark] Snyder readily admits in his brief that he filed for bankruptcy in order to activate the automatic stay provisions of the Bankruptcy Code, to defer responding to the state court foreclosure action in 2003." 292 Fed. Appx. at 193 n.3.

263.   Thus, at least by 2006, the Snyder Family Enterprise modus operandi of fraud, misuse of the law generally and the Bankruptcy Code in particular – pervasive dishonesty, delay and obfuscation – was not only fully formed and ready to be aimed at Biros but had even begun to include the feature of Snyder family members occasionally "saying the quiet part out loud."

### 2.   *The Blue Moon*

264.   The assault on Quinlan and his property interests was not the Snyder family's first attempt to use these tactics.  An earlier effort, in the 1990s and related to the site of the Blue Moon Motel in Monroeville, Pennsylvania, led to extensive findings of the United States Tax Court in *Snyder v. Commissioner*, 1995 Tax Ct. Memo LEXIS 286 (U.S. Tax Ct. June 26, 1995).  A true and correct copy of that opinion is attached to this Amended Complaint as Exhibit 31.

265.   At the beginning of 1988, George C. Snyder ("George Sr.") and Sharon A. Snyder ("Sharon," and, with George Sr., the "Snyder Parents") owned two

adjacent properties in Monroeville, consisting of the Blue Moon Motel and a restaurant (the "Blue Moon Properties"). Exhibit 31 at *3.

266.   The Snyder Parents are the parents of Shanni, George, and Kash, as well as at least two other children, Mark and Scott, who have also been involved or were also involved in the Snyder Family Enterprise.

267.   On January 14, 1988, the Snyder Parents agreed to sell the Blue Moon Properties to Oxford Development Co. ("Oxford").  They accepted $125,000 in earnest money. Exhibit 31.

268.   For eight months thereafter, the Snyder Parents "refused or were unable to convey the Blue Moon property to Oxford," although they also did not return the earnest money. Exhibit 31 at *4.

269.   Ultimately the Snyder Parents sold the Blue Moon Property to Oxford, although at a price $50,000 higher than originally agreed. Exhibit 31.

270.   In return for the payment, the Snyder parents agreed to terminate business operations and remove all personal and salvage property from the Blue Moon Property by November 1, 1988. Exhibit 31.

271.   The Snyder Parents did not fulfill their obligations under this deal. Instead, when Oxford arrived to take possession, George Sr. engaged in an "altercation" with an employee of the company hired to demolish the motel. Exhibit 31 at 5.

272.   Ultimately, George Sr. was ordered to leave the property by police. Exhibit 31.

273.    Before demolishing the buildings on the Blue Moon Property, Oxford removed the personal property from the buildings and later returned it to the Snyder Parents. Exhibit 31 at *6-7.

274.    In their 1988 tax returns, the Snyder Parents claimed $1,750,000 in losses for "Fires, thefts, etc." with no further explanation. Exhibit 31 at *8.

275.    In 1992, the Internal Revenue Service issued a notice of deficiency for 1988 to the Snyder Parents. Exhibit 31 at *9.

276.    The Snyder Parents responded by increasing their claim by a factor of forty, amending their 1988 tax returns to claim instead $72,651,900 for casualty loss. Exhibit 31

277.    The Snyder Parents then sued Oxford and others in the Allegheny County Court, claiming that their named defendants had "conspired to coerce petitioners into selling the Blue Moon property 'having a fair market value of at least $4,000,000 and for $1,536,000' and that the defendants deprived petitioners of $48,250,000 of cash, $546,856 of personal property and salvage, and $790,000 of records, all of which were kept at the Blue Moon property." Exhibit 31 at *10.

278.    On information and belief, the older Snyders' lawsuit, like Shanni's Wage Case and the Snyders' serial bad-faith bankruptcies, was not intended to succeed on its own (and indeed did not) but instead to manufacture an advantage in a different proceeding. That lawsuit was specifically intended to provide some basis for the Snyder Parents' claims before the Tax Court.

279.    Although the losses supposedly suffered with relation to the Blue Moon

Property would have occurred in 1988 and were claimed to amount to over $70

million, the Snyder Parents did not file an action until nearly four years later.

Exhibit 31 at *9-10.

280.    The Allegheny County Court dismissed the Snyder Parents' action

with prejudice. Exhibit 31 at *10-11.

281.    The Tax Court Opinion rejected the Snyder Parents' factual claims

wholesale, finding that none of those claims – which include the existence of a

secret vault full of cash buried beneath the Blue Moon Motel; an apparently

unsolicited gift of $90,000,000 in cash from a man who was unavailable because he

had since died, and high valuations of junk property that may never have existed –

were in any way credible.

282.    In the words of the Tax Court:

> [P]etitioners did not set a reasonable course to substantiate
> their costs and losses. They concocted tales of an
> underground vault, of shadowy men, one who gives money
> and another who takes it, of a mob, who brazenly looted the
> Blue Moon building while policemen watched and laughed,
> and of conspiracies and death threats. Petitioner's stories
> were swamped by their incoherence and inconsistencies,
> and sunk by their failure to correspond with the evidence
> of any objective reality.

Exhibit 31 at *33-34.

283.    The Tax Court also repeatedly criticized the Snyder Parents' counsel at

the time, Thomas A. Crawford, Jr., finding that he repeatedly missed deadlines,

that his briefing was incoherent, that his calculations were untrustworthy, and that

his claims were frequently not supported by testimony, including the testimony of George Sr.  Exhibit 31 at *11-12, 20, 30-31, and nn. 9-12.

