IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTINE BIROS,                          )
                    Plaintiff             )   2:23 cv 00297
                                          )
        v.                                )
                                          )
SHANNI SNYDER et al,                      )
                    Defendants.           )

## MOTION AND BRIEF IN SUPPORT OF THE MOTION TO DISMISS AMENDED COMPLAINT, MOTION FOR JUDGMENT ON THE PLEADINGS, AND MOTION TO STRIKE REDUNDANT, IMMATERIAL, IMPERTINENT, OR SCANDALOUS MATERIAL *

AND NOW COMES Defendant  KASH  SNYDER, and files this, his Brief in Support of the Motion to Dismiss, Motion for Judgment on the Pleadings, or, in the alternative, Motion to Strike redundant, immaterial, impertinent, or scandalous matter.

**I.   THIS COURT MUST END WHAT THE BANKRUPTCY COURT DESCRIBED AS AN "ENDLESS SLOG OF LITIGATION" AND DISMISS THE AMENDED RICO SUIT FOR UNCLEAN HANDS BECAUSE CHRISTINE BIROS ENGAGED IN THE EXACT SAME CONDUCT THAT SHE ALLEGES THE DEFENDANTS ENGAGED IN.**

Before we begin with the deficiencies found in the Amended RICO lawsuit filed by Christine Biros, this Court must consider whether to allow the lawsuit to proceed considering the equitable doctrine of unclean hands and the fact that the bankruptcy court rendered multiple decisions – none of which Biros appealed and which are now *res judicata* – declaring that she engaged in the precise misconduct that she sues for.

-------------------------------------
    * As I agree with Attorney Roth, I have copied his memorandum. The only this is I do not plan to file the duelling RICO action.

Suing legal professionals for RICO without their having ownership in or managing the enterprise fails, *see Muskegan Hotels, LLC v. Patel,* 986 F.3d 692 (7th Cir. 2021)*,* and filing lawsuits and even submitting false declarations do not give rise to RICO.  *See Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) and *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016).

Even without this general prohibitions to this type of RICO, allowing Biros' suit to move forward will invite duelling RICOs to be filed by the parties and the possibility of a trial where the jury is asked to determine which party is bad, which party is badder, and which party is the baddest.

Biros moreless uses this case to reimburse her attorney fees in the bankruptcy, but as the bankruptcy court explained, "*there are no angels here. Every party played a role in transforming an otherwise simple chapter 7 case that should have been fully administered within a few months into an endless slog of litigation*."  *In re:  U Lock*, 2024 WL 3154602 at *2 (Bk. W. Pa. June 24, 2024). This novel RICO case continues that "endless slog of litigation" and if allowed to proceed will necessarily result in additional RICOs to offset Biros' claims and more "slog of litigation."

The crux of Biros' claim is that Shanni Snyder lodged a false and exaggerated bankruptcy claim in the *In re: U Lock*, 22-20823 (Bk. W.Pa.), but if there was a conspiracy why would U Lock need Snyder to file an involuntary bankruptcy when it could just file itself?  As the bankruptcy court recognized at 2024 WL 3154602**,** *3, it declined to consider dismissal until after U Lock

answered the involuntary petition, noting that "consent to an order for relief would seemingly moot Ms. Biros' challenges" to Shanni Snyder's alleged bad faith petition.

In addition, Biros' RICO claim asserts that various alleged misrepresentations to the bankruptcy court by Shanni Snyder and George Snyder constituted RICO predicates for corruptly obstructing the proceeding.   As shown below, Biros indisputably did exactly the same – and not just once.

As to so-called fraudulent bankruptcy claims, the Bankruptcy Court *sua sponte* issued a Rule 9011 show cause and declared that Biros filed an exaggerated administrative claim for $144,000.[1]  *In re: U Lock*, 2023 WL 308210 (Jan. 17, 2023); Exhibit 1.  The Order explained at *4 that, "an administrative expense claim in the amount of $144,000 is patently absurd."  The Court held, "the claimed amount is grossly unreasonable. * * * neither Ms. Biros nor Attorney Bernstein could have plausibly believed that $144,000 as requested by the *Motion* was an actual, necessary cost of preserving the estate."  *Id.*

On June 24, 2024, the bankruptcy court sustained its finding that the $144,000 claim was grossly exaggerated, but found its opinion and findings were enough and that Biros' counsel caused the inflation, so further money sanctions were not appropriate.  *In re: U Lock*, 22-20823, Entry 593 (Exhibit 2).  Biros did not appeal the findings of a grossly inflated claim and it is now *res judicata*.

---

[1] The difference between Biros' claim and Shanni Snyder's is Biros' claim would receive partial payout since it was an administrative claim and Shanni Snyder's claim was unsecured and would receive nothing due to an insolvent estate.

Ironically, it is the same law firm that encouraged the fraudulently inflated claim and took responsibility for it that now prosecutes this RICO.

The situation is much worse than a single inflated claim.  On June 24, 2024, the bankruptcy court sanctioned Christine Biros for egregious conduct and taking the Estate assets and moving them.  The court awarded $15,000 in punitive damages to the trustee, required Biros to reimburse the United States Marshals Service $1,000, pay a $500 fine to the Clerk of Court, reduced her administrative claim (the one that was inflated at $144,000 but was ultimately reduced to $18,000) by $2,000, and directed payment of compensatory damages of $2,800 for the trustee's time.  *In re:  U Lock*, 2024 WL 3154602 (June 24, 2024). *See* Exhibit 3.  Biros did not appeal this Order and it constitutes *res judicata*.

In that instance, the Bankruptcy Court found that Biros "that she willfully and contemptuously violated the automatic stay by *removing scheduled assets from the Property*." *Id* at *14.  Ms. Biros fraudulently concealed this information from the court.  *Id* at *10; *17 ("When the Court scheduled on-site due diligence for prospective bidders, [Biros] knew or should have known that the Court and parties expected the scheduled assets to be on the Property. Yet Ms. Biros said nothing even though she knew that most scheduled assets were already relocated to the McKeesport Property.   Her silence is telling, as is her decision to not explain it").     At *18, the court explained, "Ms. Biros probably figured that her stay violation still had a chance of escaping detection. The Court also

suspects she was emboldened by her substantial claims, her view that she was the only legitimate creditor, and the likelihood that she would prevail at auction. In fact, Ms. Biros only came clean when the Court directly asked whether she had removed scheduled assets from the Property."

At footnote 190, the bankruptcy court found that, "It is now apparent that Attorney Otto was aware in early November [2022] that Ms. Biros relocated the scheduled assets," and broached without finding the possibility he violated his ethical duties of candor to the Bankruptcy Court, meaning her counsel most probably abetted these fraudulent concealments.

Biros provided testimony and responses to the court under oath.  The court found that her "lobbing accusations over measures explicitly allowed by a court order undermines her credibility and indicates how carefully she and counsel read [the Court Order]."  The court stated, "Ultimately, the Court finds Ms. Biros' 'estate protection' justification nothing more than an effort to muddy the waters and create a false equivalence for her transgressions."  *Id* at *16.

In additional litigation misconduct the bankruptcy court found to be "beyond the pale," Biros misused the discovery process in the bankruptcy and sought school records of Shanni Snyder's minor children and bank records of third parties, resulting in Court Orders prohibiting her from using subpoenas without leave of court.  See Exhibit 5 pages 8-9 ("Oh, I think we're way beyond overbreadth now.  I think the wheels have completely fallen off on this.  I mean, going after the minor child of a party in this litigation is beyond the pale"); *Id* page

21 ("I am continuously engaged in exercises such as this which are a complete

waste of the Court's time, the parties' time, it's a waste of your client's resources,

it's driving up the expense for an Estate that has no value to it.  And you know

I've got to be candid, I think this is doing damage to your firm's reputation.  I don't

know if this is being internally generated by your firm or if it's at the insistence of

your client, but think long and hard about what this is going to do to your firm

long-term in view of credibility and reasonableness because this is certainly not a

measured approach. *This is scorched earth.  This is beyond the pale*"); Exhibit 6

(Order Quashing Subpoena and Directing Biros to Return All Records Acquired),

and Exhibit 7 (Quashing Subpoena to education institution).

But again, this RICO seeks damages of attorney fees incurred during the

bankruptcy – a litigation Biros engaged in abusive "beyond the pale" waste of her

own resources.   This RICO action continues the "scorched earth" litigation plan.

Another instance of time wasting and misconduct, Biros misused the

bankruptcy court's proceeding notes to gain an upper advantage calling the

police on a tenant, which the court rebuked her counsel for doing and had to

make it clear that litigation notes were not Court Orders.  *See* Exhibit 4, pages

95-98.

This matter must be ended.  "[H]e who comes into equity must come with

clean hands." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S.

806, 814 (1945). The defense "applies when the party seeking relief is guilty of

fraud, unconscionable conduct, or bad faith directly related to the matter at issue

that injures the other party and affects the balance of equities." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 147 n.12 (3d Cir. 1999).

