## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

CHRISTINE BIROS,

        Plaintiff,

  v.

SHANNI SNYDER, GEORGE SNYDER,
KASH SNYDER, and J. ALLEN ROTH,

        Defendants.

Civil Action No. 2:23-cv-000297-RJC

**JURY TRIAL DEMANDED**

### OMNIBUS RESPONSE OF PLAINTIFF, CHRISTINE BIROS,
### TO DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT

BERNSTEIN-BURKLEY, P.C.

Kirk B. Burkley, Esq. (PA. I.D. #89511)
Stuart C. Gaul, Jr., Esq. (PA. I.D. #74529)
601 Grant Street, 9th Floor
Pittsburgh, PA  15219
Telephone: (412) 456 – 8100
Facsimile:  (412) 456 – 8135

*Attorneys for Plaintiff, Christine Biros*

# **TABLE OF CONTENTS**

BACKGROUND ........................................................................................................................ 1

   A.   The Original Complaint and Biros's Allegations .................................................. 1

      1.   The Subject Property ...................................................................................... 1

      2.   The Quiet Title Action ................................................................................... 2

      3.   The Rise of the Defendants' "Fake Lien Scheme" ....................................... 4

      4.   Shanni's "Wage Case" Against U Lock ........................................................ 5

      5.   The Biros Deeds and the Defendants' Theory of Interference ...................... 7

      6.   Shanni's Involuntary Bankruptcy Petition Against U Lock ........................... 8

      7.   Continued Activity in the Quiet Title Action ............................................... 11

   B.   This Court's Order Granting the Motions to Dismiss ........................................ 11

   C.   The Amended Complaint ................................................................................... 12

      1.   "Enterprise" .................................................................................................. 12

      2.   Other Additions ........................................................................................... 13

      3.   Other Facts of Record ................................................................................. 13

STANDARD OF REVIEW ................................................................................................... 14

ARGUMENT ......................................................................................................................... 14

   A.   The Snyder Family Enterprise Is a RICO "Enterprise." ................................... 14

      1.   The Snyder Family Enterprise Began As Early As 1988 with the Blue Moon Properties. ................................................................................................................. 15

      2.   The Snyder Family Enterprise Continued with the Quinlan Properties from 2003 to 2009 .............................................................................................................................. 16

      3.   The Snyder Family Enterprise Persisted from 2011 to 2018 with the Arlene Drive Property. ........................................................................................................................ 18

   B.   The Defendants Proximately Caused Biros's Injuries Here. ............................. 19

   C.   Biros Has Again Pleaded All Other Elements Of Her Claims. ......................... 21

      1.   Biros Has Pleaded All Necessary Elements of Her RICO Claims Against Shanni. ..... 21

      2.   Biros has Pleaded All Necessary Elements of Her RICO Conspiracy Claims Against the Defendants. ........................................................................................................... 24

i

3. The Bankruptcy Court's "Order for Relief" Does Not Preclude Biros's Claims Here. 26

D. Defendants are Not Entitled to Any Relief on Any Theories in Their Motions................ 29

1. Biros Has Pleaded the Requisite Interstate Commerce Element. .................................. 29

2. Shanni's Claims of FLSA Retaliation Have Nothing To Do With Whether Biros Can Maintain This Action. ........................................................................................................... 29

3. George is Liable for His Own Intentional Torts............................................................. 30

E. Biros Has Pleaded All Necessary Elements of Her State Law Claims. ............................ 31

1. Biros Has Pleaded All Necessary Elements of Her Direct and Conspiracy Claims for Slander of Title......................................................................................................................... 31

2. Biros Has Pleaded All Necessary Elements of Her Direct and Aiding and Abetting Claims for Fraud. ...................................................................................................................... 34

3. Biros Has Pleaded All Necessary Elements of Her Direct and Conspiracy Claims for Abuse of Process....................................................................................................................... 36

CONCLUSION................................................................................................................................ 38

This Court should deny the motions to dismiss that Defendants J. Allen Roth [Doc. 56], George Snyder [Doc. 58], Shanni Snyder [Doc. 59] and Kash Snyder [Doc. 60] have filed in this action. The Amended Complaint that Christine Biros has filed in this action fully sets forth all elements of Biros's claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.*, ("RICO" or, alternatively, the "Act"). She alleges that the Defendants and others, acting through the "Snyder Family Enterprise," concocted the "Fake Lien Scheme" and caused her to suffer cognizable damages. The Defendants' other claimed bases for relief misapprehend the law, basic facts about the parties to this action, or both.

## BACKGROUND

### A.  The Original Complaint and Biros's Allegations

Biros filed her Complaint in this action on February 24, 2023. In it, she asserted claims under RICO, alleging that she had been injured by violations of 18 U.S.C. § 1962(c) and (d). She also pleaded common-law claims for slander of title, conspiracy to commit slander of title, fraud, aiding and abetting fraud, abuse of process, and civil conspiracy to commit abuse of process:

#### 1.  *The Subject Property*

Biros owns the real property at 14140 Route 30 in North Huntingdon Township, Westmoreland County, Pennsylvania (the "Subject Property"). Amended Complaint at ¶ 4.[1] She acquired the Subject Property by, on or about July 16, 2015, paying a total of $309,213.30 to the executors and co-executors of four estates (the "Executors"). *Id*. at ¶ 14.

At the same time that Biros made these payments or shortly thereafter, each Executor signed a deed for the Subject Property in favor of "U Lock Inc."  Amended Complaint at ¶ 15.

---

[1] While Biros included all of the facts set forth in this section of this brief in her original Complaint, the citations are to the Amended Complaint currently before this Court.

On July 16, 2015, U Lock did not exist.  On September 4, 2015, Kash Snyder incorporated U Lock Inc. ("U Lock") as a Pennsylvania corporation. George and Kash, possibly with Shanni, have directed the affairs of U Lock since its incorporation. Amended Complaint at ¶¶ 16-18.

U Lock held possession of the Subject Property at all relevant times until approximately one month before Biros filed this action. Amended Complaint at ¶ 19.

   2. ***The Quiet Title Action***

On or about October 17, 2017, Biros commenced an action (the "Quiet Title Action") against U Lock and the Executors in the Court of Common Pleas of Westmoreland County, Pennsylvania (the "Westmoreland Court"). She sought, among other things, a declaratory judgment that she owned the Subject Property and an equitable order compelling the Executors to convey legal title to her by deed. Amended Complaint at ¶ 20.

U Lock, represented by Roth, defended against Biros' claims. Amended Complaint at ¶¶ 21-22.

The Westmoreland Court dismissed the Executors from the Quiet Title Action after each of them executed deeds to the Subject Property (the "Executors' Deeds"), dated for May 2019, and deposited those deeds with that court. Amended Complaint at ¶ 23.

On August 22, 2019, following trial, the Westmoreland Court found that Biros had been the equitable owner of the Subject Property, that U Lock did not own the Subject Property, and that U Lock had held legal title to the Subject Property in a constructive trust for Biros's benefit. Amended Complaint ¶¶ 23 & Ex. 1.

U Lock, represented by Roth, appealed that judgment to the Superior Court of Pennsylvania at 1841 WDA 2019. The Superior Court affirmed in a published opinion of May

21, 2021. That court denied U Lock's application for re-argument on July 28, 2021. *See* Amended Complaint at ¶¶ 29-33 & Ex. 3.

U Lock, through Roth, petitioned the Supreme Court of Pennsylvania for allowance of appeal on August 27, 2021, at 259 WDA 2021. Amended Complaint at ¶ 34. The Supreme Court of Pennsylvania denied that petition (the "Allocatur Denial") on January 19, 2022. Amended Complaint at ¶¶ 35-36 & Ex. 4.

On January 20, 2022, following the Allocatur Denial, the Westmoreland Court issued an order directing delivery to Biros of the Executors' Deeds. Amended Complaint at ¶ 37. Biros promptly recorded those deeds in Westmoreland County. *Id.* at ¶ 38.

On March 16, 2022, the Supreme Court of Pennsylvania granted U Lock's application to stay remand of the record of the Quiet Title Action pending U Lock's petition for certiorari to the United States Supreme Court. *See* Amended Complaint at Ex. 4.

U Lock never intended to petition the U.S. Supreme Court for certiorari. Amended Complaint at ¶ 42. It did not, within ninety days of the Allocatur Denial, either petition the United States Supreme Court for a writ of certiorari or petition that Court for an extension of the time in which to seek certiorari. It has not petitioned that Court for leave to seek certiorari nunc pro tunc. *Id.* at ¶ 41.

The status of the Quiet Title Action in each of the Supreme Court of Pennsylvania, the Superior Court, and the Westmoreland Court has been apparent to anyone who investigates Biros' or U Lock's interests in the Subject Property. The Superior Court has only recently begun to identify the original appeal in the Quiet Title Action as "Closed."  When Biros commenced this action, the Westmoreland Court's docket of the Quiet Title Action reflected U Lock's taking

its appeal but reflect the appellate courts' rejection of that appeal. Amended Complaint at ¶¶ 33-34.[2]

### 3.   *The Rise of the Defendants' "Fake Lien Scheme"*

At some time prior to July 14, 2021, the Defendants, acting in concert with one or more other persons, realized that U Lock was unlikely to reverse Biros' success in the Quiet Title Action. By July 14, 2021, the Superior Court had ruled against U Lock in the Quiet Title Action but had not yet denied U Lock's application for re-argument. Amended Complaint at ¶ 46-47.

