IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTINE BIROS,                    )
                                    )    No. 2:23-297
                Plaintiff,          )
                                    )
        v.                          )    Judge Robert J. Colville
                                    )
SHANNI SNYDER, GEORGE SNYDER,       )
KASH SNYDER, and J. ALLEN ROTH,     )
                                    )
                Defendants.         )
                                    )

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court are four Motions to Dismiss (ECF Nos. 56, 58, 59, 60) filed by Defendants in this matter. Defendants move to dismiss with prejudice all counts in Plaintiff's Amended Complaint (ECF No. 49), arguing that Plaintiff has failed to state a claim upon which relief can be granted and that this case is barred under the doctrines of Unclean Hands and *res judicata* and because it amounts to an FLSA retaliation. The Court has jurisdiction to rule on this matter pursuant to 28 U.S.C. § 1331. The Motions have been fully briefed and are ripe for disposition.

I.      **Factual Background & Procedural History**

To provide some degree of clarity at the outset, the Court notes that the history of this matter involves numerous court proceedings, three of which are relevant to the Motions at issue: (1) is a suit in state court over the title of the plot of land at the center of this dispute (the "Title Case"), (2) is a wage dispute in this District that resulted in a default judgment awarding allegedly unpaid wages (the "Wage Case"), and (3) is an involuntary Bankruptcy case related to the company

1

at the center of this controversy (the "Bankruptcy Case").  In the Complaint and the RICO Case Statement (ECF No. 50)[1], Plaintiff sets forth the following factual allegations relevant to the Court's consideration of the Motions at issue:

On July 16, 2015, Plaintiff provided funding for the purchase of a plot of land at 14140 Route 30, North Huntington, PA 15642 (the "Property"), from the executors of four estates.  ECF No. 49 ⁋ 5.  After the purchase was complete, the four deeds for the property were executed in favor of "U Lock Inc."  *Id.* ⁋ 15.  On September 4, 2015, the corporation U Lock Inc. ("U Lock") was formed to operate a self-storage facility, including renting storage space to individuals who reside out-of-state, on the Property, under the auspices of Defendants George Snyder ("George") and Kash Snyder ("Kash").  *Id.* ⁋ 18; ECF No. 50 at 14.

On October 17, 2017, Plaintiff commenced the Title Case against U Lock and the four executors in the Court of Common Pleas of Westmoreland County, seeking, among other things, a declaratory judgment that she owned the property and relief quieting title to her.  ECF No. 49 ⁋ 20.  The court found that Plaintiff owned the property and that U Lock simply held legal title to the property in trust for Plaintiff's benefit.  *Id.* ⁋ 25.  U Lock's post-trial motions were denied.  *Id.* ⁋ 27.  On December 17, 2019, U Lock appealed, and the Superior Court affirmed the decision of the Court of Common Pleas (the "Superior Court Appeal").  *Id.* ⁋⁋ 29–30.  U Lock applied for re-argument.  *Id.* ⁋ 33.

On July 14, 2021, before the court ruled on U Lock's application for re-argument in the Title Case, Defendant Shanni Snyder ("Shanni"), sister to George and Kash, filed the Wage Case *pro se* against U Lock in this District under the Fair Labor Standards Act ("FLSA").  *Id.* ⁋⁋ 66–73.  Shanni claimed that she had been working for U Lock for seventy hours per week since

---

[1] "In a civil RICO case, the RICO case statement is part of the pleadings."  *Aluminium Bahrain B.S.C. v. Dahdaleh*, 17 F. Supp. 3d 461 (W.D. Pa. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))

January 1, 2016, without receiving the promised compensation, and sought $131,351 in unpaid wages.  *Id.*  ¶ 73.  U Lock did not file any response to Shanni's complaint and made no attempt to defend itself.  *Id.*  ¶ 77.  On October 18, 2021, this Court entered a default judgment against U Lock, awarding Shanni $263,104, which the court reiterated with an abstract of the judgment on December 14, 2021.  *Id.*  ¶ 89, 92.  On December 15, 2021, Shanni filed the abstract of judgment against U Lock in the judgment roll of the Westmoreland Court, thereby gaining a lien against the real property of U Lock.  *Id.*  ¶ 94.

On July 28, 2021, the Superior Court denied U Lock's application for re-argument in the Title Case.  *Id.*  ¶ 33.  On August 27, 2021, U Lock petitioned the Pennsylvania Supreme Court for allowance of appeal.  *Id.*  ¶ 34.  On January 19, 2022, the Pennsylvania Supreme Court denied the petition.  *Id.*  ¶ 35.  With all appeals exhausted, on January 20, 2022, the Court of Common Pleas issued an order in the Title Case, directing the parties to deliver to Plaintiff all deeds conveying title of the property to her (the "Deed Order").  *Id.*  ¶ 37.  On January 24, 2022, Plaintiff recorded the deeds conveying legal title to herself.  *Id.*  ¶¶ 38.

