**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF PENNSYLVANIA**

CHRISTINE BIROS,

Plaintiff,

Civil Action No. 2:23-cv-000297-RJC

v.

SHANNI SNYDER, GEORGE SNYDER,
KASH SNYDER, and J. ALLEN ROTH,

Defendants.

**JURY TRIAL DEMANDED**

**SUPPLEMENTAL RESPONSE OF PLAINTIFF CHRISTINE BIROS**
**TO MOTION OF DEFENDANT KASH SNYDER**
**TO DISMISS AMENDED COMPLAINT**


BERNSTEIN-BURKLEY, P.C.

Kirk B. Burkley, Esq. (PA. I.D. #89511)
Stuart C. Gaul, Jr., Esq. (PA. I.D. #74529)
601 Grant Street, 9th Floor
Pittsburgh, PA 15219
Telephone: (412) 456 – 8100
Facsimile: (412) 456 – 8135

*Attorneys for Plaintiff, Christine Biros*

This Court should deny Defendant Kash Snyder's motion to dismiss the Amended Complaint in this action. That pleading fully sets forth all elements of Biros's claims against Kash under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.*, ("RICO" or, the "Act") and under state law. In particular, Biros's claim alleges racketeering activity and survives the challenges that the U.S. Court of Appeals for the Third Circuit (the "Third Circuit") has highlighted here.

## BACKGROUND

### A. History of This Action

#### *1. Biros's Complaint and This Court's Original Ruling*

Biros filed her complaint on February 22, 2023. ***See generally Doc. 1.*** She looked to RICO section 1964(c), 18 U.S.C. § 1964 (c), and asserted that Kash's sister Shanni Snyder had violated RICO section 1962(c), 18 U.S.C. § 1962 (c). ***A.C.* ¶¶ *166-91.***[1] Biros alleged that Shanni, acting as part of the "Snyder Family Enterprise" (alternatively, the "Enterprise"), had caused damage to her through the "Fake Lien Scheme." Biros further alleged that all Defendants—including Kash, his brother George, and J. Allen Roth, who was counsel to U Lock, Inc., a business that Kash and George controlled—were liable to her for their violation of the conspiracy provisions of RICO section 1962(d), 18 U.S.C. § 1962 (d). ***A.C.* ¶¶ *192-222.*** She also alleged several state-law claims. ***Doc. 1 at* ¶¶ *223-96.***

On March 29, 2024, this Court granted the Defendants' motions to dismiss Biros's RICO claims. ***Doc. 44***. This Court explained that it had granted the motions because it was "not convinced that there exists an 'enterprise,' which must have a broader function than simply to

---

[1] References to "***A.C.***" are to the corresponding paragraphs of and exhibits to Biros's Amended Complaint. In addition, Biros summarized the allegations of that pleading more fully in her original response to the Defendants' motions to dismiss. ***Doc. 65 at 1-13.***

defraud Plaintiff." ***Doc. 43 at p.8.*** Because this Court did "not necessarily find the RICO Act argument to be futile," it gave Biros leave to amend her complaint to attempt to state a viable RICO claim. ***Id. at p.9. See also Doc. 44.***

***2. <u>Biros's Amended Complaint</u>***

In her Amended Complaint, Biros added more than 100 paragraphs concerning the Snyder Family Enterprise. ***A.C. ¶¶ 227-305, 307-333, 350.*** She also included descriptions of events that had occurred in the Bankruptcy Case since she filed her original complaint. ***A.C. ¶¶ 179-226.*** She added a count against Shanni for abuse of process and a count against all Defendants for the related civil conspiracy, ***A.C. ¶¶ 443-460,*** but otherwise reiterated her state-law claims. ***A.C. ¶¶ 364-442.***

The Defendants moved to dismiss the Amended Complaint. ***Docs. 56-60***. Kash's motion was a pdf of the brief that Roth had filed in support of his motion, but edited to identify Kash as the filer. ***Doc. 60.***

***3. <u>This Court's Order and Judgment</u>***

This Court granted the Defendants' motions on March 31, 2025. As noted above, it dismissed Biros's RICO claims with prejudice and dismissed her claims arising under Pennsylvania law without prejudice because it declined to exercise jurisdiction over them. ***Docs. 69-71***.

Looking to the issues it had identified in its earlier opinion, it held, "Plaintiff has properly alleged that Shanni is associated with an enterprise and conducts the affairs of the enterprise." ***Doc. 69 at 17.*** It also identified several other requirements for which, it held, Biros had met her pleading burden. ***Id. at 14-19, 21-22.***

This Court then held that the RICO claims were deficient in two respects not previously addressed. First, it held that Biros had not pleaded that the Snyder Family Enterprise had

engaged in interstate commerce. ***Id. at 17.*** And, while this Court recognized that Biros described the Enterprise's having engaged in a pattern of activity, it asserted that this pattern had not sufficiently included "racketeering activity" as defined in RICO. ***Id. at 19-21.*** This Court stated that, on those bases, it would dismiss Biros's RICO section 1962(a) claims against Shanni.