284.    When the Snyder Parents did not pay the resulting tax liability, this Court reduced that debt to a judgment and found that George Sr. "continues to obfuscate, deny, distract and distain not only the legitimacy of the government's tax claims, but also the very judicial proceedings that are designed to protect him." (quoted in *United States v. Snyder*, 327 Fed. Appx. 323, 325 (3d Cir. 2009)).

285.    The Third Circuit affirmed this Court's judgment. *Id.*

286.    The broad outlines of how the Snyder Family Enterprise acted with regard to the Subject Property was thus set more than 20 years before the efforts to defraud Biros began: false statements to courts, misuse of the legal process, delay, and obfuscation, all related to parcels of real property.

### 3.    *The Arlene Drive Property*

287.    In an indenture dated June 27, 2011 and recorded with the Allegheny County Department of Real Estate that same day, Shanni and other members of the Snyder family, including Kash, conveyed to Tammy Snyder all of their interest in a parcel of real property at 98 Arlene Drive in the Township of North Versailles, Pennsylvania, Allegheny County Block & Lot No. 548-M-288 (the "Arlene Drive Property").

288.    A true and correct copy of that indenture, as recorded, is attached to this Amended Complaint as Exhibit 32.

289.    On information and belief, George Sr. resided at the Arlene Drive Property without a lease or any other legally enforceable right to occupy that parcel.

290.    When, in May 2018, Shanni filed her schedules with the Bankruptcy Court in the Shanni 2018 Bankruptcy, she told that court that she did not own or have any legal or equitable interest in any "residence, building, land, or similar property."

291.    A true and correct copy of the Schedule A/B that she filed with the Bankruptcy Court at that time in the Shanni 2018 Bankruptcy is attached to this Amended Complaint as Exhibit 33.

292.    Penn Pioneer Enterprises LLC purchased the Arlene Drive Property through a tax sale in 2019, had the resulting deed prepared in the name of 98 Arlene Drive LLC, and, on information and belief, conveyed that parcel to Allegheny Estates, LLC in December 2019.

293.    On September 22, 2021, the Allegheny County Court entered an Order at G.D. No. 19-018257 in favor of Allegheny Estates and against George Sr., granting possession of the Arlene Road Property to Allegheny Estates.

294.    A true and correct copy of that Order is attached to this Amended Complaint as Exhibit 34.

295.    The Allegheny County Sheriff posted the Arlene Drive Property with a writ of possession on September 23, 2021.

296.    On November 8, 2021, George Sr. commenced his own bankruptcy proceeding pursuant to Chapter 13 in the Bankruptcy Court at Case 2:21-bk-22419.

297.   The Bankruptcy Court dismissed George Sr.'s bankruptcy on December 14, 2021 after George Sr. failed to file the required schedules.  This dismissal dissolved any automatic stay on the eviction of George Sr. from the Arlene Drive Property.

298.   By Memorandum Order of August 24, 2022, the Bankruptcy Court confirmed that there was no stay on the efforts of Allegheny Estates to evict George Sr. from the Arlene Drive Property.

299.   A true and correct copy of the Bankruptcy Court's August 24, 2022 Memorandum Order in George Sr.'s bankruptcy proceeding is attached to this Amended Complaint as Exhibit 35.

300.   Prior to that Memorandum Order, on July 7, 2022, the Bankruptcy Court reopened the Shanni 2018 Bankruptcy because her assertions in the Wage Case had been completely contrary to her 2018 claims to have had no assets.

301.   On July 28, 2022, Shanni filed amended schedules concerning her bankruptcy with the Bankruptcy Court in the Shanni 2018 Bankruptcy.

302.   A true and correct copy of Shanni's Amended Schedule A/B, as filed on July 28, 2022, is attached to this Amended Complaint as Exhibit 36.

303.   In this Amended Schedule A/B, Shanni claimed for the first time to have an "Equitable interest" in the Arlene Drive Property.  Exhibit 36 at p.2.

304.   On information and belief, Shanni made this new claim to use the automatic stay in the Shanni 2018 Bankruptcy to disrupt the efforts of Allegheny Estates to evict George Sr. from the Arlene Drive Property.

44

305.   When Allegheny Estates called Shanni on her claim and moved in the Shanni 2018 Bankruptcy for an Order either confirming that its eviction efforts were not stayed or relieving those efforts from the stay, Shanni backed down and filed no opposition to that motion.

### COUNT I

### Violation of § 1962(c) of RICO

### Biros v. Shanni Snyder

306.   Biros incorporates the preceding paragraphs of this Amended Complaint as if set forth fully herein.

### J.   The Snyder Family Enterprise and the Fake Lien Scheme

307.   At some point well prior to July 14, 2021, the various members of the Snyder family and others formed an association in fact (the "Snyder Family Enterprise") that is an enterprise within the meaning of 18 U.S.C. § 1961.

308.   The purpose of the Snyder Family Enterprise was to use fraud, perjury, frivolous lawsuits, serial spurious bankruptcy filings, and the courts to obtain interests in real property and to prevent others outside the Snyder Family Enterprise from taking title or possession to their property.

309.   The Snyder Family Enterprise activated at least as early as the legal proceedings concerning the Blue Moon property and reactivated for, at least, the attack on Quinlan's notes and the efforts to maintain possession of the Arlene Drive Property.

310.    One of the expressions of this purpose was an effort to obtain an interest in the Subject Property that was superior to any title that Biros might take in that property, despite Biros' legal entitlement to it (the "Fake Lien Scheme").

311.    All of the Defendants here joined the Snyder Family Enterprise.

312.    Shanni and Kash joined the Snyder Family Enterprise at an unknown time, but on information and belief, not later than 1996.