In this case, the entire premise of Biros' lawsuit – both the federal and state claims – are to sue for attorney fees in a case where she engaged in misconduct deliberately running up her own bill. The "predicate acts" all involve alleged inflated claims filed and misleading testimony and wrongful conduct primarily in the bankruptcy case. Yet, Biros engaged in the same conduct, filing inflated claims, providing misleading information and concealment, and providing non-credible testimony to support them. Biros never appealed these determinations and they are *res judicata*. *They affect the same proceeding and the same parties.*

Biros substitutes this RICO action for a motion for sanctions in those cases, yet acted no differently in the bankruptcy proceedings and engaged in similar conduct to what she alleges the defendants did. She invites the Snyder defendants to file RICO counterclaim for the same identical shenanigans.

This Court must stop this paper war, all of which serves only to provide an avenue for the parties to eventually obtain a judicial declaration of who the baddest litigant is that cost the other party more attorney fees and time.

Therefore, at the outset, this Court needs to end Biros' "endless slog of litigation" as this RICO litigation is just a continuation of her gripes in the bankruptcy court – gripes and frivolousness that apply equally against her

conduct.  In other words, Biros cannot distinguish herself and her misconduct from what she alleges Shanni Snyder did.

## II.   THE AMENDED COMPLAINT

Christine Biros ("Biros") filed an Amended Complaint in response to this Court's Order dismissing her RICO lawsuit without prejudice.  The Complaint mirrors the prior one except she added allegations of an "enterprise" consisting not of businesses or money-making activity but  litigations filed by members of the Snyder family that she avers creates a litigation enterprise:

- Biros points out that "thirteen years ago" Shanni Snyder "advised" this Court that she had already "filed over 90 state and federal lawsuits."  *Amended Complaint, ¶228.*

- In 1996 and 1998, Shanni, Kash and Mark (but not George) Snyder executed various promissory notes, defaulted in 2003, filed bankruptcies in 2003 and 2004, and then attempted to invoke 11 USC 362's automatic stay provisions to delay state court foreclosures.  *Amended Complaint, ¶¶231-263.*

- In 1988 – while Shanni was a minor child and Kash and George just turned 18 – their parents challenged certain tax assessments using arguments found incredible.  As a result, the parents of the defendants were assessed millions of dollars in taxes and penalties. *Amended Complaint, ¶¶264-286.*

- Shanni Snyder included an alleged equitable interest in a property formerly owned by her parents in bankruptcy schedules filed in 2022 and when a purchaser of the property from a Sheriff's deed filed a motion for relief from stay, Shanni did contest the motion.

These cited motions and proceedings are not related and would constitute wholly separate enterprises – of they constituted an "enterprise" at all. The participants are completely different.  Litigations and personal individual disputes themselves are not a profit-creating enterprises, the RICO predicate offenses are neither cognizable nor adequately alleged, are barred by claim and issue preclusion, and worse, Biros herself is engaging in the exact same conduct that she sues for inviting duelling RICO actions and endless litigation that serves no purpose other than to do just that– litigate endlessly.

III.   **STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must make allegations with sufficient factual detail under Rule 8(a) that, if those allegations were assumed to be true, the Court could reasonably infer liability. See *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombl*y, 550 U.S. 544, 556, 570 (2007)). Dismissal is appropriate if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," Twombly, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,* 129 S. Ct. at 1949 (*citing Twombly*, 550 U.S. at 557);

A complaint that alleges mere "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action,'" or "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal,* 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. 555, 557).

In deciding a motion to dismiss, the Court properly considers the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993).

The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, see *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dis*t., 132 F.3d 902, 906 (3d Cir. 1997) (*quoting In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1429-30 (3d Cir. 1997)). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." Iqbal, 129 S. Ct. at 1950.

As to allegations of fraud, which this RICO action primarily consists of, require allegations with particularity pursuant to Fed. R. Civ. Proc. 9(b).  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *see also Lum v. Bank of Am.*,

361 F.3d 217, 223 (3d Cir. 2004) ("Where, as here, plaintiffs rely on mail and wire fraud as a basis for a RICO violation, the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled with specificity."), *abrogation on other grounds recognized by In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 323 n.22 (3d Cir. 2010).

A RICO conspiracy claim cannot survive where the plaintiff fails to provide evidence of "'an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense.'" In re Ins. Brokerage, 618 F.3d at 373 (quoting Salinas, 522 U.S. at 65) (alteration in the original); see also Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993).

IV.  **DISCUSSION**

### A. THE AMENDED COMPLAINT FAILS TO SHOW A RICO ENTERPRISE

Count I of the Amended Complaint is *only* against Shanni Snyder.  The new litigations cited by Biros do not show any form of continuous RICO Enterprise, let alone a continuous Enterprise.  Rather, Biros merely places her own spin on various civil disputes and legal cases that she located through the PACER.  Biros cite litigation not involving the defendants, but their parents, occurring when the Snyder Defendants were either minor children or just turned 18 years old.  Biros cites a civil rights 42 USC 1983 lawsuit to show that Shanni Snyder *personally* filed over 90 lawsuits, state and federal, and that (prior to new rules stating that a *pro se* litigant need not disclose so-called legal drafter

attorneys) the judge ordered her to disclose any attorneys, but that is not an

"enterprise" but an individual situation.  Biros cites a property jointly owned by

family members (but not George Snyder) where non-parties to this action

*individually* filed *personal* bankruptcies in 2003 and 2004.  These actions are all

*individual*, not a separate RICO enterprise.  This is why Count I is against Shanni

Snyder only.  Because she is Shanni Snyder, but she is not an Enterprise.

As this Court recognized, Biros must show a RICO Enterprise, see *Biros v.*

*Snyder,* 2024 WL 1346691 at *4 (*W.D.Pa. Mar. 29, 2024).  Yet Biros fails to do

that, grasping at lawsuits from generations ago.

The Amended Complaint lacks particularized facts about the

decision-making structure of the alleged enterprise. Yet such factual detail is

required for a valid RICO enterprise.  *Walker v. Beaumont Indep. Sch. Dist.*, 938

F.3d 724, 728 (5th Cir. 2019).  The enterprise is not the pattern of racketeering

activity. Plaintiffs must plead specific facts, not mere conclusory allegations which

establish the enterprise.  *Id.*

A RICO "enterprise" must constitute an entity distinct from the RICO

"person." The United States Supreme Court has held that "to establish liability

under § 1962 one must allege and prove the existence of two distinct entities: (1)

a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to

by a different name." *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161

(2001). In other words, Defendant must be the "person" who conducts the

"enterprise's" affairs through a pattern of racketeering activity, and the

person/defendant must be separate and distinct from the "enterprise." *Schwartz v. Lawyers Title Ins. Co*., 680 F.Supp.2d 690,704 (E.D.Pa. 2010).  The alleged "person" who is "subject to liability [for a RICO violation] cannot be the same entity as the 'enterprise.'  *Gordon v. Pasquarello*, No. CV 22-1565, 2023 WL 2505538 *16 (E.D. Pa. Mar. 14, 2023).

Courts may "'reasonably assume that individuals and corporations have an organizational structure, are continuous, and have an existence separate and apart from any alleged pattern of racketeering activity.'" *Freedom Medical v. Gillespie,* 634 F. Supp. 2d 490, 504 (E.D. Pa. 2007) (quoting *Price v. Amerus Annuity Group Co.,* MDL No. 1712, 2006 U.S. Dist. LEXIS 35980, at *9 (E.D. Pa. June 2, 2006)). If, however, the alleged RICO enterprise has no legal existence and is instead an association-in-fact, it "cannot reasonably be assumed to satisfy the elements of an enterprise and the allegations of the complaint must therefore receive greater scrutiny." *Id*. at 505.

A review of the Amended Complaint makes it clear that every predicate act involve legal filings made by Shanni Snyder or testimony in support of them.  If successful, as Biros states, only Shanni Snyder would receive the benefit of the lien instrument.  Therefore, it is clear that no enterprise exists, only Shanni Snyder exists. Similarly, the past wholly separate enterprises were not enterprises but individual actions.

"[T]he existence of an enterprise is an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other.' "

*Boyle v. United States,* 129 S.Ct. 2237, 2245  (2009).  If, for example, "several individuals, *independently and without coordination,* engaged in a pattern of crimes listed as RICO predicates [,] ... [p]roof of these patterns would not be enough to show that the individuals were members of an enterprise." *Id.* (emphasis added). Nor would proof of a conspiracy to commit a RICO predicate offense "necessarily establish that the defendant[s] participated in the affairs of an ... enterprise through a pattern of ... crimes." *Id.* at 2246. Individuals' separate and uncoordinated commission of RICO predicate acts does not automatically create an enterprise.  *Id*, n. 4.