The Defendants still wanted, individually or through U Lock, to take legal title to the Subject Property and to maintain possession of the Subject Property. Amended Complaint at ¶ 46. Acting in concert with one or more of those other persons, concluded – correctly or incorrectly – that they could accomplish their aims if one or more of them held a lien on the Subject Property that predated any deed by which Biros took that legal title. They realized that a judgment against U Lock would operate as a lien on U Lock's interest in the Subject Property. They decided to try to generate a judgment against U Lock and a lien against the Subject Property. *Id.* at ¶¶ 48-50.

However, none of the Defendants held a judgment against U Lock at all, let alone a judgment that might pre-date any deed that Biros was likely to receive. Moreover, none of the Defendants, nor any of those other persons, had a claim against U Lock. Amended Complaint at ¶¶ 51-52. The Defendants, acting in concert with one or more of those other persons, agreed to manufacture one or more claims or judgments that would create a lien on the Subject Property. They further agreed to attempt to undermine the Executors' Deeds that Biros would receive. Amended Complaint at ¶ 53.

---

[2] That docket now reflects the pendency of a different appeal that Shanni has taken to the Superior Court.

**4.** **_Shanni's "Wage Case" Against U Lock_**

    **a.  Prior Representations**

In 2018, the Defendants made a series of statements subject to penalty of law that cannot

be reconciled with any suggestion that Shanni was working for U Lock:

- Shanni, acting pro se, filed a voluntary petition seeking protection under Chapter 7 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court") at No. 18-21983-CMB. In that petition, she acknowledged that "bankruptcy fraud is a serious crime."  She claimed assets of $3,925.00 and no income other than child support and assistance from an unmarried partner not living with her. When asked to identify "[o]ther amounts someone owes you" – which offered "[u]npaid wages as its first example – Shanni listed nothing. Amended Complaint at ¶ 55 & Ex. 5.

- Shanni filed a statement with the Bankruptcy Court that she had "no payment advices from an employer because I was not employed during 2016, 2017, or 2018." Amended Complaint at ¶ 57 & Ex. 7.

- U Lock stated in an interrogatory answer in the Quiet Title Action that the company had no employees. George signed the verification for those answers. Amended Complaint at ¶ 62-64 & Ex. 8.

Also, during the 2019 trial in the Quiet Title Action, Kash testified under oath that Shanni

was not involved with U Lock. Amended Complaint ¶ 60.

    **b.  The Wage Case**

On July 14, 2021, with the Quiet Title Action decided by the Superior Court but still

active before that court, Shanni sued U Lock in this Court at Case No. 2:21-cv-00904-RJC (the

"Wage Case"). Amended Complaint at ¶¶ 66-68 & Ex. 10. She claimed to have served her

complaint on U Lock by personal delivery to George. _Id._ at ¶ 76.

Although Shanni claimed to be acting pro se, Amended Complaint ¶¶ 63-64, she had

assistance and advice of one or more attorneys or non-attorneys experienced in the preparation of

pleadings and other documents used in litigation (the "Legal Drafters"), who are not parties to

this action, throughout the Wage Case. _Id._ at ¶ 70-72.

In her complaint, Shanni asserted that she was making a claim against U Lock pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 to 209. She claimed that she had worked for U Lock "70 hours per week from January 1, 2016, through February 15, 2020." She asked for $131,351 in claimed unpaid hourly wages and overtime. These allegations were false, as Shanni had not performed the work she claimed. Amended Complaint ¶¶ 73, 87 & Ex. 10.

U Lock never answered Shanni's complaint or otherwise responded to Shanni's claims against it. Amended Complaint ¶ 77. The Defendants have offered inconsistent and irreconcilable explanations for U Lock's failure to defend itself.

- In sworn testimony in January 2023, George stated that, when he consulted with Roth about Shanni's Wage Case in 2021, Roth told him that defense of the action would cost $10,000.00. George testified that, on the basis of Roth's cost estimate, he decided that U-Lock would not defend itself against Shanni's claims.

- However, Roth asserted orally to the Westmoreland Court on April 22, 2022 that, as of that date, he was completely unaware of the existence of the Wage Case.

*Id.* at ¶¶ 78-80.

Shanni requested on August 21, 2021 that this Court enter a default, and this Court did so on August 24. Amended Complaint ¶ 81.

Shanni lied in her testimony at this Court's October 18, 2021 hearing on her motion for default judgment (the "Wage Case Hearing"). She testified under oath that the averments of her complaint were true. Again, they were not. Shanni intended for this Court to believe and rely upon her testimony. Amended Complaint ¶¶ 84-88.

That same day, this Court entered judgment for Shanni and against U Lock for $263,104.00. Shanni filed a writ of execution in this Court on November 21, 2021. This Court issued an abstract of judgment to her on December 14, 2021. Amended Complaint at ¶¶ 89-93 & Exs. 12-13.

6

Shanni filed that abstract of judgment with the Westmoreland Court on December 15, 2021 at 21-JU-04758 (the "Fake Lien"). Amended Complaint at ¶ 83 & Ex. K. Shanni had assistance and advice of one or more of the Legal Drafters in preparing and filing the Fake Lien. Amended Complaint ¶ 85.

Shanni knew that the Fake Lien was fraudulent, as it was based upon the judgment that she had obtained by her fraud in the Wage Case. Moreover, by the time that Shanni filed the Fake Lien, the Westmoreland Court had already determined that U Lock did not own the Subject Property, and the Superior Court had affirmed that judgment and denied U Lock's application for rehearing. Amended Complaint ¶¶ 86-87.

Still, the Fake Lien became a cloud on any claim that U Lock might have had to the Subject Property. It was and is discoverable by anyone investigating claims against U Lock or U Lock's rights in real property, including the Subject Property. Amended Complaint ¶ 88.

### 5.   *The Biros Deeds and the Defendants' Theory of Interference*

In an Order dated January 20, 2022 – the day after  the Supreme Court of Pennsylvania denied U Lock's petition for allowance of appeal – the Westmoreland Court directed that Biros receive the Executors' Deeds from that court. Amended Complaint ¶ 100-01.

On March 17, 2022, U Lock, represented by Roth, filed a petition (the "Petition to Strike") in the Quiet Title Action, seeking to strike that court's January 20, 2022 order concerning the Executors' Deeds. U Lock insisted that the Subject Property be first conveyed to U Lock and then to a formal trust that U Lock would implement. Per U Lock's demand, the U Lock trust would then convey legal title to the Subject Property to Biros. Amended Complaint ¶ 102-05.

U Lock's proposed Rube-Goldberg-like structure would still have left the company without title to the Subject Property.  Its only purpose was to expose the title to the Subject

Property to Shanni's Fake Lien. Even though Biros would ultimately have prevailed in further litigation to clear that title, that effort would have subjected her to further expense and delay in obtaining clear title to the Subject Property. Amended Complaint ¶ 106.

On March 18, 2022 – *i.e.*, the day after Roth and U Lock had filed the Petition to Strike – Shanni, once again purporting to act pro se, filed a "Praecipe for Writ of Summons in Equity and Assumpsit and for Lis Pendens" with the Westmoreland Court at Civil Action 928 of 2022 (the "*Lis Pendens* Proceeding"). Shanni had assistance and advice of one or more of the Legal Drafters in preparing and submitting that praecipe. Defendants included U Lock, Biros, the Executors, and the trial judge in the Quiet Title Action. Amended Complaint at ¶ 107-11 & Ex. 16.

The Westmoreland County Prothonotary responded to that praecipe by indexing a *lis pendens* on the Subject Property. Amended Complaint ¶ 112.

Shanni never filed a complaint in the *Lis Pendens* Proceeding, and she never served all of the defendants she named there. Amended Complaint ¶¶ 113-14. However, that proceeding remained pending until, at the direct request of the Bankruptcy Court, Shanni discontinued it and withdrew her *lis pendens* on January 30, 2023. She expressly did so "without prejudice." *Id.* at ¶¶ 117-18.

On April 22, 2022, the Westmoreland Court heard argument on U Lock's Petition to Strike. Roth appeared for U Lock. Although that court did not rule from the bench, it made clear that it intended to deny that petition. Amended Complaint ¶ 115-16.

### 6. *Shanni's Involuntary Bankruptcy Petition Against U Lock*

On April 27, 2022 – eight days after U Lock and Roth allowed the United States Supreme Court deadline for the Quiet Title Action to pass without taking any action and five days after the Westmoreland Court heard argument on the Petition to Strike – Shanni filed an involuntary

petition against U Lock in the Bankruptcy Court pursuant to Chapter 7 of the Bankruptcy Code. She identified herself as a creditor of U Lock. She claimed that U Lock owed her $375,100 for the judgment she had received through her fraud in the Wage Case, $13,100 in interest, and $100,000 for "retaliation under FLSA." Amended Complaint at ¶¶ 119-20, 124-25 & Ex. 17.