However, in March 2022, U Lock applied to the Pennsylvania Supreme Court to stay remand to the Court of Common Pleas, pending U Lock's request for a grant of *certiorari* from the United States Supreme Court.  *Id.*  ¶ 39.  Although the Court of Common Pleas had already issued the Deed Order, the Pennsylvania Supreme Court granted the application to stay the order and prevent remand to the Court of Common Pleas, providing U Lock with ninety days to complete its petition to the United States Supreme Court.  *Id.*  U Lock never did petition the United States Supreme Court.  *Id.*  ¶ 41.

Instead, on March 17, 2022, U Lock, through its attorney J. Allen Roth ("Roth"), filed with the Court of Common Pleas a petition to strike its January 20th Deed Order.  *Id.*  ¶ 102.  The petition

also asked the court to strike Plaintiff's recorded deed, and instead have the property conveyed to U Lock. *Id.* ¶ 104.

Then, on April 27, 2022, eight days after the Pennsylvania Supreme Court's ninety-day deadline for U Lock to petition the United States Supreme Court had passed, Shanni filed the Bankruptcy Case under Chapter 7 against U Lock, arguing that she was a creditor of the company and was owed $375,100. *Id.* ¶ 119.

On May 17, 2022, the Court of Common Pleas denied U Lock's motion to strike the Deed Order in the Title Case, and on May 19, 2022, Shanni filed a Notice of Appeal to the Superior Court from the Court of Common Pleas's decision in that matter, arguing that her judgment lien would be effectively destroyed if the judgment of the Court of Common Pleas was allowed to go forward. *Id.* ¶¶ 165–170. Just two minutes later, at the same Westmoreland Courthouse, Roth filed U Lock's notice of bankruptcy. *Id.* ¶ 172. On May 27, 2022, in the Bankruptcy Case, Shanni filed the judgment from this Court in the Wage Case as evidence of her claim against U Lock, which she asserted was secured by property. *Id.* ¶ 134.

Later, Plaintiff learned that this was not the first time Defendants and the Snyder family more broadly used the strength of the legal system to manipulate unsuspecting investors and gain improper possessory interest over properties that the investor had funded. *Id.* ¶¶ 227–230. In 1998, Defendants Shanni and Kash were involved in litigation over an investor's property, in which they used foreclosure, bankruptcy, automatic stay, and failure to defend, clouding the victim's quiet ownership of properties in Clairton, North Versailles, and Pittsburgh in litigation for years. *Id.* ¶¶ 231–163. Another similar series of events took place in 2011, in which Defendants Shanni and Kash were involved in using a bankruptcy court filing to circumvent the

effects of an automatic stay on an eviction pursuant to a writ of possession in favor of another party. *Id.* ¶¶ 287–305.  This case was also bogged down in litigation for many years.  *Id.*

On the belief that Plaintiff was targeted for fraud as part of a broader pattern of racketeering by Defendants, on February 26, 2023, Plaintiff brought claims in this District for civil Racketeer Influenced and Corrupt Organizations Act ("RICO Act") violations under 18 U.S.C. § 1962(c), RICO Act conspiracy under 18 U.S.C. § 1962(d), common law slander of title, civil conspiracy, fraud, aiding and abetting fraud, and abuse of process.  ECF No. 1.  Defendants filed their Motions to Dismiss, along with Briefs in Support, on April 24, 2023 (ECF No. 32), April 27, 2023 (ECF Nos. 34–35), and May 1, 2024 (ECF No. 36).  Plaintiff filed a Response to the Motions to Dismiss on June 6, 2023 (ECF No. 39).  On March 29, 2024, the Court entered a Memorandum Opinion (ECF No. 43) granting Defendants' Motions to Dismiss as to the federal law claims, not ruling on the state law claims, and granting Plaintiff leave to file an amended complaint.

On May 15, 2024, Plaintiff filed her Amended Complaint and RICO Case Statement, asserting the same claims and providing additional allegations of fact.  On July 17 and 18, 2024, Defendants filed their Motions to Dismiss along with briefs in support.  On September 16, 2024, Plaintiff filed a Response in Opposition to the Motions to Dismiss (ECF No. 65).  On October 21, 2024, Defendant Roth filed a Reply Brief (ECF No. 68).