Turning to Biros's conspiracy claims under section 1964(d), this Court held that "the narrative spun in the Complaint does a compelling job of asserting allegations, which, if proven, would support a finding that each Defendant knowingly conspired with the others to meet the broader illicit goal." ***Id. at 23.*** However, it dismissed those claims for the same reasons it had identified for the direct claims against Shanni. ***Id.***

This Court dismissed Biros's RICO claims with prejudice. It also declined to exercise jurisdiction over her claims arising under Pennsylvania law and dismissed them without prejudice. ***Id.***

**B. Appeal in the Third Circuit and on Remand[2]**

In an unpublished memorandum decision of April 8, 2026, the Third Circuit reversed this Court's decision and remanded this action to this Court for further proceedings. ***Doc. 77-2 at p.4***. In remanding, that court directed this Court to determine whether the Amended Complaint describes racketeering activity and to address certain additional issues before requiring the Defendants to answer Biros's complaint:

> But we note that, on remand, the District Court should consider in the first instance several key issues raised here, including whether litigation activities alone can suffice as RICO predicate acts, *cf. Kim v. Kimm*, 884 F.3d 98, 103-05 (2d Cir. 2018); whether 18 U.S.C. § 152 can serve as a RICO predicate; and whether causing a delay in acquiring title to property can constitute a RICO injury.

[2] A true and correct copy of the brief that Kash and George filed jointly with the Third Circuit is attached to this brief as Exhibit 1.

***Doc. 77-2 at p.4 n.5***.

This Court then directed Biros to file individual responses to each Defendant's motion to dismiss. ***Doc. 76.***

**C. <u>Other Developments of Record Since Biros's Filing of the Amended Complaint</u>**

Subsequent to Biros's filing the Amended Complaint, both this Court and the Third Circuit affirmed the Bankruptcy Court's decision. *See In re U Lock*, Nos. 24-1842 & 24-3134. 2025 U.S. App. LEXIS 25253 (3d Cir. Sept. 25, 2025); *In re U Lock*, Civ. A. No. 24-478, 2024 U.S. Dist. LEXIS 185882 (W.D. Pa. Oct. 11, 2024). Biros also prevailed in the Defendants' four other appeals to the Third Circuit from the Bankruptcy Case.

## <u>ARGUMENT</u>[3]

**A. <u>This Court's Previous Rejections of Roth's Arguments Are the Law of the Case.</u>**

There is no occasion for this Court to revisit the issues it has already decided. "'[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' The doctrine 'promotes the finality and efficiency of the judicial process by "protecting against the agitation of settled issues."'" *Noell v. St. Paul Mercury Ins. Co*., Case No. 2:23-CV-01625-MJH, 2023 U.S. Dist. LEXIS 171915, at *3 (W.D. Pa. Sept. 26, 2023) (quoting *In re Cont'l Airlines, Inc*., 279 F.3d 226, 233 (3d Cir. 2002)).

While the Third Circuit clearly directed this Court to consider various issues "in the first instance," it did not direct (or even encourage) this Court to revisit the questions that this Court has already decided in Biros's favor. ***See Doc. 77-2 at p.4 & n.5***. This Court has already looked to Biros's pleading and held, under the standard appropriate to this motion, that Shanni was a "person" within the meaning of 18 U.S.C. §§ 1961 and 1962(c), ***Doc. 69 at p.14***; that the Snyder

[3] This Court has correctly identified the standard to be applied to this motion. ***Doc. 69 at 5-7***.

Family Enterprise is an "enterprise" pursuant to those same sections, ***id. at pp. 14-16***; that this "person" and this "enterprise" are sufficiently distinct, ***id. at pp. 16-17***; that the Enterprise has operated in a sufficiently regular manner over a sufficiently long time period to satisfy § 1962(c), ***id. at pp. 17-19***; that Biros has adequately alleged that Shanni engaged in all elements of wire fraud under 18 U.S.C. § 1343 except for interstate activity, ***id. at pp. 19-20***; and that Shanni's actions here caused injury to Biros, ***id. at pp. 21-22***. Those issues are resolved, and this Court need not revisit them here.

Similarly, "[i]t is axiomatic that on remand for further proceedings after [a] decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." *Bankers Trust Co. v. Bethlehem Steel Corp*., 761 F.2d 943, 949 (3d Cir. 1985), quoted in *EEOC v. Kronos*, Inc., 694 F.3d 351, 361 (3d Cir. 2012). Accordingly, this Court should not reexamine the Third Circuit's holdings that Biros alleged the Snyder Family Enterprise's participation in interstate commerce and that Biros pleaded the interstate commerce requirement of her allegation of wire fraud as a predicate act. ***Doc. 77-2 at pp. 3-4***. [4]

### B. <u>The Questions to Which the Third Circuit Pointed Do Not Foreclose Biros's RICO Claims.</u>

As noted above, the Third Circuit expressly identified three issues concerning Biros's RICO claims that it wanted this Court to resolve "in the first instance." ***Doc. 77-2 at p.4 n.5***. For each of those questions, the answer is consistent with allowing Biros to proceed.

---

[4] Although a court can reconsider a previously decided issue if extraordinary circumstances exist, "such as if new evidence becomes available, a supervening law has been introduced, or the prior decision was 'clearly erroneous and would create manifest injustice,'" *Walker v. Coffey*, 956 F.3d 163, 170 (3d Cir. 2020) (quoting *In re City of Phila. Litig*., 158 F.3d 711, 718 (3d Cir. 1998)), none of those circumstances are present here. The Amended Complaint has not changed since this Court's prior ruling, and there have been no intervening changes in the law.