313.    The remaining Defendants jointed the Snyder Family Enterprise at unknown times, but on information and belief, prior to engaging in the Fake Lien Scheme.

314.    Each of the Defendants had a role in the Snyder Family Enterprise.

315.    For the Fake Lien Scheme, Shanni acted as the person who would receive the lien on the Subject Property.  To that end, she commenced the Wage Case, obtained the judgment in that case that she knew to be fraudulent because it was supported only by her own false statements and perjured testimony, recorded the abstract of that fraudulent judgment with the intention that it would operate as a lien on the Subject Property, filed the *Lis Pendens* Proceeding in the Westmoreland County Court based solely on the lien on the Subject Property supported only by that fraudulently obtained judgment, filed a lis pendens on the property, and commenced and maintained the U Lock Bankruptcy Proceeding.  In the U Lock Bankruptcy Proceeding, she filed a claim that she knew to be fraudulent.

46

316.    Shanni has also played a similar role with regard to the broader Snyder Family Enterprise.

317.    For example, Shanni, along with other Snyder siblings, engaged in bad-faith bankruptcy filings in efforts to use the automatic bankruptcy stay to avoid foreclosure on Snyder Family property.

318.    With regard to the Fake Lien Scheme specifically, George and Kash managed the affairs of U Lock with the goal and purpose of providing Shanni with a lien on the Subject Property.  To that end, they allowed Shanni to obtain a fraudulent judgment in the Wage Case through her claiming that U Lock had not paid her for her work, even though they all knew that she had never been an employee of U Lock.  They directed the legal affairs of U Lock with the goal of prolonging the Ownership Action to prevent Biros from obtaining the deeds to the Subject Property that the Executors had deposited with the Westmoreland County Court.

319.    When Biros obtained those deeds despite the efforts of the Enterprise, George and Kash caused Roth to file the Petition to Strike, participated in or acquiesced in the commencement of the U Lock Bankruptcy Proceeding, opposed Biros's efforts to dismiss that proceeding, and, in the face of Biros's motion, filed a motion to convert that involuntary proceeding to a proceeding under Chapter 11 of the Bankruptcy Code with funding purportedly from USAAG.

320.    George also advanced the Fake Lien Enterprise by filing George's Claims, which were fraudulent, in the U Lock Bankruptcy Proceeding.

321.    Kash also participated in the Snyder Family Enterprise by engaging in similar bad faith bankruptcy filings to those pursued by Shanni.

322.    Roth participated in the Fake Lien Scheme in several ways:

a)  by, on information and belief, participating in the planning and organization of the same;

b)  by, on information and belief, advising George, Kash, and U Lock not to respond to Shanni's complaint in the Wage Case;

c)  by filing U Lock's application to the Supreme Court of Pennsylvania to stay remand of the Ownership Action even though he knew that U Lock did not intend to seek review in the U.S. Supreme Court;

d)  by filing and arguing the Petition to Strike in the Ownership Action and arguing to the Westmoreland County Court that it should not have released to Biros the deeds to the Subject Property and that the Westmoreland County Court should instead follow a procedure that would have exposed the Subject Property to the Fake Lien but could not under any circumstances have left his client with title to the Subject Property;

e)  by delaying the filing of the notice of bankruptcy in the Ownership Action for three weeks after Shanni filed the Involuntary Petition and commenced the U Lock Bankruptcy Proceeding; and

f)  by delaying the filing of that notice until two minutes after Shanni had entered her appearance in the Ownership Action and filed her notice of appeal in that action to the Superior Court.

48

323.    On information and belief, Roth thereby continued the role of the legal face of the Snyder Family Enterprise that Crawford had previously filled.

324.    Several other persons and entities participated in the Fake Lien Scheme to further the Snyder Family Enterprise.

325.    U Lock participated in the Fake Lien Scheme through the actions of its management by, among other things, (a) allowing Shanni to take the fraudulent judgment against it, (b) applying to the Supreme Court of Pennsylvania for a stay of remand in the Ownership Action so that it could seek review by the United States Supreme Court when it had no intention of seeking such review or any possibility of obtaining that review, (c) filing and presenting the motion to strike in the Ownership Action, and (d) delaying the filing in the Ownership Action of the Notice of Bankruptcy until two minutes after Shanni had entered her appearance in that action and filed her notice of appeal to the Superior Court.

326.    On information and belief, one or more of the Legal Drafters performed legal services for Shanni in legal matters involving Biros or U Lock that were before this Court, the Westmoreland County Court, or the Bankruptcy Court.  They performed this legal work knowing that Shanni would, in using it, claim that she was acting *pro se*.

327.    In that manner, the Legal Drafters participated in the Fake Lien Scheme because, in performing those services, he, she, or they knew that Shanni would represent to this Court, the Westmoreland County Court, or the Bankruptcy Court that she was acting *pro se* and had not been assisted by counsel.

328.    In addition, one or more of the Legal Drafters participated in the design of the Fake Lien Scheme and the planning of that that aspect of the Snyder Family Enterprise's activities.

329.    On information and belief, Shanni, Kash, Mark, and Scott also used the services of the Legal Drafters or an earlier legal drafter or set of legal drafters in their nominally pro se bankruptcy filings with regard to the Quinlan scheme.

330.    In its 2011 *Snyder v. Daugherty* opinion, this Court gave Shanni a "one-time, last-time opportunity for Ms. Synder and any involved attorney to, in essence, come clean with the Court (and to other parties) if indeed ghostwriting is involved." 899 F. Supp. 2d at 415 n.12.