While "a conspiracy is an inchoate crime that may be completed in the brief period needed for the formation of the agreement and the commission of a single overt act in furtherance of the conspiracy," § 1962(c) "demands much more: the creation of an 'enterprise'—a group with a common purpose and course of conduct—and the actual commission of a pattern of predicate offenses." *Id.*

### A(1).  BIROS' NEW ALLEGATIONS FAIL BECAUSE OF THE LACK OF CONTINUITY AND NO PATTERN OF RACKETEERING

In the Amended RICO Complaint, Biros alleges sporadic events starting with the parents of the Snyder Defendants who had a tax issues when they were still minor children or just became adults.  The tax case certainly has nothing to do with nothing.  Then Shanni Snyder advised this Court over thirteen years ago that she filed over ninety (90) legal cases.  This has nothing to do with nothing.

Between 2003 and 2005– that's right, over 20 years ago– there existed a

note from 1996 or 1998 on the family house and the family members allegedly filed bankruptcy to try to delay foreclosure.

And as an honorable mention, Shanni Snyder recently included that she may maintain an equitable interest on a tax foreclosed house, but did not challenge a buyer's motion for relief from the automatic stay.

These are not enterprises, but litigations.  Even if they were frivolous, fraudulent, or baseless litigations, "allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act." *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018); see also *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016).

Biros simply fails to allege any continuity in the enterprise or a long term business.  In its opinion in *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229 (1989), the Supreme Court set out its second analysis of the requirements of civil RICO. The Court examined the statute and its legislative history in an attempt to determine the elements of the pattern requirement. From this review, the Court concluded that "to prove a pattern of racketeering activity a plaintiff must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* at 239.

Under the first, or "relatedness," requirement of the RICO statute, as interpreted in *H.J. Inc.,* predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated

events." *Id.* at 240, 109 S.Ct. at 2901.

As for the second, or "continuity," prong of the analysis, the Court in *H.J. Inc.* attempted to promulgate a somewhat flexible approach, based upon a "commonsense, everyday understanding of RICO's language and Congress' gloss on it." *Id.* at 241, 109 S.Ct. at 2902. With this analytical approach in mind, the Court decided that "[w]hat a plaintiff or prosecutor must prove is continuity of racketeering activity, or its threat, *simpliciter.*" *Id.*

In explicating how a plaintiff could make this continuity showing, the Court described continuity as "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* "It is, in either case, centrally a temporal concept," *id.* at 241–42, 109 S.Ct. at 2902, so that a party may establish continuity as a closed-ended concept by "proving a series of related predicates extending over a *substantial* period of time." *Id.* at 242, 109 S.Ct. at 2902 (emphasis added).

Thus, *H.J. Inc.* makes clear that the continuity requirement can be met by establishing long-term criminal conduct but does not define what length of time qualifies as "substantial" for this purpose. The Court in *H.J. Inc.* also gave examples of how the threat of continued racketeering activity might be demonstrated. One example is that of a hoodlum who sells "insurance" to storekeepers to prevent the breaking of their shop windows. *Id.*

Since *H.J. Inc.,* the Third Circuit faced the question of continued

racketeering activity in several cases, each time finding that conduct lasting no more than twelve months did not meet the standard for closed-ended continuity. *See Hughes v. Consol–Pennsylvania Coal Co.,* 945 F.2d 594, 610–11 (3d Cir.1991) (fraudulent conduct lasting twelve months does not establish closed-ended continuity); *Hindes v. Castle,* 937 F.2d 868, 875 (3d Cir.1991) (eight month period of predicate acts without a threat of future criminal conduct does not satisfy continuity requirement); *Kehr Packages v. Fidelcor, Inc.,* 926 F.2d 1406, 1413 (3d Cir.1991) (same); *Banks v. Wolk,* 918 F.2d 418, 422–23 (3d Cir.1990) (same); *Marshall–Silver Constr. Co. v. Mendel,* 894 F.2d 593 (3d Cir.1990) (seven month single-victim, single-injury scheme does not satisfy continuity requirement).

The Third Circuit concluded that a scheme lasting over three years extends over a "substantial" period of time and therefore constitutes the type of "long-term criminal conduct" that RICO was enacted to address. *See United States v. Pelullo,* 964 F.2d 193, 209 (3d Cir.1992) (holding that a jury could find a nineteen month period of racketeering activity sufficient to satisfy continuity requirement).

The Supreme Court cautions, however, in *H.J. Inc.,* that the existence of continuity may not always be apparent. 492 U.S. at 243, 109 S.Ct. at 2902–03. For example, the statutory definition of pattern is "at least two acts of racketeering activity" within a ten year period. 18 U.S.C. § 1961(5). It is clear that ten years is a period of long duration.  Indeed, Justice White noted in a footnote that, while § 1961(5) defines a pattern of racketeering activity as requiring at

least two acts of racketeering activity, two acts may not be sufficient. *Id.* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14.

In *H.J. Inc.* the Court states that open-ended continuity is established when the commission of the predicate acts is "a regular way of conducting defendant's ongoing legitimate business." 492 U.S. at 243, 109 S.Ct. at 2902.

In the present case, the alleged actions of Shanni Snyder in filing Court documents does not appear to be the pattern of racketeering, but single isolated occurrences and not a business at all.

As the Supreme Court noted in *Boyle v. United Statees,* 556 US 938 (2019), an enterprise necessarily must have "'affairs' of sufficient duration to permit an associate to 'participate' in those affairs through 'a pattern of racketeering activity.'" 556 U.S. at 946 (quoting 18 U.S.C. § 1962(c)).  *Boyle* confirmed that, although a pattern of illegal activity may be sufficient to satisfy both the enterprise and racketeering elements of a RICO claim, "the existence of an enterprise is an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other.'" 556 U.S. at 947.

Certainly, it appears evidence that Biros failed to demonstrate continuity and a pattern of racketeering.

### A(2).  BIROS CANNOT SHOW RICO WHEN THE SOLE PURPOSE OF THE PRESENT ENTERPRISE WAS TO DEFRAUD HER

Biros can repackage it with stories of other litigations from the 1980s and 1990s, but the only *current* enterprise is the allegation that Shanni Snyder

somehow tried to beat Biros to courthouse to preserve her claims and which Biros suggests was based on embellished claims.

A RICO enterprise requires that the common activities of the enterprise extend beyond the minimal association necessary to sustain the pattern of racketeering. *Diamonds Plus, Inc. v. Kolber,* 960 F.2d 765, 770 (8th Cir.1992) ("The focus of the inquiry is whether the enterprise encompasses more than what is necessary to commit the predicate RICO offense.").

"[A]n enterprise cannot simply be the undertaking of the acts of racketeering, neither can it be the minimal association which surrounds these acts." *Stephens, Inc. v. Geldermann,* Inc., 962 F.2d 808, 815 (8th Cir.1992) (citation omitted) (holding that plaintiff insufficiently pled a RICO enterprise because although "each member of th[e] group carried on other legitimate activities, these activities were not in furtherance of the common or shared purpose of the enterprise, and thus, were not acts of the enterprise"). That each member of a group carries on activities distinct from the pattern of racketeering is insufficient; *the group as a whole must have a common link other than the racketeering activity. McDonough v. National Home Ins. Co.,* 108 F.3d 174,177 (8th Cir.1997) (citations omitted) (emphasis added).

 "Proof the enterprise conducts lawful activity unrelated to the pattern of racketeering will often serve to prove the enterprise is separate from the pattern of racketeering." *Diamonds Plus, Inc.,* 960 F.2d at 770, 770 n. 5 (citations omitted).

"In deciding whether an alleged RICO enterprise has an ascertainable structure distinct from the pattern of racketeering activity," the court must "determine if the enterprise would still exist were the predicate acts removed from the equation." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 354-355 (8th Cir. 2011) (quoting *Handeen v. Lemaire,* 112 F.3d 1339, 1352 (8th Cir.1997)).

As the Eighth Circuit noted in *Crest Constr. II,* where "the only common factor that linked" the individually named defendants "and defined them as a distinct group was their direct or indirect participation" in a scheme to defraud the plaintiff, plaintiff had not adequately pled a RICO enterprise,  660 F.3d at 355 (citing *Stephens,* 962 F.2d at 815–16).

For this reason, Biros' RICO claim that alleged the enterprise consisted of nothing but an alleged plan to defraud her fails to allege a RICO enterprise.

Therefore, the Complaint at Counts I and II fail because Biros failed to show an association in fact or that the enterprise was distinct from Shanni Snyder.