The Bankruptcy Court docketed that petition at Case 22-20823-GLT (the "U Lock Bankruptcy"). The U Lock Bankruptcy remains pending before that court. Amended Complaint ¶ 119, 122.

Although Shanni asserted that she was acting pro se in that petition and all other documents she filed in the U Lock Bankruptcy prior to November 10, 2022, she had assistance and advice of one or more of the Legal Drafters in commencing the U Lock Bankruptcy and has had assistance and advice of one or more of the Legal Drafters throughout the U Lock Bankruptcy. Amended Complaint ¶¶ 125-26.

On May 9, 2022, Shanni filed an Amended Petition identifying George and Kash as "managing control persons" of U Lock. Amended Complaint ¶ 129. The following day, the Bankruptcy Court entered an Order identifying George and Kash as the managing general partners of U Lock and issued a summons to Shanni with directions to serve it on U Lock. Amended Complaint ¶¶ 131-32.

On May 27, 2022, Shanni filed a proof of claim in the U Lock Bankruptcy. In it, she asserted that U Lock owed her $263,100.00. She based her claim on the judgment that she had obtained through fraud and perjury in the Wage Case. She attached a copy of that judgment to her proof of claim. She also asserted that her claim was secured by real estate. Amended Complaint at ¶¶ 134-36 & Ex. 18.

On July 1, 2022, U Lock moved to convert the U Lock Bankruptcy to a proceeding under Chapter 11 of the Bankruptcy Code. At the Bankruptcy Court's August 9, 2022 hearing on that motion, U Lock claimed that USAAG Systems Co. ("USAAG"), which claimed an address in Glastonbury, Connecticut,[3] would provide funding for U Lock in exchange for equity, if the Bankruptcy Court granted its motion and approved the conversion. Amended Complaint at ¶¶ 144-46 & Ex. 20. The Bankruptcy Court denied U Lock's motion by Order of August 10, 2022. *Id*. at ¶ 149.

On July 6, 2022, Roth filed U Lock's Schedule E/F, "Creditors Who Have Unsecured Claims," with the Bankruptcy Court. That schedule identified Shanni, Biros, and others as the holders of $912,060.63 in unsecured claims against U Lock. It identified Biros's claims, but not Shanni's claims, as "Disputed." It did not identify either George or Kash as an unsecured creditor. Amended Complaint at ¶¶ 150-53 & Ex. 21. At that same time, Roth filed U Lock's Schedule D, "Creditors Who Have Claims Secured by Property," with the Bankruptcy Court. That form asserted that U Lock had no secured creditors. *Id.* at ¶ 154. U Lock has never amended these schedules. *Id.* at ¶ 155.

On August 26, 2022, George, purporting to act pro se, filed a $99,000.00 proof of claim. As the basis for that claim, he identified "wage, fair labor standards."  Amended Complaint at ¶¶ 156-58 & Ex. 22.

Under oath, George testified in September 2022 that U Lock had no employees and that Shanni, in particular, had not been an employee of U Lock. Amended Complaint at ¶ 159.

---

[3] USAAG has never registered to do business in either Secretary of State of Connecticut or Pennsylvania. Amended Complaint ¶¶ 147-48.

7.   ***Continued Activity in the Quiet Title Action***

Shanni's filing of her involuntary petition that commenced the U Lock Bankruptcy proceedings had the effect of, among other things, staying other litigation involving U Lock. However, neither Shanni, George, Kash, U Lock, Roth or anyone else affiliated with the Defendants gave immediate notice to the Westmoreland Court. Amended Complaint at ¶ 162-64.

On May 17, 2022, the Westmoreland Court docketed its May 13 order denying the Petition to Strike that Roth had filed for U Lock in March 2022. Amended Complaint at ¶ 165.

On May 19, 2022, at 10:07 a.m., Shanni filed a pro se Entry of Appearance in the Quiet Title Action with the Westmoreland Court. Amended Complaint at ¶¶ 166-67 & Ex. 23. At that same time, to the minute, Shanni filed in that same court a Notice of Appeal to the Superior Court. In her Notice of Appeal, Shanni stated that the Westmoreland Court's May 13 Order "eviscerate[d] and appear[ed] to supersede portions of her judgment lien." *Id.* at ¶¶ 168-71 & Ex. 24.

Two minutes later, at 10:09 a.m. on May 19, 2022, Roth filed "U Lock Inc's Notice of Bankruptcy" in the Westmoreland Court. Amended Complaint at ¶¶ 172-73 & Ex. 25.

## B.  **This Court's Order Granting the Motions to Dismiss**

Each Defendant filed a motion to dismiss Biros's original Complaint in this action. *See* Doc. Nos. 32-36.

By Order of March 29, 2024, this Court granted those motions to dismiss but gave Biros leave to amend. This Court explained that while it "[did] not necessarily find the RICO Act argument to be futile," the element of "enterprise" was not adequately pleaded to meet the requirements of 18 U.S.C. § 1961(4). *See* Doc. 43. It held that while "'it is not necessary to show that enterprise has some function wholly unrelated to the racketeering activity,' a plaintiff must show 'that [the enterprise] has an existence beyond that which is necessary merely to commit

each of the acts [that] predicate racketeering offenses.'" *Id*. at 8 (quoting *United States v. Console*, 13 F.3d 641 (3d Cir. 1993)). As applied to Biros's allegations, this Court concluded that the claimed enterprise needed to have a broader function than simply defrauding Biros; it must also "engage in a broader pattern of criminal or other intended behaviors that go beyond this singular fraud." *Id*. at 9. This Court did not point to any other deficiencies in Biros's Complaint. *See generally id*.

This Court then looked to 28 U.S.C.A. § 1367(c)(3) and declined to exercise supplemental jurisdiction over Biros's state-law claims. Doc. 43 at 9-10.

## C. **The Amended Complaint**

Biros filed an Amended Complaint on May 15, 2024. *See* Doc No. 49. She filed her accompanying RICO Case Statement on the same day, May 15, 2024. *See* Doc No. 50.

Biros made substantial changes to address the issue that this Court had identified and a limited number of other changes:

### 1. *"Enterprise"*

Biros points this Court to the "Snyder Family Enterprise" (alternatively, the "Enterprise"). The Enterprise spans generations of the Snyder Family, including the Defendants. the Snyders' parents, George ("George Sr.") and Sharon Snyder (jointly, the "Snyder Parents"); Snyder siblings Mark Snyder and Scott Snyder; and other attorneys and non-attorneys who appeared for or drafted legal documents on behalf of the Enterprise. Amended Complaint ¶ 266. Working with persons outside the Snyder Family, including Roth and the "Legal Drafters," the Enterprise has used fraudulent claims and lawsuits to attempt to defraud others of their interests in real properties, particularly in Allegheny and Westmoreland Counties. Amended Complaint ¶ 230. Biros cites the Enterprise's actions concerning real property in Monroeville in the 1980s and 1990s, Amended Complaint ¶¶ 264-86; properties in Clairton and North Versailles during the

2000s, *id.* at ¶¶ 231-63; and different property in North Versailles between 2011 and 2022, *id.* at ¶¶ 287-305. *See also* Amended Complaint ¶ 228 (noting Shanni's 2011 testimony that she had already "filed over 90 state and federal lawsuits").

### 2.   *Other Additions*

While Biros generally repeated the allegations of her Complaint concerning both RICO and the Pennsylvania common-law claims, she offered additional facts that had become relevant or of which she had learned in the intervening year:

- Biros pointed to a petition that Shanni had filed in the Westmoreland Court in 2018 (the same year in which Shanni filed her fraudulent bankruptcy petition), seeking leave to proceed *in forma pauperis* because she did not have a job. Amended Complaint ¶¶ 54-56 & Ex. 5.

- Biros pointed to the February 29, 2024 opinion of the Bankruptcy Court in which that court found, after an evidentiary hearing, that Shanni had defrauded both this Court and the Bankruptcy Court by lying while under penalty of perjury in both the Wage Case and in commencing and filing her claim in the U Lock Bankruptcy. Amended Complaint ¶¶ 121, 179-95.

- Biros added new counts for Abuse of Process and Conspiracy arising from Shanni's use of the process from the Wage Case to file the Fake Lien, the Lis Pendens Proceeding, the involuntary petition in the U Lock Bankruptcy, and appeals to the Superior Court. Amended Complaint ¶¶ 421-42.

These motions to dismiss followed.

### 3.   *Other Facts of Record*

On June 17, 2022, the Bankruptcy Court entered an "Order for Relief" allowing the U Lock Bankruptcy to proceed. In entering this order, the Bankruptcy Court noted that U Lock had both appeared before it and participated in a discussion of the response date but had not responded to the petition. A true and correct copy of the Order for Relief is attached to this brief as Ex. A.

## STANDARD OF REVIEW

This Court has correctly identified the standard to be applied to these motions. *See* Doc. 43 at pp. 5-6.