## II.    Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits, but simply accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d

383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 554). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III.    Discussion

### A.  Unclean Hands Doctrine

Defendant Roth contends that as a threshold issue, the Court should dismiss this lawsuit under the equitable doctrine of unclean hands.  ECF No. 57 at 1.  As Defendant puts it, Plaintiff's conduct in the Bankruptcy Case was so egregious that her hands are fundamentally unclean, and she is therefore barred from seeking a remedy against Defendants.  Defendant cites numerous examples of activities that required the Bankruptcy Court to admonish and rebuke Plaintiff.  As Defendant concludes, "[Plaintiff] invites the Snyder defendants to file RICO counterclaim for the same identical shenanigans" because she "cannot distinguish herself and her misconduct from what she alleges Shanni Snyder did."  *Id*. at 7–8.[2]

---

[2] Defendant Roth stresses multiple times that "Biros moreless [sic] uses this case to reimburse her attorney fees in the bankruptcy" and that "this RICO litigation is just a continuation of her gripes in the bankruptcy court."  The Court does not read the record in quite the same way.  It seems that Plaintiff brings a straightforward claim to gain quiet title of the property she believes she is entitled to and the damages incurred by not having the property when she was entitled to it.  Further the quoted language above fails to materially advance the Unclean Hands Doctrine argument.

"He who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). The Unclean Hands Doctrine applies "for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication." *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933). In other words, there must be some nexus between the wrong the plaintiff is suing for and the plaintiff's unclean hands such that providing a remedy to the plaintiff would be inequitable. For instance, a plaintiff cannot sue for breach of contract if she too was found to be in breach. Ultimately, as the Court reviews the caselaw, the generic phrase "unclean hands" has far broader implications than the disputes to which courts have historically applied the Unclean Hands Doctrine. "Equity does not demand that its suitors shall have led blameless lives." *Loughran v. Loughran*, 292 U.S. 216, 229 (1934). In fact, it does not even demand that they act perfectly during the course of the litigation in the matter at hand. Instead, the Unclean Hands Doctrine emerges from the fact that as a practical matter, the remedies certain plaintiffs seek would not result in just equity.

In the *Keystone Driller* case, for instance, the petitioner had unclean hands as to a patent, thereby foreclosing it from bringing infringement claims on said patent. The United States Supreme Court found that the mere fact that the patent had previously been deemed valid was not enough to keep the petitioner's hands clean for equity purposes. The courts would not be upholding equity if they granted the improper holder of a patent relief on a patent claim.

In *Gaudiosi v. Mellon*, 269 F.2d 873 (3d Cir. 1959), the Third Circuit Court invoked the Unclean Hands Doctrine in a matter involving a proxy contest. The court found that when both sides of a proxy contest engaged in dirty dealings, one side, disappointed with the ultimate outcome, could not then sue the other for improper tactics. If anything, both parties were entitled

to the same relief from the other, and so dismissing the case leaves the matter more equitable than a court-imposed resolution would.

The case law directs that the Unclean Hands Doctrine applies when the plaintiff comes to equity with such unclean hands that what is sought is patently inequitable, not when the plaintiff has engaged in any improper act in the process of adjudicating the matter.  In the patent case, the Supreme Court ultimately found that but for unclean hands, there would be no controversy; there would be no patent to infringe.  And in the proxy war case, the Third Circuit Court found that had the plaintiff won the proxy contest, the defendant could just as easily be suing the plaintiff.

What does not emerge from the case law is a doctrine foreclosing equitable remedies to plaintiffs who have adjudicated their cases imperfectly or even intentionally improperly.  Courts have other means of remedying such transgressions.  Instead, the Unclean Hands Doctrine prevents a plaintiff from seeking a fundamentally inequitable remedy.

In the present matter, it appears to the Court that the phrase "unclean hands" is invoked to imply a far broader meaning than the Doctrine's true intent.  Reading the Complaint in a light most favorable to Plaintiff, there is no evidence that Plaintiff's hands are "unclean" as to her claim to the property.  Instead, Defendant Roth contends that at times throughout the various suits involved in this controversy, Plaintiff acted improperly.  While it may be the case that Plaintiff is no angel, there is no evidence that this controversy arises due to Plaintiff's illicit conduct or as easily from her conduct as it does from Defendants'.  In short, despite Defendants' contention, if Plaintiff's allegations are true, no facts have been introduced that would make relief for Plaintiff inequitable.[3]

---

[3] Let alone does the Court see a conceivable cause of action for RICO against Plaintiff based on the pleadings here  The Court makes no finding that Plaintiff has not engaged in a RICO against Defendants Snyder.  It is simply the case that neither Plaintiff's pleadings nor the Bankruptcy Court's admonishments of Plaintiff provide sufficient facts for the Court to find that Plaintiff is just as open to a RICO suit as Defendants.

The facts here simply do not analogize well to the caselaw on the Unclean Hands Doctrine, and it does not bar this matter from proceeding.