### 1. ***A Pattern of Litigation Activities of Sufficient Pattern and Longevity Can Suffice as RICO Predicate Acts.***

In *Kim v. Kimm*, to which the Third Circuit directed this Court, the U.S. Court of Appeals for the Second Circuit reiterated the longstanding principle that *ad hoc* actions or conspiracy cannot amount to a viable cause of action under RICO:

> We decline to reach the issue of whether all RICO actions based on litigation activity are categorically meritless. We conclude only that where, as here, a plaintiff alleges that a defendant engaged in a single frivolous, fraudulent, or baseless lawsuit, such litigation activity alone cannot constitute a viable RICO predicate act.

884 F.3d 98, 105 (2d Cir. 2018). In *Kim*, a defendant from an earlier action sought to assert RICO claims against the earlier plaintiff and its principals and attorneys. The new plaintiff alleged that his opponents' conduct during the earlier action had included obstruction of justice, mail fraud, and wire fraud. *Id*. at 101-02. The new plaintiff did not argue that any of the new defendants' conduct outside of that earlier litigation supported his RICO claim. *Id*. at 102 n.1.

This Court is no stranger to the principle that underlies the *Kim* court's holding. This Court relied on it when it dismissed Biros's original complaint without prejudice. There, this Court was clear that Biros needed to allege that the Snyder Family Enterprise had some existence beyond merely its attempts to take her real property (the "<u>Subject Property</u>") from her. ***Doc. 43 at p.8*** ("Here, Plaintiff does not allege the existence of a broader criminal, or other intended, enterprise that she happened to fall victim to.").

The critical difference from *Kim*, of course, is that, in the Amended Complaint, Biros met this Court's demand. Biros pleaded that, far from the sort of *ad hoc* litigation conduct that the *Kim* court rejected as a basis for a RICO claim, the Enterprise's actions here mirrored a pattern of conduct that had continued for years:

- Starting in 1988 and into the 1990s, the "Blue Moon" Scheme involved fraudulent litigation tactics in an effort to deprive Oxford Development Co. of its rightful

interest in the Blue Moon Motel property in Monroeville, Pennsylvania that Enterprise members had sold to it. Those members later sued Oxford Development and others, claiming a conspiracy to coerce them into selling the property for a price far under fair-market value and to dispossess them of more than $1.3 million in cash and personal property allegedly stored at that site. This lawsuit was not intended to succeed on its own, but rather to manufacture some basis for separate claims before the Tax Court. ***A.C. ¶ 264-86 & Ex. 31.***

- In the "Quinlan" Scheme between 2003 and 2006, Enterprise members defaulted on a series of promissory notes and then filed at least seven cases in the Bankruptcy Court in an effort to use the automatic stay of 11 U.S.C. § 362 to avoid foreclosure on the property they had pledged. The Bankruptcy Court dismissed all of those petitions. ***A.C. ¶¶ 231-63.*** In the course of the Enterprise's various appeals, this Court called out Shanni's behavior as well as "the history of bad faith bankruptcy filings by those who were parties to the original notes securing the properties." ***A.C. ¶ 257 & Ex. 30 p.5.***

- In the "Arlene Drive" Scheme, the Enterprise again used sham litigation and claims in attempting to keep an Enterprise member in possession of real property to which he had no claim. While eviction proceedings were pending in 2022, Shanni amended her schedules in her personal bankruptcy and claimed to have an "equitable interest" in that property. That representation flatly contradicted, among other things, Shanni's statement in similar schedules filed in 2018. The Enterprise member occupying the property also filed his own bankruptcy petition to stay eviction efforts but, as with so many other Enterprise bankruptcy petitions, failed to file the required schedules. ***A.C. ¶¶ 287-305.***

The Amended Complaint thus went beyond a mere allegation that Biros was harmed by conduct that might constitute racketeering activity to allege that Biros had been harmed by the operation of an enterprise that operated through racketeering activity. ***Doc. 69 at 14-16.*** As noted above, there is no reason to disturb that conclusion now.

Significantly, none of the cases to which the Second Circuit pointed in *Kim* established a categorical exception for litigation activities. Instead, they consistently held that bad conduct during litigation cannot amount to racketeering activity unless it meets the requirements of at least one of the alternatives in RICO section 1961(1) and that misconduct in litigation cannot, alone, violate the Hobbs Act, 18 U.S.C. § 1951. *See Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016) (rejecting RICO claim where, although plaintiff alleged

abusive litigation tactics, it did "not allege any actual criminal activity as a predicate act"); *Raney v. Allstate Ins. Co*., 370 F.3d 1086, 1087-88 (11th Cir. 2004) (rejecting RICO claim because of plaintiff's failure to plead Hobbs Act violation); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258, 1259 (10th Cir. 2003) ("[j]oin[ing] a multitude of other courts in holding that meritless litigation is not extortion under § 1951" but allowing RICO claims to proceed on allegations that satisfied requirements of mail fraud and wire fraud); *Gabovitch v. Shear*, 70 F.3d 1252, 1995 U.S App. LEXIS 32856, at *6-7 (1st Cir. Nov. 21, 1995) (rejecting RICO claim because "the filing of litigation—no matter how lacking in merit—does not constitute a predicate racketeering act of extortion" and claims of wire fraud were precluded by contrary finding in earlier litigation); *Curtis & Assocs. P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 172 (E.D.N.Y. 2010) ("[A]llegations that the state court litigation is frivolous, fraudulent, or baseless—essentially claims of malicious prosecution—without more, cannot constitute a viable RICO predicate act."). *See Kim*, 884 F.3d at 104 (listing cases).