331.    USAAG participated in the Fake Lien Scheme by purporting to offer funding that would support conversion of the U Lock Bankruptcy Proceeding from a proceeding under Chapter 11 of the Bankruptcy Code to a proceeding under Chapter 7, leaving itself as the dominant shareholder of U Lock.  On information and belief, USAAG further participated in the Fake Lien Scheme by, after the Bankruptcy Court rejected U Lock's motion to convert, funding Shanni's successful bid to purchase assets of U Lock, including its prospective action to prevent Biros from taking title to the Subject Property.

332.    Mark Myles Mycka participated in the Fake Lien Scheme by entering an appearance in the Quiet Title action and filing an appeal to the Superior Court.

333.    Katrina Mycka participated in the Fake Lien Scheme by completing the proof of service in the Wage Case and by serving Shanni's complaint in the Wage Case on George.

### K. Pattern of Racketeering Activity in This Action

334.    Shanni, George, and Kash have conducted or participated in the efforts of the Snyder Family Enterprise to defraud Biros through the Fake Lien Scheme through the commission of multiple acts of racketeering activity as that term is defined in 18 U.S.C. § 1961.

335.    As the Bankruptcy Court found, Shanni lied "to the District Court to establish her wage claim, and then to this Court in pressing it."  Exhibit 9 at p.35.

336.    Shanni committed a predicate act of wire fraud pursuant to 18 U.S.C. § 1343 on July 14, 2021 when, with intent to defraud or with intent to obtain property by means of false or fraudulent pretenses, she, on information and belief, used the internet to transmit her complaint in the Wage Case to this Court. Pursuant to Rule 11 of the Federal Rules of Civil Procedure, her signing and filing of that complaint constituted her certification that the allegations of her complaint had factual support.  In fact and on information and belief, many of Shanni's allegations were false and had no evidentiary support.  These allegations included Shanni's assertion that she had been an employee of U Lock, that she had performed work for U Lock ten hours per day, every day, for more than four years, that U Lock had agreed to pay her for this work, and that she was entitled to payment of wages, straight and overtime, for this non-existent work.

337.    Shanni committed a predicate act in violation of 18 U.S.C. § 1503 on October 18, 2021 when she corruptly endeavored to influence an officer in a court of the United States in the discharge of his duty.  On that day, she appeared in this Court and testified under oath in the hearing on her motion for default judgment. Shanni testified at that hearing that she had been an employee of U Lock; that she had performed work for U Lock ten hours per day, every day, for more than four years; that U Lock had agreed to pay her for this work; and that she was entitled to payment of wages, straight and overtime, for this non-existent work.  On information and belief, Shanni made these statements with the intention that this Court would rely on them and direct the entry of judgment in her favor and against U Lock, as well as with the intention that she would use the resulting judgment to assert a lien against the Subject Property.

338.    Shanni committed a predicate act of fraud connected with a case under Title 11 of the United States Code on April 27, 2022 when she filed the Involuntary Petition and commenced the U Lock Bankruptcy Proceeding.  In filing the Involuntary Petition, Shanni claimed to be a creditor of U Lock.  She made that claim knowing that her only claim to being a creditor was under the judgment in the Wage Case that she had improperly obtained through her own fraud and perjury, combined with George's and Kash's facilitating U Lock's inaction in the face of her claim.

339.    Shanni committed a predicate act of fraud connected with a case under Title 11 of the United States Code on May 27, 2022 when she filed Shanni's Claim

in the U Lock Bankruptcy Proceeding.  She submitted Shanni's Claim knowing that both (a) the amount of the claim and (b) her claim to be a secured creditor were premised upon the judgment in the Wage Case that she had improperly obtained through her own fraud and perjury, combined with George's and Kash's facilitating U Lock's inaction in the face of her claim.

340.    Shanni committed predicate acts in violation of 18 U.S.C. § 1503 on July 14, 2023 when she corruptly endeavored to influence an officer in a court of the United States in the discharge of his duty. In an effort to preserve Shanni's Claim in the U Lock Bankruptcy proceeding that she had initiated, Shanni falsely testified under oath to the Bankruptcy Court that she had been employed by U Lock as she had alleged in the Wage Case. On information and belief, Shanni made that false testimony with the intention that the Bankruptcy Court would rely on it and allow Shanni's claim in the Bankruptcy, which the Snyder Family Enterprise would then use in an effort to seize the Subject Property despite the rulings of the state courts.

341.    This conduct amounts to a pattern of racketeering activity.

342.    All of this conduct occurred within the last ten years.

**L.  Causation and Damages**

343.    "Frankly, the wage claim is transparently a means to an end."  Exhibit 9 at p.36.

344.    The Defendants' commission of this pattern of predicate acts in the conduct of the Snyder Family Enterprise and the Fake Lien Scheme has damaged Biros.

345.    That conduct delayed Biros in taking possession of the Subject Property.

346.    That conduct has delayed Biros in taking legal ownership and possession of the Subject Property.

347.    Biros has been damaged by her loss of ownership and control of the Subject Property.

348.    Biros has been damaged by the costs of responding to fraudulent and bad faith claims in the Third Circuit, this Court, the Bankruptcy Court, and the state courts, which she could only choose not to pay if she was willing to abandon the Subject Property to the Snyder Family Enterprise.

WHEREFORE Biros respectfully requests that this Court enter judgment in her favor and against the Defendants in an amount three times the actual damages she has suffered and award her the attorney's fees that she has incurred in this action, the costs of this action, and such other relief as this Court deems to be appropriate.