### B. RICO CANNOT BE USED TO COLLATERALLY ATTACK THE ORDER FOR RELIEF ENTERED IN THE BANKRUPTCY COURT AND BIROS FAILED TO INTERVENE IN THE DISTRICT COURT LABOR ACTION TO PURSUE A RULE 60 MOTION

Paragraph 338 of the Amended Complaint states "Shanni committed a predicate act of fraud connected with a case under Title 11 of the United States Code on April 27, 2022, when she filed the Involuntary Petition."  However, prior to Shanni's involuntary petition being ruled on by the bankruptcy court, Biros

appeared, objected based on the validity of Shanni's claim, and moved to dismiss.  The bankruptcy court expressly granted Shanni's bankruptcy petition and issued an Order for Relief.  This Order for Relief constitutes *res judicata* and would require a collateral attack.  The Order for Relief constituted a final judgment on the merits of Snyder's claim and nobody, including Biros, appealed or sought reconsideration. Therefore, it is *res judicata* as to Biros who was before the bankruptcy court.  See *Gratiot County State Bank v. Johnson*, 249 U.S. 246 (1919)(Order for Relief *res judicata)*.  An Order for Relief is an appealable adjudication requiring Rule 60-type relief to vacate it. *In re:  Robert J. Mason*, 709 F2d 1313 (9th Cir. 1983).  It is also noted that the bankruptcy court recognized that Biros challenged the filing of the involuntary petition, but explained that it declined consider dismissal until after U Lock answered the involuntary petition, noting that "consent to an order for relief would seemingly moot Ms. Biros' challenges" to Shanni Snyder's alleged bad faith petition.  *See In re: U Lock,* 2024 WL 3154602**,** *3.  This holding is fairly simple to understand, U Lock did not need Snyder to file bankruptcy.  U Lock could have filed at any time.

Biros did not appeal the Order for Relief and, therefore, it constitutes an unassailable adjudication eliminating any collateral attack in this RICO case.

As to the predicate act at paragraph 336 averring that the July 14, 2021, filing of a Civil Complaint constituted wire fraud, Biros cannot use RICO to collaterally attack the judgment.  The proper method is for Biros to intervene and file a Rule 60 motion.  Biros knows this because, as shown by Exhibit 8, she

specifically stated that she intended to do just that.  *See In re: Shanni Snyder*, 18-21983 (Bk. W.D.Pa.), Entry 72 ("33. Movant has filed this Motion for Relief from Stay to seek to vacate the Judgment received by the [Shanni Snyder] against U-Lock * * * 35. Accordingly, Movant requests relief from the automatic stay to take the necessary action to vacate the Judgment obtained by [Shanni Snyder] against U-Lock [...]").

However, as a matter of litigation strategy, and despite timeliness of a Rule 60 motion being important, she chose to use this RICO to collaterally attack the judgment.  This is not the proper procedure.  Biros, unless she waited too long, has a right to file a Rule 60 motion in the *U Lock* civil action before this Court if her "interests are strongly affected." *Bridgeport Music, Inc. v. Smith*, 714 F.3d 932, 940 (6th Cir. 2013)(collecting cases showing that a non-party can file a Rule 60 motion); *Grace v. Bank Leumi Tr. Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006)(same).

It is improper to use RICO to collaterally attack judgments and, prior to suing for these two predicate acts because Biros first needs to have the decisions vacated.

## C. THE PREDICATE ACTS DO NOT INCLUDE THE NECESSARY ELEMENTS

In a RICO Conspiracy, Biros is required to present a viable claim under another subsection of 18 USC 1962.  *Howard v. American Online Inc.*, 208 F.3d 741, 751 (9th Cir.), cert. denied, 531 U.S. 828 (2000).  To state a claim for RICO conspiracy, one must successfully allege all the elements of a RICO violation, as well as an illicit agreement to violate the substantive RICO provision.  *Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 806 (6th Cir. 2016).  Parties cannot be found guilty of conspiring to commit an act that is not itself against the law. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1220 (11th Cir. 2020).

Biros' Count II simply refers to Count I and implies the conspiracy, except she adds one additional predicate act of alleged violations of corrupt obstruction in violation of 18 USC 1503.  These predicate acts all fail.

### C(1).  VIOLATIONS OF 18 USC 157 ARE EXEMPT FROM RICO

As to Count I, Biros cites as predicate acts at Paragraphs 338 and 339 that Shanni "committed a predicate act of fraud connected with a case under Title 11 of the United States Code."  Biros does not reveal the statute that forms the offense.  Rather, she just states, "fraud under Title 11."  Biros must plead fraud with particularity, not simply claim some unknown "offense" of fraud.  F.R.Cv.P. 9(b).

Congress included bankruptcy crimes to stop people who, like Biros, took the physical scrap property of the Estate and moved it to her own property near a

scrap yard.  What Congress did not want was people suing people for filing

claims in bankruptcy cases or alleging that the bankruptcy petitions were fraud.

Therefore, Congress specifically exempted any predicate act derived from 18

USC 157.  The statute states RICO offenses include, "any offense involving fraud

connected with a case under title 11 (except a case under section 157 of this

title)."  The first bankruptcy predicate act is allegedly committing fraud by filing

the involuntary petition.  This is specifically exempted as it is found at 18 USC

157(1).  Next, Biros claims that Shanni committed an act through filing her proof

of claim.  But that would fall under 18 USC 157(2) and (3) and are exempt from

RICO.

Perhaps this is why Biros cited no specific bankruptcy offense and just

states "fraud."  Regardless of the reason, as the alleged conduct falls within 18

USC 157, it cannot form the basis of a RICO offense.

### C(2).  BIROS FAILS TO PLEAD FEDERAL WIRE FRAUD

First, Biros is subject to the heightened pleading standard under Rule 9,

Fed. R. Civ. Proc. as to her wire fraud claims.  The sole basis of the wire fraud

predicate act is that Shanni Snyder filed a lawsuit against U Lock Inc.

Paragraph 336 of the Amended Complaint states:

Shanni committed a predicate act of wire fraud pursuant to 18 U.S.C. 1343
on July 14, 2021, when, with the intent to defraud or with intent to obtain
property by means of false or fraudulent pretenses, she used the internet
to transmit her complaint in the Wage Case to the District Court.  Pursuant
to Rule 11 of the Federal Rules of Civil Procedure, her signing and filing

that complaint constituted her certification that the allegations of her complaint had factual support. In fact and on information and belief, many of Shanni's allegations were false and had no evidentiary support. These allegations included Shanni's assertion that she had been an employee of U Lock, that she had performed work for U Lock ten hours per day, every day, for more than four years, that U Lock had agreed to pay her for this work, and that she was entitled to payment of wages, straight and overtime, for this non-existent work."

However,  The federal mail and wire fraud statutes prohibit the use of the mail or interstate wires for purposes of carrying out any scheme or artifice to defraud. *See* 18 U.S.C. §§ 1341, 1343.  *Lum v. Bank of Am.*, 361 F.3d 217 223 (3d Cir. 2004) .

The mail and wire fraud statutes require a fraud to the ordinary property rights to an individual. The statutes do not protect intangible rights, the so-called "right to control" assets theory, the right to honest services, or the right to information.  *Ciminelli v. United States,* 598 US 306 (2023).  Biros fails to explain how filing a lawsuit meets the *Ciminelli* requirement that the statute be used only for depriving one of their property.

Moreover, Biros fails to allege any use of interstate commerce in Shanni uploading a document from her residence in Pennsylvania to a court in Pennsylvania.  *See* e.g., *Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988) (affirming dismissal of RICO claim where there were no interstate telephone calls alleged in support of wire fraud predicate act); *McCoy v. Goldberg*, 748 F. Supp. 146, 154 (S.D.N.Y. 1990) (dismissing RICO claim where there were no interstate

telephone calls alleged in support of wire fraud predicate act); *Hall v. Tressic*, 381 F. Supp. 2d 101, 109 (N.D.N.Y. 2005) (same); *Meier v. Musburger*, 588 F. Supp. 2d 883, 907 (N.D. Ill. 2008) (same).

Finally, Biros simply cannot sue under RICO wire fraud on the basis of what she believes are baseless civil complaints.  *See Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) and *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016).

 Biros cites Rule 11, Fed. R. Civ. Proc., to justify the wire fraud claim. However, that rule does not equate to wire fraud, and Biros has no standing to enforce compliance with this statute.

### C(3).  BIROS FAILED TO PLEAD FACTS TO SUPPORT VIOLATIONS OF 18 USC 1503

Biros lodges claims at paragraph 337 and 340 of the Amended Complaint that Shanni Snyder violated 18 U.S.C. 1503 by testifying falsely.  In addition, in Count II, at Paragraph 352, Biros alleges that George and Kash Snyder violated 18 U.S.C. 1503 by testifying falsely.

Congress specifically excluded perjury from the RICO offenses.  *See* 18 USC 1961(1) because it did not want this type of case.   So Biros invokes 18 U.S.C. 1503 that prohibits "corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede" judicial officers or the administration of justice.

Biros does not explain the element of "corruptly" in her RICO lawsuit when, in reality, she is merely stating that Shanni Snyder somehow committed perjury or exaggerated her claim.

The term "corruptly" implies that this statute prohibits bribery.  Recently, the Supreme Court decided *Snyder v. United States*, 144 S.Ct. 1947,1959 (2024).  In that case, the Supreme Court repeatedly referred to the term "corruptly" and noted that it is used in bribery statutes.  Biros cites no facts to support her suggestion that Shanni Snyder or Kash and George Snyder acted "corruptly" in the proceeding.