Because the focus here is on the Amended Complaint, there is no occasion for this Court to consider the seven pages of *ad hominem* attacks with which Roth begins his response. *See* Doc. 57, pp. 1-8. This Court has cautioned against a party's resorting to these tactics. *See*, *e.g.*, *Sparks v. Speedy Kleene Car Wash & Laundromat*, 2020 U.S. Dist. LEXIS 130427 at *12-13 (W.D. Pa. 2020) (Colville, J.) ('The Court cautions that the inclusion of such ad hominem assertions in future filings may result in the striking of such assertions and/or the imposition of sanctions, if appropriate.").[4]

## ARGUMENT

## THIS COURT SHOULD DENY DEFENDANTS' MOTIONS

### A. The Snyder Family Enterprise Is a RICO "Enterprise."

RICO defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Act further provides that its terms are to be "liberally construed to effectuate its remedial purposes," *Boyle v. United States*, 556 U.S. 938, 944 (2009). The construction of this definition is consistent with this rule. "This enumeration of included enterprises is obviously broad, encompassing '*any* . . . group of individuals associated in fact.' The term 'any' ensures that the definition has a wide reach, and the very concept of an association in fact is expansive." *Id.* (internal citations omitted).

---

[4] While Biros is compelled to note that the Defendants' attacks are false and misleading, she also notes that they have nothing to do with the question of whether she has stated RICO and other claims on which this Court can grant relief. She will therefore not otherwise engage with the Defendants' tactics.

"From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946. While "it is not necessary to show that enterprise has some function wholly unrelated to the racketeering activity," a plaintiff must show "that [the enterprise] has an existence beyond that which is necessary merely to commit each of the acts charged as predicate racketeering offenses." *United States v. Console*, 13 F.3d 641 (3d Cir. 1993).

The Snyder Family Enterprise meets these elements of an enterprise under RICO. The Family's actions towards Biros are *not* an ad hoc conspiracy. They are a manifestation of a long-standing pattern. Taking the Supreme Court's three structure features of an enterprise, the Snyder Family Enterprise has a purpose of defrauding parties of their interests in real properties, relationships among those associated with the enterprise, and longevity of at least thirty years. The Enterprise exists beyond the underlying predicate acts, and the defendants participated in the conduct of the enterprise's affairs, not just their own individual affairs.

In the Amended Complaint, Biros points to three specific and concrete episodes of the Snyder Family's resorting to these tactics:

### 1. __The Snyder Family Enterprise Began As Early As 1988 with the Blue Moon Properties.__

While the "Blue Moon" scheme ultimately failed, the Snyder Family Enterprise succeeded in establishing their trademark patterns that they would employ for the next thirty years: false statements to courts, misuse of the legal process, delay and obfuscation, all related to parcels of real property. *Id.* at ¶ 286. Beginning in the 1990s, the Snyder Family employed fraudulent litigation tactics to deprive Oxford Development Co. ("Oxford") of its rightful interest in the Blue Moon Motel in Monroeville, Pennsylvania. *See* Amended Complaint ¶ 264 & Ex. 31.

The Snyder Parents owned two adjacent properties in Monroeville, the Blue Moon Motel and a restaurant (the "Blue Moon Properties"). *Id.* at ¶ 265-66. On January 14, 1988, the Snyder Parents agreed to sell the Blue Moon Properties to Oxford, but they subsequently refused or were unable to convey the property for eight months. They ultimately conveyed the property for $50,000 more than originally agreed. *Id.* at ¶ 267-269. Following the sale, the Snyder Parents breached their obligation to remove all personal and salvage property from the Blue Moon Property. Before Oxford could demolish the building, Oxford had to remove that property from the buildings and return it to the Snyder Parents. *Id.* at ¶ 271-273.[5]

Subsequently, the Snyder Parents sued Oxford and others, claiming that those defendants had conspired to coerce them into selling Blue Moon Properties for a price far under fair market value and had deprived the Snyder Parents of $48,250,000 of cash, $546,856 of personal property and salvage, and records worth $790,000, all of which (they claimed) had been kept at the Blue Moon Property. *Id.* at ¶ 277. This lawsuit was not intended to succeed on its own, but rather to manufacture some basis for the Snyder Parents' separate claims before the Tax Court. *Id.* at ¶ 278.

## 2. *The Snyder Family Enterprise Continued with the Quinlan Properties from 2003 to 2009.*

Between 1996 and 1998, Snyder siblings Shanni, Kash, Mark, and Scott made a series of promissory notes in favor of Edward J. Quinlan. They secured these notes by giving Quinlan mortgages on five properties in Clairton, North Versailles, and Pittsburgh (the "Quinlan

---

[5] In their 1988 tax returns, the Snyder Parents then claimed $1,750,000 in losses for "Fire, thefts, etc." with no further explanation. When the IRS issued a notice of deficiency to them, later increasing their claim to $72,651,900 for casualty loss. Amended Complaint at 274-276.

Properties"). Amended Complaint ¶ 231. The Snyder siblings defaulted on those notes, and Quinlan pursued foreclosures in July 2003. *Id.* at ¶ 232.

The Snyder Family Enterprise responded by filing at least seven bankruptcy petitions to invoke the automatic stay of 11 U.S.C. § 362 and prevent the foreclosures from moving forward. *Id.* at ¶ 233. From September 4, 2003, to September 1, 2004, Mark filed three Chapter 13 bankruptcy petitions, all of which the Bankruptcy Court dismissed because Mark failed to file any of the required schedules. *Id.* at ¶ 234-35, 237-38, 241-42. During this same period, Shanni filed one Chapter 13 petition, Kash filed two Chapter 13 petitions, and Scott filed one Chapter 13 petition. *Id.* at ¶ 236-247. The Bankruptcy Court dismissed each of these petitions. On January 11, 2005, the Bankruptcy Court granted relief from the automatic stay in Kash's then-pending proceeding to allow Quinlan to proceed with foreclosure. *Id.* at ¶ 236-247.

The Enterprise did not stop there. Mark filed a state-court complaint against Quinlan and others in October 2005, asking to quiet title to the Quinlan Properties, cancel the mortgages, and award damages. Amended Complaint ¶ 250. The defendants removed Mark's action to the Bankruptcy Court, which dismissed Mark's complaint. Although this Court and the Third Circuit affirmed that decision, the process took three and a half years. *Id.* at ¶ 251.

The Enterprise took similar steps to reverse the loss of the Quinlan Properties when Shanni attempted in December 2005 to reopen her own bankruptcy case. On August 3, 2006, this Court rejected this effort to undo the foreclosures and sales and called out her behavior as well as "the history of bad faith bankruptcy filings by those who were parties to the original notes securing the properties." *See* Amended Complaint. at ¶ 257 & Ex. 30 at p. 5. Shanni appealed her case to the Third Circuit, which affirmed the decisions of this Court and Bankruptcy Court. *Id.* at ¶ 259.

The Enterprise also sought to use the automatic stay from one of Mark's his bankruptcies to undo the sale in foreclosure – an effort the Bankruptcy Court, this Court, and the Third Circuit again rejected. Amended Complaint ¶ 260-261. In affirming, the Third Circuit noted that Mark "readily admits in his brief that he filed for bankruptcy in order to activate the automatic stay provisions of the Bankruptcy Code, to defer responding to the state court foreclosure action in 2003." *Id.* at ¶ 262. Thus continued the Snyder Family Enterprise's modus operandi of fraud, misuse of the law generally and misuse of the Bankruptcy Code in particular, which includes Snyder Family members occasionally "saying the quiet part out loud." *Id.* at ¶ 263.

### 3. *The Snyder Family Enterprise Persisted from 2011 to 2018 with the Arlene Drive Property.*

Most recently, the Snyder Family Enterprise acted unsuccessfully but at length to attempt to keep George Sr. in real property to which he had no reasonable claim. In an indenture dated and recorded June 27, 2011, Shanni and other members of the Snyder family, including Kash, conveyed to Tammy Snyder all of their interest in a parcel of real property at 98 Arlene Drive in North Versailles, Pennsylvania (the "Arlene Drive Property"). Amended Complaint ¶ 287. George Sr. resided at the Arlene Drive Property without a lease or any other legally enforceable right to occupy that parcel. *Id.* at ¶ 288.

In her original schedules with the Bankruptcy Court in the Shanni 2018 Bankruptcy, Shanni represented to the court that she did not own or have any legal or equitable interest in any "residence, building, land, or similar property." *Id.* at ¶ 290.

In 2019, Penn Pioneer Enterprises LLC purchased the Arlene Drive Property through a tax sale and conveyed the parcel to Allegheny Estates, LLC in December 2019. At that time, George Sr. still resided at the Arlene Drive Property, and when Allegheny Estates commenced efforts to take possession of the property, George Sr. filed his own Chapter 13 Bankruptcy

Petition in the Bankruptcy Court in order to invoke an automatic stay on the eviction proceedings, which was dismissed after he failed to file the required schedules. *Id.* at ¶ 293-298.