### B.  *Res judicata*

As a second threshold issue, Defendants move to dismiss this action on the theory that it is barred under the doctrine of *res judicata*.  They argue that Plaintiff cannot raise the issue of Shanni using allegedly fraudulent credit owed by U Lock as the basis for the Bankruptcy Case, because Plaintiff raised this matter in the Bankruptcy Case, and the Court nevertheless granted an Order of Relief in Shanni's favor.  ECF No. 57 at 20–22.  Plaintiff responds that she is not barred by *res judicata* because she was not a party to the bankruptcy proceeding and the order of relief was not a final judgment.  ECF No. 65 at 29–32

*Res judicata*, or claim preclusion, is designed to encourage efficient and fair litigation arising from a single set of circumstances.  *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999).  "[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Id.* (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998).  "The doctrine of *res judicata* bars not only claims that were brought in a previous action, but also claims that could have been brought."  *Duhaney v. Attn'y Gen. of the U.S.*, 621 F.3d 340, 347 (3d Cir. 2010).  The doctrine "protects litigants from the burden of relitigating an identical issue with the same party or his privy and promotes judicial economy by preventing needless litigation."  *In re Mullarkey*, 536 F.3d 215 (3d Cir. 2008) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 (1979)) (cleaned up).  To be barred under *res judicata*, a claim must have: (1) a final judgment on the merits in a prior suit (2) involving the same parties or their privies, and (3) a subsequent suit based on the same cause of action.  *Lubrizol*

*Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991) (citing *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984)).

As two previous courts have found regarding these very parties, Plaintiff is not U Lock and is not in privity with it. *In re U Lock, Inc.*, 2024 WL 4476492 (W.D. Pa. Oct. 11, 2024) (citing *In re Montgomery Ward, LLC*, 634 F.3d 732, 738–39 (3d Cir. 2011)); *In re U Lock, Inc.*, 2024 WL 878464 (Bankr. W.D. Pa. Feb. 29, 2024), *aff'd*, 2024 WL 4476492.  This Court agrees.  The Bankruptcy Case was initiated by Shanni against U Lock.  As such, Plaintiff was not a party to the Bankruptcy Case, and so the second element of *res judicata*, that the previous suit involved the same parties or their privies, has not been satisfied.  And although Plaintiff had the opportunity to raise this issue previously (although, again, not as a party to that litigation), the Court notes further those other courts have found on multiple occasions that Shanni's initiation of the Bankruptcy Case was part of a larger fraud that the court did not at first recognize.  *In re U Lock, Inc.*, 663 B.R. 30, at *36 (Bankr. W.D. Pa. 2024) ("[T]he involuntary petition was part of a scheme to continue the litigation and recover the Property through an avoidance action. As the [c]ourt later found, Ms. Snyder fraudulently obtained a default judgment against U Lock to cloud the title to the Property and establish a claim to commence the involuntary."); *In re U Lock*, 2024 WL 878464, at *1 ("[Shanni] lied. First to the federal district court who awarded the judgment, and then to this [c]ourt by commencing an involuntary petition against U Lock based on a fraudulent claim.").  On similar preclusion grounds, Defendants might be barred from raising *res judicata*, because two previous courts have already advised that Plaintiff was not a party to the litigation at issue in the previous case.  The Court finds that this matter is not precluded under *res judicata*.

### C.  FLSA Retaliation

Defendant Shanni Snyder argues that allowing this matter to move forward against her would be improper, because it amounts to a retaliation in contravention of the FLSA. Shanni asserts that she was an employee of Plaintiff, and is therefore protected under the FLSA from retaliation for initiating legal action against it.

The FLSA forbids employers from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA. 29 U.S.C. § 215(a)(3). An FLSA retaliation has occurred when (1) an employee "engaged in protected activity, (2) the employer took an adverse employment action against him, and (3) there was a causal link between the plaintiff's protected action and employer's adverse action." *Jones v. Amerihealth Caritas*, 95 F. Supp. 3d 807, 814 (E.D. Pa. 2015) (quoting *Scholly v. JMK Plastering, Inc.*, 2008 WL 2579729, at *3 (E.D. Pa. June 25, 2008)).

"To start, the Court observes that Ms. Snyder offered only cursory arguments on the applicability of the FLSA." *Id.* at *12. As the Bankruptcy Court found (and the District Court affirmed) respecting Shanni's wage claim against Plaintiff, Shanni was not an employee of U Lock. *In re U Lock*, 2024 WL 4476492, at *8 ("Ms. Snyder argues that the Bankruptcy Court should have credited her own testimony and that of her brothers and wrongly concluded that she was not an employee covered by the FLSA. . . . [T]his Court . . . will affirm the Bankruptcy Court's decision."). This Court agrees with the reasoned and informed analysis of those courts. The FLSA does not bar this action from moving forward.