The notion of some sort of categorical exception for litigation activities is impossible to reconcile with Congress's definition of the "racketeering activity" that a plaintiff must show as part of every RICO violation. *Every one* of the activities listed in that definition is also actionable on some other basis, whether as a crime or otherwise. In establishing that definition, Congress gave no reason to believe that the private right of action it created in RICO section 1964 might be preempted by the potential availability of a state common-law cause of action. *See, e.g., Williams v. Reed*, 604 U.S. 168, 179 (2025) (rejecting state-law limitation on federal cause of action); *Haywood v. Drown*, 556 U.S. 729, 736 (2009) ("[A]lthough States retain substantial leeway to establish the contours of their judicial systems, they lack authority to nullify a federal right or cause of action they believe is inconsistent with their local policies.").

Moreover, neither section 1961(1) nor any other provision of RICO includes an exception for "litigation activity." *Compare* 18 U.S.C. § 1964(c) (establishing general exception for "any conduct that would have been actionable as fraud in the purchase or sale of securities"). Very much to the contrary, "racketeering activity" includes several acts that can occur only in the course of litigation. Most significantly, section 1961(1)(D) describes offenses occurring as part of the bankruptcy process. The district courts have original jurisdiction of that process and typically refer the bulk of cases arising under Title 11 to the bankruptcy courts. *See* 28 U.S.C. §§ 157, 1334.

Bankruptcy fraud is hardly the only flavor of "racketeering activity" that necessarily involves civil litigation. 18 U.S.C. § 1503, which is listed in section 1961(1), criminalizes threats and coercion of jurors and officers of the court in connection with their official duties. By establishing stricter penalties for violations during the course of criminal proceedings, Congress made clear that section 1503 applies in the context of civil litigation, as well. Section 1961(1) also lists 18 U.S.C. §§ 1512 & 1513, which criminalize, respectively, witness tampering and witness retaliation relating to an "official proceeding." The definition of "official proceeding" makes no distinction between civil proceedings in the federal courts and criminal ones. *Id*. at § 1515(a)(1). Moreover, by including harsher penalties for violations in the criminal context, Congress made clear that sections 1512 and 1513 also apply to civil litigation. *Id*. at §§ 1512(j) & 1513(c).

***2. <u>A Violation of 11 U.S.C. § 152 Can Serve as a RICO Predicate Act.</u>***

In defining the acts that can constitute "racketeering activity," RICO section 1961 identifies "any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title)." 18 U.S.C. § 1961. Section 157 is one of the six sections of Chapter 9 of Title 18 that criminalize particular activity related to the bankruptcy process. *Id*. at §§ 152-57.

For three of those sections, fraud is a necessary element of the offense. *Id*. at §§ 152-53, 155. RICO does not exclude any of sections 152, 153, or 155 from "racketeering activity."

A violation of section 152 is racketeering activity. Any violation of that section necessarily involves a bankruptcy case, and any violation of that section *necessarily* involves fraud. The scienter requirement for all six of its subsections is "knowingly and fraudulently." Those subsections criminalize knowingly and fraudulently making, among other things, a false oath, a false account, a false declaration, a false verification, a false statement under penalty of perjury, or a false claim in or in relation to a bankruptcy case. 18 U.S.C. § 152(2), (3), (4).

RICO does not include an exception from "racketeering activity" for conduct that violates section 152, and this Court should not create one. When Congress includes an express exception in a statute, courts presume that Congress considered the issue of exceptions and limited the statute to the exceptions it stated. *See United States v. Johnson*, 529 U.S. 53, 58 (2000). Congress knew how to exclude a bankruptcy-fraud offense from RICO; it excluded section 157. It did not exclude violations of section 152.

Nor should section 157 be converted into a field-wide immunity for fraudulent bankruptcy conduct. If every false bankruptcy filing that could be described at a high level as a "document" or "representation" in a bankruptcy proceeding were excluded from RICO, then section 1961(1)(D)'s inclusion of "any offense involving fraud connected with a case under title 11" would do little work in the very setting where it matters most.

While the potential for overlap between sections 152 and 157 is clear, that potential does not change the result here. Congress looked to different activity in the two sections. Notably, the *sine qua non* of a section 157 violation is a scheme or artifice to defraud. *United States v. Free*, 839 F.3d 308, 319 (3d Cir. 2016). A filed document does not *itself* need to be fraudulent to

constitute a violation of that section. If the document is in furtherance of that scheme or artifice, it is a criminal act even if it is entirely truthful. *See id.* (identifying elements of section 157 violation to include "filing a document in a bankruptcy proceeding ***or*** making [a] false or fraudulent statement in relation to the bankruptcy proceeding for the purpose of executing or concealing the fraudulent scheme" (emphasis added) (quoting *United States v. Knight*, 800 F.3d 491, 505 (8th Cir. 2015)).

By contrast, a filed document must *itself* be fraudulent in order to violate section 152. A false proof of claim, false sworn testimony, false declaration, or false bankruptcy account is independently chargeable under section 152 when made knowingly and fraudulently. That conduct does not cease to be a section 152 violation—or racketeering activity—merely because it occurred in a bankruptcy filing. There is no indication in RICO that Congress intended to exempt this knowing fraud from RICO section 1961 simply because it was in service of a larger scheme.