## COUNT II

### Violation of § 1962(d) of RICO – Conspiracy

### Biros v. All Defendants

349.    Biros incorporates the preceding paragraphs of this Amended Complaint as if set forth fully herein.

### M. <u>The Snyder Family Enterprise and the Fake Lien Scheme.</u>

350.   Biros incorporates the description of the Snyder Family Enterprise and the Fake Lien Scheme that appear in Count I, above.

### N. <u>Pattern of Racketeering Activity</u>

351.   Biros incorporates the description of the pattern of racketeering activity that appears in Count I, above.

352.   Like Shanni, George and Kash committed predicate acts in violation of 18 U.S.C. § 1503 on July 14, 2023 when they corruptly endeavored to influence an officer in a court of the United States in the discharge of his duty. George and Kash all falsely testified under oath before the Bankruptcy Court that Shanni had been employed by U Lock as Shanni had alleged in the Wage Case. On information and belief, they made that false testimony with the intention that the Bankruptcy Court would rely on the false testimony and allow Shanni's Claim, which the Snyder Family Enterprise would then use in an effort to seize the Subject Property despite the rulings of the state courts.

353.   This conduct amounts to a pattern of racketeering activity.

354.   All of this conduct occurred within the last ten years.

### O. <u>Agreement and Conspiracy</u>

355.   The Defendants, together with other members of the Snyder Family Enterprise, have agreed to operate the Snyder Family Enterprise, and specifically the Fake Lien Scheme, in order to unlawfully deprive Biros of her interest in the Subject Property.

356.   The Defendants, together with other persons, have agreed to the commission of predicate acts in furtherance of their agreement.

357.   This agreement is evidenced by the coordinated activity described above in the paragraphs of this Amended Complaint describing the Fake Lien Scheme and the acts by members of this conspiracy.

358.   As set forth above, the Defendants, together with other persons, have actually engaged in a pattern of racketeering activity by committing those predicate acts in the conduct of the Snyder Family Enterprise and the Fake Lien Scheme.

**P.  Causation and Damages**

359.   This pattern of predicate acts conducted through the Snyder Family Enterprise and the Fake Lien Scheme in furtherance of this agreement has damaged Biros.

360.   That conduct delayed Biros in taking possession of the Subject Property.

361.   That conduct has delayed Biros in taking legal ownership and possession of the Subject Property.

362.   Biros has been damaged by her loss of ownership and control of the Subject Property.

363.   Biros has been damaged by the costs of responding to fraudulent and bad faith claims in the Third Circuit, this Court, the Bankruptcy Court, and the state courts, which she could only choose not to pay if she was willing to abandon the Subject Property to the Snyder Family Enterprise.

WHEREFORE Biros respectfully requests that this Court enter judgment in her favor and against the Defendants in an amount three times the actual damages she has suffered and award her the attorney's fees that she has incurred in this action, the costs of this action, and such other relief as this Court deems to be appropriate.

## COUNT III

### Slander of Title

### Biros v. Shanni

364.    Biros incorporates the preceding paragraphs of this Amended Complaint as if set forth fully herein.

365.    Biros owns the Subject Property in fee simple.

366.    As the Superior Court and the Westmoreland County Court determined in the Ownership Action, *Biros* has held equitable ownership of the Subject Property since prior to her filing that action in 2017.

367.    Shanni slandered Biros's title in the Subject Property when she filed the Fake Lien.

368.    The Fake Lien was false because it was based on the judgment that Shanni had received in the Wage Case.  That judgment was false because it was caused by fraudulent allegations in the Wage Case that U Lock had deliberately chosen not to contest.

369.   Shanni knew of this falsity because she, herself, had made those fraudulent allegations in the Wage Case, both in her complaint and in her testimony at the hearing on her motion for default judgment.

370.   Shanni knew or should have recognized that her filing this lien would result in pecuniary loss to Biros.

371.   "The existence of a judgment lien prevents a debtor from encumbering or conveying any property he might own in such a way as to divest the effect of the judgment, while also preventing later lienholders from satisfying their debt without first paying the earlier lien." *Skiff re Business, Inc. v. Buckingham Ridgeview, LP*, 991 A.2d 956, 962 (Pa. Super Ct. 2010) (quoting *In re Upset Sale, Tax Claims Bureau of Berks County*, 479 A.2d 940, 943-44 (Pa. 1984)).

372.   Shanni knew or should have known that anyone conducting a reasonable investigation of Biros's interest in the Subject Property would learn of the Ownership Action, U Lock's role in that litigation, and, in turn, the Fake Lien that would cloud any interest that U Lock could possibly have held in the Subject Property.

373.   Shanni also slandered Biros's title when she filed the *Lis Pendens* Proceeding and asked the Westmoreland County Court to index a *lis pendens* against the Subject Property.

374.   That *lis pendens* was false because it was based on the judgment against U Lock that Shanni had received in the Wage Case.  That judgment was

false because it was caused by Shanni's fraudulent allegations in the Wage Case that U Lock had deliberately chosen not to contest.

375.   Shanni knew of this falsity because she, herself, had made those fraudulent allegations in the Wage Case, both in her complaint and in her testimony at the hearing on her motion for default judgment.

376.   That *lis pendens* was false because Shanni asked the Westmoreland County Court to index it against in the Subject Property even though she knew that U Lock had no interest in that property.

377.   That *lis pendens* was false because it was not based on any claim that Shanni might have against Biros.  In fact, Shanni knew she had no claim that Biros was liable to her on any colorable theory.

378.   Shanni knew or should have recognized that her filing that *lis pendens* would result in pecuniary loss to Biros.

379.   Shanni knew that anyone conducting a reasonable investigation of Biros's interest in the Subject Property would discover Shanni's *lis pendens.*  That *lis pendens* would effectively prevent Biros from selling the Subject Property, pledging the Subject Property, or obtaining any financing to redevelop the Subject Property.