In *Fischer v. United States,* 144 S.Ct. 2176, 2188 (2024), the Supreme Court made it clear that the term corruptly constitutes part of the mens rea of the offense.  It distinguished between mere "wrongful" and "corruptly."  In the present case, Biros offers no explanation and no facts – of which she must comply with Rule 9 – to explain how the alleged misrepresentations rise to the level of "corruptly."

Moreover, Biros offers no clear facts to show that the testimony constituted a falsehood.  Rather, a bankruptcy judge simply did not believe Shanni Snyder's testimony because she was fidgety and arrogant.  He found it implausible that Ms. Snyder watched a video ten (10) hours a day.  However, this seems to contradict the *Fair Labor Standards Act*.  There clearly was no smoking gun evidence that showed Ms. Snyder – or George and Kash to the extent they supported the argument – actually lied.  Even though the bankruptcy opinion

states, "She lied," in the body it appears that he found that the work she did just did not give rise to a full-time employment because she only sporadically watched the cameras. The bankruptcy court then engaged in speculation about Ms. Snyder's knowledge of *lis pendens* proceedings and noted that nobody – including the judge – bothered to ask her.

It is noted that the bankruptcy court is an inferior court and this Court indeed witnessed the testimony of Ms. Snyder and concluded her allegations were sufficient to enter the judgment it did. This differing result does not give rise to the element of "corruptly" influencing this Court.

This Court should remember, proof of perjury alone is insufficient to sustain a section 1503 violation. *United States v. Perkins,* 748 F.2d 1519, 1528 (11th Cir. 1984). In this case, we have merely a suspicion of perjury by a bankruptcy judge improperly reviewing the decision of a district judge.

Perjury is governed by 18 USC 1621. Certainly, 18 USC 1503, with its "corruptly" requirement as an element, needs more. Congress excluded perjury from RICO for a reason, and simply stating a person may have committed perjury does not rise to the level required.

The term corruptly requires some form of coercive action. *United States v. Farrell,* 126 F.3d 484, 486 (3d Cir. 1997) (in interpreting 18 USC 1512, holding "corrupt persuasion" does not apply to acts that are noncoercive in nature).

Therefore, Biros' failure to distinguish between mere perjury and actual corrupt influence of a judge is fatal to her RICO claims.

**C(4).  BIROS FAILS TO ALLEGE BANKRUPTCY FRAUD**

Biros fails to allege any form of bankruptcy fraud not found in 18 USC 157. She cannot merely allege that "some" unknown statute was violated and there existed a "fraud."  Congress specifically exempted Section 157's conduct to avoid this type of action, yet that statute is what Biros – assuming she could prove it – alleges was violated.

**D. BIROS LACKS RICO STANDING TO BRING A RICO ACTION FOR DERIVATIVE CLAIMS AGAINST U LOCK BECAUSE SHE FAILED TO SHOW PROXIMATE CAUSE FOR ANY INJURY**

Biros' lawsuit asserts indirect damage in that she avers she has been "deprived of the possessory interest in her real property. She has been denied the ability to enjoy that property. The Defendants' scheme delayed her ability to record her title to the Subject Property. Since Biros recorded that title, the Defendants' scheme has forced her to expend money and other resources to defend her interests in the Subject Property against the Defendants' attacks." *See* RICO Case Statement, Entry 50, Page 8.

The documents attached by Biros indicate she received an obviously objectionable *ex parte* Order to receive the deeds on January 20, 2022.  She filed the deeds on January 25, 2022.  It appears unclear how any of the predicate acts "delayed" her ability to record her title considering she did.  The post-January 25, 2022, actions merely attacked the legality of her actions.   With respect to Biros taking possession, the United States Bankruptcy Court

specifically granted Shanni Snyder's bankruptcy petition and Biros received partial possession through that proceeding.

Biros' claims are merely speculative and infer only a lost opportunity. See *In re Taxable Mun. Bond Securities Litigation*, 51 F.3d 518, 521-522  (5th Cir. 1995)(farmer's "lost opportunity" to obtain loan insufficient to constitute injury for RICO standing); *First Nationwide Bank v. Gelt Funding Corp*, 27 F.3d 763, 768-70 (2d Cir. 1994) ("risk of loss" is not injury ripe for RICO claim); *Grantham & Mann, Inc. v. Am. Safety Prods., Inc.*, 831 F.2d 596, 604-06 (6th Cir. 1987) (plaintiff failed to show actual lost profits).

Indeed, to have standing under § 1964(c), a plaintiff must allege: (1) "that his alleged harm qualifies as injury to his business or property;" and (2) "that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

In connection with the first requirement, the necessary injury to business or property requires tangible and concrete financial loss, rather than speculative or uncertain harm. *Guerrero v. Gates*, 442 F.3d 697, 707 (9th Cir. 2006); *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 71 (9th Cir. 1994). With respect to causation, "[t]he civil RICO statute requires plaintiffs 'to show that a RICO predicate offense not only was a 'but for' cause of [their] injury, but was the proximate cause as well.' " *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 349 F. Supp. 3d 881, 905 (N.D. Cal. 2018) (quoting *Hemi Grp., LLC v. City of*

*New York*, 559 U.S. 1, 9 (2010)), *aff'd*, 842 F. App'x 112 (9th Cir. 2021). Reliance

"on an 'attenuated chain of conjecture' " is insufficient to support proximate

causation under § 1964(c). *Salmon Spawning & Recovery All. v. Gutierrez*, 545

F.3d 1220, 1228 (9th Cir. 2008) (citation omitted). The "central question" a court

must ask when evaluating proximate causation with respect to RICO claims is

"whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal*

*Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

      In this case, Biros moreless avers that if Shanni Snyder did not obtain a

judgment and file an involuntary bankruptcy petition, she would not have been

affected by the automatic stay and would have had access to her property

sooner. However, U Lock could have filed its own bankruptcy and the bankruptcy

court repeatedly upheld the propriety of keeping the automatic stay in place. The

bankruptcy court held, "consent to an order for relief would seemingly moot Ms.

Biros' challenges" to Shanni Snyder's alleged bad faith petition.  *See In re: U*

*Lock,* 2024 WL 3154602**,** *3.

       Biros' position that the automatic stay would not have occurred and that

she would have had the property sooner is conjecture and nothing more than a

"a highly attenuated chain of possibilities," *Clapper v. Amnesty Int'l USA*, 568

U.S. 398, 410 (2013), that are insufficient for Article III standing and requiring

dismissal under Rule 12(b)(1).

Biros must plead sufficient facts for proximate causation to obtain RICO standing. *In re Taxable Mun. Bond Secs. Litig.,* 51 F.3d 518, 521 (5th Cir. 1995) (for RICO standing one must plead facts sufficient for proximate causation).

Biros "lacks standing to assert a fraud on the court claim based on a secondary effect of an injury to the Debtors (pre-petition) or their estates (post-petition). *In re SunEdison, Inc.*, Case No. 16-10992 (SMB), 2019 WL 2572250, *6 (Bankr. S.D.N.Y. June 21, 2019).   By asserting such derivative claims, Biros lacks prudential standing and dismissal under Rule 12(b)(6) is appropriate. *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009).

Biros primarily alleges a personal injury – she avers that the Defendants engaged in an abuse of process, malicious prosecution, or a misuse of civil proceedings causing her to incur attorney fees.   Biros bootstraps that – despite having a full and fair opportunity to litigate against the automatic stay in the bankruptcy case, it constituted some harm to her.   As to the automatic stay, the bankruptcy court has explained, repeatedly, that it sustained the automatic stay over Biros' objections and that  *In re: U Lock,* 2024 WL 3154602 .  Biros never appealed these findings.  Thus, the claims she has are for attorney fees is a personal injury type lawsuit, not a direct injury to her business or property.

RICO permits a plaintiff "injured in his business or property by reason of" the defendant's racketeering activity to sue for treble damages and attorneys'

fees. 18 U.S.C. § 1964(c).  That "business or property" requirement "exclud[es] … personal injuries." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 350 (2016).

Because only plaintiffs "injured in [their] business or property by reason of a violation of section 1962" may sue civilly. 18 U.S.C. § 1964(c). Though courts sometimes refer to that requirement as "RICO standing," it is simply an element of civil RICO claims. *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 129-30 (2d Cir. 2003).

Recognizing that Congress did not impose boundless liability, the Supreme Court Court has cautioned against giving RICO an overly "expansive reading." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 266 (1992). Thus, the Court held that a RICO plaintiff's injury must have been proximately caused by—i.e., "by reason of"—the defendant's RICO violation. Id. at 268. And, of particular relevance here, the Supreme Court has recognized that the phrase "business or property" "cabin[s] RICO's private cause of action to particular kinds of injury—excluding, for example, personal injuries." *RJR Nabisco*, 579 U.S. at 350.