On July 28, 2022, as part of the Snyder Family Enterprise, Shanni filed amended schedules in her 2018 Bankruptcy.  She claimed for the first time to have an "equitable interest" in the Arlene Drive Property. *Id.* at ¶ 301-303. Shanni's late and inconsistent conduct raised a fair inference that she had made this new claim to use the § 362 automatic stay to disrupt the efforts of Allegheny Estates to evict George Sr. from the Arlene Drive Property. *Id.* at ¶ 304. When Allegheny Estates called Shanni on her claim and moved in the Shanni 2018 Bankruptcy for an Order either confirming that its eviction efforts were not stayed or relieving those efforts from the stay, Shanni backed down and filed no opposition to that motion. *Id.* at 305.

While discovery may reveal other episodes, these discrete examples suffice to show that the Snyder Family Enterprise shared goals and a common set of tactics for trying to achieve these ends. They demonstrate that the Enterprise improperly uses bogus bankruptcy petitions and court claims to stall litigation and files baseless complaints, motions, and bankruptcy petitions to gain advantages in tertiary litigation. For RICO purposes, the Defendants' conduct towards Biros is the most recent activation of this "enterprise."

**B.   The Defendants Proximately Caused Biros's Injuries Here.**

A "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation [of RICO]." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). A RICO plaintiff must allege (and eventually prove) "concrete financial loss and not mere injury to a valuable intangible property interest." *Maio*, 221 F.3d at 483. *Cf. Reiter v. Sonotone Corp.*, 442 U.S. 330, 340-41 (1979) (interpreting "injury to business or property" element of Clayton Act § 4 and stating that consumers who have been "deprived of only money,

19

albeit a modest amount," have sustained a "property" injury). "[P]ayment of legal fees can be actionable injuries under RICO." *Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 804 (E.D. Pa. 2007) (citing *Maio*, 221 F.3d at 483).

In *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 267 (1992), the Supreme Court noted that Congress modeled the § 1964(c) standing requirement on the Clayton Act and held that a plaintiff's right to sue under RICO, as under the federal antitrust laws, requires a showing that the alleged violation was the proximate cause of the plaintiff's injury. Looking to common law on guidance for what constitutes proximate cause, the Supreme Court focused primarily on one element of proximate cause: "the directness of the relationship 'between the injury asserted and the injurious conduct alleged.'" *Id.* at 268; *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 456-57 (2006) (applying principles of *Holmes*). In accordance with this requirement, recovery by a plaintiff is generally permitted unless the plaintiff is alleging harm flowing "merely from the misfortunes visited upon a third person by the defendant's acts." *Brokerage Concepts v. United States Healthcare*, 140 F.3d 494, 520-21 (3d Cir. 1998).

While the Defendants correctly note that the "central question" a court "must ask is whether the alleged violation led directly to the plaintiff's injuries," *Anza*, 547 U.S. at 461, the clear answer here is yes. the racketeering activities of the Snyder Family Enterprise directly caused Biros to suffer injury to her property. Biros suffered economic harm by being unable to take unencumbered title to the Subject Property, by being prevented from commencing any commercial development of the Subject Property, and by incurring attorney's fees to fight off the Defendants' Fake Lien Scheme.

There were no intervening steps or outside parties. These injuries were the direct and proximate result of the Snyder Family Enterprise's Fake Lien Scheme. Moreover, the Fake Lien

Scheme was concocted specifically to deprive Biros of her lawful title and rights to use the Subject Property. *See* Amended Complaint ¶¶ 99, 406, 408, 417.

While the Defendants are correct that "personal injury" is not actionable under RICO, *see Williams v. BASF Catalysts LLC*, 765 F.3d 306, 323 (3d Cir. 2014), Biros does not allege that she suffered any sort of personal injury. That injury is physical or emotional harm to a person. *Genty v. RTC*, 937 F.2d 899, 918 (3d Cir. 1991); *Goodin v. Butler Pa. CYS,* Case 2:21-cv-00265, 2021 U.S. Dist. Lexis 225583, at *25-26 (Nov. 23, 2021).[6]

Additionally, Defendants argue that U Lock could have filed its own bankruptcy proceedings and thus the fact that Shanni filed the bankruptcy is not a proximate cause of Biros's injury. *See* Doc. 56, p. 31. There is no dispute that Shanni *actually did* act – by filing the fraudulent Wage Case, by filing her fraudulent involuntary bankruptcy petition, and otherwise. When she took those actions, she and her co-conspirators violated RICO and damaged Biros. At least at this stage, what anyone else could have done instead is completely irrelevant. Defendants may make as many circuitous arguments – literally and figuratively – as they like, but the fact stands that Biros has suffered injury as defined under the Third Circuit and Supreme Court's understandings of injury under RICO.

**C. Biros Has Again Pleaded All Other Elements Of Her Claims.**

*1. Biros Has Pleaded All Necessary Elements of Her RICO Claims Against Shanni.*

RICO Section 1962(c) identifies certain activity as unlawful:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

---

[6] Biros also makes no claim that she has lost wages for any reason. Her injury is a direct financial injury to her interest in the Subject Property and her paying the attorney's fees resulting from the Defendants' Fake Lien Scheme.

18 U.S.C. § 1962(c).

The RICO Act also allows for civil suits:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c) (omitting exception not relevant here related to the fraudulent sale of securities).

A "pattern" of racketeering activity is two or more acts of racketeering activity committed within ten years of each other. 18 U.S.C. § 1961(5). RICO establishes a wide variety of types of "racketeering activity," which include "any act which is indictable under any of the following provisions of title 18, United States Code . . . section 1343 (relating to wire fraud) . . . section 1503 (relating to obstruction of justice) . . . [and] any offense involving fraud connected with a case under title 11 [relating to bankruptcy]."18 U.S.C. § 1961(1).

The Amended Complaint alleges a series of predicate acts of racketeering activity by Shanni in pursuit of the Snyder Family Enterprise and its goal of defrauding Biros of her interest in real property through the Fake Lien Scheme. Enterprise members have included Defendants, additional Synder family members, lawyers, other known persons, and other persons or entities who are as yet unidentified, including the "Legal Drafters." Amended Complaint ¶ 227-30; 326. The predicate acts included wire fraud, obstruction of justice, and bankruptcy fraud, but also frauds upon this Court.

Shanni's first predicate act was wire fraud, which she committed when, with intent to defraud or with intent to obtain property by means of false or fraudulent pretenses, she used the internet to transmit her complaint in the Wage Case to this Court. *See* 18 U.S.C. § 1343. By the

time she did this, Shanni, as well as other members of the enterprise, had already given sworn testimony incompatible with this claim. In fact the claim was false. Amended Complaint ¶ 336.

Shanni then compounded her wrongdoing with a second predicate act in pursuit of a fraudulent judgment, by corruptly attempting to influence an officer of this Court. *See* 18 U.S.C. § 1503. At the hearing on her motion for default judgment, Shanni falsely testified that she had worked for U Lock every day for over four years for ten hours a day, seven days a week, without ever being paid a dime. She gave that sworn testimony with no opposing party to challenge her falsehoods and with the expectation that this Court would rely on her statements. In fact, the Court relied on them and entered a default judgment in Shanni's favor in reliance on those statements. Amended Complaint ¶ 337.[7]

Shanni's next racketeering activity in furtherance of the Fake Lien Scheme was fraud on the Bankruptcy Court. *See* 18 U.S.C. § 1961(1)(D). Having fraudulently received a judgment from this Court, Shanni used that judgment to file the U Lock Bankruptcy by falsely claimed to be a creditor of U Lock. Shanni committed further bankruptcy fraud by submitting a proof of claim in the U Lock Bankruptcy. Amended Complaint ¶¶ 338-39.[8]

All of this racketeering activity occurred well within the ten years to which RICO looks for a "pattern." 18 U.S.C. § 1961(5). The first *known* predicate act of Shanni's wire fraud occurred on July 14, 2021. The other racketeering activity occurred more recently. Amended Complaint ¶¶ 336-39.

---

[7] In arguing that coercive action is required to satisfy the elements of 18 U.S.C. § 1503, Roth confuses that statute with 18 U.S.C. § 1512, which criminalizes tampering with a witness, victim, or informant. *See* Doc No. 57, p. 28 (citing *United States v. Farrell*, 126 F.3d 484, 486 (3d Cir. 1997)).

[8] While Defendants are correct that Biros has pleaded a claim for Abuse of Process, Biros does not rely on Abuse of Process to establish RICO standing. Biros has standing because she has expended funds as the result of the Snyder Family Enterprise's engaging in the Fake Lien Scheme.

**2.** <u>**Biros has Pleaded All Necessary Elements of Her RICO Conspiracy Claims Against the Defendants.**</u>

Under Section 1962(d) of RICO, "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." As discussed above, Shanni has repeatedly violated § 1962(c). RICO incorporates a common law understanding of conspiracy in Section 1962(d), and "RICO's conspiracy section – section 1962(d) – is to be interpreted in light of the common law of criminal conspiracy, and all that is necessary for such a conspiracy is that the conspirators share a common purpose." *Smith v. Berg*, 247 F.3d 532, 537 (3d Cir. 2001). The Supreme Court has been clear that, while some member of the subject enterprise must commit predicate racketeering acts, the co-conspirators need not necessarily do so personally. Instead that it is enough that they took other, non-racketeering activities in furtherance of the common scheme. *Beck v. Prupis*, 529 U.S. 494, 502 (2000).