### D.  SLAPP

Defendant George Snyder's Motion to Dismiss includes allegations that this action is a Strategic Lawsuit Against Public Participation ("SLAPP"). ECF No. 58. The crux of the argument is distilled in the final paragraph of George's short brief in support:

> This case needs to be dismissed as not stating a claim and for being vindictively mean and flapdoodly. It's a Strategic Lawsuit Against Public Participation. It's not a proper RICO. There's no jurisdiction. It doesn't state a claim. It's FLAPDOODLE!

*Id.* at 3.

The Court finds that to the extent that the Motion offers any argument that this is a SLAPP suit, it is as conclusory as such an argument can get. The rest of the brief never touches on any of the issues that enter into a SLAPP analysis, or even baldly allege that the elements of a SLAPP have been met.

The Court notes that all controversies must be adjudicated on the merits of the case presented, even if litigants show contempt for the legal process. The Court invites such spirited briefing, but is confident that certain parties could present their cases with more legal citations, reasoned analysis, and elegance.

### E.  Claim I – RICO Act Claim Against Shanni Snyder

Under the RICO Act, it is unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962. *See Dongelewicz v. PNC Bank Nat'l. Ass'n*, 104 Fed. Appx. 811, 816–817 (3d Cir. 2004) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). To succeed in a cause of action for a RICO Act violation under § 1962, a plaintiff must establish that the defendant is (1) a person (2) who is associated with an enterprise engaged in interstate commerce (3) who conducted the affairs of said enterprise (4) through a pattern (5) of

racketeering activity. *Id.* 18 U.S.C. § 1962(c) provides that "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

### 1. Person & Enterprise

Plaintiff alleges that Shanni acted as a "person" associated with an association-in-fact that functioned as an "enterprise." ECF No. 1 ⁋ 168. She "conducted the affairs of the enterprise" by scheming to obtain, on behalf of herself and her confederates, a superior interest in the property that rightfully belonged to Plaintiff. *Id.* ⁋ 168. Once Defendants realized that they were unlikely to win the Title Case, they used a "pattern" of procedural delay tactics to allow Shanni to open the Wage Case, in which she lied about working for U Lock, with the intent of having George and Kash not dispute the case, in order to force a fraudulent default judgment that would grant Shanni a lien against the property. *Id.* ⁋ 171. She then commenced the Bankruptcy Case to illicitly supersede the state court decisions in the Title Case. *Id.*

Shanni is a "person" under the RICO Act meaning, in that she is a natural person. *See generally Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001). Further, the Complaint assigns her a role in facilitating the frauds alleged.

An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "[A] plaintiff must demonstrate the existence of an 'enterprise,' functioning as an independent, free-standing association-in-fact, which 'engages in a pattern of activity which differs from the usual and daily activities of its members.'" *Ferguson v. Moeller*, 2016 WL

1106609, at *5 (W.D. Pa. Mar. 22, 2016) (quoting *In re Ins. Brokerage Antitrust Litig.*, 2006 WL 2850607, at *17 (D.N.J. Oct. 3, 2006)).

Plaintiff contends that the Snyder family is an enterprise that has operated similar projects for some time. Plaintiff cites to several Snyder business ventures going back decades that took roughly the same fraudulent shape as the fraud alleged in this case. ECF No. 49 ¶¶ 231–305. The Snyders, whether as a corporation or as a collection of individuals, operate this enterprise. Under Plaintiff's reading, this association functions as an enterprise for RICO Act purposes, and Shanni is a person associated with the enterprise.

The Court agrees. The facts before the Court, even those proffered by Defendants, illustrate that the Snyders would have functioned and operated as an association-in-fact enterprise regardless of whether they had engaged in the alleged frauds against Plaintiff. The U.S. Supreme Court has outlined the features of an association-in-fact enterprise: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

"Purpose" is defined as a "venture," "undertaking," or "project." *Id.* The purpose of the association of the Snyder Defendants is, allegedly, to lure various unsuspecting investors into a business venture and gain undue property rights over the victims' investments. Under the standard stressed by Justice Alito in *Boyle*, the statute is intentionally broad to include just such associations. People tied together by "interpersonal relationships and a common interest" meet the threshold as the sort of association the statute targets. *Id.* The Snyders, as described in the Complaint, meet this standard. As alleged, they are siblings engaged in, or employed by, a family racketeering business, cooperating to meet the needs of this undertaking.