Courts applying § 1961(1)(D) have recognized that distinction and looked, affirmatively, to whether conduct violates section 152 rather than to whether it does not violate section 157. In *Cadle Co. v. Flanagan,* 271 F. Supp. 2d 379 (D. Conn. 2003), the court held that a section 152 can constitute a predicate act and support a claim under RICO. While it recognized the exclusion for section 157, it found "no indication in the language of the statute that section 152 bankruptcy violations are excluded as well." *Id.* at 385. *See also Reiner v. Paneth*, 808 F. Supp. 3d 431, 471 (E.D.N.Y. 2025) (recognizing that violations of section 152 meet definition); *Alix v. McKinsey & Co.*, No. 18-CV-4141, 2023 U.S. Dist. LEXIS 145872, *54-56 (S.D.N.Y. Aug. 18, 2023) (recognizing false statements under penalty of law in bankruptcy as predicate acts under section

152); *In re Jamuna Real Estate, LLC,* 365 B.R. 540, 549–50 (Bankr. E.D. Pa. 2007) (holding section 152 violations to be predicate acts).

By alleging that Shanni violated section 152, Biros alleges racketeering activity. [5] She alleges that Shanni *fraudulently and knowingly* lied in filing the petition in the Bankruptcy Case while knowing that she was not actually a creditor of U Lock. Biros adds that Shanni *fraudulently and knowingly* lied when she filed her claim in the Bankruptcy Case while knowing that she had not worked for U Lock and that she had obtained her judgment in the Wage Claim Case through her own fraud. These acts were false claims, false declarations, false oaths, and false accounts in relation to a Title 11 case. Section 152 criminalizes them. Under RICO section 1961(1)(D), Shanni's actions were also racketeering activity.

### *3. Biros's Loss of Rights in the Subject Property, Even If Non-Permanent, Is Cognizable Under RICO.*

RICO section 1964(c) authorizes a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). A plaintiff "can only recover to the extent that[ ] he has been injured in his business or property by the conduct constituting the violation [of RICO]." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (citing *Sedima v. Imrex Co.,* 473 U.S. 479, 496 (1985)). A RICO plaintiff must allege (and eventually prove) "concrete financial loss and not mere injury to a valuable intangible property interest." *Maio*, 221 F.3d at 483. [6]

---

[5] While the answer to the Third Circuit's question is a clear "yes," the question of whether Biros has pleaded the at least two predicate acts required under RICO does not depend on that answer. This Court held that Biros had pleaded all elements of at least two acts of wire fraud under 18 U.S.C. § 1343 *except for* "interstate or foreign commerce" and the Third Circuit's conclusion that Biros *had* pleaded the interstate commerce element, to this question.

[6] Here again, while the answer to this question favors Biros, her claim does not depend on that answer. Biros defeated the Enterprise's efforts to deprive her of her rights in the Subject

Through the Fake Lien Scheme and the filing of the Bankruptcy Case, Shanni and the Enterprise clouded Biros's rights in the Subject Property for more than three years after the Pennsylvania courts finally disposed of the Quiet Title Action on the merits. *See U Lock*, 2025 U.S. App. LEXIS 25253 at *15-17 ("[T]he evidence adduced at the hearing on Biros's objection was compelling to the point that none of the Bankruptcy Court's findings of fact would falter if they were reviewed de novo."); *In re U Lock*, No. 24-1202, 2025 U.S. App. LEXIS 476, at *5-6 (3d Cir. Jan. 9, 2025) (affirming rejection of Shanni's claim, asserted in adversary proceeding, that Biros's receipt of legal title to Subject Property was avoidable under 11 U.S.C. §§ 547, 548). Shanni and the other members of the Enterprise managed to interfere for months after the filing of the Bankruptcy Case with Biros's possession of the Subject Property for almost as long. During that time, Biros could not use the Subject Property for her own purposes, lease it to third parties, or use it as a basis for financing. ***A.C. 345-46, 360-62.*** These impairments were real, and they caused the type of damage that RICO section 1964(c) recognizes as actionable. Thus, the concerns that the Third Circuit raised here do not prevent Biros from proceeding with her RICO claims.

---

Property, but her victory came at a substantial price. She had to hire lawyers, and she had to pay those lawyers. ***A.C. ¶¶ 348, 363.***

> It is hard to imagine a more simple and direct way of showcasing proximate causation than how Plaintiff alleges the cause and effect here. . . . Shanni and her collaborators allegedly used the machinery of the judicial system for the purpose of illicitly gaining a superior possessory interest in the property, and they succeeded, depriving Plaintiff of her right to the property and leading to commercial losses and attorneys' fees.

***Doc. 69 at p.21.***

### C. Biros Has Sufficiently Pleaded Racketeering Activity.

Biros's RICO claims against Kash arise under the conspiracy provisions of RICO section 1962(d). ***A.C. ¶¶349-63.*** Biros alleges that Kash, with George and Roth, conspired with Shanni in Shanni's violations of RICO section 1962(c):

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

A "pattern" of racketeering activity is two or more acts of racketeering activity committed within ten years of each other. 18 U.S.C. § 1961(5). As discussed above, RICO defines a wide variety of "racketeering activity," including both wire fraud under 18 U.S.C. § 1343 and many types of bankruptcy fraud. 18 U.S.C. § 1961(1).