380.   Shanni also entered an appearance and an appeal to Superior Court in the Ownership Action.  On information and belief, her claim to standing to participate in the Ownership Action and her appeal is predicated upon the judgment she obtained by fraud in the Wage Case.

381.     On information and belief, Shanni took these actions in order to prolong the Ownership Action and any accompanying clouds on Biros's title to the Subject Property.

382.     Similar to the *lis pendens*, Shanni's appeal to the Superior Court prolonged the Ownership Action and may have effectively prevented Biros from selling the Subject Property, pledging the Subject Property, or obtaining any financing to redevelop the Subject Property.

383.     Biros has suffered pecuniary loss as the result of Shanni's actions.

384.     Shanni's actions were so outrageous, willful, and malicious as to justify the imposition of punitive damages against her.

WHEREFORE Biros respectfully requests that this Court enter judgment in her favor and against the Defendants and award Biros her actual damages, punitive damages, the costs of this action, and such other relief as this Court deems to be appropriate.

## COUNT IV

### Slander of Title – Conspiracy

### Biros v. All Defendants

385.     Biros incorporates the preceding paragraphs of this Amended Complaint as if set forth fully herein.

386.     Biros owns the Subject Property in fee simple.

387.    As the Superior Court and the Westmoreland County Court determined in the Ownership Action, Biros has held an equitable interest in the Subject Property since July 16, 2015.

388.    At some point prior to July 14, 2021, the Defendants and other persons agreed to attempt to obtain an interest in the Subject Property that was superior to any title that Biros might take in that property.

389.    Those persons agreed to advance their plan by means of false statements.

390.    These false statements included Shanni's allegations and testimony in the Wage Case, which the other Defendants agreed to let stand uncontested by deciding that U Lock would not answer Shanni's claims and allow a default to be entered against it.

391.    At that time, the Defendants all knew that Shanni's factual claims in the Wage Case were false.

392.    The Defendants also advanced this conspiracy by Shanni's filing the Fake Lien, Shanni's filing the *Lis Pendens* Proceeding and asking the Westmoreland County Court to index Shanni's *lis pendens* against the Subject Property, and Shanni's entering her appearance in the Ownership Action and filing an appeal from that proceeding to the Superior Court.

393.    All the Defendants knew that *lis pendens* was false because it was based on the judgment against U Lock that Shanni had received in the Wage Case.

That judgment was false because it was caused by Shanni's fraudulent allegations in the Wage Case that U Lock had deliberately chosen not to contest.

394.    All the Defendants knew that *lis pendens* was false because Shanni asked the Westmoreland County Court to index it against in the Subject Property even though she knew that U Lock had no interest in that property.

395.    All the Defendants knew that *lis pendens* was false because it was not based on any claim that Shanni might have against Biros.  In fact, Shanni knew she had no claim that Biros was liable to her on any colorable theory.

396.    Biros has suffered pecuniary loss as the result of Shanni's actions.

397.    These actions by the Defendants are so outrageous, willful, and malicious as to justify the imposition of punitive damages against them.

WHEREFORE Biros respectfully requests that this Court enter judgment in her favor and against the Defendants and award Biros her actual damages, punitive damages, the costs of this action, and such other relief as this Court deems to be appropriate.

## COUNT V

### Fraud

### Biros v. Shanni

398.    Biros incorporates the preceding paragraphs of this Amended Complaint as if set forth fully herein.

399.    In the complaint that she filed in the Wage Case on July 14, 2021 pursuant to Rule 11 of the Federal Rules of Civil Procedure, Shanni falsely stated

that she had been an employee of U Lock, that she had performed work for U Lock as an employee of U Lock, and that U Lock had agreed to pay her for that claimed work.

400.    At the October 18, 2021 hearing before this Court on her motion for default judgment in the Wage Case, Shanni made those same assertions while under oath.

401.    Shanni's averments and testimony were material both to her claims in the Wage Case and to her and the other Defendants' efforts to deprive Biros of her interests in the Subject Property.

402.    Shanni's statements, both in her complaint and in her testimony, were false.

403.    At the time Shanni made these statements, she knew them to be false.

404.    Shanni made these statements with the intention of misleading this Court into relying on them.

405.    This Court was justified when it entered default judgment for Shanni and against U Lock in reliance upon Shanni's statements made under oath and pursuant to an obligation not to make false statements in her pleadings.

406.    Shanni's false statements have proximately caused injury to Biros.

407.    Shanni has subsequently used her default judgment, which she obtained with those false statements, to support the Fake Lien, her initiation of the *Lis Pendens* Proceedings, her initiation of the U Lock Bankruptcy Proceeding, and her appeal to the Superior Court in the Ownership Action.

63

408.    These actions have proximately caused Biros to incur attorney's fees to protect and advance her interests in the Subject Property, have interfered with Biros's legal, equitable, and possessory interests in the Subject Property, and have effectively prevented Biros from selling the Subject Property, pledging the Subject Property, or obtaining any financing to redevelop the Subject Property.

409.    Shanni foresaw or could reasonably have foreseen all of these damages at the time that she made the false statements to this Court.

410.    These actions by Shanni are so outrageous, willful, and malicious as to justify the imposition of punitive damages against them.

WHEREFORE Biros respectfully requests that this Court enter judgment in her favor and against Shanni and award Biros her actual damages, punitive damages, the costs of this action, and such other relief as this Court deems to be appropriate.