As the en banc Sixth Circuit has warned, permitting such lawsuits would deprive RICO's "business or property" requirement of "restrictive significance." *Jackson v. Sedgwick Claims Mgmt. Servs.*, 731 F.3d 556, 565 (6th Cir. 2013) (en banc).

"Lost earnings or wages are not recoverable" in a civil RICO suit "if they flow from a personal injury." *Jackson*, 731 F.3d at 565-66; *Evans v. City of Chicago*, 434 F.3d 916, 926-27 (7th Cir. 2006), overruled on other

grounds by *Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013); and *Grogan v. Platt*, 835 F.2d 844, 848 (11th Cir. 1988)).

"The terms 'business or property' are, of course, words of limitation which preclude recovery for personal injuries and the pecuniary losses incurred therefrom." *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992); accord Ryder v. Hyles, 27 F.4th 1253, 1257 (7th Cir. 2022); Evans, 434 F.3d at 925-26. "Most personal injuries … will entail some pecuniary consequences," that court explained. Doe, 958 F.2d at 770.  Thus, treating "the economic aspects of such injuries … as injuries to 'business or property'" would evade RICO's limitation on qualifying injuries. Id.

 The Seventh Circuit denied civil RICO recovery for "malicious prosecution and false imprisonment"—"traditional tort claims which result in a personal injury." Evans, 434 F.3d at 927. While that plaintiff focused his claim on "[t]he loss of income as a result of being unable to pursue employment opportunities while allegedly falsely imprisoned," that lost income was "an indirect, or secondary effect, of the personal injuries." Id. at 926-27. So the lost income was not "a cognizable injury to 'business or property'" under RICO. Id. at 927.

The Eleventh Circuit also precludes "recovery for the economic aspects of personal injuries." *Grogan*, 835 F.2d at 845; accord *Blevins v. Aksut,* 849 F.3d 1016, 1021 (11th Cir. 2017); *Pilkington v. United Airlines*, 112 F.3d 1532, 1536 (11th Cir. 1997). As that court has explained, "the ordinary meaning of the phrase

'injured in his business or property' excludes personal injuries, including the pecuniary losses therefrom." *Grogan*, 835 F.2d at 847. Had Congress wanted to cover all financial losses, Congress "could have enacted a statute referring to injury generally, without any restrictive language." Id. (citation omitted). Instead, Congress limited civil RICO's reach to injuries in "business or property." Id. at 846.

An "injury" is a "wrong or damage done to another, either in his person, rights, reputation, or property." Black's Law Dictionary 924 (Rev. 4th ed. 1968). "Business" includes "means of material being and livelihood." Id. at 248. And "property" is an "exclusive right" "guaranteed and protected by the government." Id. at 1382. As the Supreme Court has noted in the context of the Clayton Act, the phrase "business or property" is thus "restrictive." *Reiter v. Sonotone Corp*., 442 U.S. 330, 338 (1979). That language necessarily excludes "particular kinds of injur[ies]," including "personal injuries." *RJR Nabisco*, 579 U.S. at 350.

To decide whether a plaintiff has suffered a qualifying injury, courts do not look at "the injury … in isolation." *Yegiazaryan v. Smagin*, 599 U.S. 533, 545 (2023). They examine "the circumstances surrounding the injury," including how it "arose." *Id.*

Here, Plaintiff merely avers that she has been civilly wronged being subject to the effects of litigation (not against her, but against U Lock). Her damages are attorney fees and speculation that she would not have been subject to an automatic stay. This does not provide her with RICO standing.

## E.  THE AMENDED COMPLAINT CONTAINS ONLY INFERENCES AS TO KNOWLEDGE AND AGREEMENT

To allege a RICO conspiracy, the complaint must allege facts to support both the defendant's agreement and his or her knowledge. *Glessner v. Kenny*, 952 F.2d 702, 714 (3d Cir. 1991), *overruled on other grounds by Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.,* 46 F.3d 258, 260-261 (3d Cir. 1995*)*. Thus, in *Glessner* the Court upheld the dismissal of the plaintiffs' § 1962(d) claims where the plaintiffs did not allege agreement and knowledge, but instead argued that agreement and knowledge could be inferred. *Id.*  In other words, the plaintiff must show that a defendant in a RICO conspiracy action "was aware of the essential nature and scope of the enterprise and intended to participate in it." *United States v. Muskovsky*, 863 F.2d 1319, 1324 (7th Cir. 1988).

In this case, it is alleged that Shanni Snyder committed various RICO predicate acts by filing legal papers.  However, the alleged conspiracy contains no factual support, only inferences. Bald and unsupported allegations do not satisfy the pleading requirements for a RICO conspiracy. See *Glessne*r, 952 F.2d at 714.

Most of the paragraphs are on "information and belief" without citing any source of the information.  "Belief" certainly is not acceptable in this type of RICO case.  A pleading offering vague or ambiguous assertions based upon "information and belief"—as in this Complaint— does not legally suffice.

*Shannon v. Hamm*, No. 5:15-CV-082-C, 2015 WL 13185992, at *5 (N.D. Tex. May 5, 2015).

As to ATTORNEY ROTH, the only allegations about participation in the purported enterprise is:

> 322.  Roth participated in the Fake Lien Scheme in several ways: a) by, on information and belief, participating in the planning and organization of the same; b) by, on information and belief, advising George, Kash, and U Lock not to respond to Shanni's complaint in the Wage Case; c) by filing U Lock's application to the Supreme Court of Pennsylvania to stay remand of the Ownership Action even though he knew that U Lock did not intend to seek review in the U.S. Supreme Court; d) by filing and arguing the Petition to Strike in the Ownership Action and arguing to the Westmoreland County Court that it should not have released to Biros the deeds to the Subject Property and that the Westmoreland County Court should instead follow a procedure that would have exposed the Subject Property to the Fake Lien but could not under any circumstances have left his client with title to the Subject Property; e) by delaying the filing of the notice of bankruptcy in the Ownership Action for three weeks after Shanni filed the Involuntary Petition and commenced the U Lock Bankruptcy Proceeding; and f) by delaying the filing of that notice until two minutes after Shanni had entered her appearance in the Ownership Action and filed her notice of appeal in that action to the Superior Court. 323. On information and belief, Roth thereby continued the role of the legal face of the Snyder Family Enterprise that Crawford had previously filled.

All of the "on information and belief" conjecture of privileged conversations and work product constitutes nothing but an inference and is certainly not sufficient.

There is absolutely not a single fact that implies that legal counsel participated in any planning of Shanni Snyder's litigations – U Lock could have filed its own bankruptcy at any time.  U Lock had no obligation to file a Notice of Bankruptcy – that obligation was on Biros as creditor to stop her legal actions.

As to paragraph 323, it appears to be cut and pasted from a different RICO litigation.  U Lock's reason for not filing the certiorari was not because of some vast conspiracy, but was a decision of the client AFTER learning that Biros already received the deeds pursuant to an *ex parte* communication with the state judge.  The theory that Shanni Snyder and the undersigned drove to the courthouse together is logistically absurd as the courthouse is in Greensburg, Snyder lives West of Greensburg (North Huntingdon), Roth's offices are East of Greensburg (Latrobe).  Such a car pool would turn the five-minute filing into an all day affair.

The absurdity of this vast conspiracy theory is that U Lock could have filed a voluntary bankruptcy at any time under Chapter 7.  It did not need Shanni Snyder to do it. Nobody needed to enter into the dreamed up conspiracy.

Similarly, the bankruptcy could have been filed earlier by U Lock and it would have achieved the goals Biros alleges could have happened.  In other words, if U Lock filed bankruptcy in December 2021, or even on January 16, 2023, it would have reorganized and it would have the property.  The alleged conspiracy only served to help Biros.

There exists no factual allegations in the Complaint to support the inference and conjecture that the undersigned told U Lock's officers not to respond to the labor Complaint.  Rather, as the officers stated after being goaded into providing attorney-client communications that it not admissible, is that the non-specific question as to pricing of a federal suit would be at least $10,000 to

defend. This allegation, if true, does not support the inference that the undersigned told the client not to respond or that a vast RICO conspiracy existed.

"Lawyers look at allegations every time they are engaged to respond to a lawsuit. They are not obliged to treat those allegations as true; to the contrary, they recognize that a plaintiff is asserting only that it proposes to prove them, and they evaluate the complaint to see what kind of a defense can be raised." *Domanus v. Locke Lord LLP*, 847 F.3d 469, 480  (7th Cir. 2017) .  The *Domanus* Court stated, "Faced with a similar situation, the D.C. Circuit reached this commonsense conclusion in a case in which the plaintiff alleged that a defendant law firm knew about its client's wrongdoing. *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043 (D.C. Cir. 2012). There the plaintiff had alleged that the law firm knew about its client's bribery conspiracy from news reports about the bribery and embezzlement scheme, the client's reputation for wrongdoing, and a prior criminal conviction. *Id.* at 1048–50. The court concluded that '[t]hese allegations are insufficient to establish a plausible inference that [the defendant law firm] was aware of anything corrupt relevant to its provision of legal services…' *Id.* at 1050."