As explained above, Each Defendant agreed to the Snyder Family Enterprise's Fake Lien Scheme  Each Defendant had a common purpose in depriving Biros of her interest in the Subject Property. Shanni engaged in multiple predicate acts. Each Defendant had a role in the Fake Lien Scheme as a member of the Enterprise. Each Defendant acted in furtherance of the Enterprise's and Scheme's corrupt purpose.

George and Kash Snyder managed the affairs of U Lock in a manner that would allow Shanni's frauds to succeed. Because they wanted to further the conspiracy, they did not defend U Lock against the claims in the Wage Case, although even a cursory defense would have revealed the flaws in Shanni's claims. They also needlessly prolonged the state court case, including by falsely stating that they intended to seek certiorari in the United States Supreme Court, in order to give the Fake Lien Scheme time to work. George also engaged in the enterprise

by filing his own false claim in the U Lock Bankruptcy. *See* Amended Complaint ¶¶ 156-58; 352.

Roth participated in the Fake Lien Scheme by engaging with Shanni, George, and Kash in the planning and organization of the enterprise; by advising George, Kash, and U Lock not to respond to Shanni's fraudulent FLSA claim; by participating in the scheme to delay the resolution of the state court action in order to give the fraudulent FLSA claim and subsequent fraudulent bankruptcy time to work; and by delaying giving notice of the U Lock bankruptcy to the Westmoreland Court so that Shanni could file a notice of appeal in the Quiet Title Action, further confusing that action to prevent the transfer of the Executors' Deeds and possession of the Subject Property to Biros. Indeed, Roth finally filed that notice of bankruptcy *two minutes* after Shanni filed her notice of appeal. *See* Amended Complaint ¶¶ 166-172.

Additional co-conspirators acted for the Snyder Family Enterprise in furtherance of the Fake Lien Scheme, including the Legal Drafters, a company that funded various moves by the Defendants in the U Lock Bankruptcy, and individuals who provided services to the enterprise by serving documents in the Wage Case. Amended Complaint ¶¶ 326-333.[9] U Lock, meanwhile,

---

[9] While Biros has stated a claim for conspiracy under RICO against all of the Defendants, should this Court for any reason dismiss this claim against any of George, Kash or Roth, it should still exercise jurisdiction over the state-law claims against any dismissed party pursuant to the supplemental jurisdiction of 28 U.S.C. § 1367(a). In noting that a district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," Congress added, "Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." *Id. See also New Rock Asset Partners, L.P. v. Preferred Entity Advancements*, 101 F.3d 1492, 1509 (3d Cir. 1996) (holding that § 1367 extends pendent party jurisdiction to limit permitted by U.S. Constitution). The Supreme Court has described the jurisdiction of the federal courts here:

> The state and federal claims must derive from a common nucleus of operative fact. But if considered without regard to their state or federal character, a plaintiff 's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in the federal courts to hear the whole.

participated in the Fake Lien Scheme at its management's direction by allowing Shanni to take the fraudulent Wage Case judgment and by engaging in a series of tactics to slow the state court action to give Shanni time to enact the predicate racketeering acts central to the Fake Lien Scheme. *See* Amended Complaint ¶ 325.

Clearly, there is not only a conspiracy here, but a broad one, and one in which all of the Defendants have been amply pleaded to have participated.

### 3.   *The Bankruptcy Court's "Order for Relief" Does Not Preclude Biros's Claims Here.*

Roth is absolutely wrong that the Bankruptcy Court's June 2022 Order for Relief in the U Lock Bankruptcy, *see* Ex. A, somehow immunizes him and his co-Defendants against Biros's claims here. Even beyond Roth's inability to explain how application of *res judicata* would have his desired effect, his argument fails the most basic requirements of the doctrine: Biros was not a party to the uncontested proceedings that led to that order, and there is no final judgment.[10]

Res judicata "requires a showing that there has been (1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies." *United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 173 (3d Cir. 2009).[11]

Biros was not a party to the proceedings that led to the Bankruptcy Court's June 17, 2022 Order for Relief, nor was she in privity with any party to those proceedings. 11 U.S.C. § 303(d) authorizes a debtor or, with limitations that are irrelevant here, a "general partner in a partnership

---

*United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). All of Biros's claims against all of the Defendants arise from the same "nucleus of operative fact."

[10] Roth's other invocations of *res judicata*, in his collateral attacks on Biros, *see* Roth Brief at pp. 4, 7, have nothing at all to do with the question of whether Biros has pleaded RICO claims against him.

[11] The related doctrine of collateral estoppel "requires a previous determination that . . . the party being precluded from relitigating the issue was fully represented in the prior action." *5 Unlabeled Boxes*, 572 F.3d at 173 (citing *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006)).

debtor," but no one else, to file an answer to an involuntary petition. Fed. R. Bankr. P. 1011(a), captioned "Who May Contest Petition," is to the same effect.

Biros was therefore not a party. She is not Shanni or U Lock, nor was she a general partner of U Lock. Tellingly, in entering the Order for Relief, the Bankruptcy Court referred only to the lack of any response from U Lock.[12]

Biros is not otherwise bound to the Order for Relief. The Supreme Court has identified six exclusive situations in which a nonparty may be bound to a prior judgment:

(1) Where the non-party agrees to be bound by the determination of issues in an action between others;

(2) Where there is a pre-existing substantive legal relationship between the party to a judgment and the non-party (i.e., assignee and assignor);

(3) Where a non-party was adequately represented by someone with the same interests who was party to the suit;

(4) If the non-party assumed control over the litigation in which the judgment was rendered;

(5) If the party bound by a judgment attempts to relitigate the matter through a proxy; and

(6) If a special statutory scheme otherwise consistent with due process expressly forecloses successive litigation by non-parties.

*Taylor v. Sturgell*, 553 U.S. 880, 893-95 (2008).[13]

None of these exceptions applies here. Biros did not agree to be bound by the determination of issues in the Wage Case or on the Order for Relief. There is no legal relationship between Biros and U Lock. Biros was not adequately represented by someone with the same interests who was party to the suit. To the contrary, U Lock deliberately chose not to

---

[12] Collateral estoppel would also be inapplicable here because U Lock's failure to respond to Shanni's involuntary bankruptcy petition prevented the Order for Relief from operating as any sort of adjudication on the merits.

[13] These same standards apply in assessing whether collateral estoppel binds a non-party. *See Doe v. Hesketh*, 828 F.3d 159, 172 (3d Cir. 2016) (applying *Taylor*).

appear in the Wage Case or respond to Shanni's involuntary bankruptcy petition. U Lock's interests, or at least the interests of its controlling members, have always been directly opposed to Biros's interests. Biros did not assume control over U Lock's conduct in either the Wage Case or the U Lock Bankruptcy. Biros is not acting here as U Lock's proxy. Finally, no statutory scheme has foreclosed Biros's ability to litigate in the U Lock Bankruptcy. Preclusion is therefore inappropriate and inapposite under the circumstances.

Roth's claim for res judicata also fails for two other independent reasons. First, the doctrine is inapplicable to a judgment procured by fraud or collusion. *See Riehle v. Margolies*, 279 U.S. 218, 225 (1929). Second, the doctrine has no application in the absence of a final judgment. *5 Unlabeled Boxes*, 572 F.3d at 173. The Bankruptcy Court's February 2024 decision to disallow Shanni's claim against the U Lock estate because that claim was the product of her fraud against both that court and this Court, *see In re U Lock, Inc.*, Nos. 22-20823-GLT, 2024 Bankr. LEXIS 484, at *1-2 (Bankr. W.D. Pa. Feb. 29, 2024), makes clear *both* that the Bankruptcy Court did not view its earlier Order for Relief as a final determination on that claim *and* that the Bankruptcy Court viewed the Order for Relief as the product of fraud. The Bankruptcy Court added that it saw ample evidence that Shanni's claim was a product of collusion with Roth and others. *Id.* at *46 ("The Court also notes that the timing of certain state court pleadings hints at coordination between U Lock's counsel and Ms. Snyder.")

Finally, the Bankruptcy Court was clear that it did not view any of its actions as precluding Biros's claims here. Even in directing Shanni to show cause why that court should not sanction her for her actions there, it "urge[d] that any determination of Ms. Biros' damages arising from Ms. Snyder's fraudulent conduct be resolved through the pending RICO action."

*U Lock*, 2024 Bankr. LEXIS 484, at *46. These words are hardly the product of a court that believed that it had foreclosed Biros's claims in this action, and it had not done so.