The reason for the Supreme Court's longevity requirement is practical, as "the offense proscribed by [the RICO Act] demands proof that the enterprise had 'affairs' of sufficient duration to permit an associate to 'participate' in those affairs through 'a pattern of racketeering activity.'" *Id*. Thus, the longevity requirement merely demands that the enterprise have enough time to carry out the racketeering activities alleged, not that a corporate or business enterprise meet long-term economic goals. The Court will address the racketeering element, but, in any event, the timeline necessary to carry out the goals alleged to be those of the enterprise has clearly transpired, as the Complaint alleges past successful frauds. In the instant matter, without the parties' drawn-out litigation, the alleged fraud would be complete, too. The Court considers this element met.

The RICO Act requires the "person" and the "enterprise" to be distinct. The enterprise cannot simply be "the same 'person' referred to by a different name." *Cedric Kushner*, 533 U.S. at 158. In other words, if a defendant were regularly engaging in racketeering, that alone could make her a person engaging in crimes, but not necessarily a person associated with an enterprise. In such an instance, a plaintiff cannot simply identify the defendant as both a person and an enterprise for RICO Act purposes, even if this hypothetical defendant does own, operate, and function as the sole employee of a legally recognized business enterprise. "[A] natural person . . . is distinct from [a] corporation, . . . a legally different entity with different rights and responsibilities due to its different legal status." *Id*. at 163. Identifying a "person" as an operator within an "enterprise," as opposed to simply a standalone actor, can be complex, but is simplest when the person is corrupting a seemingly legitimate enterprise or using the front of an enterprise to lend legitimacy to dishonest activities. In *Cedric Kushner*, Justice Breyer, writing for a unanimous Supreme Court, outlines the fundamental purpose of the RICO Act. "RICO both protects a legitimate 'enterprise' from those who would use unlawful acts to victimize it, and also

protects the public from those who would unlawfully use an 'enterprise' (whether legitimate or illegitimate) as a 'vehicle' through which 'unlawful activity is committed.'" *Id*. at 164 (citing *United States v. Turkette*, 452 U.S. 576, 591 (1981), *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 259 (1994)) (cleaned up). In the instant case, as described in the Complaint, Shanni falls into this simplest category for identifying the persons and enterprises. The Complaint alleges that Shanni abused the supposed respectability of the Snyder family and the various real estate deals that it operated in the past to lure unsuspecting investors into an illicit trap. For this Motion's purpose, Plaintiff has properly alleged that Shanni is associated with an enterprise and conducts the affairs of the enterprise.

### 2.  Interstate Commerce

To state a claim for RICO, a plaintiff must also show that the enterprise affects interstate commerce. "The statute requires that the activity of the enterprise, not each predicate act of racketeering, must have some affect on interstate commerce." *Chambers Dev. Co. v. Browning-Ferris Indus.*, 590 F. Supp. 1528 (W.D. Pa. 1984) (citing *United States v. Rone*, 598 F.2d 564, 573 (9th Cir. 1979), *cert. denied* 445 U.S. 946 (1980), and cases cited therein).

In the instant case, Plaintiff does not adequately allege that the enterprise is involved in interstate commerce. Plaintiff does refer to U Lock providing storage space to out of state customers. This appears to be the only nexus to foreign or interstate commerce. However, the fact that a business operated by Defendants provided an in-state service to residents of another state does not, without more, mean that the enterprise operates in or affects foreign or interstate commerce. The interstate commerce requirement is not properly pled and is therefore not met.

### 3.  Pattern

The Supreme Court has advised multiple times, including in a broadly cited footnote in *Sedima*, that while two acts are necessary to establish a pattern, they may not be sufficient. 473 U.S. at n.14 (1985). "The legislative history supports the view that two isolated acts of racketeering do not constitute a pattern. As the Senate Report explained: 'The target of [the RICO Act] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern.'" *Id.* (quoting S.Rep. No. 91-617, p. 158 (1969)). The Supreme Court has found that "[p]redicate acts are related" when they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)). However, as Justice Brennan noted, in dicta, "[t]he legislative history . . . shows that Congress indeed had a fairly flexible concept of a pattern in mind." *Id.* at 239. What is needed is a showing "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *Id.* In other words, the "pattern" is formed when two or more events, when accounted for together, signal that the defendant poses on ongoing threat, or what the Supreme Court terms "continuity."

Continuity is "both a closed-and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. "The clear implication of this language is that the ambit of RICO may encompass a 'legitimate' businessman who regularly conducts his business through illegitimate means, that is, who repeatedly defrauds those with whom he deals and in the process commits predicate acts . . . as a means of accomplishing his scheme." *Ferguson*, 2016 WL 1106609, at *5.