The Amended Complaint alleges a series of predicate acts of racketeering activity by Shanni in pursuit of the Snyder Family Enterprise and its goal of defrauding Biros of her interest in the Subject Property. ***A.C. ¶ 227-30; 326.*** As Shanni's first predicate act, she committed wire fraud when, with intent to defraud or with intent to obtain property by means of false or fraudulent pretenses, she used the internet to transmit her complaint in the Wage Case to this Court. ***A.C. ¶¶ 66-90***; *see* 18 U.S.C. § 1343. She told this Court that she had worked for U Lock for seventy hours during each week for more than four years. ***A.C. ¶ 73 & Ex. 10.*** By the time Shanni submitted that complaint, she, as well as other members of the Enterprise, had already made statements incompatible with this claim. Notably, Shanni had repeatedly stated under penalty of law that she had no job during the period in which she claimed to have worked for U Lock. ***A.C. ¶ 54-65, 336.*** As already established, her claims were false. ***A.C. ¶¶ 67-68, 182-91 & Ex. 9.***

Shanni then engaged in multiple other predicate act of racketeering activity by committing fraud in a Chapter 11 bankruptcy proceeding. ***A.C. ¶¶ 338-39.*** Having fraudulently received a judgment from this Court, Shanni proceeded to the Bankruptcy Court and filed an involuntary Chapter 11 proceeding against U Lock. In her petition, she fraudulently claimed to be a creditor of U Lock. ***A.C. ¶¶ 119-33 & Ex. 17.*** Shanni committed a further predicate act of bankruptcy fraud by submitting a claim against the U Lock estate in reliance on both her lies about working for U Lock and the judgment she had obtained through her fraud. ***A.C. ¶¶ 134-36 & Ex. 18.***

This racketeering activity occurred within the two years prior to Biros's commencing this action. ***A.C. ¶¶ 336-39.*** Thus, Biros has pleaded both the required racketeering activity and the required pattern. Given this Court's prior and undisturbed determination that Biros had pleaded the existence of a conspiracy, ***Doc. 69 at 22-23***, Biros can proceed with her RICO claims against Kash.

**D. <u>Kash's Additional Arguments Do Not Change the Outcome Here.</u>**

In the brief that he and George submitted to the Third Circuit, Kash raised the specter that this Court's permitting Biros to proceed here would flood the federal courts with new RICO litigation. *See* Ex. 1. This argument appeared to expand on arguments that George made in his motion here. *See* Doc. 58 at 3 ("It's FLAPDOODLE!") (emphasis in original).

While this argument, at its best, sits uneasily with the willingness of George and Kash to let Shanni take a default judgment of hundreds of thousands of dollars against U Lock for work she did not perform, ***A.C. ¶¶ 66-99 & Ex. 9***, its more important problem is with the fundamental principle that "'a federal court's obligation to hear and decide a case'" within its jurisdiction 'is virtually unflagging.'" *Borowski v. Kean Univ*., 68 F.4th 844, 849 (3d Cir. 2023) (quoting *Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)). Here, Congress has created the private cause

of action under RICO section 1964(c), and it has given this Court and other district courts jurisdiction to hear private RICO claims. *Id*. ("may sue therefor in any appropriate United States district court"); 28 U.S.C. § 1331. At this stage, the only question for this Court is whether Biros has stated claims under RICO and otherwise.

Kash also suggests that this action might somehow encumber their rights under the First Amendment. To be clear, the First Amendment's right to petition the government for redress of grievances protects many types of litigation activity. *See, e.g. Eastern R. Presidents Conference v. Noerr Motor Freight, Inc*., 365 U.S. 127 (1961). That right does not, however, extend to "sham" litigation. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 512 (1972).

The Third Circuit has recently reiterated when litigation is a sham:

> We employ a two-part test to determine if the sham exception applies. First, the suit must be objectively baseless. . . .
>
> Thus, if probable cause exists, our inquiry is at an end. However, the fact that a suit may lack any objective merit is not itself determinative. We must then inquire into the plaintiff's subjective motivations for bringing suit. We take this additional step to ascertain whether the actual motivation is to dragoon the "governmental process" itself into use as a competitive tool

*Campbell v. Pa. Sch. Bds. Ass'n*, 972 F.3d 213, 219 (3d Cir. 2020) (footnotes omitted, citing *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus*., 508 U.S. 49, 60-63 (1993)).

Shanni's actions in furtherance of the Snyder Family Enterprise in both the Bankruptcy Case and the Wage Case were sham litigation—both factually unfounded and brought for improper purposes. Not only has Biros alleged those facts, but they are already proven. The Bankruptcy Court has already found that the Wage Case and the Bankruptcy Case were extended frauds on the court and that, in her allegations in those matters, Shanni "lied." That court also found that Shanni's lies were motivated by the desire to interfere with Biros's legitimate ownership and possession of the Subject Property. ***A.C ¶ 182-87 & Ex. 9.*** Shanni had no right to

bring the Wage Case or to file her involuntary bankruptcy petition against U Lock, and Kash had no right to support her efforts.[7]

**E. Biros Has Pleaded All Necessary Elements of Her State Law Claims Against Kash.**

Given its initial dismissal of Biros's RICO claims, this Court was correct to dismiss Biros's claims arising under state law without delving into the merits of those claims. ***Doc. 69 at pp. 23-24*** (citing 28 U.S.C. § 1367(c)(3)). However, as it is now clear that Biros may proceed with her RICO claims, this Court should now address the merits of the state-law claims. Biros has sufficiently pleaded civil conspiracy claims against Kash relating to slander of title and abuse of process and a claim that Kash aided and abetted Shanni's fraud.