## COUNT VI

## Aiding and Abetting Fraud

## Biros v. George, Kash, and Roth

411.    Biros incorporates the preceding paragraphs of this Amended Complaint as if set forth fully herein.

412.    As discussed above, Shanni made fraudulent statements to this Court in order to obtain default judgment in her favor and against U Lock.

413.    George, Kash, and Roth were aware of these statements at or near the time that Shanni made them.  Per the return of service that Shanni filed with this

64

Court, Shanni served her complaint in the Wage Case on U Lock by having it hand-delivered to George.  George and Kash participated in U Lock's decision not to defend itself in the Wage Case.  George testified under oath in a U Lock Bankruptcy Proceeding hearing that he had discussed Shanni's complaint in the Wage Case with Roth prior to Shanni's obtaining the default judgment.

414.    George, Kash, and, particularly as a licensed attorney, Roth, all knew and appreciated that lying to a court in order to obtain a judgment is wrongful.

415.    On information and belief, George, Kash, and Roth each encouraged Shanni to lie in the Wage Case.  They further abetted Shanni's fraud by causing U Lock not to defend against Shanni's claims in the Wage Case, therefore exposing U Lock to Shanni's obtaining a default judgment against it.

416.    George, Kash, and Roth further aided and abetted Shanni's fraud by causing U Lock to move to delay the remand of the Ownership Action from the Superior Court to the Quiet Title Court, by causing U Lock to file the Petition to Strike in the Ownership Action, and by otherwise opposing and frustrating Biros's efforts to taking possession of and re-develop the Subject Property consistent with the judgment that Biros received in the Ownership Action.

417.    Shanni's false statements, as aided and abetted by George, Kash, and Roth, have proximately caused injury to Biros.

418.    Shanni has subsequently used her default judgment, which she received with the assistance of George, Kash, and Roth, to support the Fake Lien, her initiation of the *Lis Pendens* Proceeding, her initiation of the U Lock

Bankruptcy Proceeding, and her appeal to the Superior Court in the Ownership Action.

419.    These actions have damaged Biros by causing her to incur attorney's fees to protect and advance her interests in the Subject Property, have interfered with Biros's legal, equitable, and possessory interests in the Subject Property, and have effectively prevented Biros from selling the Subject Property, pledging the Subject Property, or obtaining any financing to redevelop the Subject Property.

420.    These actions by George, Kash, and Roth are so outrageous, willful, and malicious as to justify the imposition of punitive damages against them.

WHEREFORE Biros respectfully requests that this Court enter judgment in her favor and against George, Kash, and Roth and award Biros her actual damages, punitive damages, the costs of this action, and such other relief as this Court deems to be appropriate.

## COUNT VII

### Abuse of Process

### Biros v. Shanni

421.    Biros incorporates the preceding paragraphs of this Amended Complaint as if set forth fully herein.

422.    On or about July 14, 2021, Shanni commenced the Wage Case by filing her complaint in this Court.

423.    This Court issued a summons in that action to Shanni that same day.

424.    Per the return of service that Shannie filed with this Court, Shanni caused her complaint and the summons to be served on U Lock on or about July 15, 2021.

425.    Shanni abused legal process by using her complaint and the summons to obtain a default against U Lock, testifying falsely in the Wage Case Hearing, and obtaining a judgment against U Lock.

426.    As the Bankruptcy Court has found, "It is not hard to discern why Ms. Snyder fabricated her claim: to manufacture a means to continue the litigation against Ms. Biros in hopes of recapturing the Property. The first thing Ms. Snyder did ostensibly to enforce her judgment against U Lock was to cloud the title to the Property already awarded to Ms. Biros."  Exhibit 9 at p.35.

427.    In November and December 2021, Shanni filed a writ of execution in this Court against U Lock and asked this Court to issue an abstract of judgment, both based on her illicit judgment from the Wage Case.

428.    On or about December 15, 2021, Shanni used that abstract of judgment to file the Fake Lien in the Westmoreland County Court.

429.    On or about March 18, 2022, Shanni commenced the *Lis Pendens* Proceeding by filing her praecipe in the Westmoreland County Court.

430.    On or about April 27, 2022, Shanni commenced the U Lock Bankruptcy Proceeding by filing the Involuntary Petition with the Bankruptcy Court.

431.   On or about May 19, 2022, Shanni filed her notice of appeal in the Ownership Action with the Westmoreland County Court.  This filing initiated a new proceeding in the Superior Court.

432.   Shanni did not take any of these actions for a proper purpose.

433.   Instead, Shanni sought to use the judgment, which she had obtained fraudulently through the complaint and summons in the Wage Case, to interfere with Biros's interests in the Subject Property.

434.   Shanni's actions have damaged Biros by causing Biros to incur attorney's fees to protect and advance her interests in the Subject Property, have interfered with Biros's legal, equitable, and possessory interests in the Subject Property, and have effectively prevented Biros from selling the Subject Property, pledging the Subject Property, or obtaining any financing to redevelop the Subject Property.

435.   These actions by Shanni are so outrageous, willful, and malicious as to justify the imposition of punitive damages against her.

WHEREFORE Biros respectfully requests that this Court enter judgment in her favor and against Shanni and award Biros her actual damages, punitive damages, the costs of this action, and such other relief as this Court deems to be appropriate.

## COUNT VIII

## Civil Conspiracy – Abuse of Process

## Biros v. All Defendants

436.    Biros incorporates the preceding paragraphs of this Amended Complaint as if set forth fully herein.

437.    All of the Defendants agreed to use legal process for an improper purpose – *i.e.*, to interfere with Biros's interests in the Subject Property.