 "The fact that someone should have known about a scheme or fraudulent activity is not enough to show that the person actually knew. *Frost Nat'l Bank v. Midwest Autohaus, Inc.*, 241 F.3d 862, 870–71 (7th Cir. 2001).

An inference of knowledge through willful blindness requires that the defendant "believe that there is a high probability that a fact exists" and "take

deliberate actions to avoid learning of that fact." *Global–Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769, (2011). Only a subjective belief that there is a high probability that the fact is true, coupled with deliberate steps to avoid learning the fact, is equivalent to knowledge. See *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 240 (5th Cir. 2010) ("Neither awareness of *some* probability of illegal conduct nor a showing that the defendant *should* have known is enough" to constitute the legal equivalent of knowledge).

Even if there existed some knowledge, there would need to be an agreement.  The Complaint is also deficient on the question of agreement—a critical element of a RICO conspiracy case. See *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 967 (7th Cir. 2000).

In order to raise an allegation of a conspiracy prohibited by section 1962(d), the plaintiff must allege (1) that the defendant agreed to conduct or participate in the affairs of an "enterprise," and (2) that he agreed to the commission of two predicate acts. *Frost Nat. Bank v. Midwest Autohaus, Inc.*, 241 F.3d 862, 869(7th Cir. 2001).  *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998), *holding modified by Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir. 2000).  The absence of either of these is fatal to the claim.

Claims that lawyers have conspired with their clients are insufficient in the absence of allegations that the arrangement involves more than standard legal

representation. See *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP,* 682 F.3d 1043, 1051-1052 (D.C. Cir. 2012).

The allegations in the Complaint, subject to Rule 9's requirement of specificity, fail to allege knowledge and agreement needed to move forward on a RICO or RICO conspiracy claim.

## F. THE RICO CONSPIRACY LACKS THE REQUIRED INTERSTATE COMMERCE NEXUS

Count II is a conspiracy claim against the undersigned and others. 18 USC 1962(d) prohibits a conspiracy to violate the RICO provisions of 18 USC 1962(c) apparently what was set out in Count I.  However, 18 USC 1962(c) explains that, "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

As this Court recognized in *Biros v. Snyder,* 2024 WL 1346691 at *4 (W.D.Pa. Mar. 29, 2024), the person sued must be associated with an enterprise engaged in interstate commerce.

The word "interstate" is not used in the Amended Complaint.

In the RICO Case Statement, Biros states:

> The Subject Property contains a self-storage space which, on information and belief, rents space to individuals residing in multiple states. Further, the Subject Property is ripe for further development

that would affect commerce, including interstate commerce, if it were in the hands of Biros, its proper legal owner. This commerce has been prevented by the predicate acts and pattern of racketeering engaged in by the Defendants.

First, the property, and the self-storage business, is not the enterprise that Biros alleges that the defendant engage in.  Second, Biros made no claim that the actions affected the self-storage business of U Lock.  Third, Biros had a full and fair opportunity to litigate the automatic stay from the bankruptcy court and, as shown, subverted it.  *U Lock*, 2024 WL 3154602 (Pa. W. Bank. June 24, 2024).  Once the stay ended, Biros maintained the ability to develop the property in any manner she wanted.

However, these allegations do not involve the so-called lien enterprise, they involve the U Lock and Biros enterprises which are not alleged enterprise that forms the basis of the conspiracy.

On the contrary, the statute requires the enterprise to specifically engage in or have activities of which affect interstate commerce. By Biros' own admissions, the sole activity of the enterprise was to file documents with various courts all located in Pennsylvania.

Indeed, Biros need to allege specific facts which "must show that the conspiracy, if completed, would involve an enterprise that affected interstate or foreign commerce." *United States v. Ernst*, 502 F. Supp. 3d 637, 658 (D. Mass. 2020).  To state that Biros might, if they possessed the property, engage in interstate commerce appears merely speculative.

### G.  PURSUANT TO RULE 12(f) THIS COURT MUST STRIKE THE ALLEGATIONS PERTAINING TO THE "LEGAL DRAFTERS"

Throughout Biros' Amended Complaint, she repeatedly alleges that "Legal Drafters" may have assisted Shanni in drafting various legal documents.  *See Amended Complaint,* at ¶¶72, 96, 110, 123, 126, 142, 171, 326, 327, 329.  This is nothing but Biros seeking an opportunity to obtain discovery and interfere with the work product of all of the parties by opening the door to having someone testify about every step they took in drafting legal papers.  Indeed, in the related bankruptcy documents, Biros' counsel subjected her to various questions about the software she uses, the databases she accesses, etc.  Worse, George Snyder and Kash Snyder have pointedly been asked about their conversations with the undersigned, why certain legal decisions were made, and other protected matters.  This must stop because in Pennsylvania so-called "legal drafters" without disclosure to the Court is authorized.

In Pennsylvania, *pro se* litigants may receive help with legal research and drafting legal pleadings from attorneys without any disclosure to the parties or the Court.  *See Pennsylvania Bar Association Committee on Legal Ethics and Professional Responsibility and Philadelphia Bar Association Professional Guidance Committee Joint Formal Opinion* 2011-100.  In that opinion, the Committee held that, "A Lawyer Is Not Required Under the Rules of Professional

Conduct to Disclose a Limited Scope Engagement to an Opposing Party or to the Court in a Litigation Matter."

This practice of anonymously drafting documents for pro se litigants is called "legal ghostwriting," and the American Bar Association (ABA) Standing Committee on Ethics and Professional Responsibility has recognized it as a form of "unbundling" of legal services, or limited scope representation. *ABA Standing Comm. on Ethics & Prof'l Responsibility, Formal Op.* 07-447 (2007).   The committee stated that "[l]itigants ordinarily have the right to proceed without representation and <u>may do so without revealing that they have received legal assistance in the absence of a law or rule requiring disclosure.</u>" Id. at 2.

The Amended Comples goes so far as to directly infer wrongdoing by Shanni Snyder through not disclosing any help or advice– which is her work product – notwithstanding the ethical opinions from Pennsylvania since 2011 that specifically hold that disclosure to the other parties is not necessary.

For these reasons, a RICO lawsuit certainly is not the place to test the validity of advice provided by ethics committees within Pennsylvania that both attorneys and litigants are entitled to reasonably rely upon.

This Court needs to strike these paragraphs to take how a person writes their legal pleadings out of the inquiry.

### H.  BIROS FAILS TO STATE A CLAIM AS TO SLANDER TO TITLE OR CONSPIRACY

At Counts III and IV, Biros raises a slander of title claim and a conspiracy to slander title claim.  In it, she complains of the filing of a judgment against U Lock, Inc., not Biros.  In addition, Biros cites a *writ of summons* and *lis pendens*. Obviously, Shanni Snyder believes she was a creditor of U Lock and had a plausible claim as the Pennsylvania Uniform Voidable Transactions Act, 12 Pa.C.S. 5101, et. seq.  Indeed, Shanni Snyder purchased the claims from the bankruptcy trustee and an action to void the transaction remains pending. *Snyder as assignee of Slone, Trustee, v. Biros*, 23-ap-2020 (Bk.W.Pa.).

Regardless, Biros fails to make a claim for for slander to title.  Slander, or disparagement, of title is the —the false and malicious representation of the title or quality of another's interest in goods or property   *Pro Gold Mfg. v. Tribune Review Newspaper Co*., 809 A.2d 243, 247 (Pa. 2002). To plead a valid slander of title claim, a plaintiff must allege: (1) a false statement; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity. *Pro Golf Mfg*., 809 A.2d at 246 (*citing Restatement (Second) of Torts* § 623(A) (1977)); *accord Lincoln v. Magnum Land Servs., LLC,* 2013 WL 2443926, at *5 (M.D. Pa. June 5, 2013).

Biros alleges no facts from which this Court can infer that the judgment itself or a writ of summons coupled with a lis pendens was disparaging, false, or done with malice. *See In re Bennett*, 531 B.R. 68, 79 (Bankr. E.D. Pa. 2015) (holding that a debtor did not state a plausible claim against mortgagee for slander of title when he did not state facts to support malice element).

Moreover, Biros does not allege, with any specificity, that she suffered special damages as a result of the actions.. Allegations of pecuniary loss cannot be speculative. See *Zerpol Corp v. DMP Corp.*, 561 F. Supp. 404, 409 (E.D. Pa. 1983) (plaintiff alleging disparagement or slander of title must —plead and prove pecuniary loss); *Surgical Laser Tech., Inc. v. Heraeus Lasersonics, Inc.*, 1994 WL 637353, at *1 (E.D. Pa. Nov. 10, 1994) (noting that, under Pennsylvania law, a slander of title claim requires proof of special damages and must be pled with specificity).