**D.  Defendants are Not Entitled to Any Relief on Any Theories in Their Motions.**

>   **1.  *Biros Has Pleaded the Requisite Interstate Commerce Element.***

Biros has pleaded the interstate commerce element of RICO Section 1962(c). "RICO requires that the activity of the enterprise, not each predicate act of racketeering, must have some impact on interstate commerce." *Expotech Eng'g, Inc. v. Cardone Indus.*, Civ. A. No. 19-1673, 2020 U.S. Dist. LEXIS 139438, at * 24 n.8 (E.D. Pa. Aug. 5, 2020); *see also Chambers Dev. Co. v. Browning-Ferris Industries*, 590 F. Supp. 1528, 1535 (W.D. Pa. 1984). "A 'nexus of the enterprise to interstate or foreign commerce, albeit minimal' must be shown." *Id.* (citing *United States v. Rone*, 598 F.2d 564, 573 (9th Cir. 1979)). While under U Lock's control, the Subject Property included a self-storage space that rented space to individuals residing in multiple states. Additionally, the Subject Property is ripe for further developments that would affect interstate commerce if Biros were able to control and develop the property without the interference of the Snyder Family Enterprise. *See* Doc. 50 (RICO Case Statement).

>   **2.  *Shanni's Claims of FLSA Retaliation Have Nothing To Do With Whether Biros Can Maintain This Action.***

Shanni dedicates much of her motion to the allegation that the Amended Complaint should be dismissed because this action is somehow Biros's retaliation for her having filed a claim against U Lock under the FLSA. *See* Shanni Motion at 1-3 (citing 29 U.S.C. § 215(a)(3)). After asserting to the Bankruptcy Court that George and Kash control U Lock, Shanni faces real difficulty offering a plausible explanation of how *Biros's* filing this action, which alleges concerted action among Shanni, George and Kash, is retaliation for the Wage Case.  For now,

however, Shanni's allegations about motive have nothing to do with the question of whether Biros has adequately stated her claims.[14]

Further, an employer's counterclaim against an FLSA claimant is not an adverse action within the meaning of FLSA, and even if it plausibly could be, it is not retaliation against an employee unless it is wholly baseless. *See Berrada v. Cohen*, 792 F. Appx. 158, 164 (3d Cir. 2019). If an employer's non-frivolous counterclaim is not retaliation under FLSA, it beggars belief that a suit could be retaliatory when brought by a third party, who is not the FLSA claimant's employer, for damages caused by fraudulently advanced FLSA claim. Thus, Shanni's arguments, like those of the other Defendants, provide no basis on which to dismiss that claim.

### 3. *George is Liable for His Own Intentional Torts.*

George cannot hide behind U Lock to avoid liability here. He is personally liable for his participation in the plan to create the District Court Judgment and the attempt to use that judgment to upset Biros's victory in the Quiet Title Action:

> Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer. Instead, liability attaches where the record establishes the individual's participation in the tortious activity.

*Village at Camelback Property Owners Ass'n v. Carr*, 538 A.2d 528, 533 (Pa. Super. Ct. 1988) (quoted in *Sereda v. Center City Acquisitions, LLC*, 222 A.3d 1161, 1169 (Pa. Super Ct. 2019)). George is liable here because he actively agreed to and participated in the Snyder Family

---

[14] If Shanni is arguing that the FLSA precludes or preempts Biros's RICO claims against her, Shanni has it backwards. In her cited cases, courts have held that *an employee* may not bring a RICO claim against her employer based upon a claimed violation of a federal statute that establishes its own specific rules or administrative scheme. *See, e.g., DeSilva v. N. Shore-Long Island Jewish Health Sys.*, 770 F. Supp. 2d 497, 516 (E.D.N.Y. 2011); *Danielson v. Burnside-Ott Aviation Training Ctr.*, 746 F. Supp. 170, 176 (D.D.C. 1990). If Shanni has violated federal labor laws in any way other than by filing the bogus Wage Case, Biros is not claiming to be the victim of those violations.

Enterprise's conspiracy and because he aided and abetted Shanni in lying to this Court. George should answer for those actions.

Because Biros's claims address George's own actions, he has no claim for a stay under 11 U.S.C. § 362. That section provides, generally and with exceptions, for a stay of claims against a "debtor" and property of the estate. *See id*. The Bankruptcy Code defines "debtor" as "person or municipality concerning which a case under this title has been commenced." No one has commenced an action under the Bankruptcy Code concerning George. In fact, George sees himself as so sufficiently distinct from U Lock that he, himself, actually filed a claim against U Lock in the U Lock Bankruptcy. *See* Amended Complaint ¶¶ 156-158 & Ex. 22. Like the rest of the Defendants' arguments, George's reference to Section 362 provides no basis at all to dismiss this action.[15]

**E. Biros Has Pleaded All Necessary Elements of Her State Law Claims.**

Biros has fully pleaded each of her claims under Pennsylvania common law.

***1. Biros Has Pleaded All Necessary Elements of Her Direct and Conspiracy Claims for Slander of Title.***

### a. Shanni Must Answer the Slander of Title Claim Against Her.

"Disparagement of title, variously labeled slander of title, defamation of title, or in other contexts, slander of goods, trade libel or injurious falsehood, is the false and malicious representation of the title or quality of another's interest in goods or property." *Triester v. 191*

---

[15] Although neither Roth nor George argues in his motion or brief that any of Biros's claims should be dismissed pursuant to 28 U.S.C. § 1915, they both appear to have checked the box in this Court's electronic filing system for "motion to dismiss as frivolous." Of this "frivolous" designation, it need only be noted, first, that § 1915 is directed to actions filed in forma pauperis, *see Deutsch v. United* States, 67 F.3d 1080, 1084 (3d Cir. 1995); second, that Biros has paid the filing fee for this action; and, third, that, as discussed above, Biros's claims here are far from frivolous. As strangely, Roth also seems to have advised the Clerk that his motion is also for judgment on the pleadings even though he has never filed an answer that might close the pleadings here. *See* Fed. R. Civ. P. 12(c).

*Tenants Ass'n*, 415 A.2d 698, 701 (Pa. Super. Ct. 1979) (citing *Young v. Geiske*, 58 A. 887 (Pa. 1904); *Paull v. Halferty*, 63 Pa. 46 (1870)). Slander requires that (1) a statement is false; (2) its publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity. *Skiff re Business, Inc. v. Buckingham Ridgeview, LP*, 991 A.2d 956, 964 (Pa. Super. Ct. 2010) (quoting *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 246 (2002)).

Shanni filed both the Fake Lien and a *lis pendens* on the Subject Property, specifically naming Biros as a party. Amended Complaint ¶¶ 94-99, 107-114, 367-380. She knew that both of these claims were false – because she knew that she had no claim against U Lock, she also knew that the judgment from the Wage Case, which underlay the Fake Lien and the *lis pendens*, was obtained through fraud. *Id*. at ¶¶368, 375-76. *See also U Lock*, 2024 Bankr. LEXIS 484 at *34-36. These actions falsely cast doubt on Biros's title to the Subject Property.  Moreover, Shanni knew that Biros, having spent funds in order to secure final judgment in her favor in the Quiet Title Action and secure title to the Subject Property, would be forced to expend further resources in order to protect that title against Shanni's and the other Defendants' new and false attacks. That is in fact what Biros had to do. Thus, this Court should deny Shanni's motion and direct her to answer this claim.[16]

---

[16] There does not appear to be any dispute that this claim, filed on February 22, 2023, is timely to the extent it complains about the Lis Pendens Proceeding that Shanni commenced on March 18, 2022. To any extent that this Court is concerned about the timeliness of this claim or the related Civil Conspiracy claim as they relate to the Fake Lien, Biros reserves her right to amend these counts to bring them within the discovery rule. *See, e.g., Fine v. Checchio*, 870 A.2d 850, 858-59 (Pa. 2005).

### b. Biros Has Pleaded a Conspiracy Claim Against All of the Defendants.

A plaintiff pleading a claim for Civil Conspiracy under Pennsylvania law must sufficiently allege that "two or more persons [have]combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." *S.V.B. Assocs. v. Lomb*, No. 2:19-cv-1575-RJC, 2020 U.S. Dist. LEXIS 179937, at \*25-26 (W.D. Pa. Sep. 30, 2020) (Colville, J.) (citing *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1978)).

In addition to the allegations that will, when proven, establish Slander of Title, Biros pleads facts more than sufficient to prove the existence of a combination or agreement that involves all of the Defendants:

- Shanni filed the Wage Case shortly after the Superior Court affirmed that Biros, not U Lock, owned the Subject Property. Amended Complaint ¶¶ 30, 45-53, 66.

- George and Kash, who controlled U Lock, had testified and provided discovery answers in the Quiet Title Action that were contrary to and inconsistent with Shanni's assertion that she had worked for U Lock. *Id.* at ¶¶ 62-65 & Ex. 8.

- Despite that actual knowledge and their record statements, George and Kash, advised by Roth, *see id*. at ¶¶ 79-80, declined to cause U Lock to answer Shanni's complaint in the Wage Case, and they let Shanni take a default judgment against U Lock. *Id.* at ¶¶77-79.

- On behalf of U Lock, controlled by George and Kash, Roth filed a motion and appeared in the Westmoreland Court to challenge that court's direction to deliver to Biros the deeds to the Subject Property. Roth did not argue in any way that U Lock should retain ownership of the Subject Property. *Id.* at ¶¶ 102-106.

- Shanni filed her *Lis Pendens* Proceeding the day after U Lock filed that motion. *Id.* at ¶ 107.