As the Court alluded to in its previous memorandum opinion in this matter (ECF No. 43), if the allegation against Defendants is that they saw an opportunity to exploit Plaintiff and took it, that would not amount to a RICO. In the Complaint, however, Plaintiff alleges that Defendants' crimes go back decades with multiple victims in a similar model of abuse and criminality, whereby they engage in litigation to improperly "prevent innocent parties from taking possession of or title to their property." ECF No. 49 ⁋ 227. Reading the pleadings in a light most favorable to Plaintiff, the Court sees allegations of an adequate threat of continuity. There is a clear pattern.

### 4. Racketeering Activity

A "pattern," as the term is used in the RICO Act, also requires the commission of at least two predicate acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5). The statute provides a list of crimes that constitute "racketeering activity," including wire fraud, obstruction of justice, and title 11 fraud. The predicate acts alleged in this matter include wire fraud, obstruction of justice, and title 11 fraud. *Id.* ⁋⁋ 334–340.

Under 18 U.S.C. § 1343, wire fraud is "any scheme or artifice to defraud . . . transmitted by means of wire . . . in interstate or foreign commerce." "The federal wire fraud statute . . . requires interstate use of the wire." *Puricelli v. Est. of Bachman*, 1995 WL 447474, at *3 (E.D. Pa., July 27, 1995), *aff'd.*, 111 F.3d 127 (3d Cir. 1997). "Since *intrastate* use of the wire for fraud cannot constitute wire fraud, it follows that these same acts cannot serve as predicate acts in a RICO complaint." *Id.* (emphasis added).

Plaintiff describes, with the requisite particularity under Federal Rules of Civil Procedure 9(b), two incidents involving that could conceivably constitute wires fraud under 18 U.S.C. § 1343, in that they involved wires and were in furtherance of the alleged fraud against Plaintiff. On July 14, 2021, Defendant Shanni used the internet to commence the Wage Case. And on August 26,

2022, Shanni coordinated with George to use the internet to file a Proof of Claim in the Bankruptcy Case. Plaintiff describes the date of these events and how they relate to the broader fraud. However, these wires were intrastate, and therefore cannot be the racketeering activity required under RICO.

To state a claim for obstruction of justice under 18 U.S.C. § 1503, a plaintiff must show that the defendant corruptly endeavored to influence an officer in a court of the United States in the discharge of his duty. Here, Plaintiff claims that Shanni's alleged lies to various courts in order to facilitate the frauds against Plaintiff amount to corrupt influence. The Third Circuit Court has found that false affidavits, perjury, or other actions that amount to misleading or lying to the courts do not qualify as "corrupt" under § 1503, explaining more specifically to § 1962 that "we have never recognized obstruction of justice as a viable RICO predicate except in cases involving witness intimidation." *CollegeSource, Inc. v. AcademyOne, Inc.*, 2015 WL 469041, at *7 (3d Cir. Feb.5, 2015). The United States Supreme Court has also found that the statutory term "corruptly" involves bribery. *Snyder v. United States*, 603 U.S. 1, 18 (2024). Plaintiff alleges no witness tampering or bribery, and so Shanni's actions respecting the courts cannot be the racketeering activity required under RICO.

§ 1961 qualifies "any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title)" as racketeering activity for RICO purposes. 18 U.S.C. § 1961(1). Section 157 makes it a crime when a person, in "[devising] or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so[,] (1) files a petition under title 11, including a fraudulent involuntary petition under section 303 of such title; (2) files a document in a proceeding under title 11; or (3) makes a false or fraudulent representation, claim, or promise concerning or in relation to a

proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title." In this case, Plaintiff alleges two predicate acts of Title 11 fraud. First, Shanni filed the Bankruptcy Case against U Lock, an involuntary under Title 11. Second, Shanni filed her Proof of Claim as a secured creditor. Both of these acts expressly cannot serve as the predicate acts of racketeering in a RICO action, per § 1961(1), as they are covered in subsections (1) and (3) of Section 157. The actions Plaintiff claims Shanni took in the Bankruptcy Case cannot be the racketeering activity required under RICO. Accordingly, the racketeering activity element of a RICO Act claim has not been met.

### 5. Causation

To prevail on a RICO claim, a plaintiff must show that the RICO was the proximate cause of the harm she sustained. *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258 (1992). The injuries alleged by Plaintiff are deprivation of her lawful right to title to, and ability to use, her property, the resulting economic harm from lack of commercial development on the property, and the ultimate and ongoing cost of defending her property rights from illicit methods of depriving her of it.

It is hard to imagine a more simple and direct way of showcasing proximate causation than how Plaintiff alleges the cause and effect here. In a chapter-and-verse manner, Plaintiff asserts Shanni's coordinated plan to deprive her of the property, the activities that ultimately deprived Plaintiff of her property, and how those actions deprived Plaintiff of her property. Shanni and her collaborators allegedly used the machinery of the judicial system for the purpose of illicitly gaining a superior possessory interest in the property, and they succeeded, depriving Plaintiff of her right to the property and leading to commercial losses and attorneys' fees.