***1. Biros Has Pleaded That Kash Conspired to Slander Title.***

A plaintiff pleading a claim for civil conspiracy under Pennsylvania law must sufficiently allege that "two or more persons [have] combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." *S.V.B. Assocs. v. Lomb*, no. 2:19-cv-1575-RJC, 2020 U.S. Dist. LEXIS 179937, at *25-26 (W.D. Pa. Sep. 30, 2020) (Colville, J.) (citing *Thompson Coal Co. v. Pike Coal Co*., 488 Pa. 198, 412 A.2d 466 (1978)).

The unlawful act underlying Biros's conspiracy claim in Count IV against Kash and the other Defendants is slander of title. ***A.C. ¶¶ 385-397.*** "Disparagement of title, variously labeled slander of title, defamation of title, or in other contexts, slander of goods, trade libel or injurious falsehood, is the false and malicious representation of the title or quality of another's interest in goods or property." *Triester v. 191 Tenants Ass'n*, 415 A.2d 698, 701 (Pa. Super. Ct. 1979) (citing *Young v. Geiske*, 58 A. 887 (Pa. 1904); *Paull v. Halferty*, 63 Pa. 46 (1870)). Elements of slander

[7] To any extent that George and Kash argue that Biros cannot sue them for RICO violations because Pennsylvania provides a cause of action for malicious prosecution, Biros addresses that argument above in the context of "litigation activity."

are that (1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity. *Skiff re Business, Inc. v. Buckingham Ridgeview, LP*, 991 A.2d 956, 964 (Pa. Super. Ct. 2010) (quoting *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co*., 809 A.2d 243, 246 (Pa. 2002)).

Here, the allegations of slander of title are clear. Shanni filed both a false lien on the Subject Property, which belonged to Biros, and a *lis pendens* that specifically named Biros as a party. ***A.C. ¶¶ 94-99, 107-114, 367-380.*** She knew that both of these claims were false – because she knew that she had no claim against U Lock, she also knew that the judgment from the Wage Case, which underlay the Fake Lien and the *lis pendens*, was obtained through fraud. ***A.C. ¶¶368, 375-76.*** *See also U Lock*, 2024 Bankr. LEXIS 484 at *34-36. Moreover, Shanni knew that Biros, having spent funds in order to secure final judgment in her favor in the Quiet Title Action and secure title to the Subject Property, would now be forced to expend further resources in order to protect that title against Shanni's and the other Defendants' new and false attacks. And, in fact, Biros has been forced to expend funds for precisely those purposes.

As this Court has noted, "the narrative spun in the Complaint does a compelling job of asserting allegations, which, if proven, would support a finding that each Defendant knowingly conspired with the others to meet the broader illicit goal." ***Doc. 69 at 23.*** Indeed, the allegations of Kash's agreement are overwhelming:

- Shanni filed the Wage Case shortly after the Superior Court affirmed that Biros, rather than U Lock, owned the Subject Property. ***A.C. ¶¶ 30, 45-53, 66.***
- Kash and George, who controlled U Lock, had testified and provided discovery answers in the Quiet Title Action that were contrary to and inconsistent with

Shanni's assertion that she had worked for U Lock. Roth had represented U Lock in that proceeding. ***A.C.* ¶¶ *62-65 & Ex. 8***.

- Despite that actual knowledge and their record statements, Kash and George, possibly advised by Roth, *A.C.* ¶¶ 79-80, declined to cause U Lock to answer Shanni's complaint in the Wage Case, and they let Shanni take a default judgment against U Lock. ***A.C.* ¶¶*77-79.***

- Roth filed a motion and appeared in state court on behalf of U Lock to challenge that court's direction to deliver the deeds to the Subject Property to Biros. He did not argue in any way that U Lock should retain ownership of the Subject Property. ***A.C.* ¶¶ *102-106.***

- The day after U Lock filed that motion, Shanni filed her praecipe for writ of summons against Biros and others in the Westmoreland Court, successfully indexing a *lis pendens* against the Subject Property. ***A.C.* ¶ *107.***

Moreover, there is no question that, as pleaded, Kash and the other Defendants took these actions with malice and in order to harm Biros's interests. *See Thompson Coal*, 412 A.2d at 472. All Defendants knew that Shanni had no legitimate claim against U Lock when she filed the Wage Claim. As Kash actually knew that the judgment from that action was procured by fraud, he could not have identified any legitimate business purpose in the Defendants' actions to interfere with Biros's interests in the Subject Property.

Finally, Biros has pleaded that she has incurred damages. ***A.C.* ¶ *396.*** These damages include the expenses of attempting to clear these clouds from her title to the Subject Property. Thus, the claims in Count IV against Kash should continue.

#### ***2. Biros Has Pleaded All Necessary Elements of Her Claim that Kash Aided and Abetted Shanni's Fraud.***

*Marion v. Bryn Mawr Trust Co*., 288 A.3d 76 (Pa. 2023) recognized and delimited the elements of a claim for Aiding and Abetting Fraud. The Court recognized that a plaintiff must allege that the defendant has "actual knowledge" of the principal actor's fraud. *Id.* at 89-90 (citing Restatement (Second) of Torts § 876(b)). Per Restatement section 876, "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . .

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself."

There cannot be any reasonable doubt that the Amended Complaint alleges Shanni's fraud. *See Gregg v. Ameriprise Financial, Inc.*, 245 A.3d 637, 645-46 (Pa. 2021) (listing elements of fraud). Shanni lied in filing her complaint in the Wage Case and in her testimony to this Court during the Wage Case Hearing, Shanni told this Court that she had performed seventy hours of work for U Lock each week for more than four years. Those statements were knowingly false—*e.g.*, lies. Shanni's lies were material to the transaction at issue. They were essential to her obtaining a judgment from this Court. The Fake Lien and Shanni's claim in the U Lock Bankruptcy flow directly from that judgment. Biros alleges that Biros has alleged that Shanni intended for this Court to rely on those statements. *See* Fed. R. Civ. P. 9(b) (allowing for general allegations of intent and knowledge). Indeed, Shanni will have a very hard time in even suggesting any other motivation for her statements. This Court acted reasonably in believing those statements. *See* 18 U.S.C. §§ 1503, 1621; Fed. R. Civ. P. 11. And Biros was injured by Shanni's false statements. ***A.C. ¶¶ 399-409.***

Biros pleads that Kash knew Shanni's statements to this Court in the Wage Case were false. He, George, and Roth knew that Shanni did not do the work that she claimed in her complaint or to which she testified at the Wage Case Hearing. ***A.C. ¶¶ 17-18.*** Moreover, the Defendants' plan to generate the Fake Lien grew from the outcome in the Quiet Title Action. ***A.C. ¶¶ 46-53.***

Under all of these circumstances, and particularly in light of subsequent events, it is more than plausible that Kash and the other Defendants encouraged and assisted Shanni. *See U Lock*, 2024 Bankr. LEXIS 484, at *45-46. The record that existed prior to Shanni's filing the Wage

Case includes no indication at all that Shanni worked for U Lock. Kash and George decided that U Lock would not respond to Shanni's complaint. Roth argued that the Subject Property should be transferred to Biros in a way that, while of no benefit to his client, might have exposed that property to Shanni's Fake Lien. Roth did not advise the Westmoreland Court of the U Lock Bankruptcy until – literally – two minutes after Shanni entered an appearance in the Quiet Title Action and filed an appeal. ***A.C. ¶¶ 411-20.*** Accordingly, this claim should proceed against Kash.

### *3. **<u>Biros Has Pleaded All Necessary Elements of Her Conspiracy Claims for Abuse of Process.</u>***

The conspiracy claims against Kash and the other Defendants in Count X relate to Shanni's abuse of process. ***A.C. ¶¶ 454-60.*** The elements of a cause of action for abuse of process are "that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. 2002) (citing *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998) and *Rosen v. American Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. 1993)).

Biros describes the abuse of process in Count IX. She points to Shanni's complaint in the Wage Case, the Fake Lien, the *Lis Pendens* Proceeding, the involuntary petition in the U Lock Bankruptcy estate, and an appeal to the Superior Court. ***A.C. ¶¶ 445-449.*** Each of the *Lis Pendens* Action and Shanni's 2022 entry of her appearance in the Quiet Title Action and attempted appeal to the Superior Court were express uses of civil process against Biros. ***A.C. ¶¶ 107-112, 166-169 & Exs. 16, 23, & 24.*** Particularly in light of the Defendants' agreement about how to undo Biros's victory in the Quiet Title and attack her title to the Subject Property, it is also hard to see Shanni's filing the Fake Lien as anything other than a use of legal process against Biros. ***A.C. ¶¶ 94-99.***

Moreover, Shanni did not, in any of these instances, use process for the purpose for which it was designed. Shanni knew in each of these instances that her claims on Biros and Biros's ownership of the Subject Property were based on Shanni's own fraud in pursuing and obtaining the default judgment against U Lock in the Wage Case. None of the Westmoreland County court, the Bankruptcy Court, or this Court issued process to support anyone in making and benefiting from fraudulent claims.

Finally, this conduct damaged Biros. She has been forced to defend herself, her victory in the Quiet Title Action, and her interest in the Subject Property against all of Shanni's actions, and she has incurred expenses in connection with these efforts.

The averments showing Kash's and the other Defendants' agreement to these abuses of process are virtually identical to those averments discussed above for Biros' claims relating to slander of title. For those same reasons, this claim survives Kash's motion.

## **CONCLUSION**

Biros respectfully requests that, for the reasons stated above, this Court deny Kash's motion to dismiss and direct him to answer the claims against him.

Respectfully submitted,

WH BURKLEY, LLP

Dated: July 13, 2026

By: */s Stuart C. Gaul, Jr.*
Kirk B. Burkley, Esq. (PA. I.D. #89511)
Stuart C. Gaul, Jr., Esq. (PA. I.D. #74529)
601 Grant Street, 9th Floor
Pittsburgh, PA 15219
Telephone: (412) 456-8100
Facsimile: (412) 456-8135

*Attorneys for Plaintiff, Christine Biros*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of July, 2026, a true and correct copy of the foregoing document was served on all parties via this Court's CM/ECF notification system.

*/s/ Stuart C. Gaul, Jr.*