438.    One or more of the Defendants took actions in furtherance of that agreement.  Those actions included obtaining process by commencing the Wage Case and obtaining the summons.  They also included causing the complaint and the summons to be served on U Lock, lying to this Court to obtain judgment in Shanni's favor in the Wage Case, obtaining the abstract of that judgment, filing the Fake Lien in the Westmoreland County Court, commencing the *Lis Pendens* Proceeding in the Westmoreland County Court, commencing the U Lock Bankruptcy Proceeding in the Bankruptcy Court, and commencing a 2022 appeal to the Superior Court in the Ownership Action.

439.    None of the Defendants entered into this agreement or took any of these actions for a proper purpose.

440.    On information and belief, the Defendants instead took these actions in order to, improperly and unlawfully, prevent Biros from taking possession or title of the Subject Property, which she was at all times entitled to.

441.    The Defendants' agreement and actions have damaged Biros by causing Biros to incur attorney's fees to protect and advance her interests in the

Subject Property, have interfered with Biros's legal, equitable, and possessory interests in the Subject Property, and have effectively prevented Biros from selling the Subject Property, pledging the Subject Property, or obtaining any financing to redevelop the Subject Property.

442.    These actions by the Defendants are so outrageous, willful, and malicious as to justify the imposition of punitive damages against them.

WHEREFORE Biros respectfully requests that this Court enter judgment in her favor and against the Defendants and award Biros her actual damages, punitive damages, the costs of this action, and such other relief as this Court deems to be appropriate.

## COUNT IX
### Abuse of Process
### Biros v. Shanni

443.    Biros incorporates the preceding paragraphs of this Amended Complaint as if set forth fully herein.

444.    Shanni has used legal process in this action on several occasions.

445.    On or about July 14, 2021, Shanni commenced the Wage Case by filing her complaint in this Court.

446.    On or about December 15, 2021, Shanni filed the Fake Lien in the Westmoreland County Court.

447.    On or about March 18, 2022, Shanni commenced the Lis Pendens Proceeding by filing her praecipe in the Westmoreland County Court.

70

448.    On or about April 27, 2022, Shanni commenced the U Lock Bankruptcy Proceeding by filing the Involuntary Petition with the Bankruptcy Court.

449.    On or about May 19, 2022, Shanni filed her notice of appeal in the Ownership Action with the Westmoreland County Court.  This filing initiated a new proceeding in the Superior Court.

450.    Shanni did not take any of these actions for a proper purpose.

451.    Instead, Shanni sought to use her own false statements to obtain a judgment and then to use that fraudulently obtained judgment in order to interfere with Biros's interests in the Subject Property.

452.    Shanni's actions have damaged Biros by causing Biros to incur attorney's fees to protect and advance her interests in the Subject Property, have interfered with Biros's legal, equitable, and possessory interests in the Subject Property, and have effectively prevented Biros from selling the Subject Property, pledging the Subject Property, or obtaining any financing to redevelop the Subject Property.

453.    These actions by Shanni are so outrageous, willful, and malicious as to justify the imposition of punitive damages against her.

WHEREFORE Biros respectfully requests that this Court enter judgment in her favor and against Shanni and award Biros her actual damages, punitive damages, the costs of this action, and such other relief as this Court deems to be appropriate.

## COUNT X

### Civil Conspiracy – Abuse of Process

### Biros v. All Defendants

454.   Biros incorporates the preceding paragraphs of this Amended Complaint as if set forth fully herein.

455.   All of the Defendants agreed to use legal process for an improper purpose – i.e., to interfere with Biros's interests in the Subject Property.

456.   One or more of the Defendants took actions in furtherance of that agreement.  Those actions include commencing the Wage Case in this Court, filing the Fake Lien in the Westmoreland County Court, commencing the Lis Pendens Proceeding in the Westmoreland County Court, commencing the U Lock Bankruptcy Proceeding in the Bankruptcy Court, and commencing a 2022 appeal to the Superior Court in the Ownership Action.

457.   None of the Defendants entered into this agreement or took any of these actions for a proper purpose.

458.   On information and belief, the Defendants instead took these actions in order to, improperly and unlawfully, prevent Biros from taking possession or title of the Subject Property, which she was at all times entitled to.

459.   The Defendants' agreement and actions have damaged Biros by causing Biros to incur attorney's fees to protect and advance her interests in the Subject Property, have interfered with Biros's legal, equitable, and possessory interests in the Subject Property, and have effectively prevented Biros from selling

the Subject Property, pledging the Subject Property, or obtaining any financing to redevelop the Subject Property.

460.   These actions by the Defendants are so outrageous, willful, and malicious as to justify the imposition of punitive damages against them.

WHEREFORE Biros respectfully requests that this Court enter judgment in her favor and against the Defendants and award Biros her actual damages, punitive damages, the costs of this action, and such other relief as this Court deems to be appropriate.

Respectfully submitted,

BERNSTEIN-BURKLEY, P.C.

Dated: May 15, 2024            By: */s/ Stuart C. Gaul, Jr.*
                              Kirk B. Burkley, Esq. (PA. I.D. #89511)
                              Stuart C. Gaul, Jr., Esq. (PA. I.D. #74529)
                              601 Grant Street, 9th Floor
                              Pittsburgh, PA  15219
                              Telephone: (412) 456 – 8100
                              Facsimile:  (412) 456 – 8135
                              kburkley@bernsteinlaw.com
                              sgaul@bernsteinlaw.com

                              *Attorneys for Plaintiff, Christine Biros*

73

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of this Amended Complaint was served this 15th day of May, 2024, on all parties via this Court's CM/ECF notification system.

*/s/ Stuart C. Gaul, Jr.*