Indeed, Biros at all times maintained a remedy as to the *lis pendens*.  All she needed to do was file a petition to strike it.  As to the *writ of summons*, Biros merely had to file a rule upon Shanni Snyder to file a complaint.

Because the allegations do not give rise to a *slander of title* action, Counts III and IV must fail.

## I.  COUNT IV FAILS TO STATE AN OVERT ACT OR A CLAIM

Even if Count III can proceed, Pennsylvania requires more than just a meeting of the minds to advance a conspiracy claim. In this case, none of the

other defendants appeared in the litigations that Biros aver affected her title.

Biros must plead:  (1) a combination of two or more persons acting with a

common purpose to do an unlawful act or to do a lawful act by unlawful means or

for an unlawful purpose; (2) an overt act done in pursuance of the common

purpose; and (3) actual legal damage. Proof of malice or an intent to injure is

essential to the proof of a conspiracy. *Strickland v. University of Scranton*, 700

A.2d 979, 987-88 (Pa.Super.Ct.1997); *see also Skipworth v. Lead Indus. Ass'n,

Inc*., 547 Pa. 224, 690 A.2d 169, 174 (Pa.1997).

While Biros makes boilerplate allegations, considering Pennsylvania's

requirement that special damages be pled with specificity, none of it is sufficient.

## J.  COUNTS III AND IV ARE BARRED BY THE STATUTE OF LIMITATIONS

The undersigned seeks judgment on the pleadings as to this issue.  Biros

attaches the documents to her Complaint.  This Court can take judicial notice

pursuant to F.R.E. 201(d) that these events occurred over one year prior to Biros'

first Complaint.  Therefore, the action is barred pursuant to 42 Pa.C.S.A. § 5523;

*Pro Golf Manufacturing v. Tribune Review Newspaper Company*, 570 Pa. 242,

809 A.2d 243 (2002).

## K.  COUNTS V AND VI FAIL TO STATE A CLAIM

First, Biros fails to allege with particularity any economic damage resulting

from the alleged fraud.  "[I]ntentional misrepresentation claims are generally

preempted by the economic loss rule," except where "a defendant committed

fraud to induce another to enter a contract." *Reilly Foam Corp. v. Rubbermaid Corp.*, 206 F. Supp. 2d 643, 658 (E.D. Pa. 2002).  In this case, Biros fails to explain her economic loss except to aver some attorney fees as a result of litigating.

Second, Biros cites Rule 11, F.R.Cv.P.  as a basis for her fraud claim. However, Rule 11 does not create a private cause of action.  *Hofmann v. Fermilab NAL/URA*, 205 F. Supp. 2d 900, 904 (N.D. Ill. May 30, 2002) ("Rule 11 affords no private right of action."); *New York News, Inc. v. Newspaper and Mail Deliverers' Union*, 139 F.R.D. 291, 293 n.1 (S.D.N.Y. 1991), aff'd, 972 F.2d 482 (2d Cir. 1992). See also *In re 72nd St. Realty Assocs.*, 185 B.R. 460, 473 (Bankr. S.D.N.Y. 1995) (same analysis applies under Bankruptcy Rule 9011).

Third, Biros failed to plead the elements of fraud which are:  (1) a representation was made; (2) that is material to the transaction; (3) made falsely, with knowledge of falsity or with recklessness regarding its truth or falsity; (4) with the intent leading another to rely on it; (6) which is justifiably relied upon; and, (7) the resulting injury was proximately caused by the reliance. *Bortz v. Noon*, 729 A.2d 555, 559 (Pa. 1999).  Specifically, Biros did not allege that she justifiably relied on any representations.

Therefore, the claim must be dismissed.

### L.  BIROS FAILS TO PLEAD ABETTING FRAUD

At Count VI, Biros sues for aiding and abetting fraud.  This is a recently recognized tort by Pennsylvania's Supreme Court.  *Marion v. Bryn Mawr Trust Co.*, No. 72 MAP 2021, 2023 WL 308110 (Pa. Jan. 19, 2023).

To sue for aiding and abetting fraud, Biros must "allege a scienter of actual knowledge" which strikes the right balance between permitting redress for fraud victims on the one hand and protecting defendants from excessive costs and liability on the other.  *Id.*

The Pennsylvania Supreme Court noted that *The Restatement (Second) of Torts* recognizes aiding and abetting fraud as a cause of action, holding a person liable where he `knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself….," something that Biros does not fully aver in her Complaint.

The only thing Biros accuses the defendants of is not responding to a lawsuit, something that is their prerogative to do.  In other words, mere silence is not fraud if there is no duty to speak. *Wilson v. Donegal Mutual Insurance Co.*, 410 Pa. Super. 31, 598 A.2d 1310 (1991); *Smith v. Renaut*, 387 Pa. Super. 299, 564 A.2d 188 (1989). Biros fails to plead what duty the defendants had to respond to the lawsuit.

The other allegations, relating to filing documents, were all done with Biros having an opportunity to be heard and cannot plausibly aid a specific fraud since she had a full and fair opportunity to litigate the matter.

Therefore, Count VI must be dismissed.

## M.  THE ABUSE OF PROCESS AND CONSPIRACY CLAIMS FAIL

At Counts VII and VIII, Biros sues for abuse of process and conspiracy to abuse process.  To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff. Abuse of process is, in essence, the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process. Thus, the gravamen of this tort is the perversion of legal process to benefit someone in achieving a purpose which is not an authorized goal of the procedure in question. *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. 2002) (citations omitted). See *Weiss v. Equibank,* 460 A.2d 271, 276 (Pa. Super. 1983 ("If the plaintiff sues the defendant on a valid cause of action but brings the suit, for example, not to collect his just debt but for a collateral purpose such as blackmail the action is a malicious abuse of process").

Unlike this RICO action, the documents filed were clearly done so for the purpose on their face.  It is true that perhaps Shanni Snyder sought an advantage by racing to the courthouse– something that she probably should have been done even faster– but that is the law of judgments.  *United States v. Estate of Romani*, 523 U.S. 517 (1998)(Pennsylvania judgment creditor's lien valid and with priority if filed prior to other liens, even tax liens).

As to conspiracy, again Biros fails to allege the elements of civil conspiracy, particularly what overt acts are attributable to which defendants. *Strickland v. University of Scranton*, 700 A.2d 979, 987-88 (Pa.Super.Ct.1997); *see also Skipworth v. Lead Indus. Ass'n, Inc*., 547 Pa. 224, 690 A.2d 169, 174 (Pa.1997).

### N. COUNTS IV, VI, AND VIII FAIL BECAUSE THE ALLEGATIONS SHOW A BENEFIT TO DEFENDANTS' BUSINESS INTERESTS

As explained by Biros, the purpose of Shanni Snyder's filings were to advance her position that she was owed money and entitled to a lien.  U Lock obviously had a business interest in reorganization under the bankruptcy code and challenging what it construed as improper conduct.  This is obvious from the legal pleadings.

To proceed under civil conspiracy, the Plaintiff must show actual malice.  If the facts show that the defendant acted to advance his or her own professional or business interests, "[t]his necessary proposition is negated." *Bro-Tech Corp. v. Thermax, Inc*., 651 F. Supp. 2d 378, 419 (E.D. Pa. Sept. 3, 2009); see also *Spitzer v. Abdelhak*, 1999 U.S. Dist. LEXIS 19110, at *9 (E.D. Pa. 1999)(granting motion to dismiss civil conspiracy claim where the plaintiff alleged that the purpose of the conspiracy was for the defendant to benefit itself personally and professionally). Thus, where a plaintiff's case relies on the theory that the defendants "acted for their business advantage and benefit" a civil conspiracy claim is "not [] tenable because [p]laintiffs' evidence belies the notion that

[d]efendants acted without a business motive, but purely out of malice." Id. (dismissing civil conspiracy claim); see also *Guaranty Towers, LLC v. Cellco Partnership,* Civ. No. 1:CV-07-0554, 2007 U.S. Dist. LEXIS 65819, at *6 (M.D. Pa. Sept. 6, 2007) (granting motion to dismiss civil conspiracy claim where the plaintiffs' theory of the claim stated that the defendants acted to obtain more revenue).

Because the documents show the parties were advancing their business purposes, the civil conspiracy claims must fail.

## V.  CONCLUSION

Based on the above, to allow this action to proceed would be inappropriate considering that Christine Biros has been sanctioned for very similar conduct she sues for and these adjudications were not appealed and are *res judicata*. In addition, the RICO action cannot proceed due to technical defects and the state law claims fail to state a claim upon which relief can be granted. Therefore, the Complaint must be dismissed or judgment granted on the pleadings.  In the alternative, the  impertinent material must be stricken.

Respectfully submitted,

*/s/ KASH SNYDER.*

KASH SNYDER
PO BOX 111
IRWIN PA
15642