- After Shanni commenced the U Lock Bankruptcy, Roth delayed advising the Westmoreland Court of that proceeding until two minutes after Shanni both entered her appearance in the Quiet Title Action and filed an appeal in that action to the Superior Court. *Id.* at ¶¶ 166-173.

Defendants took these actions with malice and in order to harm Biros's interests. *See Thompson Coal*, 412 A.2d at 472. Each Defendant knew that Shanni had no legitimate claim

against U Lock when she filed the Wage Case. All Defendants knew that the resulting judgment was procured by fraud; none of them could have identified any legitimate business purpose in their actions to interfere with Biros's interests in the Subject Property. Shanni knew she had no basis to file the Fake Lien or her *lis pendens* against Biros and others. George, Kash, and Roth all knew that U Lock had nothing to gain from attacking the manner in which the Westmoreland Court directed that the Executors' Deeds be delivered to Biros, but they caused U Lock to make that attack anyway.

Finally, Biros has pleaded that she has incurred damages. *See* Amended Complaint ¶ 396. These damages include the expenses of attempting to clear these clouds from her title to the Subject Property. Thus, this Conspiracy claim should continue.

### 2. *Biros Has Pleaded All Necessary Elements of Her Direct and Aiding and Abetting Claims for Fraud.*

#### a. Biros Has Pleaded a Fraud Claim Against Shanni.

The elements of a claim for Fraud are familiar:

Fraudulent (or intentional) misrepresentation requires the plaintiff to prove six elements: (1) a representation; (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or reckless disregard as to whether it is true or false; (4) with the intent to mislead another person into relying on it; (5) justifiable reliance; and (6) an injury proximately caused by the reliance.

*Gregg v. Ameriprise Financial, Inc.*, 245 A.3d 637, 645-46 (Pa. 2021) (citing *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999)).

Biros has pleaded all of these elements. Consistent with the requirements of Fed. R. Civ. P. 9(b), Biros sets forth the who, what, when, and where of Shanni's false statements – Shanni's filing of her complaint in the Wage Case with its false allegations and her false testimony to this Court during the Wage Case Hearing that the allegations of her complaint were true. *See* Amended Complaint ¶¶ 399-400. Biros alleges that these statements were material to the

transaction at issue, *id.* at ¶ 401, and Shanni's complaint and sworn testimony were essential to her obtaining the judgment from this Court. The Fake Lien and Shanni's claim in the U Lock Bankruptcy flow directly from that judgment. Biros alleges that Shanni's statements were knowingly false, *id.* at ¶¶ 402-403, and Biros has identified several occasions, both during and since Shanni's claimed employment, in which Shanni and other Defendants have stated under oath that Shanni was not employed at all during that time. *See, e.g., id.* at ¶¶ 54-61. Biros has alleged that Shanni intended for this Court to rely on those statements. *See id.* at ¶ 404; *see also* Fed. R. Civ. P.9(b) (allowing for general allegations of intent and knowledge). Biros alleges that this Court acted reasonably in believing those statements. *Id.* at ¶ 405. *See also* 18 U.S.C. §§ 1503, 1621; Fed. R. Civ. P. 11. Biros has explained how she was injured by Shanni's false statements. Amended Complaint ¶¶ 406-409.

### b. Biros Has Pleaded Claims for Aiding and Abetting Against George, Kash, and Roth.

In *Marion v. Bryn Mawr Trust Co.*, 288 A.3d 76 (Pa. 2023), the Supreme Court of Pennsylvania recognized and delimited the elements of a claim for Aiding and Abetting Fraud. The Court recognized that a plaintiff must allege that the defendant has "actual knowledge" of the principal actor's fraud. *Id.* at 89. In doing so, that court looked to Section 876(b) of the Restatement (Second) of Torts. *Id.* at 90. *See also Stanco v. Selesky*, Civ. Action No. 3:22-cv-00573, 2023 U.S. Dist. LEXIS 47515, at *21 (M.D. Pa. Mar. 20, 2023) (recognizing *Marion* court's adoption of § 876(b)). Section 876 states in relevant part, "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself."

Biros pleads that each of George, Kash, and Roth knew that Shanni's statements to this Court in the Wage Case were false. George and Kash operated U Lock while Shanni claims to have worked there, and they all knew that Shanni had not done the work she claimed in her complaint or to which she testified at the Wage Case Hearing. Amended Complaint ¶¶ 17-18. Moreover, the Defendants' plan to generate the Fake Lien, for which the Wage Case was an early step, grew from the outcome in the Quiet Title Action, in which Roth had represented U Lock. *Id*. at ¶¶ 46-53. Roth continued to advise and appear for U Lock.

Under all of these circumstances and particularly in light of subsequent events, it is more than plausible that each of the Defendants encouraged and assisted Shanni. *See U Lock*, 2024 Bankr. LEXIS 484, at *45-46. Shanni's actions and statements prior to her filing the Wage Case make clear Shanni did not work for U Lock. George and Kash decided that U Lock would not respond to Shanni's complaint. Roth argued that the Subject Property should be transferred to Biros in a way that, while of no benefit to his client, might have exposed that property to Shanni's Fake Lien. Roth did not advise the Westmoreland Court of the U Lock Bankruptcy until – literally – two minutes after Shanni entered an appearance in the Quiet Title Action and filed her appeal to the Superior Court.

Finally, as discussed above, Biros was damaged by Shanni's untrue statements. To the extent that the other Defendants encouraged and assisted those statements, they are liable for those damages.

### 3. *Biros Has Pleaded All Necessary Elements of Her Direct and Conspiracy Claims for Abuse of Process.*

#### a. **Biros Has Pleaded a Claim for Abuse of Process Against Shanni.**

The elements of a cause of action for abuse of process are "that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process

was not designed; and (3) harm has been caused to the plaintiff." *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. 2002), quoting *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998) and *Rosen v. American Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. 1993).

Biros has successfully stated two distinct Abuse of Process claims and two accompanying conspiracy claims. In Count IX, Biros points to Shanni's filing her complaint in the Wage Case, the Fake Lien, the *Lis Pendens* Proceeding, the involuntary petition in the U Lock Bankruptcy estate, and an appeal to the Superior Court. Amended Complaint a ¶¶ 445-449. The *Lis Pendens* Action and Shanni's 2022 entry of her appearance in the Quiet Title Action and attempted appeal to the Superior Court are express uses of civil process against Biros. *See* Amended Complaint ¶¶ 107-112, 166-169 & Exs. 16, 23, & 24. Particularly in light of the Defendants' agreement about how to undo Biros's victory in the Quiet Title and attack her title to the Subject Property, Shanni's filing the Fake Lien was a clear abuse of legal process. *See id.* at ¶¶ 94-99.

More narrowly but similarly, in Count VII, Biros alleges that Shanni took the process from the Wage Case and improperly used it to support other, later filings.

Shanni did not, in any of these instances, use process for the purpose for which it was designed. In each instance, Shanni knew that her actions were premised on her own fraud in the Wage Case. None of the Westmoreland Court, the Bankruptcy Court, or this Court issued process to support anyone's efforts to make and benefit from fraudulent claims.

Finally, Biros has been damaged by Shanni's conduct. She has been forced to defend herself, her victory in the Quiet Title Action, and her interest in the Subject Property against all of Shanni's actions, and she has incurred expenses in connection with these efforts. Accordingly, she should be able to proceed with this claim.

**b. Biros Has Pleaded a Claim for Civil Conspiracy Against George, Kash, and Roth.**

As discussed immediately above, Biros has made out a claim of Abuse of Process relating to the filing of the Fake Lien, the filing of the *Lis Pendens* Proceeding, and the filing of the U Lock Bankruptcy Proceeding.

The analysis for the remaining elements of this claim as to all of the Defendants is virtually identical to the discussion, above, of Biros' claims for Civil Conspiracy for Slander of Title, and Biros incorporates that discussion here. For those same reasons, this claim should survive the Defendants' motions.

## <u>CONCLUSION</u>

Biros respectfully requests that, for the reasons stated above, this Court deny each of the Defendants' motions to dismiss and direct them to answer the claims against them. To any extent necessary, however, Biros respectfully requests that this Court grant her leave to amend her complaint to state her claims against the Defendants more fully.

<div style="margin-left:40%;">

Respectfully submitted,

BERNSTEIN-BURKLEY, P.C.

</div>

Dated September 16, 2024                By: */s/ Stuart C. Gaul, Jr.*
                                        Kirk B. Burkley, Esq. (PA. I.D. #89511)
                                        Stuart C. Gaul, Jr., Esq. (PA. I.D. #74529)
                                        601 Grant Street, 9th Floor
                                        Pittsburgh, PA  15219
                                        Telephone: (412) 456 – 8100
                                        Facsimile:  (412) 456 – 8135

                                        *Attorneys for Plaintiff, Christine Biros*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of September, 2024, a true and correct copy of this Omnibus Response of Plaintiff Christine Biros to Defendants' Motions to Dismiss was served on all parties via this Court's CM/ECF notification system.

<u>/s/ Stuart C. Gaul, Jr.</u>