The Court is cautious about using attorneys' fees to establish RICO Act injury, as doing so would render this element of the cause of action virtually useless. On such a theory, most plaintiffs would satisfy the injury requirement in RICO actions simply by virtue of filing the lawsuit. While other courts have, in certain cases, established RICO Act injury based on attorneys' fees, this Court is satisfied that, contrary to Defendants' contentions, this matter does not appear to boil down to merely recouping attorneys' fees, and so such an analysis at the Motion to Dismiss stage would be unnecessary. The Complaint alleges actual deprivation of property and, by extension, commercial losses. These losses and their alleged causes satisfy the causation requirement.

The Court finds that the Complaint does not properly assert the existence of an enterprise engaged in interstate commerce or the presence of racketeering activity as required for a viable RICO Act claim. Accordingly, as to the RICO Act claim, the Court will grant Defendants' Motions to Dismiss.

### F. Count II – RICO Conspiracy

Plaintiff also brings a claim for RICO Act Conspiracy under § 1962(d). Under 18 U.S.C. § 1962(d), it is unlawful for any person to conspire to violate subsections (a), (b), or (c). To state a claim under § 1962(d), a plaintiff must allege that the members of the conspiracy had: (1) knowledge of the corrupt enterprise's activities and (2) agreement to facilitate those activities. *Salinas v. United States*, 522 U.S. 52, 66 (1997); *Rose v. Bartle*, 811 F.2d 331, 366 (3d Cir.1989). RICO Conspiracy does not require an "overt act or specific act" and is therefore "even more comprehensive than the general conspiracy provision [in] § 371, since it contains no requirement of an overt or specific act to effect the conspiracy's object." *Salinas*, 522 U.S. at 63 (1997). "The partners in the criminal plan must agree to pursue the same criminal objective . . . even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense."

*Id*. at 63–64. "Although mere inferences from the complaint are inadequate to establish the necessary factual basis . . . a court may look to any 'factual allegations of particular acts' within the complaint as a whole incorporated by the conspiracy claim to provide this basis." *Rose*, 871 F.2d at 336 (citations omitted).

And indeed, the narrative spun in the Complaint does a compelling job of asserting allegations, which, if proven, would support a finding that each Defendant knowingly conspired with the others to meet the broader illicit goal. For example, Plaintiff alleges, *inter alia*, that Shanni, advised by Roth, brought a bogus wage claim against her own family's business, and that her brothers, George and Kash, in coordination with Shanni and Roth, refused to defend the case, thereby granting a Snyder family member a lien on a property that a court had already ruled belonged to Plaintiff. If these facts are true, they would seem to amount to a transparently coordinated maneuver to carry out a fraud against Plaintiff.

However, although RICO conspiracy does not require an overt act, the conspiracy itself must be a plan to conduct a series of events that amount to racketeering activity. Because the Court has found that Plaintiff has failed to allege racketeering activity, the RICO conspiracy claim cannot move forward either. As to the RICO conspiracy claim, the Court will grant Defendants' Motions to Dismiss.

### G. The Remaining Counts

Plaintiff's remaining claims are brought under Pennsylvania state law. "Federal courts are courts of limited jurisdiction." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701 (1982). "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or

controversy under Article III of the United States Constitution." 28 U.S.C.A. § 1367(a). A district court may, however, decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.A. § 1367(c)(3). In deciding whether to decline to exercise supplemental jurisdiction, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc. v. Delaware Cty., Pa.*, 983 F.2d 1277, 1284 (3d Cir. 1993) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

Because the RICO Act claims were the sole jurisdictional basis that brought this action to this District, the Court finds it premature to make any findings related to the remaining state claims without the presence of a federal question before the Court. The factors of judicial economy, convenience, fairness, and comity all weigh in favor of this Court declining to exercise supplemental jurisdiction without conviction that there is a claim respecting federal law to which the remaining state claims are ancillary. Accordingly, the court declines to exercise supplemental jurisdiction over the state claims.

## IV.    Conclusion

For the reasons discussed above, as to Counts I and II (§ 1962 RICO and RICO Conspiracy), the Court will grant Defendants' Motions to Dismiss. Plaintiff's RICO Act and RICO Act Conspiracy claims will be dismissed with prejudice. The state law claims will be dismissed without prejudice to allow Plaintiff to pursue the same in state court. An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*_____
Robert J. Colville

24

United States District Judge

DATED: March 31, 2025

cc: All counsel of record